1  FRANK FALZETTA, Cal. Bar No. 125146
   SCOTT SVESLOSKY, Cal. Bar No. 217660
2  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   333 South Hope Street, 48th Floor
3  Los Angeles, California  90071-1448
   Telephone:  213-620-1780
4  Facsimile:   213-620-1398
   ffalzetta@sheppardmullin.com
5  ssveslosky@sheppardmullin.com

6  TED C. LINDQUIST, III, Cal. Bar No. 178523
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
7  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111-4109
8  Telephone:  415-434-9100
   Facsimile:    415-434-3947
9  tlindquist@sheppardmullin.com

10 Attorneys for Defendant and Counterclaimant
   LIBERTY MUTUAL FIRE INSURANCE
11 COMPANY

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 14 LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation, | Case No. C07-04651 CRB (ADR) |
| 15 | Hon. Charles R. Breyer [Complaint Filed:  September 10, 2007] |
| 16 | |
| 17 Plaintiffs, | **DEFENDANT AND COUNTERCLAIMANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S:** |
| 18 v. | |
| 19 LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive. | **(1) NOTICE OF MOTION AND MOTION TO DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING PLAINTIFFS; and** |
| 20 | |
| 21 Defendants. | **(2) MEMORANDUM OF POINTS AND AUTHORITIES.** |
| 22 | |
| 23 | [Declarations of Lisa Kralik Hansen, Melodee Yee, Stephanie Renner and Scott Sveslosky; and Request for Judicial Notice Filed and Proposed Order Lodged Concurrently] |
| 24 | |
| 25 | |
| 26 | Date:    November 30, 2007 |
| 27 AND RELATED COUNTERCLAIM | Time:    10:00 a.m. Place:   Courtroom 8 |
| 28 | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 10:00 a.m. on November 30, 2007, in Courtroom 8 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave, 19th Floor, San Francisco, CA, before the Honorable Charles R. Breyer, defendant and counterclaimant Liberty Mutual Fire Insurance Company ("Liberty Mutual") will and hereby does move for an order disqualifying Roxborough, Pomerance & Nye (the "Roxborough firm") from representing plaintiffs Largo Concrete, Inc. and N.M.N. Construction, Inc. (collectively "Plaintiffs").

Disqualification is justified, and mandatory, because a Roxborough firm associate, Craig S. Pynes, previously represented Liberty Mutual in substantially related matters. Mr. Pynes has a conflict of interest and is disqualified from representing Plaintiffs in this matter, and under California's rule of vicarious disqualification, Mr. Pynes' conflict is imputed to the Roxborough firm and disqualification is mandatory.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities and Declarations of Lisa Kralik Hansen, Melodee Yee, Stephanie Renner and Scott Sveslosky, the Complaint and all other pleadings and documents on file in this action, the concurrently filed Request for Judicial Notice, the arguments of counsel made when this Motion is heard, and all other evidence

///
///
///
///
///

W02-WEST:1SCS1\400452809.3                                    -2-

1  and materials this Court may consider.

2

3  Dated:  October 23, 2007

4                          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

5

6                          By

7                                    FRANK FALZETTA

8                          Attorneys for Defendant and Counterclaimant
                           LIBERTY MUTUAL FIRE

9                          INSURANCE COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     SUMMARY OF ARGUMENT.................................................................................4

II.    STATEMENT OF FACTS................................................................................6

    **A.**   Mr. Pynes Previously Represented Liberty Mutual...............................6

    **B.**   Under Circumstances Essentially Identical To Those In This Case, The U.S. District Court For The Eastern District Of Kentucky Disqualified The Roxborough Firm From Representation Adverse To Liberty Mutual...........................................8

III.   ARGUMENT.....................................................................................11

    **A.**   Mr. Pynes Is Disqualified From Representing Plaintiffs....................11

        **1.**   Governing law.....................................................................11

        **2.**   Rule 3-310(E) and the Substantial Relationship Test Require Disqualification of Mr. Pynes......................................13

    **B.**   California Law Mandates The Vicarious Disqualification Of The Roxborough Firm............................................................16

IV.   CONCLUSION .................................................................................18

1

## TABLE OF AUTHORITIES

2

### Cases

3    Canatella v. California,
          404 F.3d 1106 (9th Cir. 2005) ..................................................11
4
     Elan Transdermal Ltd. v. Cygnus Therapeutic Systems,
5         809 F. Supp. 1383 (N.D. Cal. 1992)..................................15, 18

6    Henriksen v. Great American Savings & Loan,
          11 Cal. App. 4th 109 (1992) .............................................11, 13, 16
7
     Hitachi, Ltd. v. Tatung Co.,
8         419 F. Supp. 2d 1158 (N.D. Cal. 2006)..................... 4, 11-13, 16, 17, 18

9    I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC,
          2005 U.S. Dist. LEXIS 45190, 2005 WL. 757389 (N.D. Cal. 2005).......4, 12, 15
10
     Lucent Techs., Inc. v. Gateway, Inc.,
11        2007 U.S. Dist. LEXIS 35502 (S.D. Cal. 2007)..................................11

12   People ex rel. Dept. of Corps. v. SpeeDee Oil  Change Systems, Inc.,
          20 Cal. 4th 1135 (1999) ......................................................11, 13
13
     Republic Services, Inc. v. Liberty Mutual Insurance Co., et al,
14        Case No. 03-4949-KSF (E.D. KY) ........................... 5, 8-10, 14, 15,

15   Rosenfeld Constr. Co. v. Superior Court,
          235 Cal. App. 3d 566 (1991) .................................................15
16
     Tony's Fine Foods, Inc. v. Liberty Mutual Insurance Co.,
17        Alameda County Superior Court, case no. 2002067108 ..................4, 5, 7, 8, 9,
          ..................................................................10, 13, 14, 15
18

### Statutes, Rules & Regulations

19

     Local Rule 11-4 of the United State District Court for the
20        Northern District of California, ..............................................11

21   California Rules of Professional Conduct
          Rule 1-100.....................................................................11
22
          Rule 3-301(E) .............................................................11, 13
23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.

3

## SUMMARY OF ARGUMENT

4

5    The Roxborough firm should be disqualified from representing

6  Plaintiffs in this matter because of an ethical conflict of interest: one of its

7  associates, Craig Pynes, previously represented Liberty Mutual in substantially

8  related matters and had access to Liberty Mutual's confidential information.

9  Controlling authority, including authority from this Court, mandates the

10  disqualification of Mr. Pynes and the vicarious disqualification of the Roxborough

11  firm from representing Plaintiffs in this matter.  Hitachi, Ltd. v. Tatung Co., 419 F.

12  Supp. 2d 1158 (N.D. Cal. 2006); I-Enterprise Co. LLC v. Draper Fisher Jurvetson

13  Mgmt. Co. V, LLC, 2005 U.S. Dist. LEXIS 45190, 2005 WL 757389 (N.D. Cal.

14  2005).

15

16    Before joining the Roxborough firm, Mr. Pynes practiced with Kern &

17  Wooley LLP, where he dedicated a significant portion of his practice to the

18  representation of Liberty Mutual and its affiliated companies (the "Liberty Mutual

19  companies") in litigated and non-litigated matters, and was generally exposed to

20  confidential information about the Liberty Mutual companies' corporate practices

21  and procedures, strategies for handling litigation, claims operations, insurance claim

22  file management and record keeping.  Mr. Pynes defended the Liberty Mutual

23  companies in cases involving alleged breach of contract and "bad faith."  At least

24  one such case – Tony's Fine Foods, Inc. v. Liberty Mutual Insurance Co., Alameda

25  County Superior Court case no. 2002067108 – involved workers' compensation

26  insurance claims mishandling allegations and claims essentially identical to those

27  asserted in this case.

28

1       While representing the Liberty Mutual companies in <u>Tony's Fine</u>

2    <u>Foods</u>, Mr. Pynes reviewed the Liberty Mutual companies' workers' compensation

3    claim files, reviewed documents for privilege, prepared a privilege log and

4    discussed strategy for the tasks with his supervising attorney.  Mr. Pynes has now

5    switched sides.  In this case, his new firm has taken on representation adverse to

6    Liberty Mutual in a substantially related matter.  Mr. Pynes is unquestionably

7    disqualified from representing Plaintiffs in this case against his former client,

8    Liberty Mutual.  Under controlling case authority, Mr. Pynes' conflict is imputed to

9    the Roxborough firm as a matter of law.

10

11       In 2006, under essentially identical circumstances, the United States

12    District Court for the Eastern District of Kentucky issued an order disqualifying the

13    Roxborough firm from representing the plaintiffs against the Liberty Mutual

14    companies in another workers' compensation insurance claims mishandling case,

15    <u>Republic Services, Inc. v. Liberty Mutual Insurance Co., et al</u>, Case No. 03-4949-

16    KSF (E.D. KY).  The result should be no different here.  Accordingly, Liberty

17    Mutual respectfully requests that the Court enter an order disqualifying the

18    Roxborough firm from representing Plaintiffs against Liberty Mutual in this matter.

19

20

21

22

23

24

25

26

27

28

## II.

## STATEMENT OF FACTS

**A.  Mr. Pynes Previously Represented Liberty Mutual.**

The Roxborough firm has thirteen attorneys,[1] and on its firm web-site, claims that it was the first law firm in the country to specialize in representing employers in workers' compensation premium and dividend disputes against insurance carriers. [Sveslosky Decl, ¶ 2; Exh. C]. Mr. Pynes has been an associate at the Roxborough firm since March 2004. [Exh. D, Pynes Depo., p. 37:9-10, 38:23-39:10]. Although the firm specializes in suits against insurance companies, its web site notes that Mr. Pynes' 13 years of legal experience includes substantial work in defending insurance companies in first and third party bad faith litigation. [Exh. C].

Before joining the Roxborough firm, Mr. Pynes practiced for 8 or 9 months at Kern & Wooley LLP, where he worked almost exclusively on matters for Liberty Mutual and its affiliates (the "Liberty Mutual companies"). [Hansen Decl., ¶ 4]. His representation of the Liberty Mutual companies involved both litigated and non-litigated matters, and included insurance coverage litigation and the defense of breach of contract and bad faith claims. [Id.]. During this representation, Mr. Pynes was exposed to confidential information, including the Liberty Mutual companies' corporate practices and procedures, strategies for handling litigation, claims operations, and claim file management and record keeping. [Id.]. The tasks

---

[1]    The Roxborough firm's website, www.rpnlaw.com, lists a total of twelve attorneys – four partners and eight associates. [Sveslosky Decl. ¶ 2; Exh. C]. Attorney Michael L. Phillips is not listed on the firm's website but has made an appearance in this matter as an attorney with the Roxborough firm. [Id.]

1    he handled while representing the Liberty Mutual companies in litigation included,

2    among other things, (i) reviewing and analyzing the Liberty Mutual companies'

3    workers' compensation insurance claims files, claims manuals and related materials;

4    (ii) preparing written discovery and responses; (iii) participating in mediation, case

5    strategy discussions, and document productions; (iv) preparing legal memoranda;

6    (v) speaking with the Liberty Mutual companies' claims adjusters and other

7    personnel; (vi) reviewing and analyzing the Liberty Mutual companies' privileged

8    materials, including attorney-client privileged communications; and (vii) preparing

9    privilege logs. [Id. ¶ 5; Exh. D, Pynes Depo. pp. 29:14-34:20].

10

11         Among other cases, Mr. Pynes represented the Liberty Mutual

12    companies in Tony's Fine Foods, Inc. v. Liberty Mutual Insurance Co., Alameda

13    County Superior Court Case No. 2002067108, filed on October 1, 2002. [Hansen

14    Decl. ¶ 6; Yee Decl. ¶ 4; Exh. A; Exh. E, Hansen Depo., pp. 32:17-22, 33:16-34:12;

15    Exh. D, Pynes Depo., pp. 15:22-16:19]. There, as here, the plaintiff sued the Liberty

16    Mutual companies for breach of contract, breach of the duty of good faith and fair

17    dealing, negligence and unfair business practices. [Exh. A]. There, as here, the

18    plaintiff alleged that the Liberty Mutual companies mishandled its workers'

19    compensation insurance claims by, among other things, failing to properly manage

20    and defend claims, which alleged resulted in increased reserves and experience

21    modification rate. [Id. ¶¶ 17-19, 35, 38].

22

23         In Tony's Fine Foods, and at the instruction of then fellow Kern &

24    Wooley attorney Melodee Yee, Mr. Pynes (i) reviewed the Liberty Mutual

25    companies' workers' compensation claim files, (ii) conducted a privilege review, (iii)

26    made "sure that any sensitive information was redacted," (iv) made a legal

27    determination as to what documents were privileged, protected or otherwise immune

28    from discovery, and (v) prepared a privilege log. [Hansen Decl. ¶ 7; Yee Decl. ¶ 5;

1   Exh. D, Pynes Depo., p. 15:22-15:25; Exh. E, Hansen Depo. p. 34:6-12].  During the

2   course of this project, Mr. Pynes spoke with his superior, Ms. Hansen, about the

3   document review, privilege review or preparation of the privilege log.  [Hansen

4   Decl. ¶ 7; Exh. E, Hansen Depo., pp. 33:1-34:5].  Mr. Pynes worked up to half of a

5   day on the project.  [Exh. D, Pynes Depo., p. 28:13-18].

6

7   **B.**      **Under Circumstances Essentially Identical to Those in this Case, the U.S.**

8   **District Court for the Eastern District Of Kentucky Disqualified The**

9   **Roxborough firm from Representation Adverse To Liberty Mutual.**

10

11              On November 10, 2003, Republic Services, Inc. ("Republic") sued

12  Liberty Mutual and its affiliates in Kentucky state court, and two days later, the

13  Liberty Mutual companies removed the case to the United States District Court for

14  the Eastern District of Kentucky.  Republic Services, Inc. v. Liberty Mutual

15  Insurance Co., et al., Case No. 03-494-KSF (E.D. KY).  In Republic, another

16  workers' compensation claims mishandling case, the plaintiff alleged that the

17  Liberty Mutual companies failed to properly handle, administer and manage its self-

18  insured workers' compensation program.  [Exh. B, 10/20/06 Opinion and Order

19  ("Order") at p. 1].  In May 2006, more than two years after Republic filed suit, Mr.

20  Pynes and other Roxborough firm attorneys appeared *pro hac vice* as co-counsel for

21  Republic, against the Liberty Mutual companies.  [Id. p. 2].  On August 1, 2006, the

22  Liberty Mutual companies moved to disqualify Mr. Pynes and the Roxborough firm

23  from representing Republic due to the conflict of interest arising from Mr. Pynes'

24  prior representation of the Liberty Mutual companies in matters, such as Tony's Fine

25  Foods, substantially related to the Republic litigation.  [Id. pp. 1-2, 4].

26

27

28

1          In opposing the Liberty Mutual companies' disqualification motion in
2    Republic, the Roxborough firm claimed, among other things, that:

3

4    •    Mr. Pynes never handled any workers' compensation "bad faith" claims
5          handling cases for the Liberty Mutual companies;
6    •    Mr. Pynes never saw Liberty Mutual's Best Practices Manual, or any
7          other workers' compensation manuals while at Kern & Wooley;
8    •    Mr. Pynes never received training in the Liberty Mutual companies'
9          bad faith claim handling practices in the workers' compensation area;
10   •    Mr. Pynes never had any involvement with the Liberty Mutual
11         companies' workers' compensation division; and
12   •    While Mr. Pynes may have had access to confidential claims handling
13         materials outside the workers' compensation context, there was no
14         evidence that he actually looked at the materials or utilized any
15         knowledge gained from reviewing such materials.  [Order, pp. 4-5].

16

17         The District Court squarely rejected the Roxborough firm's arguments
18   and granted the disqualification motion.  [Id., pp. 12-19].  The Court found that the
19   "facts and issues involved in the Liberty Companies defense of the *Tony's Fine*
20   *Foods* case, while involving different claims files, are substantially the same as the
21   facts and issues currently before this court – the mishandling of the Tony's Fine
22   Foods and Republic's workers' compensation programs.  Certainly, the same
23   defenses, strategy and litigation tactics are implicated in both matters."  [Id., p. 14].
24   Further, the Court found that a conflict of interest arose from Mr. Pynes'
25   representation of the Liberty Mutual companies in a substantially related matter,
26   Tony's Fine Foods, and his current representation of Republic.  [Id.].

27

28

1         In disqualifying the Roxborough firm, the District Court rejected the

2    firm's claim that Mr. Pynes did not acquire any confidential information about the

3    Liberty Mutual companies, noting that evidence clearly showed that Mr. Pynes

4    (1) prepared a privilege log, (2) had access to the Liberty Mutual companies' claim

5    manuals, and (3) was privy to strategy discussions regarding mediation and

6    document productions. [Exh. B, Order, p. 15]. Moreover, the Court rejected as

7    "disingenuous" the Roxborough firm's claim that Mr. Pynes was a "mere associate

8    with no client contact and no access to confidential information." [Id., p. 16]. The

9    Court observed that, although Mr. Pynes claimed he "did not recall" portions of his

10   representation of the Liberty Mutual companies in <u>Tony's Fine Foods</u>, "he

11   undoubtedly acquired confidential information during his representation and/or

12   during his representation of the Liberty Companies in other related matters which

13   could be used to Republic's advantage…" [Id., p. 16].

14

15        After concluding that Mr. Pynes had a conflict of interest and was

16   disqualified, the District Court held that his conflict must be imputed to, and

17   required disqualification of, the Roxborough firm as a matter of law. [Id., pp. 17-

18   18]. The Court noted that this result protects the reasonable expectations of former

19   and current clients and promotes the public's confidence in the integrity of the legal

20   profession. [Id., p. 18].

21

22

23

24

25

26

27

28

1

**III.**

**ARGUMENT**

3

4  **A.    Mr. Pynes Is Disqualified From Representing Plaintiffs.**

5

6     **1.    Governing law.**

7

8          State law governs motions to disqualify counsel.  Hitachi, Ltd. v.

9  Tatung Co., 419 F.Supp.2d 1158, 1160 (N.D.Cal. 2006).  Attorneys appearing in a

10  United States District Court in California are subject to California law as it pertains

11  to professional conduct.  Cal. R. Prof. Conduct 1-100; N.D. Cal. Local Rule 11-4;

12  Lucent Techs., Inc. v. Gateway, Inc., 2007 U.S. Dist. LEXIS 35502 (S.D. Cal.

13  2007), citing, Canatella v. California, 404 F.3d 1106, 1110-1111 (9th Cir. 2005).

14  Professional conduct is covered by the California Rules of Professional Conduct,

15  under which Rule 3-310(E) specifically prohibits conflicts of interest:

16

17          A member shall not, without the informed written consent

18          of the client or former client, accept employment adverse

19          to the client or former client where, by reason of the

20          representation of the client or former client, the member

21          has obtained confidential information material to the

22          employment.  Cal. R. Prof. Conduct, R. 3-301(E).

23

24          Rule 3-301(E) protects the confidential relationship between an

25  attorney and client, which continues to exist even after the formal relationship ends.

26  Henriksen v. Great American Savings & Loan, 11 Cal.App.4th 109, 113-14 (1992).

27  The paramount concern is to preserve public trust in the scrupulous administration

28  of justice and the integrity of the bar, People ex rel. Dept. of Corps. v. SpeeDee Oil

1   Change Systems, Inc., 20 Cal.4th 1135, 1145(1999), and ultimately, the court "must

2   maintain ethical standards of professional responsibility."  Hitachi, 419 F.Supp. 2d

3   at 1161.

4

5          California courts apply a "substantial relationship" test to determine

6   whether a prior representation conflicts with a current representation adverse to a

7   former client:

8

9              In determining whether there is a substantial relationship

10             between the former representation and the current

11             representation, the Court looks to 'the practical

12             consequences of the attorney's representation of the former

13             client' and considers 'whether confidential information

14             material to the current dispute would normally have been

15             imparted to the attorney by virtue of the nature of the

16             former representation.'  In doing so, the Court focuses 'on

17             the similarities between the two factual situations, the

18             legal questions posed, and the nature and extent of the

19             attorney's involvement with the cases,' including 'the time

20             spent by the attorney on the earlier cases, the type of work

21             performed, and the attorney's possible exposure to

22             formulation of policy or strategy.'  I-Enterprise Co. LLC v.

23             Draper Fisher Jurvetson Mgmt. Co. V, LLC, 2005 U.S.

24             Dist. LEXIS 45190, 2005 WL 757389 *4 (N.D. Cal.

25             2005)(internal citations omitted).

26

27          As this Court explained in Hitachi, where an attorney violates Rule 3-

28   310(E) by "'successively represent[ing] clients with adverse interest, and where the

1   subjects of the two representations are substantially related, the need to protect the

2   first client's confidential information requires that the attorney be disqualified from

3   the second representation.'" Hitachi at 1161, citing SpeeDee Oil, 20 Cal. 4th at

4   1146; see also, Henriksen at 114 (holding that the court must conclusively presume

5   that the attorney learned confidential, material information during the course of the

6   prior representation if the two matters are substantially related).

7

8        Here, as described below, there is no question that the "substantial

9   relationship" test requires disqualification of Mr. Pynes and the Roxborough firm.

10

11       **2.    Rule 3-310(E) and the Substantial Relationship Test Require**

12       **Disqualification of Mr. Pynes.**

13

14       Under the substantial relationship test, Mr. Pynes has a conflict of

15  interest in representing Plaintiffs adverse to Liberty Mutual in this case, based on his

16  prior representation of the Liberty Mutual companies in Tony's Fine Foods.[2]  The

17  allegations made and legal theories advanced in Tony's Fine Foods and this case are

18  virtually identical.  In both cases, plaintiffs sued the Liberty Mutual companies for

19  breach of contract and breach of the implied covenant of good faith and fair dealing

20  based on the alleged mishandling of workers' compensation insurance programs and

21  claims . [Exh. A, ¶¶ 17-19, 35, 38; Plaintiffs' Complaint ¶¶ 16-17, 23].  While

22  involving different workers' compensation claim files, this case and Tony's Fine

23  Foods involve identical allegations, defenses and litigation strategies.  They raise

24

25  [2]   Perhaps recognizing the conflict of interest, Mr. Pynes has not made an
        appearance in this case as counsel for Plaintiffs.  However, in order to reach
26      the ultimate issue of whether the Roxborough firm should be disqualified
        from representing Plaintiffs, the Court must first determine whether Mr.
27      Pynes is disqualified based on his prior representation of the Liberty Mutual
        companies in substantially related matters.
28

1   virtually identical legal issues, the same causes of action or claims for relief, the

2   exchange and production of similar categories of claim file documents, similar

3   deposition topics, similar areas of expert opinion and testimony, and similar theories

4   of recovery.  Both cases focus on Liberty Mutual's (i) handling, investigation,

5   monitoring, reserving and defense of workers' compensation claims, (ii) internal

6   best practices, (iii) internal audits and claims reviews, and (iv) access to claims files.

7   In short, Plaintiffs' claims against Liberty Mutual are substantially related to the

8   claims that Mr. Pynes defended, on behalf of the Liberty Mutual companies, in

9   Tony's Fine Foods.  Thus, Mr. Pynes has a conflict of interest and is disqualified

10  from representing Plaintiffs in this case.

11

12          Under nearly identical circumstances, the District Court for the Eastern

13  District of Kentucky disqualified Mr. Pynes and the Roxborough firm from

14  representing a plaintiff adverse to Liberty Mutual in Republic v. Liberty Mutual.

15  There, the District Court correctly recognized that its first task was to "determine

16  whether or not Pynes' representation of the Liberty Companies was *substantially*

17  *related* to the issues before the court." [Exh. B, Order, p. 13 (emphasis added)].

18  The Court found that Republic and Tony's Fine Foods *were* substantially related for

19  exactly the same reasons that this case is substantially related to Tony's Fine Foods:

20  the cases involve claims alleging that the Liberty Mutual companies mishandled

21  workers' compensation claim files.  [Id., p. 14].  As the court noted, "[c]ertainly, the

22  same defenses, strategy and litigation tactics are implicated in both matters."  [Id.].

23  The Court should reach the same result here.

24

25          As in the Republic case, Mr. Pynes and the Roxborough firm may

26  argue that Mr. Pynes "does not recall" working on the Tony's Fine Foods, and that

27  the amount of work he did on that case was small.  That argument is misplaced.  A

28  substantial relationship does not depend upon the former attorney's recollection of

1  the work performed, and is not limited by the number of hours spent representing

2  the former client. <u>I-Enterprise</u>, 2005 WL 757389 *4 (entire firm automatically

3  disqualified based on conflict generated by an attorney who had worked with one

4  party previously, even though he only billed one-half hour to an on-going litigation

5  before he moved to the new firm); <u>Elan Transdermal Ltd. v. Cygnus Therapeutic</u>

6  <u>Systems</u>, 809 F. Supp. 1383, 1388-89 (N.D. Cal. 1992)(the fact that attorneys billed

7  only a short period of time did not preclude their work from being substantially

8  related to the present litigation); <u>see also</u>, <u>Rosenfeld Constr. Co. v. Superior Court</u>,

9  235 Cal.App.3d 566, 576 (1991)("We find no authority that supports the notion that,

10  standing alone, the present recollection of the members of the firm is an adequate

11  criterion."). Instead, California courts focus on the "nature" of the work performed

12  and "the attorney's possible exposure to formulation of policy or strategy.'" <u>Id</u>.

13

14          Here, as the District Court found in <u>Republic</u>, there is no question that

15  Mr. Pynes was exposed to Liberty Mutual's policies and strategies by virtue of the

16  very task he was asked to perform and did in fact complete in the <u>Tony's Fine Foods</u>

17  case – preparing a privilege log based on his review of workers' compensation claim

18  files and privileged and confidential information. [Hansen Decl. ¶ 7; Yee Decl. ¶ 5;

19  Exh. D, Pynes Depo., pp. 15:22-15:25; Exh. E, Hansen Depo., pp. 33:1-34:5]. The

20  <u>Republic</u> Court held that, although Mr. Pynes claimed that he "did not recall"

21  portions of his involvement as counsel for the Liberty Mutual companies in <u>Tony's</u>

22  <u>Fine Foods</u>, "***he undoubtedly acquired confidential information during his***

23  ***representation*** and/or during his representation of the Liberty Companies in other

24  related matters which could be used to Republic's advantage..." [Exh. B, Order at

25  p. 16 (emphasis added)]. The court found to be "disingenuous" Republic's claim

26  that Mr. Pynes did not have access to confidential material. [<u>Id</u>.]. The evidence

27  presented to the court clearly showed that "during his employment at Kern &

28  Wooley, including his representation of the Liberty Companies in the *Tony's Fine*

1    *Foods* case, Pynes prepared a privilege log, had access to Liberty Mutual's claims

2    manuals, and was privy to discussions about strategy for a number of matters

3    including but not limited to mediation and a number of document productions."

4    [Id., p. 15].  This Court should reach the same conclusion here.

5

6    **B.    California Law Mandates The Vicarious Disqualification Of The**

7           **Roxborough Firm.**

8

9                "The established rule in California is that where an attorney is

10   disqualified from representing a client because that attorney had previously

11   represented a party with adverse interests in a substantially related matter that

12   attorney's entire firm must be disqualified as well, regardless of efforts to erect an

13   ethical wall."  Hitachi, 419 F.Supp.2d at 1161; see also, Henriksen, 11 Cal.App. 4th

14   at 117 ("where an attorney is disqualified because he formerly represented and

15   therefore possesses confidential information regarding the adverse party in the

16   current litigation, vicarious disqualification of the entire firm is compelled as a

17   matter of law").  As a result, Mr. Pynes' disqualification is imputed to the

18   Roxborough firm, which is automatically disqualified from representing Plaintiffs in

19   this case.

20

21               Automatic disqualification is mandatory even though Mr. Pynes has not

22   appeared in this case, and whether or not the Roxborough firm claims to have

23   properly screened Mr. Pynes from this case by establishing an "ethical wall."  This

24   Court has previously held that "[t]he established law in California rejects ethical

25   walls."  Hitachi, 419 F. Supp. 2d at 1164.  Even if ethical walls were permissible,

26   disqualification is mandatory.  In Hitachi, this Court was particularly concerned

27   about the proximity of the disqualified attorney to the attorneys handling the patent

28   litigation and the small size of the firm's intellectual department.  Id. at 1165.  In

1  reaching the conclusion that even if ethical walls were permitted, it would still

2  disqualify the firm representing defendant, the Court noted that

3

4           [t]he small size of Greenberg's Silicon Valley intellectual

5           property department exacerbates the problem of proximity

6           and leads the Court to conclude that the ethical wall is

7           insufficient.  Because of the small number attorneys

8           practicing intellectual property in Greenberg's Silicon

9           Valley office, and the even smaller number of attorneys

10          practicing only intellectual property and intellectual

11          property litigation, Mr. Hong likely has substantial contact

12          with the Greenberg intellectual property attorneys

13          handling this case. Further, although Greenberg has

14          instituted a "closed door" policy when their attorneys are

15          discussing the Tatung matter, Greenberg has not otherwise

16          isolated Mr. Hong from the Tatung legal team. <u>Hitachi</u>, at

17          1165.

18

19          The Court should have the same concerns in this case.  The

20  Roxborough firm is a boutique firm with one main office in Woodland Hills,

21  California.[3]  [Exh. C].  All four partners, and at least seven of the nine associates,

22  practice in the area of insurance coverage/bad faith.[4]  [<u>Id.</u>].  Similar to the

23  _____

24  [3]    The Roxborough firm maintains an "office" in Westwood, Los Angeles.
       [Exh. D, Pynes Depo. pp. 45:13-46:10].  However, none of its attorneys work

25     exclusively out of that office.  Instead, it is a "Fijian type" office where the
       firm's attorneys can use the facilities when needed.  [<u>Id.</u>].

26  [4]    Because Mr. Phillips is not listed on the Roxborough firm's website, it is
       unclear if his area of practice is also Insurance coverage/bad faith.  Based on

27     his appearance in this case, it would be logical to conclude that Mr. Phillips
       practices in this area, but Liberty Mutual has not made that assumption for

28     purposes of this Motion.

1  intellectual department for the firm representing the defendant in <u>Hitachi</u>, which

2  only had fourteen members, the small size of the Roxborough firm exacerbates the

3  problem of Mr. Pynes' proximity to the other members of the firm and in particular

4  to those attorneys representing Plaintiffs in this matter.  Mr. Pynes' close proximity

5  to Messrs. Roxborough and Phillips increases the unease of Liberty Mutual that its

6  confidential information will be improperly disclosed, either intentionally or

7  inadvertently.  <u>Elan</u>, 809 F. Supp. at 1390 ("The presumption of shared confidences

8  is based on the common-sense notion that people who work in close quarters talk

9  with each other, and sometimes about their work.").  As a result, any attempts to

10  create or maintain an ethical wall would be insufficient and ineffective, and the

11  Roxborough firm must be disqualified from representing Plaintiffs in this matter.

12

13  **IV.**

14  <u>**CONCLUSION**</u>

15     For all of the foregoing reasons, Liberty Mutual respectfully requests

16  that the Court enter an order disqualifying Mr. Pynes and the Roxborough firm from

17  representing Plaintiffs adverse to Liberty Mutual in this matter.

18

19  Dated:  October 23, 2007

20      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

21

22      By  _____

23         FRANK FALZETTA

24       Attorneys for Defendant and Counterclaimant

24        LIBERTY MUTUAL FIRE

25        INSURANCE COMPANY

26

27

28

W02-WEST:1SCS1\400452809.3     -18-

1

<u>PROOF OF SERVICE</u>

2

<u>STATE OF CALIFORNIA, COUNTY OF LOS ANGELES</u>

3          I am employed in the County of Los Angeles; I am over the age of eighteen
years and not a party to the within entitled action; my business address is 333 South Hope
4   Street, 48th Floor, Los Angeles, California 90071-1448.

5          On **October 23, 2007**, I served the following document(s) described as
**DEFENDANT AND COUNTERCLAIMANT LIBERTY MUTUAL FIRE**
6   **INSURANCE COMPANY'S: (1) NOTICE OF MOTION AND MOTION TO**
**DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING**
7   **PLAINTIFFS; and (2) MEMORANDUM OF POINTS AND AUTHORITIES** on the
interested party(ies) in this action by placing true copies thereof enclosed in sealed
8   envelopes and/or packages addressed as follows:

9          Nicholas P. Roxborough, Esq.
Michael L. Phillips, Esq.
10          Roxborough, Pomerance & Nye LLP
5820 Canoga Ave., Suite 250
11          Woodland Hills, CA 91367

12   ☒   **BY MAIL:** I am "readily familiar" with the firm's practice of collection and
processing correspondence for mailing. Under that practice it would be deposited
13          with the U.S. postal service on that same day with postage thereon fully prepaid at
Los Angeles, California in the ordinary course of business. I am aware that on
14          motion of the party served, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for mailing in
15          affidavit.

16   ☐   **BY OVERNIGHT DELIVERY:** I served such envelope or package to be
delivered on the same day to an authorized courier or driver authorized by the
17          overnight service carrier to receive documents, in an envelope or package
designated by the overnight service carrier.

18

19   ☒   **FEDERAL:** I declare that I am employed in the office of a member of the bar of
this Court at whose direction the service was made. I declare under penalty of
20          perjury under the laws of the United States of America that the foregoing is true and
correct.

21          Executed on **October 23, 2007**, at Los Angeles, California.

22

23                                                    _Andrea J. Hernandez_

24                                                    ANDREA J. HERNANDEZ

25

26

27

28

W02-WEST:LH4\400453783.1