1 | Nicholas P. Roxborough, Esq. (Bar No. 113540)
Michael L. Phillips, Esq. (Bar No. 232978)
2 | ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Ave., Suite 250
3 | Woodland Hills, California 91367
Telephone:    (818) 992-9999
4 | Facsimile:    (818) 992-9991
E-Mail:    npr@rpnlaw.com
5 |          mlp@rpnlaw.com

6 | Attorneys for Plaintiffs/Counter-Defendants
LARGO CONCRETE, INC. and N.M.N. CONSTRUCTION, INC.
7 |

8 |

**UNITED STATES DISTRICT COURT**

9 |

**NORTHERN DISTRICT OF CALIFORNIA**

10 |

11 |

12 |

| 13 | LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation. | Case No.  C07-04651 CRB (ADR) *The Hon. Charles R. Breyer* |

14 |

15 | Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING PLAINTIFFS; DECLARATIONS OF NICHOLAS P. ROXBOROUGH, MICHAEL B. ADREANI, MICHAEL L. PHILLIPS, ETC., IN SUPPORT THEREOF**

16 |

17 | v.

18 |

19 | LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive.

20 | Date:    December 21, 2007
Time:    10:00 a.m.
Ctrm:    8

21 | Defendants.

22 | [Memorandum of Points and Authorities; Objections To Evidence Submitted In Support Of Liberty Mutual's Motion To Disqualify and Supporting Declarations Filed and Served Concurrently Herewith]

23 |

24 |

25 | AND RELATED COUNTERCLAIM | Complaint filed:    September 10, 2007

26 |

27 |

28 |

# TABLE OF CONTENTS

PAGE(S)

I.    LMF HAS YET TO WIN IN ANY CASE WHERE ROXBOROUGH,
POMERANCE & NYE HAS SUED LIBERTY FOR WORKERS
COMPENSATION BAD FAITH...................................................................1

II.    ARGUMENT........................................................................3

     A.    LMF Has Produced No Evidence That Craig Pynes Represented LMF In Any Matter
Legally or Factually Similar to Largo While Employed By Kern & Wooley..............3

     B.    Craig Pynes Did Not Obtain Any Information Confidential To LMF That Is Material
To This Matter........................................................................4

         1.    The Overall Scope Of Work Performed By Craig While Briefly
Employed At KW Involved Areas Of Law and Fact Completely
Different From This Matter............................................................5

         2.    Craig Did Not Have Access To, Or Obtain, Any Information
Confidential To LMF During The 3-4 Hours Of Work He Performed
On The *TFF* Matter..................................................................6

             a.    Where is the Privilege Log...................................................7

         3.    Craig Did Not Have Access To, Or Obtain Any Information
From TFF That Is Material To This Matter...........................................7

             a.    RP&N Had LMF's Workers' Compensation Best Practices
Document's Years Before Craig Worked at RP&N.......................8

         4.    Craig Did Not Have Any Communications With Any
Personnel At Any Liberty Entity Regarding LMF's Workers' Compensation
Operation.............................................................................8

         5.    LMF Has Failed To Produce The Best Evidence and Instead
Relies On Misleading and Hearsay Statements Of Two Former
Associates............................................................................9

             a.    Yee's Declaration Lacks Credibility......................................10

             b.    Material Portions of Hansen's Declaration Lack Foundation
Personal Knowledge and are Hearsay.......................................11

             c.    The Testimony of Yee, Hansen, And Olson Is Inconsistent
Regarding TFF.........................................................13

-i-

B.    On The Merits, Craig Pynes Should Not Be Disqualified From Representing
      Plaintiffs.................................................................................................13

      1.    LMF Relies On Inapplicable Law..............................................................13

      2.    The Facts In *I-Enterprise Co.* Are Not Present Here................................14

      3.    The Modified Substantial Relationship Test Should Be Applied ................15

      4.    Craig Pynes Is Not Subject To Disqualification Under The Modified
            Substantial Relationship Test....................................................................17

      5.    Craig Has Carried The Burden Of Proving That He Had No
            Exposure To Confidential Information Relevant To This Action...................18

      6.    Largo Has Supplied 29 Pages Of Detailed Testimony From Four Attorney's
            Compared To LMF's 6 Conclusionary Pages From Two Associates............19

C.    The Order Disqualifying RP&N In The Eastern District Of Kentucky Has No
      Precedential Effect In This Matter..............................................................20

      1.    State Law Governs Motions To Disqualify...............................................20

      2.    This Matter Directly Involves New And Different Facts............................20

D.    RP&N Should Not Be Disqualified From Representing Plaintiffs.........................21

      1.    RP&N Is Not Subject To Vicarious Disqualification................................21

            a.    No Individual Member of RPN Is Subject To
                  Disqualification.........................................................................21

            b.    Both State And Federal Courts In California Have Recognized
                  The Demise Of The Draconian Rule Mandating Automatic Vicarious
                  Disqualification.........................................................................21

            c.    RPN Has Erected An Appropriate Ethical Wall To Protect Any
                  Legitimate Interests LMF May Have............................................22

      2.    Largo Is Entitled To Counsel Of Their Choice........................................23

E.    LMF Is Seeking To Obtain An Unethical Advantage In This Matter......................24

III.    CONCLUSION.................................................................................................25

-ii-

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

<u>Authorities</u>

4  *Adams v. Aerojet-General Corp.*

5  (2001) 86 Cal.App.4th 1324……………………………………………………………...18

6  *Adolph Coors Co. v. American Insurance Co.*

7  (1993) 164 F.R.D. 507……………………………………………………………...1, 25

8  *Courtesy Ambulance Service of San Bernardino v. Superior Court*

9  (1992) 8 Cal.App.4th 1504……………………………………………………………...1

10 *Gregori v. Bank of America*

11 (1989) 207 Cal.App.3d 291……………………………………………………………...23

12 *Hetos Investments, Ltd. V. Kurtin*

13 (2003) 110 Cal.App.4th 36……………………………………………………………...23

14 *Hitachi, Ltd. v. Tatung Co.*

15 (N.D.Cal. 2006) 419 F.Supp.2d 1158…………………………………………...4, 20, 21, 22

16 *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt Co. V, LLC,*

17 2005 U.S. Dist. LEXIS 45190 (N.D. Cal. 2005)…………………………...3, 13, 14, 15

18 *In re County of Los Angeles*

19 223 F.3d 990, 995 (9th Cir. 2000)…………………………………………...20, 22, 23

20 *Int'l Union, United Automobile, Aerospace and Agric. Implement Workers of Am. (U.A.W.) v.*

21 *N.L.R.B.,*

22 (1972) 459 F.2d 1329, 1336 (1972)……………………………………………………...9

23 *Kimco v. Liberty Mutual Fire Insurance Company,*

24 USDC (CA-Central), Case No. 01-927; 4……………………………………………...7, 8, 10

25 *McGregor Yacht Corp. v. State Compensation Insurance Fund*

26 (1998) 63 Cal.App.4th 448……………………………………………………………...1

27

28

1  *Maxon Industries v. State Compensation Insurance Fund*

2      (1993) 16 Cal.App.4th 1387................................................................1

3  *Notrica v. State Compensation Insurance Fund*

4      (1999) 70 Cal.App.4th 911................................................................1

5  *Oaks Management Corp. v. Superior Court*

6      (2006) 145 Cal.App.4th  453...........................................................23

7  *Ochoa v. Fordel*

8      (2007) 146 Cal.App.4th 898.................................................3, 13, 15, 16, 17, 18, 19

9  *Omychund v Barker*

10     (1745) 1 Atk, 21, 49; 26 ER 15, 33......................................................9

11 *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.,*

12     (1999) 20 Cal. 4th 1135.................................................21, 22, 23, 24

13 *RemedyTemp v. Liberty Mutual Fire Insurance Company,*

14     USCC (CA-Central), Case No. 04-00385; 5.................7, 8, 10, 13, 20, 23, 24

15 *Security Officers Service, Inc. v. State Compensation Insurance Fund*

16     (1993) 17 Cal.App.4th 887.............................................................1

17 *Smith v. United States*

18     (E.D.Ark.2000) 128 F.Supp.2d 1227.....................................................9

19 *State Comp. Ins. Fund v. Superior Court (Schaefer Ambulance Service, Inc.)*

20     (2001) 24 Cal. 4th 930................................................................1

21 *Tony's Fine Foods v. Liberty Mutual Insurance Company*

22     *Alameda County Superior Court, case no. 2002067108*...............2, 3, 4, 5, 6, 7, 9, 10, 11, 12

23     ..........................................................................13, 14, 15, 17, 18, 20

24 *Tricor v. State Compensation Insurance Fund*

25     (1990) 220 Cal.App.3d 845..............................................................1

26

27

28

*Trone v. Smith*

    621 F.2d 994, 999 (9th Cir.1980)...................................................................................20

**Statutes**

31A C.J.S. Evidence § 167 (2007)...................................................................................9

Evidence Code §412.......................................................................................................9

Evidence Code §413.......................................................................................................9

Labor Code §3762...........................................................................................................7

Rule 3-310(E) of the California Rules of Professional Conduct.....................................3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY
ROXBOROUGH, POMERANCE & NYE- Case No. C07-04651 CRB (ADR)

1         Plaintiffs/Counter-Defendants, LARGO CONCRETE, INC. and N.M.N. CONSTRUCTION,

2    INC. ("Largo") hereby submit the following Points and Authorities in opposition to LIBERTY

3    MUTUAL FIRE INSURANCE COMPANY'S ("LMF") Motion to Disqualify Roxborough,

4    Pomerance, & Nye ("RP&N") from representing Largo.

## I.    LMF HAS YET TO WIN IN ANY CASE WHERE ROXBOROUGH, POMERANCE & NYE HAS SUED LIBERTY FOR WORKERS COMPENSATION BAD FAITH.

6         In 1993, the Honorable Judge Nottingham put it best, "if the name of the game is "hardball

7    litigation", Liberty Mutual qualifies as a major league team".[1]  LMF's motion to disqualify RP&N is

8    nothing more than "hardball tactics" aimed at preventing Largo from availing itself of highly qualified,

9    nationally respected counsel, skilled in successfully prosecuting workers' compensation bad faith

10   claims. ("WCBF") Mr. Roxborough specifically and RP&N generally began prosecuting these cases in

11   the late 1980s. and have represented plaintiffs in the seven leadings cases that establish the law under

12   which these types of cases are prosecuted.[2]  LMF and their current counsel, Sheppard, Mullin, Richter

13   & Hampton ("Sheppard Mullin") are well aware of this since they were on the losing side in each of

14   these landmark cases. Sheppard Mullin is further aware that RP&N represented various plaintiffs in

15   actions against various Liberty "entities", prior to Craig Pynes ("Craig") being hired by RP&N in 2004.

16   This includes a WCBF class action that settled for approximately $2 million in 2001.

17        LMF's motion is predicated on an unfounded presumption that Craig represented **the named**

18   **defendant** in this matter, Liberty Mutual **Fire** Insurance Company, ("LMF") while briefly employed

19   at Kern & Wooley ("KW").  Liberty has presented no evidence that Craig ever represented LMF in

20   any matter, let alone a WCBF matter.  The only evidence presented is misleading and conclusory

21   statements that Craig represented "the Liberty Mutual Companies" at KW.  As conceded by Lisa

22   Kralik Hansen ("Hansen"), there are various Liberty entities and while at KW, she did work for five

---

[1] *Adolph Coors Co. v. American Insurance Co.* (1993) 164 F.R.D. 507, 509.

[2] See *Tricor v. State Compensation Insurance Fund* (1990) 220 Cal.App.3d 845; *Courtesy Ambulance Service of San Bernardino v. Superior Court* (1992) 8 Cal.App.4th 1504; *Maxon Industries v. State Compensation Insurance Fund* (1993) 16 Cal.App.4th 1387; *Security Officers Service, Inc. v. State Compensation Insurance Fund* (1993) 17 Cal.App.4th 887; *McGregor Yacht Corp. v. State Compensation Insurance Fund* (1998) 63 Cal.App.4th 448; *Notrica v. State Compensation Insurance Fund* (1999) 70 Cal.App.4th 911. *State Comp. Ins. Fund v. Superior Court (Schaefer Ambulance Service, Inc.).* (2001) 24 Cal. 4th 930.

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY
ROXBOROUGH, POMERANCE & NYE- Case No. C07-04651 CRB (ADR)

1 | to ten of these different entities.[3]  LMF's motion rises and falls on a 3-4 hour paralegal task Craig

2 | performed on the *Tony's Fine Foods v. Liberty Mutual Insurance Company* ("*TFF*") matter.  In that

3 | matter, as specifically stated under penalty of perjury by the handling attorney, Susan Olson, <u>KW</u>

4 | <u>represented Liberty Insurance Corporation</u> and <u>Liberty Mutual Insurance Company</u>.  As brought to

5 | the Court's attention in that matter, these entities are <u>distinct and different</u> from Liberty Insurance

6 | Company, or the entity being sued in this action.[4]  Thus, there is <u>no evidence</u> that Craig ever

7 | represented the LMF defendant in TFF.  <u>For this reason alone, their motion must be denied.</u>

8 |     Not only does LMF fail to present even the most basic foundation for disqualification of

9 | RP&N, the evidence they do produce is vague and misleading.  <u>LMF failed to inform the Court</u> that

10 | the *TFF* matter was only a minor case, there was a litigation stay in place the entire time Craig was

11 | employed by KW, no formal discovery was being conducted, the matter never proceeded to

12 | mediation, arbitration, or trial and was ultimately dismissed by Plaintiff's counsel.  It was only

13 | through review of court documents and Olson's deposition that Largo learned these facts.

14 |     The arguments and "evidence" presented in LMF's motion must be viewed with distrust as

15 | LMF had within its power the ability to present better factual and documentary evidence <u>from LMF</u>.

16 | Instead, it produces a couple of conclusionary paragraphs from associates whose depositions reveal

17 | contradictory and speculative testimony. A careful review of LMF's "evidence" shows that LMF is

18 | relying on inapplicable law and inaccurate, vague, misleading and inadmissible evidence. First, LMF

19 | cleverly <u>misleads</u> the court regarding the extent of any access to information "confidential" to LMF

20 | that Craig "may" have had while at KW.  The evidence is that Craig did not have access to any

21 | information <u>confidential to LMF</u> that is material to this matter. And, to the extent LMF argues Craig

22 | had access to LMF's workers' compensation manual, RP&N was in possession of such "manuals"

23 | <u>long before</u> Craig could have seen them and before he joined the RP&N.  Second, LMF's motion is

24 |

25 |

26 | [3] Hansen Depo. taken on November 27, 2007 ("Hansen Depo. II") at 10:2-5; 11:6-13:2.
   | [4] In a declaration filed in support of a motion for stay, Olson testified that KW was "attorneys of record for defendant

27 | Liberty Insurance Corporation and Liberty Mutual Insurance Company (<u>erroneously sued and served</u> as Liberty Insurance
   | Company"). Rox. Decl. Ex. "H".

28 |

1  based primarily on a 2005 case that is <u>not</u> applicable to the unique <u>facts</u> presented in this matter.[5]

2  LMF ignores <u>the more recent case,</u> *Ochoa v. Fordel* (2007) 146 Cal.App.4th 898, ("Ochoa") which

3  addresses <u>the correct</u> test to be applied here.

4      Under the <u>Modified</u> Substantial Relationship Test, as explained in *Ochoa,* Craig is <u>not subject</u>

5  <u>to disqualification</u>. In addition, even if the court finds that Craig is subject to disqualification, RP&N

6  is not subject to vicarious disqualification because RP&N knew more about LMF and its workers'

7  compensation documents than Craig is <u>alleged</u> to have had  "potential access" to. Finally, an ethical

8  wall has been implemented that includes appropriate screening measures to adequately protect any

9  <u>legitimate</u> interests of LMF.

10  **II.    ARGUMENT**

11      **A.    LMF Has Produced No Evidence That Craig Pynes Represented LMF In Any**
             **Matter Legally or Factually Similar to *Largo* While Employed By Kern & Wooley.**

12      LMF has failed to produce the basic, foundational evidence necessary to support their motion.

13  In each of the cited cases in LMF's moving papers, the moving party met their initial burden of

14  establishing the preliminary fact, under Rule 3-310(E) of the California Rules of Professional Conduct,

15  that the attorney whose disqualification is sought is taking an adverse role in an action <u>against a former</u>

16  <u>client of that attorney</u>. Here, LMF has presented <u>no evidence</u> that Craig ever represented the named

17  defendant in this matter, LMF.  The only evidence presented is misleading and conclusory statements

18  that Craig represented "the Liberty Mutual Companies" while briefly employed at KW and that he

19  performed a specific assignment in the *TFF* matter. And, even if Craig did some work for LMF,

20  generally, what LMF doesn't tell the Court is <u>that the defendant in the *TFF* matter was not LMF, it was</u>

21  <u>a different party than in this matter!</u> 1) The Defendants' in TFF were Liberty Mutual Insurance

22  Company and Liberty Mutual Corporation.

23      As conceded by Hansen, there are many Liberty entities and while at KW, she did work for five

24  to ten of these different entities.[6]  This is consistent with Olson's testimony that she dealt with <u>more</u>

25

26

27  _____

[5] *I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt Co. V, LLC*, 2005 U.S. Dist. LEXIS 45190 (N.D. Cal. 2005).
[6] Hansen Depo. II at 10:2-5; 11:6-13:2.

28  -3-

than 100 different people at Liberty.[7]  LMF presents no evidence regarding which of these numerous
entities Craig represented.  As this Court is well aware, when an insurance company, like LMF,
receives a lawsuit that does not have the correct party named, they are the first to rush into court to
have the matter dismissed.  Nonetheless, LMF seeks to have RP&N disqualified based on a general
allegation that Craig's assignment on TFF was for LMF.

In addition, there were separate claim manuals at KW that applied to the 5 – 10 Liberty
entities.[8]  KW's representation of the Liberty Mutual Companies went back decades; as such there
were even different versions and revisions of these various claims manuals applicable to the various
entities over the period of years.  As Hansen put it "at KW there were many, many, many different
types of manuals for the various types of insurance programs that the various Liberty companies
offered in the marketplace".[9]  LMF argues that Craig had access to "confidential information" by way
of "access to" claim manuals, but fails to present any evidence to show whether any of these manuals
were LMF's.

LMF has presented no evidence that Craig obtained information confidential to LMF that is
relevant in this matter, or that he even had access to such information while at KW.  For this reason
alone, LMF's motion should be denied.

**B.    Craig Pynes Did Not Obtain Any Information Confidential To LMF That Is
Material To This Matter**

As this Court acknowledged, "Courts must examine these motions carefully to ensure that
literalism does not deny the parties substantial justice".[10]  It is important to look carefully at LMF's
contentions regarding Craig's alleged access to information material to this matter that is confidential
to LMF.  LMF contends that Craig had access to such information based on: 1) the overall scope of
work performed by him while briefly employed by KW; 2) the 3-4 hours of work he performed in the
*TFF* matter; 3) his alleged access to claims "manuals" applicable to unidentified Liberty entities; and,

---

[7] Olson Depo. at 62:12-16.
[8] Liberty Mutual Insurance Company, Liberty Mutual Fire Insurance Company, the Liberty Insurance Company, Employers Insurance of Wausau, Wausau Insurance Company, and a Prudential company.  Hansen Depo II at 13:25-14:10.
[9] Hansen Depo II at 14:11-25; 19:12-19.
[10] *Hitachi, Ltd. v. Tatung Co.* (N.D.Cal. 2006) 419 F.Supp.2d 1158, 1160.

-4-

4) his alleged communications with <u>unidentified</u> personnel within one of the <u>unidentified</u> Liberty entities. LMF's position rises and falls <u>solely</u> on declarations from two former associate attorneys who represented various Liberty entities, which are actually <u>contradicted by their deposition testimony</u>, as well as the deposition testimony of <u>Olson</u>, who was the lead attorney on *TFF*. LMF cannot point to one piece of alleged confidential information that Craig <u>may have had access to</u> that RP&N did not already possess <u>years prior to Craig's introduction to RP&N</u>.

        1.    **<u>The Overall Scope Of Work Performed By Craig While Briefly Employed At KW Involved Areas Of Law and Facts Completely Different From This Matter.</u>**

    <u>LMF conceded</u> that the area of law at issue in <u>this</u> matter, workers' compensation bad faith claims mishandling, is a "distinct" and "unique" area of law.[11]  Not only did this area of law comprise only a small percentage of the work performed overall at KW, TFF was the only such matter Craig performed <u>any</u> work on at KW.[12]  In addition, Yee admitted she only spent approximately 10-15% of her time on bad faith matters regarding <u>all</u> lines of insurance.[13]  Before her deposition, LMF attempted to <u>mislead the court</u> by presenting testimony from Hansen that Craig worked almost exclusively on "bad faith" matters for the Liberty Mutual "companies", performing various tasks at KW.  While this statement may be *technically* true, Hansen conveniently neglects to disclose that Craig's work involved matters that are <u>completely unrelated</u> to the present action.

    While at KW, Craig worked primarily on matters that involved issues under first-party commercial <u>general liability</u> and <u>property</u> policies issued by the various Liberty entities. He did not personally handle any workers' compensation bad faith claim handling actions. These cases were neither legally, nor factually, similar to this matter. LMF's misleading statements regarding the scope of work performed by Craig while at KW should be disregarded. The fact is, Craig did not have access to, or obtain any information material to workers' compensation bad faith cases that is confidential to LMF.

---

[11] Olson Depo. at 23:18-23; Roxborough ("Rox") Decl. at ¶3.
[12] Olson Depo at 17:17-18:6, 20:17-22; Pynes Decl. at ¶5.
[13] Yee Depo at 59:15-61:24.

2.    **Craig Did Not Have Access To, Or Obtain, Any Information Confidential To LMF During The 3-4 Hours Of Work He Performed On The *TFF* Matter.**

What information <u>confidential to LMF</u> did Craig obtain while reviewing three or four workers' compensation claim files?  The answer is Craig did not obtain <u>any</u> information confidential to <u>LMF</u>.  In order to avoid this conclusion, LMF avoids <u>any discussion</u> of the true nature of Craig's limited involvement in the *TFF* matter.

Craig's "assignment" in *TFF* matter was limited to a review of TFF's employee workers' compensation claim files. The sole purpose was to redact <u>personal</u> information of the <u>claimants</u>, such as their social security numbers and telephone numbers.  Craig spent less than four hours performing this <u>paralegal like task</u>.  He prepared a log of the <u>claimants' (not LMF's) personal information</u> that was redacted from the files and the claim files he reviewed <u>contained no information regarding LMF</u> and were individually titled "*applicant's name versus Tony's Fine Foods*".[14]

RP&N has more experience in prosecuting workers ' compensation bad faith claims mishandling matters against numerous insurance carriers, <u>including Liberty entities</u>, than any firm in California.  In a majority of these cases, RP&N requested, and received, through discovery the employee workers' compensation claims files from the carrier defendants.  The information contained in these files is limited to reports regarding <u>injured workers</u> and contain no information regarding strategies on how to defend the carriers in workers' compensation bad faith claims mishandling cases.  A workers' compensation claim file simply contains the adjustor's notes, the medical records concerning the nature and extent of injury, whether the file had been investigated or not, whether the insured was defended in the action, records regarding payments of medical bills, medical liens, etc.  Many of the records are indeed a matter of <u>public record</u> at the workers' compensation appeals board throughout California.[15]  These files do not contain any information regarding a law firm's, (KW), strategies for defending a carrier in these actions.[16]

///

---

[14] Pynes Decl. at ¶5.
[15] Rox. Decl. at ¶27-28.
[16] Rox. Decl. at ¶23.

a.    **Where is the Privilege Log?**

LMF cleverly omits any discussion of the actual contents of the privilege log, simply saying that it involved confidential information of the Liberty companies. As discussed below, the best evidence on this issue is the actual privilege log. Craig's declaration is clear: the privilege log contained a half page of the claimants' (not LMF's) personal information that was to be redacted.[17] Craig's testimony is consistent with the underlying purpose under Labor Code §3762[18] for creating such logs, as well as the substantial prior experience RP&N has in reviewing employee workers' compensation claims files that include such logs, *infra.*

In a matter currently being prosecuted by RP&N, *Remedy Temp v. Liberty Mutual Fire Insurance Co*, USCC ("*Remedy Temp*") RP&N requested and received from, LMF, the injured workers' compensation claim files. The contents were typical of what RP&N has seen over the last twenty years in workers' compensation claim files. Along with the files, KW sent RP&N a privilege log. As the court can readily see, there is no information that was redacted by KW concerning anything confidential to LMF.[19] KW simply redacted information that was either "personal" or "unrelated" medical information. This privilege log is also similar to what RP&N received in another matter prosecuted by RP&N against LMF, *Kimco v. Liberty Mutual Fire Insurance Co.*, USDC ("*Kimco*"), a case handled by KW years before Craig worked for RP&N.[20]

3.    **Craig Did Not Have Access To, Or Obtain Any Information From TFF That Is Material To This Matter.**

LMF feigns concern that Craig was "exposed" to their "claims manuals" relevant to workers' compensation claims cases. But, the uncontroverted testimony from Craig is clear: he never received any training in any Liberty entity's bad faith claim handling practices in the workers' compensation area while at KW; he never reviewed any of their claim manuals, practice and procedures, strategies

---

[17] Pynes Decl. at ¶5.

[18] Effective January 1, 1995, Labor Code Section §3762 was passed by the California Legislature. Over the last twelve years amendments have been made to this section, the primary focus being to ensure that the employer does not see any highly sensitive medical information of the injured worker. As a consequence, when requesting claim files, RP&N typically receives privilege logs from carriers or their counsel that identify information that has been withheld for purposes of privacy of the injured worker or unrelated medical information. Rox Decl. at ¶30.

[19] Rox. Decl. Ex. "C".

[20] Rox. Decl. at ¶28.

1  for handling litigation, claims operation, general claim file management and record keeping

2  documents, or <u>any documents related thereto on WCBF</u> while he was at KW.[21]

3      LMF fails to present <u>any evidence</u> regarding which claims manuals Craig may have been

4  exposed to were not confidential to Liberty.  RP&N <u>specializes</u> in the litigation of workers'

5  compensation bad faith lawsuits and one basic document RP&N always requests is the workers'

6  compensation claims manual.  As such, RP&N routinely, and at the outset of litigation or negotiation

7  on LMF cases, requested and received LMF's workers' compensation claims manual.[22]

8      However, contrary to the Yee and Hansen declarations, <u>LMF does not have a workers'</u>

9  <u>compensation claims "manual"</u>.  They have a "Best Practices Guideline". RP&N has known this fact

10  throughout the years, through multiple depositions of various LMF witnesses and through written

11  discovery involving *Kimco* and *Remedy Temp*.[23]

        a.    **RP&N Had LMF's Workers' Compensation Best Practices**
12                **Document's Years Before Craig Worked at RP&N.**

13      In <u>August, 2001</u>, RP&N filed the *Kimco* action and KW was, at some point in time, counsel of

14  record in that case.  In that matter, RP&N received a copy of one or more of <u>LMF's</u> Best Practices

15  Guidelines.  The Best Practices Guidelines received were very similar to standard Best Practices that

16  are out there <u>in the industry</u>. Best Practice Guidelines are pretty much common sense, bullet point

17  items that most workers' compensation claims adjustors use and which are even available as a <u>matter</u>

18  <u>of public record</u> on a website. Rox. Decl. at ¶8.  LMF's "Best Practices", are generally not confidential

19  to opposing counsel. And, as to RP&N, RP&N had the guidelines <u>prior</u> to Craig ever joining the firm.[24]

        4.    **Craig Did Not Have Any Communications With Any Personnel At Any**
20                **Liberty Entity Regarding LMF's Workers' Compensation Operation.**

21      Craig's testimony is uncontroverted:  he had no discussions with any personnel with any of the

22  Liberty entities regarding their workers' compensation operation, or WCBF strategies including

23

24  [21] Pynes Decl. at ¶¶12-13.
   [22] Adreani Decl. at ¶3, 7.
25  [23] In *Remedy Temp*, LMF represented to RP&N that it <u>does not use</u> a claims manual for its workers' compensation
   adjusters. Adreani Decl. at ¶ 8.
26  [24] It's undisputed that LMF provided such information in litigation which either: 1) pre-dated Craig's arrival at RP&N
   (*Kimco*); 2) was handled with no involvement whatsoever by Craig (*Remedy Temp*); 3) was provided by LMF's counsel to
27  RP&N with the full knowledge that Craig was working at RP&N (*Remedy Temp*); and/or 4) was provided to co-counsel
   prior to any involvement whatsoever by RP&N (*Republic*).

-8-

28

adjusters, case managers, underwriters, sales personnel, home office personnel, or any other personnel

while at KW. Pynes Decl. at ¶14.[25]

### 5. LMF Has Failed To Produce The Best Evidence and Instead Relies On Misleading and Hearsay Statements Of Two Former Associates.

The best evidence rule is a <u>common law rule of evidence</u> which can be traced back at least as

far as the <u>18th century</u>. In *Omychund v Barker* (1745) 1 Atk, 21, 49; 26 ER 15, 33, Lord Harwicke

stated that no evidence was admissible unless it was "the best that the nature of the case will allow".

When a party has relevant evidence <u>in their control</u> which they fail to produce, that failure gives rise to

an inference that <u>the evidence is unfavorable to that party</u>. The adverse inference rule is a "generally

accepted principle of law."[26]

LMF has flat out <u>refused</u> to produce the best evidence available. <u>First</u>, LMF alleges that Craig

had access to "claims manuals and related materials", but is intentionally vague. LMF offers no

evidence as to their contents or why the information contained therein should be considered

information <u>confidential to LMF that is material to this action</u>. The evidence is that LMF's "Best

Practices" is approximately six pages long, (not "volumes") and it would not have been difficult for

LMF to either 1) produce the document under seal for the court's review, or 2) provide a declaration

from a <u>LMF employee</u> regarding the contents of the material. LMF did neither. <u>In fact, this week,</u>

<u>RP&N requested permission to show these "manuals" to this court</u> but LMF refused, despite an offer to

do so under seal. Declaration of Michael Phillips at ¶2,3.

<u>Second</u>, LMF claims Craig had meetings and received supervision on *TFF* from Hansen. Craig

says this never occurred. The best evidence is LMF's billing records which would show when, how

much and what was allegedly done. Yet, the only evidence presented by LMF regarding the scope of

Craig's work on *TFF* are a couple of paragraphs and a reference to a "draft" privilege log. LMF failed

---

[25] In addition, it is highly unlikely Craig's supervisors would have permitted him to even have any such communications. Olson testified that <u>she dealt</u> with "probably more than 100" different people at Liberty. Olson Depo. at 62:12-17. Olson was Yee's supervisor at KW. Yee Depo. at 21:25-22:5. Yee testified that she only dealt with approximately 10-25 people from Liberty and they were adjustors. Yee Depo. at 20:16-21:6. Logically, it is unlikely Craig, on this single project for half a day, would have had the need, much less been given the opportunity to have any such contact.

[26] *Int'l Union, United Automobile, Aerospace and Agric. Implement Workers of Am. (U.A.W.) v. N.L.R.B.*, (1972) 459 F.2d 1329, 1336 (1972); 31A C.J.S. Evidence § 167 (2007); *Smith v. United States*, (E.D.Ark.2000) 128 F.Supp.2d 1227, 1232; California under *Evidence Code* §§ 412 and 413.

1    to produce or make any efforts to locate evidence that would establish or support the scope of Craig's

2    activity in the *TFF* matter, i.e.: 1) the "draft" privilege log drafted by Craig, 2) testimony from the

3    supervising attorney at KW on the *TFF* matter; or 3) the billing records from KW that show the time

4    spent by Craig, Hansen or Yee on this matter.

5      <u>LMF obviously has access to both the alleged "draft" privilege log</u> and KW's billing records.[27]

6    The privilege log is the best evidence to show whether Craig did any "confidential" work and the

7    <u>billing records</u> would prove how little time he spent on this single assignment, what he did and who he

8    met with on this assignment. Not only did LMF intentionally fail to produce this evidence, they failed

9    to even produce a declaration from the TFF supervising attorney at KW, <u>Olson</u>, or from Liberty Mutual

10    Insurance's billing department in order to best inform this court specifically about the *TFF* matter and

11    the nature and scope of work performed by Craig.

12                        **a.**    **<u>Yee's Declaration Lacks Credibility.</u>**

13      What "evidence" has LMF produced? The declarations of two associates from the KW firm

14    that were fired by LMF on the *Kimco* and *Remedy Temp* cases against RP&N. At her deposition, Yee

15    conceded that her declaration was drafted by counsel representing LMF in this matter and that she

16    made <u>no efforts</u> to look at the scope of work she actually performed on *TFF*.[28]

17      Yee's declaration states that she *represented* the "Liberty Mutual Companies" in the *TFF*

18    matter, however, at deposition she could not recall when she first worked on the case, the name of

19    Plaintiff's counsel, filing anything with the superior court, that an application for stay had been

20    requested by KW and granted <u>before</u> Craig even worked at KW, or why other attorneys at KW, were

21    listed on the pleadings and she and Hansen were not. Nonetheless, according to her declaration, she

22    recalls the details of her assignment to Craig in 2003/2004. Yee Depo at 70:1-74:21.

23      Equally shocking, is Yee's admission that the <u>first time</u> she saw the *TFF* complaint, a true and

24    correct copy of which she swore was attached to her declaration, was at her November 16, 2007

25

---

26    [27] Craig's practice has always been to prepare detailed billing entries. Pynes Decl. ¶6.

       [28] Yee was provided a draft copy of her declaration by Sheppard, Mullin, she discussed it with Hansen, viewed Hansen's

27    declaration, made a few minor, handwritten revisions, then returned an executed copy to Sheppard, Mullin. Yee Depo. at

       25:17-26:5; 31:16-22; 32:10-15.

-10-

28

1   deposition.  Yee has been a litigation attorney for 14 years; as such she has undoubtedly explained the

2   importance of executing a document under penalty of perjury to many of her clients.  Nonetheless, she

3   executed her declaration in this matter, under penalty of perjury, describing and verifying the

4   authenticity of an attachment <u>that she did not even see before or when she signed her declaration.</u>

5   <u>Contrary to her declaration, it was **not** attached at the time of execution.</u>[29]  At best, Yee's declaration is

6   in part, perjury, mostly inaccurate, entirely misleading and vague, and should be given little, if any

7   weight.

8                 **b.**    **<u>Material Portions of Hansen's Declaration Lack Foundation,</u>**
                              **<u>Personal Knowledge and are Hearsay.</u>**

9        In, <u>paragraphs four and five</u>, Hansen states that Craig worked almost exclusively on matters for

10  the "Liberty Mutual Companies", performing various tasks, during his brief tenure at KW. However,

11  she conveniently neglects to inform the court that this work involved matters that were <u>completely</u>

12  <u>unrelated</u> to WCBF litigation.[30]  Also, Hansen's statement that she and Craig *represented* the Liberty

13  Mutual Companies <u>in the *TFF* matter</u> is inaccurate and misleading.  LMF has produced no evidence

14  that she performed <u>any</u> work on the matter, her name does not appear on any of the pleadings, and

15  Craig's testimony is that he was not even aware Hansen was involved in the matter.[31]  Hansen

16  conceded during deposition that her "representation" in the *TFF* matter was based on the fact that she

17  was a member of the Liberty Mutual Companies practice group at KW, not that she actually performed

18  any specific work on the matter.[32]

19       <u>Paragraphs six and seven</u> of Hansen's declaration should be stricken in their entirety because

20  they are <u>based entirely on inadmissible hearsay</u> and were cleverly drafted by LMF's counsel to mislead

21  the court regarding the scope of work actually performed by Craig on the *TFF* matter.  It is undisputed

22  that Hansen was not a handling attorney on the *TFF* matter and was not in the room when the

23

24  [29] Yee Depo. at 33:21-23; 34:2-21; 35:10-13.

25  [30] Hansen has already conceded that: 1.) she has <u>no personal knowledge</u> that Craig ever looked at a Liberty workers'
    compensation claims manual; 2.) did not participate in any mediation on any workers' compensation bad faith claims

26  mishandling matters; and 3.) did not speak to any adjusters at Liberty regarding any workers' compensation matters.
    Hansen Depo. taken 8/15/06 ("Hansen I") at 39:21-25, 40:1-10; 44:2-11.

27  [31] Rox Decl. at ¶34; Pynes Decl. at ¶6.
    [32] Hansen Depo. II at 34:5-15.

                                                    -11-

28

1  assignment was given to Craig.  At the time Hansen executed her declaration in the *Republic* matter,

2  she had <u>no recollection</u> of the *TFF* matter. Yet, at some point between the time she executed her

3  declaration in that matter, August 1, 2006, and the time her deposition was taken on August 15, 2006,

4  her memory was "refreshed" regarding the *TFF* matter.  She further conceded that her description of

5  the assignment Craig performed is <u>based solely on what she was told by Craig and Yee</u>.[33]  At her

6  August 15, 2006 deposition, she admitted as to *TFF* and other KW workers' compensation bad faith

7  cases: "I don't recall <u>any</u> specific work I did on these other files."[34] (Emphasis added) Nonetheless, her

8  declaration in <u>this matter</u> contains two paragraphs regarding *TFF* <u>including the specifics</u> of the

9  assignment given to Craig.  How can she now declare, under penalty of perjury, that she has personal

10  knowledge regarding the specifics of a minor assignment someone else gave to Craig on a case she

11  does not recall and was not even handling?

12       Hansen further conceded, contrary to her misleading declaration, that the only "training" or

13  "supervision" she provided Craig on the *TFF* matter was during the course of an alleged 15 minute

14  conversation which Craig denies ever took place.  Hansen claims that Craig, a "colleague" and with

15  equivalent years of experience, came to her on *TFF*, even though she was not the handling attorney, to

16  ask about an assignment he had been given by Yee.  Hansen's only recollection regarding what was

17  discussed <u>is really no recollection at all</u> when she says in <u>paragraph</u> 7 that she spoke with Craig about

18  the "document review, privilege review, <u>or</u> preparation of the privilege log".  When questioned about

19  this discussion at her deposition, she had no specific recollection of what was discussed.[35]

20       Hansen is willing to do whatever it takes to regain her position in the ranks of Liberty attorneys.

21  Until this year, <u>Hansen's 17 year career has been based primarily on representing the Liberty Mutual</u>

22  <u>Companies</u>. She has not, however, been retained by them in the last 11 months, but she has remained in

23  contact with key executives and if given the chance, would "consider" the opportunity to regain their

24  business. Hansen Depo. II at 72:2-9. Hansen has demonstrated extreme <u>bias</u> and the material portions

25

---

26  [33] Hansen Depo. II at 77:14-78:3; 102:25-103:3.
    [34] Hansen Depo I at 74:14-75:15.
27  [35] Pynes Decl. ¶7; Hansen Depo. II at 24:4-8; 35:6-36:10.

-12-

28

1  contained within her manufactured declaration should be stricken or given little, if any weight.[36]

2          **c.**      **The Testimony of Yee, Hansen, And Olson Is Inconsistent Regarding TFF.**

3        LMF failed to provide a declaration from the partner and lead attorney on the *TFF* matter,

4  Olson; but Largo subpoenaed and deposed her. She testified that the scope of the assignment to Craig

5  on *TFF* was limited to a secondary review of four or five claim files, following the initial review by

6  Yee, and to prepare the privilege log. She also testified that she had never seen any information

7  regarding strategies on defending workers' compensation bad faith cases within a workers'

8  compensation claim file. This is consistent with Craig's testimony as well as the testimony from

9  Roxborough regarding the contents of the thousands of claim files he has reviewed.[37]

10        Why was the best evidence not produced by LMF? Perhaps because it clearly shows that Craig

11  did not obtain any information confidential to LMF that is material to this matter by way of alleged

12  access to LMF's "Best Practices" and because Craig spent less than four hours reviewing workers'

13  compensation claim files for employees of Tony's Fine Foods and created a meaningless one-half page

14  log concerning only the employee's personal identification information. Largo has produced the

15  privilege log from KW in *Remedy Temp*. Roxborough Decl. Ex "C". Had Liberty done the same of

16  *TFF*, it would also have shown that nothing confidential to LMF was ever seen or redacted by Craig.[38]

17      **B.**    **On The Merits, Craig Pynes Should Not Be Disqualified From Representing Plaintiffs.**

18          **1.**    **LMF Relies On Inapplicable Law.**

19        LMF's brief fails to even mention the more recent California case addressing attorney

20  disqualification. Instead, they rely heavily on the *I-Enterprise* case, wherein the court applied the

21  substantial relationship.[39] The substantial relationship test is not applicable here. Rather, as recently

22

23  [36] See evidentiary objections filed concurrently as to the Hansen and Yee declarations.
   [37] Olson Depo. at 69:22-70:13; 32:7-8.

24  [38] LMF should not be permitted to cleverly omit the best evidence in this matter, and to the extent they attempt to do so through their Reply brief, **Largo reserves the right to perform any discovery necessary to address such "new" evidence.**

25  [39] In *I-Enterprise Co.*, the firm-switching attorney billed more than 200 hours of work on different cases involving

26  defendants, including one-half hour of work in the underlying matter, at his prior firm. This included evaluating the status of various promissory notes and addressing general corporate matters, exchanging substantial correspondence and

27  communications with key representatives, including the CFO. The underlying action involved specific claims regarding defendants' issuance of promissory notes

-13-

28

(2007) explained in the *Ochoa* case, the "modified" substantial relationship test applies in this matter because there is no proof, even accepting the evidence submitted by LMF as true, that Craig actually obtained any information "confidential" to LMF regarding workers' compensation bad faith litigation.

In *I-Enterprise Co.* the Court found that although the firm switching-attorney billed only one-half hour of time with respect to the underlying litigation, he spent many hours on matters for defendant that were also at issue in the underlying litigation. *I-Enterprise Co.* at 4. Furthermore, he regularly communicated with defendant's Chief Financial Officer. The court also noted that the firm-switching attorney did not dispute defendants' characterization of the work he performed for them. *Id.* at 6. The court held that there was a substantial relationship between the current and former representation, and that a conclusive presumption was triggered that the attorney possesses confidences that could prejudice the former client in the present matter. *Id.* at 6-7.

### 2.    The Facts In I-Enterprise Co. Are Not Present Here.

The facts in this matter are highly distinguishable from those in *I-Enterprise Co.* Here, there is no evidence that Craig actually obtained confidential information from anyone at LMF concerning WCBF litigation. By LMF's own acknowledgement, Craig may have had "access" to confidential claims handling materials; however, LMF offers no evidence suggesting that he ever actually obtained any information confidential to LMF. At best, LMF offers its speculation that he may have been exposed to such confidential information during his brief tenure as KW.

Furthermore, unlike the firm-switching attorney in *I-Enterprise Co.*, Craig worked for only eight months at the KW law firm and primarily on matters that involved coverage determinations under first-party commercial general liability policies and property policies. He did not personally handle any WCBF claim handling actions for Liberty or any other client. Craig's limited connection with a workers' compensation bad faith case while at KW was on the *TFF* matter, during which he did not have access to, or obtain, any information confidential to LMF.

In *I-Enterprise Co.,* the firm-switching attorney worked over 200 hours on insurance matters involving promissory notes and did some work on the underlying matter. Here, there is no evidence that Craig did anything more than 3 to 4 hours of work, reviewing 3 to 4 workers' compensation claim

-14-

1  files of injured workers and he never did any work on the <u>underlying matter</u> (Largo). He was never

2  involved in any litigation, mediations or any analysis whatsoever concerning the merits of the *TFF*

3  case. He had no correspondence, much less "substantial correspondence" in *TFF*; and he had no

4  communications with any representatives of LMF, <u>much less "the CFO" of LMF</u>. Plain and simple,

5  the facts in *I-Enterprise Co.,* are not present here. Redacting workers' compensation claim files for

6  privacy reasons bears no similarities to what the firm-switching attorney did in *I-Enterprise Co.*

7  **3.    <u>The Modified Substantial Relationship Test Should Be Applied.</u>**

8  *Ochoa v. Fordel* is a 2007 California case that holds that a <u>modified substantial relationship</u>

9  <u>test</u> applies when (1) there is <u>no proof</u> that the firm-switching attorney <u>actually obtained confidential</u>

10  <u>information</u> during the course of the prior attorney-client relationship; (2) there is a successive

11  representation of clients with adverse interests; and (3) a firm-switching attorney whose prior

12  attorney-client relationship with the moving party was peripheral or attenuated.[40]

13      In *Ochoa*, Defendants moved to disqualify the law firm representing plaintiffs ("Smith")

14  because (like here) that firm hired an attorney who previously worked at the law firm that represented

15  the Defendants ("JP"). *Ochoa* at 901.[41] There, the <u>best evidence</u> rule was followed. <u>Billing records</u>

16  <u>were produced</u> and Defendants produced declarations that stated associates at the firm <u>would</u>

17  <u>regularly discuss issues and strategies with Bryant</u> and on <u>two</u> occasions he had such discussions

18  about the underlying matter. Furthermore, evidence of an <u>audit</u> revealed that Bryant gained computer

19  access to <u>six documents created in connection with the underlying litigation</u>.[42] Finally, Defendant's

20  declarations stated that attorneys and paralegals at JP would attend regular Monday luncheon

21  meetings at which cases and strategies were discussed. <u>Bryant's declaration contradicted the</u>

22

23  [40] *Ochoa v. Fordel* (2007) 146 Cal.App.4th 898, 908.

24  [41] Defendants retained JP to defend them in January 2004. Bryant was an associate of JP at that time and from January 1 through May 11, 2005, was a shareholder. In April 2005, he informed JP that he would resign his employment and shareholder status effective May 11, 2005, and would become associated with Smith. *Ochoa.* at 902.

25  [42] The documents were (1) a declaration in support of a motion to compel, (2) a memorandum of points and authorities in

26  support of a motion to compel, (3) a draft proposed order regarding a motion to compel, (4) a notice of motion and motion to strike the complaint, (5) a request for production of documents, and (6) correspondence from JP to the California Department of Fair Employment and Housing (DFEH) regarding complaints filed by plaintiffs with the DFEH. *Ochoa* at

27  902-903.

-15-

28

1   statements in Defendant's declarations regarding discussions about plaintiffs' cases and states that the

2   documents viewed did not contain any confidential material. *Id.*

3          Despite receiving detailed, hard evidence from the moving party, the court in *Ochoa* still

4   concluded that the modified substantial relationship test applied because the case involves (1) no

5   proof that the firm-switching attorney actually obtained confidential information during the course of

6   the prior attorney-client relationship; (2) the successive representation of clients with adverse

7   interests; and (3) a firm-switching attorney whose prior attorney-client relationship with the moving

8   party was peripheral or attenuated. *Ochoa* at 907-908.  The court went on to apply the modified

9   substantial relationship test, and after full consideration of all the evidence submitted, found that

10  plaintiff had conclusively proven that confidential information material to the present representation

11  was not imparted to him, nor was he exposed to any such information during his tenure at JP.  As a

12  result, the superior court denied the motion to disqualify plaintiffs' counsel. *Id.* at 909.

13         The modified substantial relationship test applies here because 1) there is no proof, even

14  accepting the evidence submitted by LMF as true, that Craig actually obtained any information

15  confidential to any Liberty entity material to WCBF litigation and 2) his prior attorney-client

16  relationship with any Liberty entity was peripheral and attenuated from the unique area of WCBF

17  litigation.  LMF's arguments are based on the allegation that Craig had access to such information.

18  As explained above, mere access to confidential information does not always create a substantial

19  relationship that mandates disqualification. *Ochoa* at 911-912.

20         Although disputed, even assuming that LMF's allegations are true, they are insufficient to

21  create a substantial relationship that mandates disqualification.  LMF's proffered "evidence" is far

22  less than that presented in *Ochoa*, which was found to still be insufficient to mandate disqualification.

23  In *Ochoa*, the firm-switching attorney, while an employee of the first firm, actually viewed attorney

24  work product prepared on behalf of his former client and then proceeded to begin work for the new

25  firm that represented the adverse party in that matter.  Here, Largo was filed three and a half years

26  after Craig left KW.  As such, it is not even possible he viewed, or even had access to view, any

27

28
                                              -16-

1  materials prepared on behalf of LMF in this matter, much less generally workers' compensation bad
2  faith litigation cases.

3      Any attorney-client relationships Craig had with any Liberty entities were "peripheral and
4  attenuated" from the issues presented in Largo. As discussed earlier, it is important to distinguish the
5  type of cases handled by Craig while at KW from the present matter. Workers' compensation bad
6  faith claim handling actions are a unique area of law and the facts and information analyzed are
7  unique. Any information Craig may have been exposed to at KW is completely peripheral and
8  irrelevant to this WCBF action.[43]

9      **4.**     **Craig Is Not Subject To Disqualification Under The Modified Substantial Relationship Test.**

10      LMF's motion is based on the allegation that Craig had access to information that was
11  confidential to LMF while briefly employed at KW. Whether described as *access* to confidential
12  information or as the *opportunity to acquire* confidential information, under the Modified Substantial
13  Relationship Test, that factor alone is not a sufficient basis for finding or conclusively presuming that
14  confidential information material to the current representation would have been imparted to Craig.
15  Mere access to confidential information does not always create a substantial relationship that
16  mandates disqualification. *Ochoa* at 911, 912.

17      RP&N had "access" to the LMF's Best Practice Guidelines, and even had possession of them
18  before Craig even worked at KW. And, in terms of workers' compensation claim files for *TFF*,
19  RP&N had reviewed workers compensation claim files of LMF years before Craig ever saw what one
20  looked like at KW from a different Liberty entity. LMF has offered no admissible evidence that
21  either the workers' compensation claim files or the Best Practice Manual constitute "confidential
22  information" to LMF. Indeed, Hansen admitted that these documents are produced regularly to
23  opposing counsel under a Protective Order. Thus, anyone suing LMF will get these documents, they
24  only need to sign the Protective Order. Hansen Decl. II at 18:10-14.

25
26  [43] LMF seems to acknowledge this fact, and in an attempt to misdirect the court, draws attention to Craig's redaction of three to four workers' compensation claim files, the *TFF* matter. As discussed in detail, Craig never had access to, or obtained, any information confidential to LMF while performing a minimal assignment in that matter.
27

28

-17-

1       Unlike the Substantial Relationship Test, under *Ochoa*, <u>a presumption</u> that the attorney

2  obtained confidential information applies <u>only where the moving party</u> makes "an adequate showing

3  that the attorney was in a position vis-à-vis the client to likely have acquired confidential information

4  <u>material to the current representation</u>." The inquiry is "whether the attorney was reasonably likely to

5  have obtained such confidential information." Here, the court focuses less on the meaning of the

6  words "substantial" and "relationship" and looks instead at the practical consequences of the former

7  representation.[44] In doing so, three factors are considered: (1) factual similarities between the two

8  representations, (2) similarities in legal issues, and (3) the nature and extent of the attorney's

9  involvement with the case and whether he was in a position to learn of the client's policy or strategy.[45]

10       The presumption does not apply here. In *Ochoa*, the court found that the first two factors had

11  been met because the <u>underlying litigation was pending</u> between the parties during the firm-switching

12  attorney's association with both firms. *Ochoa* at 908. Unlike *Ochoa*, the underlying matter here was

13  not filed until September 10, 2007, <u>three and a half years after</u> Craig left KW. Therefore, litigation

14  was not pending during Craig's brief tenure at KW. As discussed above, the factual and legal

15  similarities between this matter and those in which Craig represented the Liberty Mutual Companies

16  while at KW are almost non-existent. The nature and extent of Craig's involvement in *TFF* was

17  minimal and he was never in a position to learn of <u>LMF's</u> policies or strategies.[46] Unlike the firm-

18  switching attorney in *Ochoa*, the <u>uncontroverted evidence</u> is that Craig never prepared or viewed any

19  pleadings, discovery, emails, or other correspondence in *TFF;* the defendant was <u>not</u> LMF;  LMF

20  can't even find the alleged "draft" privilege log and Craig never saw or knew where the *TFF* file was

21  stored.[47] Plain and simple, LMF has not presented <u>any</u> evidence required under *Ochoa* that could

22  possibly be grounds to subject Craig to disqualification in this matter.

        **5.**    <u>**Craig Has Carried The Burden Of Proving That He Had No Exposure To**</u>
23              <u>**Confidential Information Relevant To This Action.**</u>

24       Even if the court were to determine that a substantial relationship exists, the <u>burden shifts</u> and

25

26  [44] *Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1332.
    [45] *Ochoa* at 908, *Adams* at 1332.

27  [46] As discussed above, LMF was not even a party in the *TFF* matter.
    [47] Pynes Decl. at ¶12.

28  MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY
    ROXBOROUGH, POMERANCE & NYE- Case No. C07-04651 CRB (ADR)

1  there must be an analysis to determine whether Craig has carried the burden of proving that he had <u>no</u>

2  <u>exposure to confidential information relevant to the current action</u>. That burden requires an

3  affirmative showing, witnesses must necessarily rely on their memories, and it falls <u>within</u> the

4  <u>province of the trial court</u> to resolve whether the <u>recollections</u> of a targeted attorney are reliable

5  enough to carry the burden of proof. *Ochoa* at 908, 909. Certainly, the depositions of Hansen and

6  Yee firmly establish the unreliability of their recollections.[48]

7      In *Ochoa*, the party seeking disqualification presented evidence that the firm-switching

8  attorney discussed issues and strategies regarding the underlying case while at the former firm, that he

9  had access to all computerized records maintained by the firm, and that he actually viewed six

10 documents created in connection with the underlying litigation. (<u>No such evidence</u> is ever presented

11 here by LMF.) Nonetheless, the court found, based on the firm-switching attorney's declaration, that

12 he had <u>met his burden</u> of proving that he had no exposure to confidential information <u>relevant to the</u>

13 <u>current action</u> while he was a member of the former firm because his declaration effectively

14 contradicted the evidence presented by the moving party. *Id.*

15      **6.    <u>Largo Has Supplied 29 Pages Of Detailed Testimony from Four Attorney's Compared To LMF's 6 Conclusionary Pages From Two Associates.</u>**

16      Largo has responded with detailed evidence concerning LMF's motion.

17      Craig's declaration alone clearly establishes that he had no exposure to, or obtained,

18 confidential information relevant to the current action. By LMF's own acknowledgement, Craig may

19 have had access to a Best Practice Guidelines, but LMF offers <u>no evidence</u> suggesting that he ever

20 <u>actually obtained</u> any information that is confidential to LMF [49]. The information contained within

21 Craig's declaration is reliable and much more specific to rebut any presumption that Craig obtained

22 information confidential to LMF relevant to the current action while an employee at KW. His

23 testimony is also supported by the detailed testimony of Mr. Roxborough and Mr. Adreani.

24 _____

25 [48] Hansen admitted she did not remember any meeting with Craig <u>when she signed her first declaration on August 1, 2006, in the Kentucky case</u>. Her only memory was refreshed by <u>other Liberty attorneys discussing the case with her</u>. Similarly, Yee's recollection was highly suspect and contradictory. All three attorney's, Olson, Hansen and Yee had <u>different</u>

26 versions of what was, or may have been, discussed, who gave Craig the assignment, what was on the privilege log, etc.
   [49] Claim manuals and workers' compensation claim files are produced by LMF all the time to opposing counsel under a

27 Protective Order. Hansen Depo. II 18:10-14.

-19-

28

**C.    The Order Disqualifying RP&N In The Eastern District Of Kentucky Has No Precedential Effect In This Matter.**

**1.    State Law Governs Motions To Disqualify.**

LMF relies heavily on the fact that out of state counsel, Craig and RP&N, were previously disqualified by the Eastern District of Kentucky in the *Republic Services* case. This is irrelevant and an attempt by LMF to improperly mislead this Court. As Liberty acknowledges, <u>state law governs</u> motions to disqualify counsel. In addition, ultimately, the decision to disqualify counsel for conflict of interest is within the <u>trial court's discretion</u>.[50]

The court in Kentucky was faced with different facts and applied <u>different law</u> in reaching their conclusion. Indeed the Kentucky court in their Order noted the rules and laws that apply to attorney disqualification in Kentucky are different than those in California. Any findings of fact or law by that court are irrelevant in determining whether or not Craig and RP&N should be disqualified from representing Largo in this matter.

**2.    This Matter Directly Involves New And Different Facts.**

The evidence presented here is substantially different than in the *Republic* matter. In the *Republic* matter, Liberty alleged that <u>two attorneys</u> at RP&N, Karen Gichtin and Craig, had previously represented Liberty Mutual Companies. In addition, Defendants alleged that while at KW, Ms. Gichtin was heavily involved in representing LMF in the *Remedy Temp.* matter. Hansen gave one and a half pages of <u>specific testimony</u> in her declaration concerning Karen Gichtin. <u>Such specificity as to Craig does not exist</u> here in Largo. Ms. Gichtin is no longer employed with RP&N, and was not an employee with RP&N when Largo was initiated. Rox. Decl. ¶21. At no time during Craig's employment with KW or RP&N has Craig worked on the *Remedy Temp* case, had <u>any</u> conversations with anyone regarding this case, or seen any documents or materials regarding this case. And, despite *Remedy Temp* being set to go to arbitration in January, 2008, LMF has <u>never</u> uttered a word about disqualifying Craig or RP&N.

Here, LMF's motion relies on Craig's assignment <u>in *TFF*</u>, something <u>not mentioned</u> in Hansen's Kentucky declaration. Now, LMF presents misleading declarations of Hansen <u>and</u> Yee, that

---

[50] *Hitachi, Ltd. v. Tatung Co.* 419 F.Supp.2d 1158, 1160 (N.D.Cal. 2006), *In re County of Los Angeles,* 223 F.3d 990, 995 (9th Cir. 2000).; *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir.1980).

1  is contradicted by the far stronger evidence presented by Largo in this matter, as well as the

2  deposition testimony of Olson and Yee, *infra*. Another important factual distinction is the nature and

3  extent of RP&N's involvement in the litigation.[51]  The Kentucky court acknowledged that their ruling

4  represented a "harsh result", but that the result was "mitigated" because the court took into

5  consideration the fact that Republic was also represented by local counsel.[52]

6        Here, Largo is solely represented by RP&N. Unlike in *Republic*, there is not another firm that

7  is familiar with the case waiting in the wings to represent Largo. If RP&N is disqualified, the result

8  would be "harsh"- Largo would be left without counsel to prosecute their cause of action in a complex

9  and unique area of law, created by RP&N.[53]  Finally, unlike the *Republic* matter, here, Craig has not,

10  and will not, perform any work or have any involvement in this matter.

   **D.    RP&N Should Not Be Disqualified From Representing Plaintiffs**
11  **        1.    RP&N Is Not Subject To Vicarious Disqualification**

12  **                a.    No Individual Member of RPN Is Subject To Disqualification**

13        RP&N should not be disqualified because no individual member of the firm is subject to

14  disqualification. The court should only reach the issue of vicarious disqualification when a finding has

15  been made that an individual member of a firm is subject to disqualification. LMF's argument that

16  RPN should be disqualified fails because Craig has not obtained any information confidential to LMF

17  that is material to this matter or was not previously known by RP&N.

18  **                b.    Both State And Federal Courts In California Have Recognized The
                         Demise Of The Draconian Rule Mandating Automatic Vicarious**
19  **                         Disqualification.**

20        Even if the Court finds that Craig is subject to disqualification, RP&N is not subject to

21  vicarious disqualification. As this Court acknowledged in *Hitachi*, there is a shift taking place in

22  California towards acknowledging the implementation of ethical walls. *Hitachi* at 1164. The most

23  prominent case demonstrating this trend is *People ex rel. Dept. of Corporations v. SpeeDee Oil*

---

24  [51] Local Kentucky counsel failed to utilize a lot of the arguments and evidence originally offered or suggested to be offered
     by RP&N in opposing Liberty's motion to disqualify. Rox. decl.,¶18.
25  [52] The final sentence of the court's order in that matter was "To some extent, this harsh result is mitigated by the fact that
     Republic may continue to be represented by its local counsel, who have been actively involved in this litigation since its
26  inception in 2003, while the Roxborough Firm has only been admitted *pro hac vice* in this action since May, 2006."
     [53] In fact, whenever RP&N has represented a former insured-employer against a Liberty entity, all cases have settled,
27  including the class action for over $2 million.

28

1  *Change Systems, Inc.*, (1999) 20 Cal. 4th 1135, 1139.[54]  In that case, as this Court acknowledged in

2  *Hitachi*, the Court left open the possibility that effective screening procedures can rebut the

3  presumption of shared confidences within a firm.

4       In addition, the Court in *In re County of Los Angeles* held that proper ethical screening

5  procedures can rebut a presumption of shared confidential information.[55]  This case represents a

6  categorical repudiation by the Ninth Circuit of the rule of automatic vicarious disqualification.[56] After

7  finding that the attorney received confidential information, the Ninth Circuit turned to the question of

8  whether the attorney's disqualification would be imputed to his entire firm and noted that the Ninth

9  Circuit "has not yet decided whether a law firm can rebut the presumption of shared confidences by

10 taking prophylactic measures, such as building an ethical wall, to prevent the passing of information

11 from the tainted lawyer to other members of the firm." *Id.* at 995.  The Court stated that it is important

12 to consider <u>whether the proposed</u> remedy, disqualification of the entire firm, <u>is appropriate</u> given the

13 real concerns presented in this matter.  *Id.* at 996-997.  Recognizing <u>the realities</u> of the legal profession,

14 and the harm to attorneys, law firms, and clients that results from the former hard-line rule imposing an

15 irrebuttable presumption of shared confidences, the Ninth Circuit held that the ethical screening

16 procedures used to prevent the disclosure of confidential information were sufficient to defeat any

17 presumption that the tainted attorney shared confidential information with his firm. *Id.* at 996-97.

18  **c.    RPN Has Erected An Appropriate Ethical Wall To Protect Any
         Legitimate Interests LMF May Have**

19       If ever the circumstances existed such that an appropriate ethical wall could be erected, it is

20 here.  As discussed above, LMF has <u>no legitimate confidential interests</u> to be protected.  Any alleged

21 "confidential" information Craig allegedly had access to, or obtained, at KW, was <u>already in the</u>

---

22
23 [54] The California Supreme Court held that a firm was disqualified where an attorney who was of counsel to the firm
   represented one party in litigation, while the firm for which he was of counsel represented an adverse party in the same
24 litigation. There, the <u>firm had not set up any ethical walls</u>. The Court suggested that an ethical wall might have helped rebut
   the presumption of shared confidences, stating that "the declarations the Shapiro firm submitted fail to demonstrate that any
   formal screening procedure prevented attorneys working on respondents' behalf from being exposed to Mobil's
25 confidences". *SpeeDee Oil* at 1152.
   [55] *In re County of Los Angeles* 223 F.3d at 995-996 (9th Cir.2000).
26 [56] The Ninth Circuit considered whether plaintiff's law firm was vicariously disqualified because one of the firm's partners,
   a former judge, had previously presided over another police brutality case, involving a different plaintiff, against the County
27 of Los Angeles. *Id.* at 992.

-22-

28

1  possession of RP&N.  The only cases RP&N has prosecuted against them have been WCBF claims

2  mishandling cases.  RP&N does not handle matters against LMF based on any other line of insurance.

3  Rox. Decl. ¶22.

4      Nonetheless, upon receiving the Kentucky court's ruling in the *Republic* matter, RP&N

5  immediately constructed a specific ethical wall within the firm to isolate Pynes from any cases that

6  did involve, or potentially could involve, LMF.[57]  Since receiving the Kentucky Court's Order, the

7  only case RPN has litigated against LMF is *Remedy Temp* and this matter.  Remedy Temp has been

8  handled exclusively by partners Nicholas Roxborough and Michael Adreani, with the assistance of

9  associate Michael Phillips.  Prior to performing any work on Remedy Temp, Mr. Phillips was

10 informed that Craig was to have no involvement or access to any matter that involved Liberty.  Rox.

11 Decl. at ¶22.  As the court found in *In re County of Los Angeles*, the ethical wall create by RP&N

12 includes appropriate screening measures to adequately protect any alleged <u>legitimate</u> interests of

13 LMF.

## 2.    <u>Largo Is Entitled To Counsel Of Their Choice.</u>

14     The right of a party to be represented in litigation by specialized and experienced attorneys of

15 its choice is a significant right and ought not to be abrogated in the absence of some indication the

16 integrity of the judicial process will otherwise be injured.[58]  A client's right to chosen counsel should

17 be considered in ruling on a disqualification motion.[59]  Furthermore, a client deprived of the attorney

18 of his or her choice suffers a particularly "harsh result" where his or her attorney is <u>highly skilled</u> in

19 the <u>relevant area</u> of the law.[60]  Disqualification is a drastic course of action that should not be taken

20 simply out of <u>hypersensitivity</u> to ethical nuances or the appearance of impropriety.[61]

21     It is undisputed that the area of <u>WCBF claims mishandling,</u> is of recent vintage, involves

22 specialized strategies, the application of specialized privileges, and special trial and appellate

23

24

25 [57] In order to memorialize this ethical wall, Nicholas Roxborough sent a memorandum to Craig on December 11, 2006.
   Rox Decl., Exhibit "A.
   [58] *Oaks Management Corp. v. Superior Court* (2006) 145 Cal.App.4th 453, 472.

26 [59] *SpeeDee Oil* at 1146.
   [60] *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 300.

27 [61] *Hetos Investments, Ltd. V. Kurtin* (2003) 110 Cal.App.4th 36, 47-48.

-23-

28

1    experience. Largo sought the advice and representation of RP&N based on RP&N's skill and

2    expertise in this area. RP&N is a pioneer in this area of law and has obtained a minimum of <u>seven</u>

3    published decisions, and <u>three successful trial verdicts</u> that set forth the framework and manner in

4    which these cases are prosecuted. No other law firm in California can match that record.

5        In today's legal culture, attorneys are extremely mobile. Whereas the average attorney

6    practicing 20 years ago may have worked for one or two employers, today attorneys will typically

7    hold positions with four or more employers during their legal career (RP&N is Craig's 6th employer).

8    This fact has been acknowledged by the trend in California towards permitting the construction of

9    ethical walls to isolate a firm-switching attorney and prevent vicarious disqualification. The purpose

10   of the rules regarding attorney disqualification is to protect and maintain the integrity of the judicial

11   process. There is no indication that allowing RP&N to continue representing Largo will injure the

12   integrity of the judicial process.

13       **E.    LMF Is Seeking To Obtain An Unethical Advantage In This Matter.**

14       LMF's motion is a prime example of the tactical abuse which underlies many disqualification

15   motions. LMF and their counsel, Sheppard, Mullin are very familiar with RP&N and have actively

16   litigated numerous cases against RP&N in the past. In addressing a disqualification motion, the court

17   should consider amongst other things <u>the possibility that tactical abuse underlies the disqualification</u>

18   <u>motion.</u> *SpeeDee Oil* at 1146. Courts must examine these motions carefully to ensure that literalism

19   does not deny the parties substantial justice.

20       LMF is <u>strategically choosing when, in what cases,</u> and in <u>what forum,</u> (not *Remedy Temp* and

21   not *Kinecta*) to seek disqualification of RP&N. Despite their belief that RP&N was subject to

22   disqualification in the *Republic* matter, throughout the litigation of the *Remedy Temp* matter, <u>LMF has</u>

23   <u>never objected,</u> filed any recusal motion or done anything to even suggest its belief that RP&N has a

24   conflict of interest with regard to LMF. This is true to this day.[62] Also, in the *Kinecta* case, handled

25   almost exclusively by Mr. Adreani, LMF and KW <u>never objected</u> to RP&N representing Kinecta,

---

26

27   [62] This matter continues to be active; expert depositions are being scheduled, expert reports are being exchanged, and an arbitration hearing is scheduled to take place in January, 2008 in front of Justice Edward Panelli. Adreani Decl. at ¶21.

-24-

28

despite the fact that Craig was an employee of RP&N while the matter was handled.

### III.    CONCLUSION

As the Honorable Judge Nottingham put it in 1993, "if the name of the game is "hardball litigation", Liberty Mutual qualifies as a major league team. *Adolph Coors Co.* at 509.  Nothing has changed at Liberty.  They are still willing to do whatever it takes to gain any advantage in litigation.  As demonstrated by this motion, they are willing to manufacture evidence in the form of inaccurate, vague, or misleading declarations while failing to present the best evidence, or any credible evidence, in support of their position.

Craig is not subject to disqualification because 1) LMF has failed to present any evidence that he represented or obtained any evidence confidential to LMF; 2) there is no proof, even accepting Defendants' evidence as true, that he actually obtained any information confidential to LMF that is material to this matter; 3) his prior relationship with any Liberty company was peripheral and attenuated from the Largo matter; 4)His assignment on TFF had nothing to do with LMF as they weren't the Defendants' and; 5) There is nothing relevant that Craig had access to that RP&N did not already posses as to WCBF litigation.

In other words, were the court to find that Craig is subject to disqualification, RP&N should not be subject to vicarious disqualification because they have not gained any knowledge about LMF's strategies or tactics in workers' compensation bad faith litigation from the employment of Craig and, an ethical wall has been implemented that includes appropriate screening measures to adequately protect any legitimate interests of LMF.

DATED:   November 30, 2007          ROXBOROUGH, POMERANCE & NYE LLP


By: _____
         NICHOLAS P. ROXBOROUGH, ESQ.
         MICHAEL L. PHILLIPS, ESQ.
         Attorneys for Plaintiffs/Counter-Defendants,
         LARGO CONCRETE, INC. and N.M.N.
         CONSTRUCTION, Inc.

-25-