Nicholas P. Roxborough, Esq. (Bar No. 113540)
Michael L. Phillips, Esq. (Bar No. 232978)
ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Ave., Suite 250
Woodland Hills, California 91367
Telephone:   (818) 992-9999
Facsimile:   (818) 992-9991
E-Mail:   npr@rpnlaw.com
          mlp@rpnlaw.com

Attorneys for Plaintiffs/Counter-Defendants, LARGO CONCRETE, INC. and N.M.N. CONSTRUCTION, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation.<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive.<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. C07-04651 CRB (ADR)<br>*The Hon. Charles R. Breyer*<br><br>**DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING PLAINTIFFS**<br><br>Date: December 21, 2007<br>Time: 10:00 a.m.<br>Ctrm: 8<br><br>[Memorandum of Points and Authorities; Objections To Evidence Submitted In Support Of Liberty Mutual's Motion To Disqualify and Supporting Declarations Filed and Served Concurrently Herewith]<br><br>Complaint filed:   September 10, 2007 |

I, CRAIG S. PYNES, declare as follows:

1.   I am an attorney licensed to practice law in the State of California. I am an associate with the law firm Roxborough, Pomerance & Nye LLP ("RP&N"), and have been since March, 2004. I have personal knowledge of the facts set forth below and, if called and sworn as a witness, could and would testify competently thereto.

1

DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY-
Case No. C07-04651 CRB (ADR)

2.   I have been a practicing attorney for 17 years. At one point in my legal career I worked at the law offices of Kern & Wooley from July 2003 to March 2004.

3.   During my brief tenure at Kern & Wooley, I worked primarily on matters that involved litigation or coverage determinations under first-party commercial general liability policies and property policies. I did not personally handle any workers' compensation bad faith claim handling actions for Liberty Mutual Fire Insurance Company or any other client of Kern & Wooley prior to working for Kern & Wooley. I also had not been involved in any workers' compensation bad faith lawsuit prior to Kern & Wooley.

4.   All of the cases I handled at Kern & Wooley involving any sort of coverage or insurance bad faith litigation concerning coverage related only to lines of insurance that were completely unrelated to workers' compensation. Instead, I handled commercial general liability, first party property, earthquake coverage, contribution actions among insurers and other similar areas. Again, none of this involved or related to workers' compensation bad faith litigation. Everything I learned about workers' compensation bad faith litigation, I learned from my current employer RP&N.

5.   My only extremely limited connection with workers' compensation bad faith while at Kern & Wooley was assisting another attorney, Melodie Yee, with reviewing 3 or 4 workers' compensation claim files. My assignment was really that of a paralegal, i.e. solely to redact personal identifying information of the injured workers, such as their social security numbers and telephone numbers. This was in relation to a matter captioned *Tony's Fine Foods v. Liberty Mutual Insurance Company*. The claim files I reviewed contained no confidential information regarding Liberty Mutual Insurance Company or Liberty Mutual Fire Insurance Company and were individually titled "applicant's name versus Tony's Fine Foods". I spent less than 4 hours performing this task. During the course of this task I prepared a short log of the claimants' personal information that was redacted. The log was less than 1 page of personal information.

6.   Throughout my employment with RP&N, I have been instructed to prepare detailed billing entries for all work I perform and I have done so. My practice was the same while employed at Kern & Wooley. Any work I performed on any Kern & Wooley matter, including the Tony's Fine

2
DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY-
Case No. C07-04651 CRB (ADR)

Food's matter, I always filled out time sheets and billed my time to the file. Accordingly, whatever work I did on the *Tony's Fine Food's* matter would have been reflected on my billing entries.

7.  I was never aware that Lisa Kralik Hansen was involved in the *Tony's Fine Foods* matter and I never discussed or met with her on that case.

8.  I never prepared or viewed any pleadings, discovery, emails, or other correspondence in the *Tony's Fine Foods v. Liberty Mutual Insurance Company* matter. The only document I prepared in that matter was a less than 1 page log of the injured worker's personal information. I prepared this log based on a less than 5 minute meeting I had in Ms. Yee's office where I was light and needed work. She gave me 3 to 4 workers' compensation claim files and asked me to redact personal information concerning the injured workers who had filed claims against Tony's Fine Food's for workers' compensation benefits. I recall completing that basic task shortly after meeting with Ms. Yee. Regarding the log, I don't recall what I did with it. However, my general business practice at Kern & Wooley was to either leave my work with a note on the person's desk who asked me to do the assignment, in this case, Ms. Yee's desk, or hand the document to the person (Ms. Yee). Since I only recall the one brief meeting with Ms. Yee, I believe I probably left the log on Ms. Yee's desk. Regardless, 3 to 4 hours is all the work I did on Tony's Fine Food's. I had no other discussions, oral or written, with anyone at Kern & Wooley on Tony's Fine Food's other than the less than 5 minute meeting with Ms. Yee.

9.  I never participated in any case strategy discussions with anyone at Kern & Wooley or participated in any mediation regarding the *Tony's Fine Foods v. Liberty Mutual Insurance Company* matter, or any other workers' compensation bad faith claims mishandling case at Kern & Wooley.

10. I never learned, or discussed with anyone at Kern & Wooley, the factual or legal background of the *Tony's Fine Foods v. Liberty Mutual Insurance Company* matter.

11. I never spoke with anyone at any Liberty entity regarding the *Tony's Fine Foods v. Liberty Mutual Insurance Company* matter or any other matter that involved workers' compensation insurance issues in any way while at Kern & Wooley.

3

DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY-
Case No. C07-04651 CRB (ADR)

12. I have no idea where any of the *Tony's Fine Foods v. Liberty Mutual Insurance Company* files were stored or located at Kern & Wooley. At no time did I maintain or review any materials regarding this matter in my office, other than the 3-4 Tony's Fine Foods employee claim files.

13. I never received any training from anyone concerning Liberty Mutual Fire Insurance Company's, or any other Liberty entity's, workers' compensation bad faith claims handling practices during the eight months I was at Kern & Wooley.

14. I never reviewed, if they ever existed, any of Liberty Mutual Fire Insurance Company's, or any other Liberty entity's, claim manuals, practice and procedures, strategies for handling litigation, claims operation, general claim file management and record keeping documents, or any documents related thereto concerning workers' compensation insurance or workers' compensation bad faith litigation cases while I was at Kern & Wooley.

15. I did not have any discussions with any Liberty Mutual Fire Insurance Company, or any other Liberty entity's personnel regarding their workers' compensation operation, or defense on workers' compensation bad faith law suits including adjusters, case managers, underwriters, sales personnel, home office personnel, or any other personnel while at Kern & Wooley.

16. At no time during my employment with Kern & Wooley did I ever seek or gain access to information that was confidential to Liberty Mutual Fire Insurance Company's, or any other Liberty entity, regarding their policies or strategies associated with workers' compensation bad faith claims mishandling matters. In fact, I don't even know if they existed or what they were.

17. At no time during my employment with Kern & Wooley did I obtain any information that was confidential to Liberty Mutual Fire Insurance Company's, or any other Liberty entity, regarding their policies or strategies associated with workers' compensation bad faith claims mishandling litigation.

18. At no time during my employment with Kern & Wooley was I exposed to the pertinent facts, legal issues, or legal strategies of any workers' compensation bad faith claim handling actions

4

DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY-
Case No. C07-04651 CRB (ADR)

that involved Liberty Mutual Fire Insurance Company's, any other Liberty entity, or any other client of Kern & Wooley.

19. I received no training and knew nothing about the workers' compensation bad faith claims handling area of law prior to or during the time that I was employed with Kern & Wooley. I had no experience at all in litigating such matters.

20. However, when I began my employment at Roxborough, Pomerance, & Nye, I received extensive training on workers' compensation bad faith claims mishandling litigation personally from Nicholas Roxborough and Drew Pomerance, which was supplemented with informal training over the next couple of months from them and another partner with the firm, Michael Adreani. This was the first time I was exposed to this unique area of law. I recall that, just before I arrived at RP&N, Mr. Roxborough had provided me with a very large binder of bad faith materials. This included all of the key legal precedential cases that pertained to the area of workers' compensation bad faith litigation. I was asked to read all of these precedential cases and to become familiar with these cases. This was the first time I ever read or heard about any of these precedential cases including Courtesy Ambulance, Security Officer Services, Notrica 32nd Street Market and Tricor. Contained in this binder were also key definitions of workers' compensation terms, terms which I had absolutely no familiarity with up until the time I worked for RP&N. In this binder were other documents that I was completely unfamiliar with such as experience rating forms, unit-statistical filings, key labor code sections and similar documents related solely to the area of workers' compensation insurance. It took me approximately 6 to 9 months to become basically familiar with all of these technical areas of the law, terminology and documents. For the first two years I worked mostly with Mr. Roxborough on many different workers' compensation bad faith litigation cases, he trained me on workers compensation adjustor depositions, what motions were important, and most of all, he provided me with an amazing amount of strategical thoughts and concepts that I had never learned from anyone before, either at Kern & Wooley or with any of my prior employers. After a couple of years of working almost exclusively on workers' compensation bad faith litigation matters for the partners of RP&N, in which instance all of the cases had favorably settled, I was able to participate in an 11 day intense three panel arbitration

involving a major carrier. I, along with Mr. Adreani and Mr. Roxborough teamed up to obtain a very favorable decision in that case.

21. Before leaving Kern & Wooley, I personally discussed my offer to work for Roxborough, Pomerance & Nye with Lisa Kralik Hansen. We specifically discussed that the Roxborough, Pomerance & Nye firm handles workers' compensation bad faith claims cases distinct from the type of work I had done at Kern & Wooley. She agreed that this was a completely new area of practice for me and a wonderful opportunity for me to learn a completely different area of the legal practice. Ms. Hansen never expressed any concern that my employment with Roxborough, Pomerance & Nye would pose any sort of conflict of interest with Liberty Mutual Fire Insurance Companys, any other Liberty entity, or any other client of Kern & Wooley.

22. I did not take any documents or other materials regarding Liberty Mutual Fire Insurance Company, any other Liberty entity, or any other Kern & Wooley client, with me when I ended my employment with that firm.

23. At no time during my interview process with Roxborough, Pomerance, & Nye did we discuss that Kern & Wooley represented Liberty entities on various occasions.

24. At no time during my employment with Roxborough, Pomerance & Nye have I worked on any case involving Liberty Mutual Fire Insurance Company or any other Liberty entity. I have had no conversations with anyone at Roxborough, Pomerance & Nye regarding any Liberty entity nor have I seen any documents or materials regarding any Liberty entity. The only exception was approximately in May 2006, in the *Republic Services v. Liberty Mutual Insurance Company* action, a case that had been pending for quite some time in the state of Kentucky. My understanding was that a trial date had been pending, there was a discovery cut off and Kentucky counsel and Republic Services had brought in the RP&N firm for their expertise in workers' compensation bad faith litigation. Multiple depositions had been scheduled in May of 2006, in California. I took two depositions in Sacramento while Mr. Adreani took the other two depositions in Sacramento and Mr. Roxborough took another two depositions in Los Angeles. By that time, I had taken at least ten workers' compensation adjustor depositions under the supervision and guidance by the partners of RP&N. By then, I had become fairly

6

DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY-
Case No. C07-04651 CRB (ADR)

familiar with the areas of workers' compensation law and the Labor Code. Kentucky counsel had propounded all of the discovery and, for the first time, I recall seeing the document called Best Practice's Guidelines. At no time in Kern & Wooley did I ever see a copy of that document or any document by that name or which contained Best Practices information. However, by that time, I had seen other similar Best Practice Guidelines from other carriers and third party administrators. My recollection is that there was not anything very significantly different from the approximate six page document that I had seen in other cases. I had also seen Standard Best Practices that were a matter of public record. These all talk typically about exactly the areas that I was trained on in terms of workers' compensation bad faith litigation namely: The duties of a carrier to defend and timely investigate claims, set reasonable and accurate reserves, pay temporary disability, obtain medical information, conduct sabrosa investigations, and so on. I did not learn any of this at Kern & Wooley. All of this I had learned in my two years prior to working on the Kentucky action while employed at RP&N. I also never saw in the Kentucky action, a workers' compensation manual or any manual regarding any Liberty entity.

25. Other work I recall conducting in the Kentucky action involved preparing and opposing dispositive motions. RP&N had developed certain theory's involving motions in limine that needed to be filed and I, while at RP&N also had seen motions in limine that had previously been opposed. The legal work I did in assisting Kentucky counsel simply involved me applying everything that I had learned while at RP&N in these areas. Whatever evidence I reviewed in the Kentucky action was evidence that Kentucky counsel had obtained from defendants in that matter.

26. On December 11, 2006 I received a memo from Nicholas Roxborough that directed me to have no involvement with any Liberty or Liberty related cases. A true and correct copy of that memo is attached hereto as Exhibit "A".

27. Consistent with what I have testified to in ¶'s 23 and 24, I have had no involvement with, reviewed any documents regarding, or discussed any facts regarding any matter that involved Liberty Mutual Fire Insurance Company, or any other Liberty entity since receiving the December 11, 2006 memo.

...
Here:

I declare under perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct.

Executed this 30th day of November, 2007 at Woodland Hills, California.

_____
CRAIG S. PYNES

1  I declare under perjury, pursuant to the laws of the United States of America, that the
2  foregoing is true and correct.
3  Executed this 30th day of November, 2007 at Woodland Hills, California.

*[signature]*
CRAIG S. PYNES

---

8
DECLARATION OF CRAIG S. PYNES IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY-
Case No. C07-04651 CRB (ADR)

# EXHIBIT

# A

# INTER OFFICE MEMO

**To:** CSP  
**From:** NPR  
**Subject:** Republic Services  
**Date:** December 11, 2006

cc: Partners, File

    The partners recently met in light of the Kentucky decision and have decided that as we did with Karen Gichtin, we are following the same policy of putting a wall around you concerning any future Liberty cases in the office.

    Craig, please note that this is not a reflection on anything you have done. In fact, the partners intellectually and otherwise, firmly believe that the Kentucky Judge is just flat out wrong. Legally, the cases he cited bore no reasonable relationship to the four hours of work you apparently did on a Liberty workers' comp case which seems to have involved only redacting the names and social security numbers of claimants. You've never shared anything whatsoever with us in terms of your short period of time at the Kern & Wooley law firm concerning Liberty, or for that matter, any of their other clients.

    Our clients' have had an extremely unfortunate relationship with Liberty who seem to always use a scorched earth tactic when Liberty's policyholders question Liberty's conduct. Mike and I have known about this long before you ever joined the firm. Nevertheless, we wanted to make sure that you understood that we feel we have no choice but to make sure you are not involved in any Liberty or Liberty related cases. Fortunately, there is plenty of other work to do in the firm, so that won't be a financial problem whatsoever.