1  Nicholas P. Roxborough, Esq. (Bar No. 113540)
   Michael L. Phillips, Esq. (Bar No. 232978)
2  ROXBOROUGH, POMERANCE & NYE LLP
   5820 Canoga Ave., Suite 250
3  Woodland Hills, California 91367
   Telephone:    (818) 992-9999
4  Facsimile:    (818) 992-9991
   E-Mail:    npr@rpnlaw.com
5             mlp@rpnlaw.com

6  Attorneys for Plaintiffs/Counter-Defendants, LARGO CONCRETE,
   INC. and N.M.N. CONSTRUCTION, INC.
7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10 | LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation. | Case No. C07-04651 CRB (ADR) |

Case No. C07-04651 CRB (ADR)
*The Hon. Charles R. Breyer*

**DECLARATION OF MICHAEL B. ADREANI IN OPPOSITION TO LIBERTY MUTUAL'S MOTION TO DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING PLAINTIFFS**

LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation.

Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive.

Defendants.

AND RELATED COUNTERCLAIM

Date:  December 21, 2007
Time:  10:00 a.m.
Ctrm:  8

[Memorandum of Points and Authorities; Objections To Evidence Submitted In Support Of Liberty Mutual's Motion To Disqualify and Supporting Declarations Filed and Served Concurrently Herewith]

Complaint filed:    September 10, 2007

I, MICHAEL B. ADREANI, declare as follows:

1.    I am a partner with Roxborough, Pomerance & Nye LLP ("RPN"), attorneys of record for Largo Concrete, Inc. and N.M.N. Construction, Inc. (collectively "Plaintiffs"). I have personal knowledge of the facts set forth below and, if called and sworn as a witness, could and would testify competently thereto.

1

2.    I have been working at Roxborough, Pomerance & Nye since 1996, when I began as a senior law clerk while still in law school. I graduated from the University of California at Berkeley in 1993 and Northeastern University School of Law in Boston in 1997.

3.    One of the areas my firm specializes in is the litigation of bad faith claims on behalf of employers against their workers' compensation carriers. We focus on claims handling, reserving, collateral and other issues germane to the employer/workers' compensation carrier relationship. RPN had already started to develop the law in this area in California when I started with RPN. In this unique legal arena, I have been trained exclusively by Nicholas Roxborough and Drew Pomerance, and I have handled well over 75 such actions, in various stages of litigation and in various capacities (law clerk, associate attorney and partner).

4.    As was the case with myself, unfortunately we have never been able to hire an associate who has experience in the type of law we practice. Therefore, we engage in extensive instructional and on-the-job training of new associates on how to litigate California workers' compensation bad faith cases. In the last 5 years, my role has also expanded to assisting and training new associates on how to litigate these cases.

5.    In March of 2004, this firm hired Craig S. Pynes as an associate. Mr. Pynes had been working previously with the law firm of Kern & Wooley. Mr. Pynes was a very experienced attorney with a background in general insurance coverage litigation, but had only been at Kern & Wooley for about 8 months.

6.    Mr. Pynes did not know anything about our specialty area of practice when he was hired by RPN. Mr. Pynes was subsequently trained in prosecuting workers' compensation bad faith cases by Mr. Roxborough, Mr. Pomerance and myself.

7.    One item we request in the initial phase of each and every such bad faith case is the workers' compensation claims manual. Typically, this is a large volume (or two) document which addresses, in detail, how workers' compensation claims adjusters are to handle workers' compensation claims. Counsel for Liberty here, Sheppard, Mullin, Richter and Hampton is abundantly familiar with these requests, as they have represented carriers on the other side of our cases for years, both on behalf

2

of the State Compensation Insurance Fund and CNA. I have personally dealt directly with Mr. Falzetta on cases for these two carriers on approximately 4 separate occasions. There is no exception for Liberty cases. In each such case, I routinely, and at the outset of litigation or negotiation request from Liberty its workers' compensation claims manuals.

8.      What is different about Liberty is that Liberty does not have a standard workers' compensation claims manual. Rather, Liberty utilizes a document called "Best Practices" to instruct adjusters on how to handle workers' compensation claims. I have confirmed this with the receipt of documents throughout the years, the noted absence of a claims manual in document production, through deposition testimony of various witnesses on various cases, and through written discovery. Liberty has itself made the representation to me that it does not use a claims manual for its workers' compensation adjusters.

9.      To the extent Liberty does utilize "Best Practices" and any other document in training and providing instruction or protocols to its adjusters in workers compensation cases, I was provided that information and documents prior to Mr. Pynes ever joining this firm. In fact, as will be described in more detail below, Liberty provided such information in litigation which either: 1) pre-dated Mr. Pynes' arrival at RPN (*Kimco*); 2) was handled with no involvement whatsoever by Mr. Pynes (*RemedyTemp*); 3) was provided by Liberty's counsel to this firm with the full knowledge that Mr. Pynes was working at RPN (*RemedyTemp*); and/or 4) was provided to co-counsel prior to any involvement whatsoever by RPN (*Republic*). In fact, in each of those cases, Liberty was actually mandated under Rule 26 to provide the information notwithstanding any requests for such.

10.     I have been involved in six (6) prior cases against Liberty, four (4) of which contained allegations virtually identical to this action. These cases include: 1) *Parvin Manufacturing v. Liberty Mutual Insurance Co. et al*, LASC Case No. BC186045; 2) *Faris Bros. v. Liberty Mutual Insurance Co., et al*, LASC Case No. BC 217855; 3) *Kimco v. Liberty Mutual Fire Insurance Company*, USDC (CA-Central), Case No. 01-927; 4) *RemedyTemp v. Liberty Mutual Fire Insurance Company*, USCC (CA-Central), Case No. 04-00385; 5) *Kinecta v. Liberty Mutual Fire Insurance Company* (non-litigated case – settled in mediation April 4, 2006); and 6) *Republic v. Liberty Mutual Fire Insurance*

3

1 | *Company, et al*, USDC (KY-Eastern), Case No. 03-494.

2 |     11.    *Parvin* was a *Business & Professions Code*, sec. 17200 ("UCL") representative action

3 | against Liberty based upon Liberty's misallocation of certain expenses associated with defense

4 | medical-legal examinations. *Faris Bros*. was a class action lawsuit against Liberty, also based upon

5 | Liberty's misallocation of certain expenses associated with defense medical-legal examinations. While

6 | *Parvin* and *Faris Bros*. were UCL and bad faith lawsuits, those matters did not require me to request

7 | claims manuals from Liberty. Liberty was initially represented by Kern & Wooley (Ms. Hansen's firm

8 | at the time) in the *Parvin* matter, until Kern & Wooley was substituted out in favor of the Wilson Elser

9 | firm in approximately January of 2000. The Wilson Elser firm represented Liberty for the duration of

10 | the *Faris Bros*. action.

11 |     12.    It was in the *Kimco* case that I first became aware that Liberty Mutual Fire Insurance

12 | Company ("Liberty Fire") utilized "Best Practices" and not a traditional claims manual. This case was

13 | filed in August of 2001 and removed to the Central District (Judge Carter) on October 5, 2001. The

14 | allegations of the *Kimco* complaint were virtually identical to those of the instant action, and a true and

15 | correct copy of the First Amended Complaint in *Kimco* (after removal from State to Federal Court) is

16 | attached hereto as Exhibit "A." In *Kimco*, as with any such case, I requested all training and claims

17 | manuals. Liberty Fire responded that <u>all such documents had been produced</u> and, when pressed,

18 | confirmed that no claims manual is actually used by Liberty Fire. What was produced was Liberty

19 | Fire's Best Practices protocols. This is the same document I received in subsequent litigation involving

20 | other clients who had sued Liberty Fire (*RemedyTemp* and *Republic*).

21 |     13.    *Kimco* litigated for several years and settled just before trial. Certain trial documents,

22 | such as the competing Memorandum of Contentions of Fact and Law (CDCA Local Rule 16-3) were

23 | already filed and pre-trial meetings with opposing counsel had taken place with regard to witness and

24 | exhibit lists.

25 |     14.    Discovery cutoff in *Kimco* was on January 15, 2003 and trial was set for March 11,

26 | 2003. All documents related to the manner in which Liberty Fire handles workers' compensation

27 | claims, and how Liberty Fire trains workers' compensation adjusters, therefore, were in my firm's

28 |

1  possession by the end of 2002 – over two years before Mr. Pynes joined our firm.

2      15.    Specifically, my notes from *Kimco* indicate that all of the documents Liberty Fire

3  considered its training and adjusting "manuals" were produced to me, and Bates labeled Nos. LM

4  50869-51987. These documents, per the Settlement Agreement in *Kimco*, are no longer in our

5  possession. However, I am sure Liberty Fire would be able to locate them and confirm that it's training

6  and adjusting materials were in my possession long before Mr. Pynes ever joined this firm. I also

7  specifically recall Liberty Fire's counsel acknowledging to me on the record of a deposition that, with

8  regard to workers' compensation training and adjusting manuals used by Liberty Fire, "all such

9  documents had been produced" in the *Kimco* case. The deposition I refer to was of witness John

10  O'Connor who I deposed in Boston, Massachusetts in or about January of 2003. Per the Settlement

11  Agreement, I am no longer in possession of Mr. O'Connor's deposition, but I would imagine it is in

12  Liberty Fire's possession.

13      16.    The *Kimco* case was initially handled by Kern & Wooley as counsel for Liberty Fire.

14  At that time, Ms. Hansen, Ms. Yee and Ms. Olson were all at Kern & Wooley. The attorney I dealt

15  with primarily on the Kimco case was Ilya Kosten of Kern & Wooley (although at that time, Mr.

16  Kosten went by the name of Ilya Kostenboym). Kern & Wooley was later replaced by Gary Hamblet

17  of Breidenback, Huchting & Hamlet. Mr. Hamlet was counsel until the case resolved in April of 2003,

18  a year before Mr. Pynes joined our firm.

19      17.    Other than Mr. Roxborough and myself, no other attorneys at my office worked on the

20  *Kimco* case.

21      18.    The *RemedyTemp* case was filed in the Central District (Judge Taylor) on April 1, 2004,

22  just after Mr. Pynes joined this firm from Kern & Wooley. That case again had virtually identical

23  allegations to the instant case involving Largo and Liberty Fire. A true and correct copy of the

24  *RemedyTemp* Complaint against Liberty Fire is attached hereto as Exhibit "B." As with *Kimco*, the

25  Kern & Wooley firm began as defense counsel on behalf of Liberty in the *RemedyTemp* matter. The

26  primary attorneys handling the *RemedyTemp* case for Liberty Fire and Kern & Wooley were Lisa

27  Hansen and Susan Olson.

28

5

19.    It was well known to Ms. Hansen and Ms. Olson that Mr. Pynes was working at my firm at the time the *RemedyTemp* case was filed. At that time, our offices were only one block away from each other in Westswood (Los Angeles). On one occasion, early in the case at an in person "meet and confer" under Central District Local Rule 7 at my office, both Ms. Hansen and Ms. Olson said hello to Mr. Pynes personally while in my office. On other occasions both Ms. Hansen and Ms. Olson asked me to say hello to Mr. Pynes. At no point did either of them, or anyone else from Liberty Fire or Kern & Wooley indicate that there was a problem with my firm handling cases against Liberty Fire due to Mr. Pynes' presence at the firm.

20.    During the course of the *RemedyTemp* case, I have received through discovery and Rule 26 all of the same training and adjusting materials I received in the *Kimco* case, all with Liberty's full knowledge of Mr. Pynes' employment at my firm. These documents include the Best Practices document, reserving documents and others. Those documents are covered by a Protective Order signed by Judge Taylor and are prohibited from disclosure in this case. These documents were all handed over to me and my firm in *RemedyTemp* without any objection regarding Mr. Pynes.

21.    In May of 2005, Kern & Wooley was substituted out of the *RemedyTemp* case and replaced by both the St. Louis firm of Husch & Eppenberger (by Carol Rutter) and the Orange County firm of Berger Kahn (by Jim Henschall). While the *RemedyTemp* case resolved on the merits in August of 2006, there remains an ongoing dispute between the parties over the Settlement Agreement.

22.    The *RemedyTemp* case is currently set for a binding arbitration on January 16, 2008 before Justice Edward Panelli (Ret.). Just in the last two months, there have been various exchanges of information and documents with Liberty Fire, requests for discovery and expert information, two telephonic appearances before Justice Panelli (one for the purpose of resolving a discovery dispute), and a comprehensive document review by Liberty's counsel Mr. Henshall, which was attended by myself and an associate at my office, Mr. Phillips.

23.    At no point has anyone at Liberty Fire, Berger Kahn or Husch & Eppenberger ever indicated any issue with my firm as counsel for RemedyTemp. No such issue has ever been raised with either Judge Taylor or with Justice Panelli, even as we prepare to arbitrate the case in January of

6

1  2008.

2       24.    Other than Mr. Roxborough and myself, only one other attorney from my office worked

3  on the underlying *RemedyTemp* matter, and that was a young first year attorney who is no longer at our

4  firm. Mr. Phillips, who I believe to be the associate assisting Mr. Roxborough in the *Largo v. Liberty*

5  *Fire* matter, is currently assisting us on the upcoming binding arbitration portion of the *RemedyTemp*

6  case. Otherwise, no other attorneys at our firm have worked on the *RemedyTemp* case.

7       25.    Just this week, on November 27, 2007, Ms. Rutter sent my office a letter in which she,

8  on behalf of Liberty: 1) refused to allow certain documents from the RemedyTemp case to be

9  provisionally deemed "not confidential" for purposes of attaching them to this opposition; and 2)

10  claimed that *RemedyTemp* is or was under an obligation to return all such designated documents under

11  a Protective Order in that case. Attached hereto as Exhibit "C" is a true and correct copy of my

12  response to Ms. Rutter dated November 29, 2007. In my response, I remind Ms. Rutter that the

13  *RemedyTemp* case is not finally resolved (with an arbitration scheduled early next year), that Liberty

14  has already acknowledged the confidential documents obtained in that case are germane to the

15  arbitration in 2008, and that Liberty itself has not returned any confidential documents pursuant to the

16  very same provision cited by Liberty.

17       26.    In 2005 and 2006 I worked on a matter for Kinecta Federal Credit Union against Liberty

18  Fire. That case never litigated, and settled at a private proceeding with a paid mediator in April of

19  2006. Nevertheless, Liberty Fire obtained counsel, claims information and claims files were provided

20  by Liberty Fire to my office, and worker's compensation claims handling was challenged. Counsel for

21  Liberty Fire in the *Kinecta* matter was, again, Ilya Kosten, the same attorney I dealt with in the *Kimco*

22  matter. At the time of the *Kinecta* case, Mr. Kosten had moved on from Kern & Wooley and was at the

23  firm of Charlston, Revich & Chamberlain. The mediation in April of 2006 took place at Mr. Kosten's

24  office. At no point did Mr. Kosten or anyone from Liberty Fire express any issue with my firm due to

25  Mr. Pynes being employed with us.

26       27.    I handled the *Kinecta* case on my own, with only some involvement from Mr.

27  Roxborough. I did not have an associate attorney from my office handling the *Kinecta* matter with me.

28

7

28.    My firm was hired to assist local Kentucky counsel in the *Republic* case in April of 2006. At that time, co-counsel in Kentucky had long since obtained all of the workers' compensation training and adjusting manuals, including Best Practices, from Liberty. These were all of the same documents I had seen in *Kimco* and *RemedyTemp*. My firm never propounded a single interrogatory or document demand in the *Republic* case.

29.    Mr. Pynes no longer works on any Liberty cases, per instructions from Mr. Roxborough. This directive is well known in our firm and is strictly followed.

30.    Attached hereto as Exhibit "D" is a true and correct copy of pertinent portions of the transcript of the deposition of Lisa Kralik Hansen taken in the *Republic v. Liberty* matter on August 15, 2006.

I declare under perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct.

Executed this 30 day of November, 2007 at Woodland Hills, California.

MICHAEL B. ADREANI

8



Nicholas P. Roxborough, Esq. (SBN. 113540)
Michael B. Adreani, Esq. (SBN. 194991)
**ROXBOROUGH, POMERANCE & NYE** LLP
10866 Wilshire Boulevard, Suite 1200
Los Angeles, California 90024-4303
Telephone: (310) 470-1869

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

OCT 05 2001

Attorneys for Plaintiffs KIMCO STAFFING SERVICES, INC.,
a California Corporation, KIMSTAFF EMPLOYER
OUTSOURCING SERVICES, INC., a California Corporation.

ALAN SLATER, Clerk of the Court

BY: **L. WEISMAN**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### FOR THE COUNTY OF ORANGE  By FAX

| | |
|---|---|
| KIMCO STAFFING SERVICES, INC., a California Corporation, KIMSTAFF EMPLOYER OUTSOURCING SERVICES, INC., a California Corporation., | Case No. 01CC11210 |
| | Assigned to Hon James V. Selna (C-26) |
| Plaintiffs, | FIRST AMENDED COMPLAINT FOR: |
| vs. | 1. TORTIOUS BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive, | 2. UNFAIR BUSINESS PRACTICES IN VIOLATION OF *BUSINESS & PROFESSIONS CODE*, § 17200 *ET. SEQ*; |
| Defendant. | 3. BREACH OF CONTRACT; AND |
| | 4. DECLARATORY RELIEF. |

Plaintiffs KIMCO STAFFING SERVICES, INC. and KIMSTAFF EMPLOYER

OUTSOURCING SERVICES, INC. alleges against defendant, LIBERTY MUTUAL FIRE

INSURANCE COMPANY and DOES 1 through 100, Inclusive, as follows:

### GENERAL ALLEGATIONS COMMON TO

### ALL CAUSES OF ACTION

1.      Plaintiff, KIMCO STAFFING SERVICES, INC. (hereinafter "KIMCO"), a

California corporation, is and at all times relevant to this action was licensed to do business in

the State of California and maintains its principal place of business in the County of Orange.

1

O.K. TO ISSUE SUMMONS / W

1   KIMCO is in the business of providing temporary employment, staffing, and recruitment

2   services.

3        2.     Plaintiff, KIMSTAFF EMPLOYER OUTSOURCING SERVICES, INC.

4   (hereinafter "KIMSTAFF"), a California corporation, is and at all times relevant to this action

5   was licensed to do business in the State of California and maintains its principal place of

6   business in the County of Orange.  KIMSTAFF is a Professional Employer Organization

7   ("PEO") which services its client companies by taking over all aspects of personnel for the client

8   company, including payroll, workers' compensation, human resources, and so on.  Collectively,

9   KIMCO and KIMSTAFF are referred to as "Plaintiffs."

10       3.     Plaintiffs are informed and believe and thereon allege that defendant, LIBERTY

11  MUTUAL FIRE INSURANCE COMPANY ("LIBERTY"), is, and at all times herein

12  mentioned was a business enterprise engaged in the business of writing workers'

13  compensation insurance and is doing business in the County of Orange, State of California.

14       4.     Plaintiffs procured two workers' compensation insurance policies from LIBERTY

15  as follows:

16       a.     For the policy period of January 1, 1999 to January 1, 2000 (the "1999 Policy"),

17            more specifically known as Policy Nos. WA2-16D-038818-019. The 1999 Policy

18            called for Plaintiffs to pay a deductible on claims made under the policy up to the

19            first $100,000 per claim or $2.7 million aggregate.  Attached hereto and

20            incorporated herein by reference as Exhibit "A" is a true and correct copy of the

21            1999 Policy.  In consideration for LIBERTY providing the insurance, Plaintiffs

22            paid all premiums due for the 1999 Policy.

23       b.     For the policy period of January 1, 2000 to January 1, 2001 (the "2000 Policy"),

24            more specifically known as Policy Nos. WA2-16D-038818-010. The 2000 Policy

25            called for Plaintiffs to pay a deductible on claims made under the policy up to the

26            first $250,000 per claim or $3.2 million aggregate. Attached hereto and

27

28                                2

1    incorporated herein by reference as Exhibit "B" is a true and correct copy of the

2    2000 Policy.  In consideration for LIBERTY providing the insurance, Plaintiffs

3    paid all premiums due for the 2000 Policy.  (Collectively, the 1999 Policy and the

4    2000 Policy shall be referred to as the "WC Policies").

5        5.    Plaintiffs allege that unlike any other type of insurance policy, the reserves that a

6    workers' compensation insurance carrier such as LIBERTY places on each individual claim, the

7    amount paid out under a claim, and the manner in which a carrier handles and administers the

8    claim, inexorably controls the amount Plaintiffs is required to pay in premiums to LIBERTY.

9        6.    Plaintiffs further allege that overpayments made on claims, due to the nature of

10   the deductible arrangements under the WC Policies, will artificially cause Plaintiffs to front more

11   costs than they would had payments been reasonable.  Overpayments may occur due to failure to

12   handle the claim properly.

13       7.    Plaintiffs further allege that the handling of claims made under the WC Policies are

14   directly related to the premiums charged charged by LIBERTY and future insurance carriers.

15   Mishandling of claims leads directly to higher premiums charged by LIBERTY.

16       8.    Plaintiffs allege that mishandling of claims extends to not only the adjusters,

17   examiners, claims personnel and supervisors of LIBERTY, but also to those workers'

18   compensation defense attorneys ("WC Attorneys") assigned by LIBERTY to handle the litigated

19   workers' compensation claims on behalf of Plaintiffs.

20       9.    Plaintiffs allege that, for the 1999 Policy, LIBERTY insisted, despite objections

21   from Plaintiffs, that LIBERTY select the WC Attorneys of its choice to defend claims made

22   under the 1999 Policy against Plaintiffs. The attorneys LIBERTY unilaterally selected to defend

23   claims made under the 1999 Policy are known as "House Counsel," as they work only for

24   LIBERTY and are not associated with an outside or independent law firm.  Rather, House

25   Counsel are employees of LIBERTY.

26   ///

27

28   3

FIRST AMENDED COMPLAINT

1          10.     Plaintiffs allege that in or about August of 2000, Plaintiffs again requested that

2    they be allowed to utilize the WC Attorneys of their choice.  Plaintiff's request was denied by

3    LIBERTY pending review by LIBERTY corporate officers.

4          11.     Plaintiffs allege that in October of 2000, Liberty finally allowed Plaintiffs to

5    switch from the House Counsel attorneys unilaterally selected by LIBERTY to their own WC

6    Attorneys of their choice to defend claims made against Plaintiffs from that point forward and for

7    some existing claims to be transferred to such designated counsel.

8          12.     Plaintiffs alleges that LIBERTY'S ultimate agreement in October 2000 was made

9    with no limitations set forth, and no indication that LIBERTY would engage in penalty or

10   retribution to Plaintiffs for their election to utilize the WC Attorneys of their choice rather than

11   LIBERTY's House Counsel.

12         13.     Plaintiffs are informed and believe and thereon allege that by virtue of the WC

13   Policies, LIBERTY stands in Plaintiffs' shoes as its agent with regard to each claim made under

14   the WC Policies.  Plaintiffs further allege that a special relationship exists between an insured

15   and insurer akin to a fiduciary duty, and that implied in this relationship is a covenant that neither

16   party may act to deprive the other of the benefits of the contract.

17         14.     Plaintiffs are informed and believe and thereon allege that LIBERTY mishandled,

18   overpaid, and over-reserved claims made under Plaintiffs' WC Policies in such a way as to

19   artificially increase Plaintiffs' premiums in the manner detailed above.

20         15.     Plaintiffs allege that LIBERTY's refusal to allow Plaintiffs to utilize the WC

21   Attorneys of its choice under the 1999 Policy, and instead using House Counsel, contributed to

22   the overpayments, over-reserving, and mishandling described above, and that such

23   overpayments, over-reserving, and mishandling all resulted in a financial windfall for LIBERTY.

24         16.     Plaintiffs allege that use of the WC Attorneys of its choice under the 2000 Policy,

25   as well as the 1999 Policy after Plaintiffs were allowed to switch to its own WC Attorneys, has

26   dramatically reduced the overpayments, over-reserving, and mishandling on Plaintiffs' workers'

27

28                                              4

1  compensation files.

2      17.    Plaintiffs allege that, subsequent to the switching from House Counsel to the WC

3  Attorneys of Plaintiffs' choice, LIBERTY strongly urged Plaintiff to reconsider the act of

4  choosing designated WC Attorneys, stating that there may not be a renewal of the policy if

5  Plaintiff didn't agree to utilizing LIBERTY's House Counel.  Furthermore, LIBERTY advised

6  Plaintiff that if Plaintiff failed to agree to the utilization of House Counsel, but LIBERTY still

7  desired to provide a renewal quote, the quote would not be affected by the Plaintiff's decision.

8  Shortly thereafter, LIBERTY proposed premiums at an approximate 450% increase.  This was

9  done in violation of LIBERTY's statutory duty to provide 30 days notice of such increases if

10  such increase is in excess of 25%.  Rather, LIBERTY informed Plaintiffs of such increase

11  approximately five (5) business days prior to the expiration of the WC Policy, leaving Plaintiffs

12  at a competitive disadvantage in the Workers' Compensation marketplace.

13  **FIRST CAUSE OF ACTION**

14  **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

15  **Against LIBERTY and DOES 1 through 100)**

16      18.    Plaintiffs incorporate herein by this reference as though fully set forth in this

17  Cause of Action each and every allegation contained in Paragraphs 1 through 17, inclusive, of

18  this Complaint as if set forth herein in full.

19      19.    Plaintiffs are informed and believe and thereon allege that LIBERTY and DOES 1

20  through 100 have tortiously breached the implied covenant of good faith and fair dealing by the

21  following acts or omissions which are implied obligations under the 1999 Policy:

22      a.    LIBERTY has failed to reasonably investigate the compensability of

23  claims;

24      b.    LIBERTY has set reserves in amounts unreasonably disproportionate to

25  the expected losses so that it may increase the amount of premium which it can collect

26  from Plaintiffs;

27

28  5

1          c.     LIBERTY has failed to monitor and/or adjust claims reserves on a periodic

2 basis with the result that claims were not kept current and did not reflect the appropriate

3 case value.

4          d.     LIBERTY unreasonably delayed in processing legitimate claims and/or

5 failed to respond to the requests and inquiries of Plaintiffs' injured employees such that

6 claims became litigated and in turn allowed LIBERTY to further increase claim reserves;

7          e.     LIBERTY failed to enlist competent and reputable medical defense

8 doctors and/or ignored the advice of competent and reputable medical defense doctors;

9          f.     LIBERTY failed to assign the administration of claims to experienced and

10 competent claims adjusters;

11          g.     LIBERTY ignored Plaintiffs's requests and/or itself failed to undertake

12 prompt or reasonable investigation of claims to determine whether they were

13 compensable claims and/or ignored the results of such investigations;

14          h.     LIBERTY failed to appoint competent legal counsel or delayed the

15 appointment of competent legal counsel to defend and/or represent Plaintiffs' interests

16 before the appropriate tribunals; in such cases where LIBERTY did assign counsel, said

17 attorneys were employees of LIBERTY who disregarded Plaintiffs' interests in favor of

18 LIBERTY's interests;

19          i.     LIBERTY failed to provide a good faith defense on behalf of Plaintiffs on

20 those claims where defenses existed and should have been asserted;

21          j.     LIBERTY  failed to communicate in good faith with Plaintiffs and in

22 doing so, also failed to keep Plaintiffs updated on significant events in claims files;

23          k.     LIBERTY failed to allow Plaintiffs' to utilize the WC Attorneys of its

24 choice on the 1999 Policy and delayed Plaintiffs' requests to be allowed to utilize the WC

25 Attorneys of its choice until October 2000;

26          l.     LIBERTY utilized House Counsel as an illicit profit center; and

27

28                                 6

1        m.      LIBERTY ignored vital information provided by Plaintiffs to LIBERTY

2    for purposes of valuing and administering claims.

3        n.      LIBERTY violated its statutory duty to provide 30 days notice of an

4    increase in premium of over 24%, thus putting Plaintiffs at a competitive disadvantage in

5    the workers' compensation marketplace.

6    20.     Plaintiffs are informed and believe and thereon allege that LIBERTY and Does 1-

7    100, and each of them, have committed further acts or omissions in violation of their duty of

8    good faith and fair dealing. These acts are presently unknown to Plaintiffs and at such time as

9    they may be discovered, Plaintiffs will seek leave of court to amend this Complaint.

10    21.     As a proximate result of LIBERTY's conduct, as described hereinabove, Plaintiffs

11    have suffered general and special damages which include having to pay and being forced to pay

12    unnecessarily increased premiums to LIBERTY (and other workers' compensation carriers in the

13    future); having had to incur expenses and costs to hire outside consultants, experts and attorneys

14    to assist Plaintiffs in obtaining these benefits under the WC Policies. Additionally, LIBERTY's

15    conduct, as subscribed hereinabove, has caused Plaintiffs to have their credit rating affected, has

16    adversely affected its client relations and has been highly prejudicial to its operations including

17    but not limited to causing Plaintiffs to suffer the loss of business opportunities and the loss of

18    income, all in a sum to be established at the time of trial.

19    22.     Plaintiffs further allege that the conduct of LIBERTY and DOES 1 through 100,

20    as set forth in paragraph 19, was carried out in bad faith, was malicious, fraudulent, oppressive

21    and evidences a complete disregard for Plaintiffs' interests and an intent to injure, harass, vex

22    and annoy Plaintiffs. Under the circumstances described, Plaintiffs allege LIBERTY's conduct

23    constitutes "despicable conduct" as defined in California *Code of Civil Procedure* section 3294

24    and established common law, thus entitling Plaintiffs to recover punitive damages in an amount

25    appropriate to punish or to set an example of Defendants, and each of them. Plaintiffs further

26    allege that LIBERTY at all times acted through its officers, directors and employees and that it

27

28                                          7

1  had advance knowledge of the damage being caused to Plaintiffs and that LIBERTY approved,

2  ordered, instructed, supervised and controlled the conduct of its officers, directors and employees

3  such as to constitute a ratification of the conduct of said officers, directors and employees.

4  Accordingly, pursuant to the doctrine of Respondeat Superior, both LIBERTY and DOES 1

5  through 100 are liable for punitive damages as prayed for herein.

6  **SECOND CAUSE OF ACTION**

7  **(Violation of *Business & Professions Code*, § 17200 et seq.**

8  **Against LIBERTY and DOES 1 through 100)**

9      23.    Plaintiffs incorporate by this reference as though fully set forth in this Cause of

10  Action each and every allegation contained in Paragraphs 1 through 22, inclusive, of this

11  Complaint as if set forth herein in full.

12      24.    LIBERTY's improper setting of reserves, failure to provide a good faith defense

13  of claims, failure to close and/or resolve claims, overpayments on claims, failure to allow

14  Plaintiffs to select the WC Attorneys of its choice, election to utilize House Counsel, and general

15  mishandling of claims was for the purpose of raising reserves on workers' compensation claim

16  files to artificially inflate premiums for workers compensation insurance.

17      25.    As a proximate result of LIBERTY's improper setting of reserves, failure to

18  provide a good faith defense of claims, failure to close and/or resolve claims, overpayments on

19  claims, failure to allow Plaintiffs to select the WC Attorneys of its choice, election to utilize

20  House Counsel, and general mishandling of claims, LIBERTY was able to garner illicit profits

21  from Plaintiffs and other similarly situated insureds. These illicit profits rightfully belong to

22  Plaintiffs and other  policyholders and should be returned to them.

23      26.    In light of LIBERTY's unfair business practices in violation of the law, Plaintiffs,

24  ***on behalf of the general public pursuant to Business & Professions Code section 17204***, seek

25  from this Court a permanent injunction, enjoining LIBERTY from, improper setting of reserves,

26  failure to provide a good faith defense of claims, failure to close and/or resolve claims,

27

28          8

1   overpayments on claims, failure to allow Plaintiffs to select the WC Attorneys of its choice,

2   election to utilize House Counsel, and general mishandling of claims.   Plaintiffs, *on behalf of*

3   *the general public pursuant to Business & Professions Code section 17204*, also requests that

4   pursuant to *Business & Professions* Code §17203, this Court order restitution through

5   disgorgement of the illicit profits which rightfully belong to their policyholders throughout the

6   state of California.

7         27.      Additionally, and as part of the injunctive relief prayed for in paragraph 26, above,

8   this Court should also require LIBERTY to disclose to every current policyholder their practice

9   of improper setting of reserves, failure to provide a good faith defense of claims, failure to close

10  and/or resolve claims, overpayments on claims, failure to allow Plaintiffs to select the WC

11  Attorneys of its choice, election to utilize House Counsel, and general mishandling of claims, and

12  the effect said acts have had and continue to have in increasing the policyholder's future

13  premiums.

14                            **THIRD CAUSE OF ACTION**

15              **(Breach of Contract Against LIBERTY and DOES 1 through 100)**

16        28.      Plaintiffs incorporate herein by this reference all of the allegations contained in

17  Paragraphs 1 through 27 hereof as if set forth in full in this Third Cause of Action.

18        29.      Plaintiffs are informed and believe and thereon allege that Plaintiffs and

19  LIBERTY entered into the 1999 Policy (see Exhibit "A") whereby Plaintiffs agreed to purchase

20  insurance covering workers compensation.  LIBERTY breached the 1999 Policy by mishandling

21  claims made under the policy, over reserving claims made under the policy, over paying on

22  claims made under the policy, failing to provide an adequate defense under the policy, and failing

23  to provide adequate legal counsel for purposes of defending Plaintiffs against the claims.

24        30.      Plaintiffs have performed all terms of the 1999 Policy agreement except for which

25  any of whose performance has been excused by LIBERTY's conduct.

26  ///

27

28                                    9

1     31.    In or about August of 2000, Plaintiffs discovered that LIBERTY had breached the

2  1999 Policy.

3     32.    As a proximate result of LIBERTY's breaches of the 1999 Policy, Plaintiffs have

4  suffered losses in an amount within the jurisdictional limits of this Court. When Plaintiffs

5  ascertains the total amount of its damages, Plaintiffs will ask leave of Court to allow amendment

6  to this Complaint setting forth such total amount and loss.

7
## FOURTH CAUSE OF ACTION

8
### (Declaratory Relief Against LIBERTY and DOES 1 through 100)

9     33.    Plaintiffs incorporate herein by this reference as though fully set forth in this

10  Cause of Action each and every allegation contained in Paragraphs 1 through 20, 21 through 27

11  and 28 through 32 inclusive, of this Complaint as if set forth herein in full.

12     34.    By reason of Plaintiffs' allegations set forth in the preceding Paragraphs, a

13  controversy has arisen and now exists between Plaintiffs and LIBERTY.  Plaintiffs contends as

14  follows:

15     a.    That pursuant to the nature and purpose for which the WC Policies were

16  entered into, that Plaintiffs should have the ability to select the WC Attorneys of its

17  choice to defend claims made under its WC Policies; and

18     b.    That pursuant to the nature and purpose for which the WC Policies were

19  entered into, that LIBERTY should not utilize House Counsel to defend Plaintiffs against

20  claims made against Plaintiffs under the WC Policies.

21     35.    Plaintiffs are informed and believe and on thereon allege that LIBERTY disputes

22  the aforesaid contentions and contends to the contrary.

23     36    A judicial declaration of the rights and duties of the parties relative to the WC

24  Policies is necessary to resolve this controversy and to guide the future conduct of the parties.

25  ///

26  ///

27

28                                 10

1    **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as

2    follows:

### ON THE FIRST CAUSE OF ACTION

4        1.    For general damages in an amount which exceeds the minimum jurisdictional

5    limits of this court;

6        2.    For special damages in a sum to be proven at trial;

7        3.    For recovery of all attorneys' and consultants' fees, costs and expenses incurred to

8    pursue and obtain the benefits of the WC Policies;

9        4.    For punitive and exemplary damages in an amount appropriate to punish or set an

10   example of Defendants;

### ON THE SECOND CAUSE OF ACTION

12       5.    For equitable relief as determined by this Court, including but not limited to, a

13   permanent injunction restraining Defendants from engaging in the unlawful and unfair business

14   practices as pled in this complaint; restitution to Defendants' policyholders, in the form of an

15   order requiring Defendants to disgorge the profits it obtained by engaging in the conduct which

16   violates *Business & Professions* Code §17200 et seq.;

17       6.    For recovery of all attorneys' fees in connection with the equitable portion of this

18   Complaint;

### ON THE THIRD CAUSE OF ACTION

20       7.    For general and special damages in a sum to be proven at trial;

### ON THE FOURTH CAUSE OF ACTION

22       8.    For a declaration adjudging that the items in dispute as set forth in paragraph 34

23   are to be determined in favor of Plaintiffs;

### ON ALL CAUSES OF ACTION

25       9.    For all costs incurred by Plaintiffs to date and to be incurred by Plaintiffs hereafter

26   in connection with this action; and

27

28

FIRST AMENDED COMPLAINT

1      10.   For such other and further relief as the court deems just and proper.

2

3  DATED: ~~August~~ *October* 5, 2001         ROXBOROUGH, POMERANCE & NYE LLP

4

5

6                   By: _____

7                       NICHOLAS P. ROXBOROUGH
                          MICHAEL B. ADREANI

8                       Attorneys for Plaintiffs KIMCO STAFFING
                        SERVICES, INC., a California Corporation,
                        KIMSTAFF EMPLOYER OUTSOURCING

9                       SERVICES, INC., a California Corporation.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          12

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## THIS POLICY IS NONASSESSABLE


**LIBERTY MUTUAL.**
Liberty Mutual Insurance Group/Boston

FOR PROMPT INSURANCE SERVICE - CALL YOUR SERVICE OFFICE

THIS POLICY IS CLASSIFIED IN DIVIDEND CLASS XIII WORKERS COMPENSATION AND EMPLOYERS LIABILITY

The named insured is hereby notified that by virtue of this policy he is a member of the Liberty Mutual Fire Insurance Company and is entitled to vote either in person or by proxy at any and all meetings of said company.

The annual meetings are held at its home office, Boston, Massachusetts on the second Wednesday of April in each year, at eleven o'clock in the morning.

Liberty Mutual Fire Insurance Company (A mutual insurance company, herein called the company)

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in items 1 or 4 of the Information Page; and it covers all other workplaces in item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE - WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

Copyright 1991 National Council on Compensation Insurance.

Λ    WC 00 00 00A

We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgement as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

**E. Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

**F. Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

**G. Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**H. Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

Copyright 1991 National Council on Compensation Insurance.

WC 00 00 00A

4.  Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5.  This insurance conforms to the parts of the workers compensation law that apply to:

    a.  benefits payable by this insurance;

    b.  special taxes, payments into security or other special funds, and assessments payable by us under that law.

6.  Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

A.  How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.  The employment must be necessary or incidental to your work in a state or territory listed in item 3.A. of the Information Page.

3.  Bodily injury by accident must occur during the policy period.

4.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

B.  We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1.  for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.  for care and loss of services; and

3.  for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.  because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

C.  Exclusions

This insurance does not cover:

1.  liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2.  punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3.  bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4.  any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5.  bodily injury intentionally caused or aggravated by you;

6.  bodily injury occuring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7.  damages arising out of coercion, criticsm, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, acts or omissions.

8.  bodily injury to any person in work subject to the Longshore and Habor Workers, Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9.  bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10. bodily injury to a master or member of the crew of any vessel.

11. fines or penalties imposed for violation of federal or state law.

12. damages payable under the Migrant and Seasonal Agricultural Workers Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D.  **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E.  **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3.  litigation costs taxed against you;

4.  interest on a judgment as required by law until we offer the amount due under this insurance; and

5.  expenses we incur.

F.  **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G.  **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in item 3.B. of the Information Page. They apply as explained below.

1.  Bodily Injury by Accident. the limit shown for "bodily injury by accident-each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more

employees in any one accident. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2.  Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgement.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

### A. How This Insurance Applies

1.  This other states insurance applies only if one or more states are shown in item 3.C. of the Information Page.

2.  If you begin work in one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

### B. Notice

Tell us at once if you begin work in any state listed in item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other services required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.  Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4.  Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5.  Do nothing after an injury occurs that would interfere with our right to recover from others.

6.  Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period . If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise.

1. If we cancel, final premium will be caculated pro-rata based on the time this policy was in force. Final premium will not be less than the pro-rata share of the minimum premium.

2. If you cancel, final premium will be more than pro-rata; it will be based on the time this policy was in force, and increased by our short rate cancelation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audit during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX - CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. Long Term Policy

If the policy is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D. Cancelation

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancelation notice.

4. Any of these provisions that conflicts with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with that law.

### E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned on the Information Page by a duly authorized representative of the company.

*Barry S. Gilson*                          *Edmund F. Kelly*
SECRETARY                               PRESIDENT

# CALIFORNIA

## NOTICE TO POLICYHOLDERS

Dear Policyholder:

Please note that in addition to the premium due amount, the total amount payable to Liberty Mutual includes an amount referred to as a "CA Fraud Investigation and Prosecution Surcharge". Pursuant to California Senate Bill 1218 the Fraud Assessment is to be collected and used to fund the increased investigation and prosecution of Workers' Compensation fraud in California. The regulation calls for the assessment of .002939 of California policy premium for policies effective on or after 01/01/1999.

If you have any question, please contact your Liberty Mutual Sales Representative.

**GPO 4521 R8**
**(1/99)**

## CALIFORNIA WORKERS COMPENSATION ADMINISTRATIVE SURCHARGE

The Director of the Department of Industrial Relations adopted regulations to implement the Workers' Compensation employer assessment provisions set forth in the Labor Code Section 62.5, which was added into law as part of the Margolin-Bill Green Workers' Compensation Improvement Act of 1989. The regulations call for the assessment of .001762 of California policy premium for policies effective on or after 1/1/1999. This assessment is to provide for the administrative expenses that result from the Margolin-Bill Green Workers' Compensation Improvement Act of 1989. The assessment for your policy is shown on the information page as the CA WC Administrative Surcharge.

If you have any questions, please contact your Liberty Mutual Sales Representative.

**GPO 4187 R9
(01/99)**



# LOSS PREVENTION SERVICES

## Workers Compensation

Through our Loss Prevention Department, Liberty Mutual provides its workers compensation customers with loss prevention advisory service consistent with their workplace hazards and safety needs.

Our Loss Prevention representatives are trained to help you identify and appraise loss-producing problems in your business by:

- Completing hazard analysis of existing and planned facilities,
- Compiling, analyzing, and evaluating accident and loss statistics,
- Analyzing injury and occupational disease data,
- Evaluating the customer's loss prevention program, and
- Evaluating total loss potential.

Tailoring our services to your business needs, we can help you develop and maintain a loss prevention program by:

- Recommending the elements of an effective loss control program,
- Submitting specific recommendations to help reduce the frequency and severity of accidents,
- Consulting one of our specialists to assist, when necessary, and
- Assisting in the development and conduct of specialized training programs, when appropriate.

Our field force is backed up by specialists trained in the following fields:

*CHEMICAL SAFETY*

*CONTRACTING*

*DRIVER TRAINING*

*ERGONOMICS*

*HIGHWAY SAFETY*

*INDUSTRIAL HYGIENE*

*MACHINE GUARDING*

*MATERIAL HANDLING*

*NOISE CONTROL*

*OCCUPATIONAL HEALTH*

*PRESSURE VESSELS*

*SAFETY TRAINING*

*STEVEDORING*

---

TO OBTAIN FURTHER INFORMATION ABOUT LIBERTY MUTUAL'S LOSS PREVENTION SERVICES, CONTACT THE LOSS PREVENTION MANAGER AT ANY OF THE OFFICES LISTED ON THE FOLLOWING PAGE.

## LIBERTY MUTUAL GROUP OFFICE LOCATIONS

**NEW ENGLAND REGION**

Westwood Executive Center
200 Lowder Brook Drive, Suite 2100
Westwood, MA 02090
(617) 326-7100

20 Western Boulevard
P.O. Box 7500
Glastonbury, CT 06033-1256,
(203) 659-4111

10 Corporate Drive, Suite 100
Bedford, NH 03110-5954
(603) 472-7100

**NEW YORK REGION**

1133 Avenue of the Americas
New York, NY 10036
(212) 391-7500

444 Merrick Road
P.O. Box 576
Lynbrook, NY 11563
(516) 593-8200

325 Essjay Road, Suite 210
Buffalo, NY 14221
(716) 631-9140

5015 Campuswood Drive
Suite 202
Syracuse, NY 13057
(315) 433-1144

**MID ATLANTIC REGION**

15 Kings Grant Drive
Bala-Cynwyd, PA 19004
(215) 839-6600

Atrium Building
6101 Executive Boulevard
Rockville, MD 20852
(301) 881-9300

Six Becker Farm Road
Roseland, NJ 07068
(201) 740-9400

One PPG Place, Suite 2700
Pittsburgh, PA 15222-5409
(412) 391-6555

**CENTRAL REGION**

26200 Town Center Drive
Suite 200
P.O. Box 8001
Novi, MI 48375-1233
(810) 349-8000

111 Congressional Boulevard, Suite 200
P.O. Box 7170
Indianapolis, IN 46032
(317) 582-1761

Atrium Center
10400 Linn Station Rd., Suite 320
P.O. Box 35220
Louisville, KY 40223
(502) 425-8450

Point 6 Office Building
24651 Center Ridge Rd., Suite 400
Cleveland, OH 44145
(216) 835-5300

**SOUTHERN REGION**

1835 Shackleford Court, Suite 100
Norcross, GA 30093
(404) 564-0400

3535 Grandview Parkway, Suite 550
P.O. Box 530605
Birmingham, AL 35243
(205) 969-0067

155 Franklin Road, Suite 100
P.O. Box 300
Brentwood, TN 37027
(615) 373-9555

**MIDWEST REGION**

701 Warrenville Road, Suite 300
Lisle, IL 60532
(708) 515-9000

1660 South Highway 100
Minneapolis, MN 55416
(612) 546-7550

10733 Sunset Office Drive
P.O. Box 8509
St. Louis, MO 63127
(314) 965-5400

3077 North Mayfair Road
Milwaukee, WI 53222
(414) 771-5700

**SOUTHWEST REGION**

2100 Walnut Hill Lane
P.O. Box 152067
Irving, TX 75015-2067
(972) 550-7899

First Interstate Bank
13201 Northwest Freeway, Suite 400
P.O. Box 40914
Houston, TX 77240
(713) 460-4650

3503 N.W. 63rd Street, Suite 500
Oklahoma City, OK 73116
(405) 848-8921

**PACIFIC REGION**

6006 Wilshire Boulevard
P.O. Box 36907
Los Angeles, CA 90036
(213) 938-2282

333 City Boulevard West, Suite 300
P.O. Box 11020
Orange, CA 92668-1020
(714) 937-1400

6130 Stoneridge Mall Road
Building #3
P.O. Box 9117
Pleasanton, CA 94566-9117
(510) 734-9200

**FLORIDA REGION**

1900 Summit Tower Boulevard
Suite 120
Orlando, FL 32810
(407) 875-0880

760 N.W. 107th Avenue, Suite 200
Miami, FL 33172
(305) 226-4884

**WESTERN REGION**

Liberty Mutual Building
13111 East Briarwood Avenue, Suite 100
Englewood, CO 80112
(303) 799-0818

**SOUTHEAST REGION**

5624 Executive Center Drive, Suite 200
P.O. Box 25708
Charlotte, NC 28212
(704) 535-3150

4101 Cox Road, Suite 200
Glen Allen, VA 23060
(804) 270-6222

**CANADIAN DIVISION**

Liberty International Canada
181 Bay Street, Suite 3320
P.O. Box 744, BCE Place
Toronto, Ontario M5J 2T3
(416) 365-7587

**LIBERTY NORTHWEST INSURANCE CORP.**

Lloyd Center Tower
825 N.E. Multnomah Street
Portland, OR 97232
(503) 239-5800



Dear Policyholder,

The California portion of this policy is issued on a non-participating basis as described by the policy endorsement which wording is shown below. The California portion of this policy is therefore not eligible for dividends.

With respect to the insurance of risks and operations in California covered by this policy, the following language is deleted from the policy: "This policy is classified in Dividend Class XIII in Company 2 Workers Compensation and Employers Liability," and replaced by the following: "THIS POLICY IS ISSUED ON A NON-PARTICIPATING BASIS."

**Liberty Mutual Insurance Group/Boston**
Equal Opportunity Employer

GPO 4614B
01/95

# NOTICE TO POLICYHOLDERS

## CALIFORNIA WORKERS' COMPENSATION
## INSURANCE RATING LAWS

Pursuant to Section 11752.8 of the California Insurance Code, we are providing you with an explanation of the California workers' compensation rating laws applicable to new and renewal policies with anniversary rating dates on or after January 1, 1995.

1.  The laws requiring all insurers to charge the same minimum rate uniformly to all employers within a given classification have been repealed. Beginning January 1, 1995, we will establish our own rates for workers' compensation. Our rates will not be applicable until the first normal anniversary rating date of a policy on or after January 1, 1995. Our rates, rating plans and related information are filed with the Insurance Commissioner and are open for public inspection.

2.  The Insurance Commissioner can disapprove our rates, rating plans or classifications only if he has determined after public hearing that our rates might jeopardize our ability to pay claims or might create a monopoly in the market. A monopoly is defined by law as a market where one insurer writes 20% or more of that part of the California workers' compensation insurance that is not written by the State Compensation Insurance Fund. If the Insurance Commissioner disapproves our rates, rating plans or classifications, he may order an increase in the rates applicable to outstanding policies.

3.  Rating organizations may develop pure premium rates which are subject to the Insurance Commissioner's approval. A pure premium rate reflects the anticipated cost and expenses of claims per $100 of payroll for a given classification. Pure premium rates are advisory only, as we are not required to use the pure premium rates developed by any rating organization in establishing our own rates.

4.  We must adhere to a single, uniform experience rating plan. If you are eligible for experience rating under the plan, we will be required to adjust your premium to reflect your claim history. A better claim history generally results in a lower experience rating modification; more claims, or more expensive claims, generally result in a higher experience rating modification. The uniform experience rating plan developed by the insurance rating organization designated by the Insurance Commissioner is subject to the approval of the Insurance Commissioner.

5.  A standard classification system developed by the insurance rating organization designated by the Insurance Commissioner is subject to approval of the Insurance Commissioner. The standard classification system is a method of recognizing and separating policyholders into industry or occupational groups according to their similarities and/or differences. We can adopt and apply the standard classification system or develop and apply our own classification system, provided that we can report the payroll, expenses and other costs of claims in a way which is consistent with the standard classification system.

6.  Our rates and classifications may not violate the Unruh Civil Rights Act or be unfairly discriminatory.

7.  We will provide an appeal process for you to appeal the way we rate your insurance policy. The process will require us to respond to your written appeal within 30 days. If you are not satisfied with the result of your appeal, you may appeal our decision to the Insurance Commissioner.

## CALIFORNIA WORKERS' COMPENSATION INSURANCE
## NOTICE OF NON-RENEWAL

Section 11664 of the California Insurance Code which becomes operative November 30, 1994 requires us in most instances to provide you with a notice of non-renewal.  Except as specified in paragraphs 1 through 6 below, if we elect to non-renew your policy, we are required to deliver or mail to you a written notice stating the reason or reasons for the non-renewal of the policy.  The notice is required to be sent to you no earlier than 120 days before the end of the policy period and no later than 30 days before the end of the policy period.  If we fail to provide you the required notice, we are required to continue the coverage under the policy with no change in the premium rate until 60 days after we provide you with the required notice.

We are not required to provide you with a notice of non-renewal in any of the following situations:

1.   Your policy was transferred or renewed without a change in its terms or conditions or the rate on which the premium is based to another insurer or other insurers who are members of the same insurance group as us.

2.   The policy was extended for 90 days or less and the required notice was given prior to the extension.

3.   You obtained replacement coverage or agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

4.   The policy is for a period of no more than 60 days and you were notified at the time of issuance that it may not be renewed.

5.   You requested a change in the terms or conditions or risks covered by the policy within 60 days prior to the end of the policy period.

6.   We made a written offer to you at least 30 days, but not more than 120 days, prior to the end of the policy period to renew the policy at a changed premium rate.

YOUR RIGHT TO RATING AND DIVIDEND INFORMATION

Section 11752.6 of the California Insurance Code provides that you have the right to the following:

1.  **RATING INFORMATION** Upon written request, you are entitled to information relating to loss experience, claims, classification assignments and policy contracts as well as rating plans, rating systems, manual rules or other information that impact your premium that is maintained in the records of the Workers' Compensation Insurance Rating Bureau of California ("WCIRB"), a rating organization licensed by the California Insurance Commissioner.

2.  **POLICYHOLDER OMBUDSPERSON** A policyholder ombudsperson is available at the WCIRB to assist you in obtaining and evaluating the information referenced above. The ombudsperson may represent you in any dispute with us or on appeal to the Insurance Commissioner pursuant to Section 11752.6 of the Insurance Code. The address of the WCIRB is 525 Market Street, Suite 800, San Francisco, California 94105-2716. The telephone number if (415) 777-0777.

    There shall be established in all licensed rating organizations a policyholder ombudsperson. The Policyholder ombudsperson shall be a person with sufficient knowledge of the workers' compensation ratemaking process to provide information and assistance to policyholders in obtaining and evaluating the information provided in this section. Every rating organization licensed in this state shall provide staff and other necessary resources to allow the ombudsperson to provide prompt and complete service to workers' compensation policyholders of this state. The policyholder ombudsperson may represent the policyholder in any dispute with insurers or on appeal to the commissioner as provided in this section.

3.  **STATISTICAL REPORTING** For claims covered under this policy, we will estimate the ultimate cost of unsettled claims for statistical purposes eighteen months after the policy becomes effective and will report those estimates to the WCIRB no later than the twentieth month after the effective date of the policy. The cost of any settled claims will also be reported at that time. At twelve- month intervals thereafter, we will update and report to the WCIRB the estimated cost of any unsettled claims and the actual final cost of any claims settled in the interim. The amounts we report will be used by the WCIRB to compute your experience modification if you are eligible for experience rating.

4.  **DIVIDEND CALCULATION** If this is a participating policy (a policy on which a dividend may be paid), upon payment or non-payment of a dividend, we shall provide a written explanation to you which sets forth the basis of the dividend calculation. The explanation will be in clear, understandable language and will express the dividend as a dollar amount and as a percentage of the earned premium for the policy year on which the dividend is calculated.

Note: Information and assistance on policy questions is also available from the Department of Insurance Hotline, 1-800-957-HELP.

## California AB 110 - Section 11721 (b)
## Notice of Availability of Occupational Safety and Health Loss Control
## Consultation Services

Liberty Mutual Insurance Company maintains and provides certain occupational safety and health loss control consultation services for its workers' compensation policyholders as required by Section 11721 (a-e) of the California W.C. Insurance Code. Services provided under the Code include the conduct of workplace surveys to identify health and safety problems, review of employer injury records, and the development of plans to help improve employer health and safety loss records, including injury prevention programs pursuant to Section 6401.7 of the Labor Code.

Workers' compensation insurance policyholders may register comments about the insurer's loss control consultation services by writing to:  State of California, Department of Industrial Relations, Division of Occupational Safety and Health, P.O. Box 420603, San Francisco, CA.  94142.

Services required under this Code are available at no additional charge in addition to the insurance premium. To request these services you should contact:

> Regional Operations Manager
> Loss Prevention Department
> Liberty Mutual Insurance Co.
> 6130 Stoneridge Mall Road, Suite 400
> P.O. Box 9117
> Pleasanton, CA 94566-9117

GPO 4569 R1

ISSUED PLEASANTON
INFORMATION PAGE

**LIBERTY MUTUAL.**

Workers Compensation and
Employers Liability Policy

Liberty Mutual Insurance Group/Boston    SUBJECT TO DEDUCTIBLE

| ACCOUNT NO. | SUB ACCT NO. |
|---|---|
| 03 88 18 | 0000 |

LIBERTY MUTUAL FIRE INSURANCE COMPANY    16586

| POLICY NO. | TD/CD | SALES OFFICE | CODE | SALES REPRESENTATIVE | CODE | N/R | 1ST YEAR |
|---|---|---|---|---|---|---|---|
| WA2-16D-038818-019 | 92/0 | LONG BEACH | 605 | COOK          J | 7689 | 1 | 1999 |

Item 1. Name of  KIMCO STAFFING SERVICES, INC.; KIMSTAFF
Insured   EMPLOYEE OUTSOURCING SERVICES, INC.
          16832 RED HILL AVENUE          FEIN 330183676
Address   IRVINE, CA 92714

Status    CORPORATION

Other workplaces not shown above:  SEE ITEM FOUR

| | Mo. | Day | Year | | Mo. | Day | Year |
|---|---|---|---|---|---|---|---|
| Item 2. Policy Period: From | 01 | 01 | 1999 | to | 01 | 01 | 2000 |
| | 12:01 AM | | | standard time at the address of the insured as stated herein. | | | |

Item 3. Coverage

A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

CA

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3.A. The limits of our liability under Part Two are:

| Bodily Injury by Accident | $ | 1,000,000 | each accident |
|---|---|---|---|
| Bodily Injury by Disease | $ | 1,000,000 | policy limit |
| Bodily Injury by Disease | $ | 1,000,000 | each employee |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:
ALL STATES EXCEPT THOSE LISTED IN ITEM 3A AND THE STATES OF
ND NV OH WA WV WY AK

D. This policy includes these endorsements and schedules:  SEE EXTENSION OF INFORMATION PAGE
AND DEDUCTIBLE ENDORSEMENTS ATTACHED

Item 4. Premium — The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | | Code No. | Premium Basis — Estimated Total Annual Remuneration | Rates — Per $100 of Remuneration | LINE 140 — Estimated Annual Premiums |
|---|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE | | | | | |
| CA WC ADMIN SURCHARGE | $ | | 745 | | |
| CA FRAUD SURCHARGE | $ | | 1,243 | | |

| Minimum Premium $ 2384  (CA) | Total Estimated Annual Premium $ | 422,765 |
|---|---|---|
| Interim adjustment of premium shall be made:  MONTHLY | Deposit Premium  $ | 42,151 |

*N*1L08*

This policy, including all endorsements issued therewith, is hereby countersigned by

| Authorized Representative | Date 02/16/1999 |
|---|---|

| Loc. Code | Term. Oper.  BU | Audit Basis | Periodic Payment | Rating Basis | Pol. H.G. | Home State | Dividend | |
|---|---|---|---|---|---|---|---|---|
| 1 | 02/16/1999 | 6 | | DED | | CA | | NEW |

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| LANDSCAPE GARDENING - ALL OPERATIONS - INCLUDING MAINTENANCE OF GARDENS | (CA) | 0042 |
| IRRIGATION, DRAINAGE OR RECLAMATION WORKS OPERATION - ALL WORK INCIDENTAL TO MAINTENANCE AND OPERATION OF IRRIGATION, DRAINAGE OR RECLAMATION DISTRICTS - N.P.D. WITH "FARMS" | (CA) | 0251 |
| BAKERIES AND CRACKER MFG | (CA) | 2003 |
| FEED MFG - PREPARING OR COMPOUNDING FEEDS FOR LIVESTOCK AND POULTRY | (CA) | 201401 |
| CREAMERIES AND DAIRY PRODUCTS MFG | (CA) | 2063 |
| VEGETABLE OR FRUIT PROCESSORS - FROZEN | (CA) | 211701 |
| BOTTLING - BEVERAGES - NO SPIRITUOUS LIQUORS | (CA) | 2163 |
| CLOTHING MFG - INCLUDING EMBROIDERY MANUFACTURING | (CA) | 2501 |
| DRY CLEANING OR LAUNDRY - RETAIL - INCLUDING REPAIRING OR PRESSING, AND CASH ANS CARRY DEPARTMENTS ON PREMISES | (CA) | 2589 |
| MOBILE HOME MFG - N.P.D. WITH 3808, "AUTOMOBILE OR MOTORCYCLE MFG OR ASSEMBLING" | (CA) | 2797 |
| DOOR, SASH OR WINDOW MFG.-WOOD | (CA) | 2806 |
| CABINET MANUFACTURER - WOOD, INCLUDING THE MANUFACTURE OF COMMERCIAL AND INDUSTRIAL FIXTURES. | (CA) | 2812 |
| IRON OR STEEL WORKS - STRUCTURAL - SHOP - FABRICATING OR ASSEMBLING GIRDERS, BEAMS, COLUMNS, TRUSSES, STRINGERS OR OTHER STRUCTURAL IRON OR STEEL - N.P.D. WITH 3040, "IRON WORKS - NON-STRUCTURAL - SHOP" | (CA) | 3030 |
| DOOR OR WINDOW MFG-METAL OR COMBINATION METAL & GLASS | (CA) | 3060 |
| SHEET METAL PRODUCTS MFG - N.O.C. | (CA) | 3066 |

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| FURNITURE MFG - METAL | (CA) | 3076 |
| TOOL MFG-N.O.C. | (CA) | 3099 |
| FORGING WORKS - DROP OR MACHINE - INCLUDING TRIMMING | (CA) | 3110 |
| HARDWARE MFG - N.O.C. | (CA) | 3146 |
| NAIL, TACK OR RIVET MFG - COLD OR HOT WORK | (CA) | 3152 |
| FURNACE, HEATER OR RADIATOR MFG | (CA) | 3175 |
| ELECTRONIC ELEMENT MFG.--N.O.C.--N.P.D. | (CA) | 3178 |
| ELECTRICAL APPARATUS MFG - N.O.C. - INCLUDING ELECTRICAL APPLIANCES - N.P.D. WITH 3643, "ELECTRIC POWER OR TRANSMISSION EQUIPMENT MFG" | (CA) | 3179 |
| FIXTURES OR LAMP MFG - METAL - ELECTRIC OR GAS | (CA) | 3180 |
| WELDING OR CUTTING - N.O.C. - SHOP OR OUTSIDE - INCLUDING INCIDENTAL MACHINING OPERATIONS CONNECTED THEREWITH - N.P.D. | (CA) | 3365 |
| METAL GOODS MFG - N.O.C. | (CA) | 3400 |
| ELECTRONICS INDUSTRY: COMPUTER OR COMPUTER PERIPHERAL EQUIPMENT MFG | (CA) | 3567 |
| MACHINE MFG - ADDING OR SEWING - N.O.C. | (CA) | 3574 |
| BOILERMAKING | (CA) | 3620 |
| MACHINE SHOPS - N.O.C. | (CA) | 3632 |
| ELECTRIC POWER OR TRANSMISSION EQUIPMENT MFG | (CA) | 3643 |
| INSTRUMENT MFG - PROFESSIONAL OR SCIENTIFIC - N.O.C. | (CA) | 368101 |
| MILLWRIGHT WORK - N.O.C. - ERECTION OR REPAIR OF MACHINERY OR EQUIPMENT | (CA) | 3724 |

Policy No. WA2-16D-038818-019

GPO 2924

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| AUTOMOBILE OR MOTORCYCLE MFG OR ASSEMBLING | (CA) | 3808 |
| AUTOMOBILE TRUCK OR AUTOMOBILE TRUCK TRAILER MFG OR ASSEMBLING | (CA) | 3815 |
| CONCRETE PRODUCTS MFG - SHOP OR YARD WORK ONLY | (CA) | 4034 |
| INTEGRATED CIRCUIT AND SEMICONDUCTOR WAFER MFG. | (CA) | 411202 |
| OPTICAL GOODS MFG - N.O.C. | (CA) | 4150 |
| PAPER OR PULP MFG - INCLUDING CARD, BRISTOL, PAPER, STRAW, FIBRE OR LEATHER BOARD MANUFACTURING | (CA) | 4239 |
| BOX MFG - FOLDING PAPER BOXES - N.O.C. | (CA) | 4243 |
| CORRUGATED OR FIBRE BOARD CONTAINER MFG - INCLUDING CORRUGATING OR LAMINATING OF PAPER | (CA) | 4244 |
| PAPER COATING, CORRUGATING OR OILING | (CA) | 4250 |
| PAPER GOODS MFG - N.O.C. | (CA) | 4279 |
| PRINTING OPERATION - ALL OTHER EMPLOYEES - INCLUDING MISCELLANEOUS EMPLOYEES | (CA) | 4299 |
| NEWSPAPER PUBLISHING - ALL OTHER EMPLOYEES - INCLUDING MISCELLANEOUS EMPLOYEES | (CA) | 4304 |
| PRINTED CIRCUIT BOARD MFG - N.P.D. | (CA) | 4354 |
| MOTION PICTURES - DEVELOPMENT OF NEGATIVES, PRINTING AND ALL SUBSEQUENT OPERATIONS EXCEPT THE MARKETING OF THE PRODUCT THROUGH FILM EXCHANGES AT LOCATION OTHER THAN THE STUDIO | (CA) | 4360 |
| PLASTIC GOODS MFG - N.O.C. | (CA) | 4478 |
| PLASTICS EXTRUSION MOLDED PRODUCTS MFG- NOC | (CA) | 4495 |

*Extension of Information Page WC 00 00 01 A   Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| PLASTICS—INJECTION MOLDED PRODUCTS MFG- NOC | (CA) | 4498 |
| PAINT, VARNISH OR LACQUER MFG | (CA) | 4558 |
| DRUG, MEDICINE OR PHARMACEUTICAL PREPARATIONS MFG - COMPOUNDING, BLENDING OR PACKING ONLY - NOT MANUFACTURING INGREDIENTS | (CA) | 4611 |
| OXYGEN OR HYDROGEN MFG - INCLUDING TANK CHARGING | (CA) | 4635 |
| RENDERING OR FERTILIZER WORKS | (CA) | 4665 |
| IRON, STEEL, BRASS, BRONZE OR ALUMINUM ERECTION - NON-STRUCTURAL - WITHIN BUILDINGS | (CA) | 5102 |
| INSTRUMENT - PROFESSIONAL OR SCIENTIFIC - INSTALLATION, SERVICE OR REPAIR - AWAY FROM SHOP - NOT OFFICE MACHINES | (CA) | 5128 |
| ELECTRICAL WIRING - WITHIN BUILDINGS - INCLUDING INSTALLATION OR REPAIR OF FIXTURES OR APPLIANCES - SHOP AND OUTSIDE - EMPLOYEES WHOSE REGULAR HOURLY WAGE EQUALS OR EXCEEDS $21.00 PER HOUR.  ASSIGNMENT OF THIS CLASSIFICATION IS SUBJECT TO VERIFICATION AT THE TIME OF FINAL AUDIT THAT THE EMPLOYEE'S REGULAR HOURLY WAGE EQUALS OR EXCEEDS $21.00 PER HOUR.  THE PAYROLL OF AN EMPLOYEE WHOSE HOURLY WAGE IS NOT SHOWN TO EQUAL OR EXCEED $21.00 PER HOUR SHALL BE CLASSIFIED AS 5190, "ELECTRICAL WIRING" | (CA) | 514001 |
| CABINET OR FIXTURES - PORTABLE; INTERIOR TRIM - INSTALLATION - N.O.C. - N.P.D. WITH 5645, "CARPENTRY"; 5697, "CARPENTRY"; 5403, "CARPENTRY"; OR 5432, "CARPENTRY" | (CA) | 5146 |
| ELECTRICAL WIRING--WITHIN BUIDINGS-- INCLUDING INSTALLATION OR REPAIR OF FIXTURES OR APPLIANCES--SHOP AND OUTSIDE--EMPLOYEES WHOSE REGULAR | (CA) | 519004 |

*Extension of Information Page WC 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | CODE NO. |
|---|---|
| HOURLY WAGE DOES NOT EQUAL OR EXCEED $21.00 PER HOUR. | |
| COMPUTER OR COMPUTER SYSTEM INSTALL- ATION , INSPECTION, ADJUSTMENT, OR REPAIR - SHOP AND OUTSIDE    (CA) | 519101 |
| VENDING OR COIN OPERATED MACHINES - INSTALLATION, SERVICE OR REPAIR - INCLUDING STORAGE, SHOP AND OUTSIDE OPERATIONS AND SALESPERSONS    (CA) | 5192 |
| PARCEL DELIVERY COMPANIES - NO HANDLING OF BULK MERCHANDISE OR FREIGHT    (CA) | 7198 |
| TRUCKMEN - N.O.C. - INCLUDING TERMINAL EMPLOYEES, GARAGEMEN AND REPAIRMEN    (CA) | 7219 |
| FREIGHT HANDLERS - PACKING, HANDLING OR SHIPPING MERCHANDISE ON DOCKS OR RAILROAD PLATFORMS    (CA) | 7360 |
| BUS OR LIMOUSINE OPERATIONS - ALL EMPLOYEES    (CA) | 7382 |
| RADIO, TELEVISION OR COMMERCIAL BROADCASTING STATIONS - ALL EMPLOYEES - INCLUDING CLERICAL OFFICE EMPLOYEES AND SALESPERSONS    (CA) | 7610 |
| THE ACUTAL REMUNERATION OF PLAYERS, ENTERTAINERS OR MUSICIANS MUST BE USED UNLESS THE AMOUNT EXCEEDS $1,125 PER WEEK, IN WHICH EVENT $1,125 SHALL BE USED AS REPRESENTING THE ACTUAL WEEKLY REMUNERATION OF EACH PLAYER, ENTERTAINER OR MUSICIAN | |
| PATROLMEN OR GUARDS IN CONNECTION WITH INDUSTRIAL PLANTS OR WATER WORKS    (CA) | 772101 |
| STORES - CLOTHING, WEARING APPAREL OR DRY GOODS - RETAIL - INCLUDING ALTERATION DEPARTMENT    (CA) | 8008 |
| STORES - FURNITURE - WHOLESALE OR RETAIL    (CA) | 8015 |
| STORES - RETAIL - N.O.C.    (CA) | 8017 |

Policy No.  WA2-16D-038818-019

Page No.    5

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| STORES - WHOLESALE - NOC | (CA) | 8018 |
| STORES - CLOTHING, WEARING APPAREL OR DRY GOODS - WHOLESALE OR COMBINED WHOLESALE AND RETAIL - NO MANUFACTURING | (CA) | 8032 |
| STORES - DEPARTMENT STORES - RETAIL - INCLUDING CLERICAL OFFICE EMPLOYEES AND SALESMEN | (CA) | 8039 |
| STORES - AUTOMOBILE ACCESSORIES - WHOLESALE OR RETAIL - INCLUDING INSIDE OR OUTSIDE SALESPERSONS | (CA) | 8046 |
| STORES - CERAMIC TILE - WHOLESALE OR RETAIL | (CA) | 8059 |
| STORES - WINE, BEER OR SPIRITS - RETAIL | (CA) | 8060 |
| STORES - COMPUTER - WHOLESALE OR RETAIL INCLUDING OUTSIDE SALESPERSON | (CA) | 8062 |
| IRON OR STEEL MERCHANTS - NOT JUNK DEALERS OR IRON OR STEEL SCRAP DEALERS | (CA) | 8106 |
| CONSTRUCTION OR ERECTION PERMANENT YARDS -- FOR MAINTENENCE OF EQUIPMENT OR STORAGE OF MATERIAL. | (CA) | 8227 |
| LUMBERYARDS - COMMERCIAL - NO SECONDHAND MATERIALS | (CA) | 8232 |
| WAREHOUSES - COLD STORAGE | (CA) | 8291 |
| WAREHOUSES - GENERAL MERCHANDISE - N.O.C. | (CA) | 8292 |
| WAREHOUSES - FURNITURE - INCLUDING PACKING OR HANDLING HOUSEHOLD GOODS AWAY FROM INSURED'S PREMISES | (CA) | 8293 |
| AUTOMOBILE OR AUTOMOBILE TRUCK SERVICE STATIONS - INCLUDING ACCESSORY AND SPARE PARTS DEPARTMENTS AND CASHIERS - N.O.C. - N.P.D. WITH 8392, "AUTOMOBILE OR AUTOMOBILE TRUCK STORAGE GARAGES OR PARKING STATIONS OR LOTS", AND 8388, "RUBBER TIRE DEALERS". | (CA) | 8387 |

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| AUTOMOBILE OR AUTOMOBILE TRUCK REPAIR SHOPS OR GARAGES - INCLUDING ALL ENGINE, MECHANICAL, ELECTRICAL, BODY AND FENDER REPAIRING OR REBUILDING | (CA) | 8389 |
| AUTOMOBILE OR AUTOMOBILE TRUCK DEALERS - ALL EMPLOYEES OTHER THAN AUTOMOBILE OR AUTOMOBILE TRUCK SALESPERSONS -- INCLUDING ACCESSORY OR SPARE PARTS SALES | (CA) | 8391 |
| ENGINEERS - CONSULTING - MECHANICAL, CIVIL, ELECTRICAL AND MINING ENGINEERS AND ARCHITECTS - NOT ENGAGED IN ACTUAL CONSTRUCTION OR OPERATION - N.P.D. | (CA) | 8601 |
| INSPECTION FOR INSURANCE OR VALUATION PURPOSES - N.O.C. - INCLUDING SALESMEN, COLLECTORS OR MESSENGERS | (CA) | 8720 |
| SALESPERSONS-OUTSIDE | (CA) | 8742 |
| MORTGAGE BROKERS - ALL EMPLOYEES - INCLUDING CLERICAL OFFICE EMPLOYEES AND SALESMEN | (CA) | 8743 |
| BANKS - ALL EMPLOYEES - INCLUDING APPRAISERS, BANK GUARDS AND ATTENDANTS, FIELD AUDITORS, OFFICE MACHINE REPAIR, CLERICAL OFFICE EMPLOYEES, COLLECTORS AND SALESMEN | (CA) | 8808 |
| CLERICAL OFFICE EMPLOYEES - N.O.C. | (CA) | 8810 |
| PRINTING OPERATION - EDITING, DESIGNING, PROOFREADING, AND PHOTOGRAPHIC COMPOSING - INCLUDING CLERICAL OFFICE EMPLOYEES | (CA) | 8813 |
| COMPUTER PROGRAMMING OR SOFTWARE DEVELOPMENT  ALL EMPLOYEES- INCLUDING CLERICAL OFFICE EMPLOYEES AND SALESPERSONS - N.P.D. | (CA) | 8859 |
| JANITORIAL SERVICES - BY CONTRACTORS | (CA) | 9008 |
| BUILDING OPERATION INCLUDING JANITORIAL SERVICES, CARE, CUSTODY AND MAINTENANCE OF PREMISES. | (CA) | 9015 |

Policy No. WA2-16D-038818-019

WC 00 00 01 A

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | CODE NO. |
|---|---|
| THE USE OF THIS CLASSIFICATION IS IS SUBJECT TO A MINIMUM PAYROLL OF $2,000 PER ANNUM FOR ONE LOCATION AND TO A MINIMUM OF $1,000 FOR EACH ADDITIONAL LOCATION COVERED BY THE SAME POLICY. THE ABOVE REQUIREMENTS SHALL APPLY ONLY TO FLATS, APARTMENTS, OR MULTIPLE DWELLINGS HAVING FOUR OR MORE UNITS. | |
| SKATING RINKS - ICE OR ROLLER - CARE, CUSTODY AND MAINTENANCE OF PREMISES; OPERATION OF ELEVATORS OR HEATING, LIGHTING OR POWER APPARATUS - INCLUDING POLICEMEN, WATCHMEN, MUSICIANS, BOX OFFICE EMPLOYEES, TICKET SELLERS OR GATE ATTENDANTS    (CA) | 901603 |
| HOSPITALS - ALL EMPLOYEES - INCLUDING CLERICAL OFFICE EMPLOYEES AND SALESPERSONS. IN DETERMINING THE PREMIUM CHARGE FOR STUDENT NURSES OR INTERNES, SUCH PREMIUMS SHALL BE COMPUTED ON THE BASIS OF AN AVERAGE WAGE OF AT LEAST $100 PER WEEK    (CA) | 9043 |
| EXCERCISE OR HEALTH INSTITUTE - ALL EMPLOYEES - INCLUDING RESTAURANT EMPLOYEES    (CA) | 905301 |
| CLUBS - COUNTRY, GOLF, SWIMMING, TENNIS OR YACHTING - ALL EMPLOYEES - INCLUDING RESTAURANT OR TAVERN EMPLOYEE    (CA) | 9060 |
| RESTAURANTS OR TAVERNS - ALL EMPLOYEES- INCLUDING MUSICIANS AND ENTERTAINERS - N.P.D.    (CA) | 9079 |
| ATHLETIC TEAMS OR PARKS - CARE, OPERATION AND MAINTENANCE OF GROUNDS OR CARE OF TEAMS - INCLUDING TICKET SELLERS OR COLLECTORS, TRAINERS, COACHES, SPECIAL OFFICERS OR MANAGERS - OTHER THAN PLAYING MANAGERS    (CA) | 9182 |
| MUNICIPAL, TOWNSHIP OR COUNTY EMPLOYEES: MUNICIPAL OR COUNTY EMPLOYEES - NOT    (CA) | 9410 |

*Extension of Information Page WC 00 00 01 A  Item 4. Index of Classifications*

| CLASSIFICATION OF OPERATIONS | | CODE NO. |
|---|---|---|
| ENGAGED IN MANUAL LABOR, CLERICAL OFFICE DUTIES, NOR IN IMMEDIATE CHARGE OF CONSTRUCTION OR ERECTION WORK – N.O.C. | | |
| HOUSEHOLD APPLIANCES – ELECTRICAL – INSTALLATION, SERVICE OR REPAIR | (CA) | 9519 |
| SCAFFOLDS, SHORING, CONCRETE OR CEMENT DISTRIBUTING TOWERS, HOD HOISTS OR CONSTRUCTION ELEVATORS – INSTALLATION OR REMOVAL | (CA) | 9529 |

*Extension of Information Page WC 00 00 01 A  Item 4.*

| Classification of Operations | | Premium Basis | Rate | |
|---|---|---|---|---|
| Entries in this Item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premium |
| CA | | | | |
| | | | | |
| IRVINE: 9 EXECUTIVE CIRCLE #200, 92614 | | | | |
| IRVINE: 2222 MICHELSON DRIVE #246, 92612 | | | | |
| ANAHEIM: 2618 E KATELLA AVE #C, 92806 | | | | |
| RIVERSIDE: 6840 INDIANA AVE #100, 92506 | | | | |
| LAKE FOREST: 23792 ROCKFIELD BLVD #180, 92630 | | | | |
| ONTARIO: 601 S MILLIKEN AVE #A, 91761 | | | | |
| LAKEWOOD: 5691 WOODRUFF AVE, 90713 | | | | |
| SAN BERNARDINO: 685 E CARNEGIE DR #110, 92408 | | | | |
| SANTA ANA: 1701 E EDINGER #C4, 92705 | | | | |
| SANTA FE SPRINGS: 12070 TELEGRAPH ROAD #300, 90670 | | | | |
| TEMECULA: 27450 YNEZ ROAD #109, 92591 | | | | |
| TORRANCE: 3838 CARSON STREET #307, 90503 | | | | |
| ENCINO: 17401 VENTURA BLVD #A35, 91316 | | | | |
| | 0042 | 4,148 | 11.05 | 458 |
| | 0251 | IF ANY | 5.57 | |
| | 2003 | 3,456 | 6.05 | 209 |
| | 201401 | 5,724 | 8.32 | 476 |
| | 2063 | 53,941 | 7.73 | 4,170 |
| | 211701 | 48,866 | 10.35 | 5,058 |
| | 2163 | IF ANY | 6.42 | |
| | 2501 | 15,984 | 3.03 | 484 |
| | 2589 | 376,218 | 4.66 | 17,532 |
| | 2797 | 1,075,545 | 10.78 | 115,944 |
| | 2806 | 1,326 | 9.47 | 126 |
| | 2812 | 116,131 | 9.05 | 10,510 |
| | 3030 | 68,514 | 15.25 | 10,448 |
| | 3060 | 193,644 | 8.26 | 15,995 |
| | 3066 | IF ANY | 5.65 | |
| | 3076 | 18,816 | 6.63 | 1,248 |
| | 3099 | 22,160 | 3.20 | 709 |
| | 3110 | 59,304 | 8.91 | 5,284 |
| | 3146 | 21,861 | 5.18 | 1,132 |
| | 3152 | 917,458 | 3.46 | 31,744 |
| | 3175 | 89,413 | 7.24 | 6,474 |
| | 3178 | 19,542 | 2.43 | 475 |
| | 3179 | 47,967 | 3.85 | 1,847 |

Experience Modification:*

Policy No. WA2-16D-038818-019                          Page No.    10

Extension of Information Page WC 00 00 01 A  Item 4.

| Classification of Operations | | Premium Basis | Rate | |
|---|---|---|---|---|
| Entries in this Item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premium |
| CA          (CONT-D) | | | | |
| | 3180 | 14,448 | 7.20 | 1,040 |
| | 3365 | 131,385 | 11.74 | 15,425 |
| | 3400 | IF ANY | 8.15 | |
| | 3567 | 3,046,512 | 2.19 | 66,719 |
| | 3574 | 239,766 | 3.54 | 8,488 |
| | 3620 | 26,880 | 8.39 | 2,255 |
| | 3632 | 1,343,956 | 4.19 | 56,312 |
| | 3643 | IF ANY | 4.63 | |
| | 368101 | 2,080,273 | 2.19 | 45,558 |
| | 3724 | 48,794 | 7.44 | 3,630 |
| | 3808 | 27,216 | 3.92 | 1,067 |
| | 3815 | 19,416 | 8.60 | 1,670 |
| | 4034 | 12,602 | 11.98 | 1,510 |
| | 411202 | 3,527,086 | 1.67 | 58,902 |
| | 4150 | 216,605 | 2.95 | 6,390 |
| | 4239 | IF ANY | 4.29 | |
| | 4243 | 91,890 | 5.67 | 5,210 |
| | 4244 | IF ANY | 6.33 | |
| | 4250 | IF ANY | 5.27 | |
| | 4279 | 7,650 | 7.49 | 573 |
| | 4299 | 236,480 | 4.74 | 11,209 |
| | 4304 | 18,054 | 7.80 | 1,408 |
| | 4354 | IF ANY | 3.27 | |
| | 4360 | 24,576 | 1.56 | 383 |
| | 4478 | 449,703 | 6.14 | 27,612 |
| | 4495 | 48,449 | 6.91 | 3,348 |
| | 4498 | 157,632 | 4.99 | 7,866 |
| | 4558 | IF ANY | 4.18 | |
| | 4611 | 539,511 | 2.51 | 13,542 |
| | 4635 | 313,043 | 2.84 | 8,890 |
| | 4665 | IF ANY | 9.71 | |
| | 5102 | 62,205 | 11.45 | 7,122 |
| | 5128 | IF ANY | 2.43 | |
| | 514001 | IF ANY | 5.37 | |
| | 5146 | 14,724 | 8.70 | 1,281 |
| | 519004 | IF ANY | 9.04 | |
| | 519101 | 3,518,705 | 3.38 | 118,932 |
| | 5192 | 83,160 | 10.02 | 8,333 |
| | 7198 | 139,812 | 13.76 | 19,238 |
| | 7219 | 530,921 | 13.76 | 73,055 |
| | 7360 | IF ANY | 13.83 | |

Experience Modification:*

GPO 2923                                                                          WC 00 00 01 A

*Extension of Information Page WC 00 00 01 A  Item 4.*

| Classification of Operations | | Premium Basis | Rate | |
|---|---|---|---|---|
| Entries in this Item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premium |
| CA          (CONT-D) | | | | |
| | 7382 | IF ANY | 11.92 | |
| | 7610 | 474,317 | .99 | 4,696 |
| | 772101 | 76,010 | 6.64 | 5,047 |
| | 8008 | 13,305 | 3.36 | 447 |
| | 8015 | 47,417 | 6.73 | 3,191 |
| | 8017 | 1,421,957 | 4.37 | 62,140 |
| | 8018 | 1,147,306 | 6.71 | 76,984 |
| | 8032 | IF ANY | 6.20 | |
| | 8039 | 488 | 4.15 | 20 |
| | 8046 | 1,265,789 | 4.88 | 61,771 |
| | 8059 | 234,616 | 4.52 | 10,605 |
| | 8060 | 15,360 | 7.42 | 1,140 |
| | 8062 | 305,017 | 2.08 | 6,344 |
| | 8106 | IF ANY | 8.04 | |
| | 8227 | IF ANY | 9.09 | |
| | 8232 | 6,462 | 10.12 | 654 |
| | 8291 | 16,351 | 7.38 | 1,207 |
| | 8292 | 34,354 | 11.15 | 3,830 _ |
| | 8293 | IF ANY | 21.67 | |
| | 8387 | IF ANY | 6.52 | |
| | 8389 | IF ANY | 7.23 | |
| | 8391 | IF ANY | 4.36 | |
| | 8601 | 97,154 | 1.01 | 981 |
| | 8720 | 82,362 | 4.42 | 3,640 |
| | 8742 | 1,151,648 | .93 | 10,710 |
| | 8743 | 84,000 | .61 | 512 |
| | 8808 | 4,000,000 | 1.38 | 55,200 |
| | 8810 | 31,815,639 | .77 | 244,980 |
| | 8813 | 1,035,730 | 1.01 | 10,461 |
| | 8859 | 106,217 | .38 | 404 |
| | 9008 | 15,918 | 11.42 | 1,818 |
| | 9015 | 18,366 | 8.40 | 1,543 |
| | 901603 | 27,719 | 6.13 | 1,699 |
| | 9043 | 41,304 | 3.04 | 1,256 |
| | 905301 | 58,380 | 4.57 | 2,668 |
| | 9060 | 4,176 | 5.43 | 227 |
| | 9079 | 10,208 | 5.06 | 517 |
| | 9182 | IF ANY | 2.18 | |
| | 9410 | 700,399 | 2.00 | 14,008 |
| | 9519 | 20,400 | 6.09 | 1,242 |
| | 9529 | IF ANY | 12.63 | |
| DEDUCTIBLE PREMIUM ADJUSTMENT    0.796 | 9664 | | | 1,112,197 |
| | | PREM.SUBJ.TO MOD. | | 285,036 |

Experience Modification:*    2.06

*Extension of information Page WC* u;;;; *01 A Item 4.*

| Classification of Operations | | Premium Basis | Rate | |
| --- | --- | --- | --- | --- |
| Entries in this Item, except as specifically provided elsewhere in this policy, do not modify any of the other provisions of this policy. | Code No. | Estimated Total Annual Remuneration | Per $100 of Remuneration | Estimated Annual Premium |
| CA          (CONT-D) | | | | |
| | | MODIFIED-PREMIUM | | 587,174 |
| SCHEDULE CREDIT   28% | 9887 | | | 164,409 |
| | | STATE TOTAL | | 422,765 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Experience Modification:* | | | | 422,765 |

Extension of information Page WC 00 00 01 A  Item 4

## UNITED STATES LONGSHORE AND
## HARBOR WORKERS' COMPENSATION ACT — INCIDENTAL

| States | Percentage of increase — non-Federal rates | States | Percentage of increase — non-Federal rates |
|--------|--------------------------------------------|--------|--------------------------------------------|
| CA | 112.3% | | |

Increased Limit — Part II — % of Premium — (Percentage is the same as shown
for the individual states in Item 4. of the declarations.)

Policy No.  WA2-16D-038818-019

Page No.    14

GPO 2926

WC 00 00 01 A

*Extension of information Page  WC 00 00 01 A*

## Endorsement Schedule

WA2-16D-038818-019

<u>FORM NUMBER</u>                    <u>FORM NAME</u>

WC990434                    CA AMENDATORY END.
WC040301A                   POLICY AMENDATORY END. - CA
WC040336                    AGREEMENT LIMITING INSURANCE
WC040305                    VOL COMP EMPL LIAB COV - CA
WC040360                    EMPL LIAB COV AMEND END - CA
WC040101A                   L AND HW COMP. ACT COV. - CA
WC040601A                   CA CANCELATION END.
WC040402                    CA MANDATORY RATE CHANGE END.
WC990627R2                  DEDUCTIBLE ENDORSEMENT

WC 00 00 01 A

## Workers Compensation and Employers Liability Policy

### California Amendatory Endorsement

With respect to the insurance of risks and operations in California covered by this policy, the following language is deleted from the policy:  "This policy is classified in Dividend Class XIII Workers Compensation and Employers Liability," and replaced by the following:  "THIS POLICY IS ISSUED ON A NON-PARTICIPATING BASIS."

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                          Expiration Date

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis

Issued To

1                                    Countersigned by .................................................................
                                                               Authorized Representative

        Issued              Sales Office and No.        End. Serial No.      1

WC 99 04 34

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## POLICY AMENDATORY ENDORSEMENT — CALIFORNIA

It is agreed that, anything in the policy to the contrary notwithstanding, such insurance as is afforded by this policy by reason of the designation of California in Item 3 of the information page is subject to the following provisions:

1. **Minors Illegally Employed — Not Insured.** This policy does not cover liability for additional compensation imposed on you under Section 4557, Division IV, Labor Code of the State of California, by reason of injury to an employee under sixteen years of age and illegally employed at the time of injury.

2. **Punitive or Exemplary Damages — Uninsurable.** This policy does not cover punitive or exemplary damages where insurance or liability therefor is prohibited by law or contrary to public policy.

3. **Increase in Indemnity Payment — Reimbursement** You are obligated to reimburse us for the amount of increase in indemnity payments made pursuant to subdivision (d) of Section 4650 of the California Labor Code, if the late indemnity payment which gives rise to the increase in the amount of payment is due less than seven(7) days after we receive the completed claim form from you. You are obligated to reimburse us for any increase in indemnity payments not covered under this policy and will reimburse us for any increase in indemnity payment not covered under the policy when the aggregate total amount of the reimbursement payments paid in a policy year exceeds one hundred dollars($100).

   If we notify you in writing, within 30 days of the payment, that you are obligated to reimburse us, we will bill you for the amount of increase in indemnity payment and collect it no later than the final audit. You will have 60 days, following notice of the obligation to reimburse, to appeal the decision of the insurer to the Department of Insurance.

4. **Application of Policy.** Part One, "Workers' Compensation Insurance", A, "How This Insurance Applies", is amended to read as follows:

   This worker's compensation insurance applies to bodily injury by accident or disease, including death resulting therefrom. Bodily injury by accident must occur during the policy period. Bodily injury by disease must be caused or aggravated by the conditions of your employment. Your employee's exposure to those conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. **Rate Changes.** The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

6. **Long Term Policy.** If this policy is written for a period longer than one year, all the provisions of this policy shall apply separately to each consecutive twelve month period or, if the first or last consecutive period is less than twelve months, to such period of less than twelve months, in the same manner as if a separate policy had been written for each consecutive period.

7. **Statutory Provision.** Your employee has a first lien upon any amount which becomes owing to you by us on account of this policy, and in the case of your legal incapacity or inability to receive the money and pay it to the claimant, we will pay it directly to the claimant.

It is further agreed that this policy, including all endorsements forming a part thereof, constitutes the entire contract of insurance. No condition, provision, agreement, or understanding not set forth in this policy or such endorsements shall affect such contract or any rights, duties, or privileges arising therefrom.

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                         Expiration Date

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis

Issued To

1                                    Countersigned by ...........................................................
                                                            Authorized Representative

        Issued                 Sales Office and No.        End. Serial No.      2

WC 04 03 01A                                             Page 2 of 2

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## ENDORSEMENT AGREEMENT LIMITING AND RESTRICTING THIS INSURANCE

The insurance under this policy is limited as follows:

It is AGREED that, anything in this policy to the contrary notwithstanding, this policy DOES NOT INSURE:

**LIABILITY**
**NOT INSURED**
Any liability which the employer named in item 1 of the Information Page may have arising out of operations conducted jointly by the employer with any other person, firm or corporation, except as specifically set forth in item 1 of the Information Page or by endorsement attached to this policy.

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis

Issued To

1

Countersigned by .................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.     3

**WC 04 03 36**
**(Ed. 8/15/84)**

FAILURE TO SECURE THE PAYMENT OF FULL COMPENSATION BENEFITS FOR ALL EMPLOYEES AS REQUIRED BY LABOR CODE SECTION 3700 IS A VIOLATION OF LAW AND MAY SUBJECT THE EMPLOYER TO THE IMPOSITION OF A WORK STOP ORDER. LARGE FINES AND OTHER SUBSTANTIAL PENALTIES (Labor Code Section 3710.1, et seq.).

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

### VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE
### ENDORSEMENT – CALIFORNIA

If the employer named in item 1 of the Information Page has in his employment persons not entitled to compensation under Division 4 of the Labor Code of the State of California, this policy shall operate as an election on the part of the employer to come under the compensation provisions of Division 4 with respect to those persons described in the Schedule below.

This policy applies to those persons described in the Schedule below as employees.

**Schedule**

All Employees except those specifically excluded by endorsement.

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                          Expiration Date

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis

Issued To

1                                    Countersigned by .........................................................................
                                                          **Authorized Representative**

                  Issued              Sales Office and No.          End. Serial No.      4

WC 04 03 05
(Ed. 1-85)

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### EMPLOYERS LIABILITY COVERAGE AMENDATORY ENDORSEMENT — CALIFORNIA

The insurance afforded by Part Two (Employers Liability Insurance) by reason of designation of California in Item 3 of the information page is subject to the following provisions:

**A. "How This Insurance Applies", is amended to read as follows:**

A.  How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury means a physical or mental injury, including resulting death. Bodily injury does not include emotional distress, anxiety, discomfort, inconvenience, depression, dissatisfaction or shock to the nervous system, unless caused by either a manifest physical injury or a disease with a physical dysfunction or condition resulting in treatment by a licensed physician and surgeon.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.
2.  The employment must be necessary or incidental to your work in California.
3.  Bodily injury by accident must occur during the policy period.
4.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.
5.  If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**C. "Exclusions", is amended to read as follows:**

C.  Exclusions

This insurance does not cover:
1.  liability assumed under a contract;
2.  bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;
3.  any obligation imposed by a workers' compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;
4.  bodily injury intentionally caused or aggravated by you;
5.  bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;
6.  bodily injury arising out of termination of employment;
7.  bodily injury arising out of the coercion, demotion, reassignment, discipline, defamation, harassment or humiliation of, or discrimination against any employee.

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis

Issued To

1

Countersigned by ...............................................................................
                                          Authorized Representative

Issued          Sales Office and No.          End. Serial No.        5

WC 04 03 60
(Ed. 8-86)

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT
## COVERAGE ENDORSEMENT - CALIFORNIA

This endorsement applies only to work subject to the Longshore and Harbor Workers' Compensation Act in California. The policy applies to that work as though California were listed in item 3.A of the Information Page.

General Section C. Workers' Compensation Law is replaced by the following:

### C.   Workers Compensation Law

Workers' Compensation Law means the workers' or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A of the Information Page and the Longshore and Harbor Workers' Compensation Act (33 USC Section 901-950). It includes any amendments to those laws that are in effect during the policy period. It does not include any other federal workers' or workmen's compensation law, other federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

Part Two (Employers Liability Insurance), C. Exclusions., exclusion 8, does not apply to work subject to the Longshore and Harbor Workers' Compensation Act.

This endorsement does not apply to work subject to the Defense Base Act, the Outer Continental Shelf Lands Act, or the Nonappropriated Fund Instrumentalities Act.

The estimated premium for the Longshore and Harbor Workers' Compensation Act coverage provided by this endorsement is as shown in the Schedule below or item 4 of the Information Page.

### Schedule

| Code No. | Classification | Estimated Annual Remuneration | Rate Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| | | | | |

Total Estimated Annual Premium $ _____

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                           Expiration Date

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis

Issued To

1                                   Countersigned by ...................................................................
                                                    Authorized Representative

|       Issued          Sales Office and No.          End. Serial No.     6 |

WC 04 01 01 A
(Ed. 4-92)

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

## CALIFORNIA CANCELATION ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because California is shown in Item 3.A. of the information page.

The cancelation condition in Part Six (Conditions) of the policy is replaced by these conditions:

**Cancelation**

1. You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2. We may cancel this policy for one or more of the following reasons:

   a. Non-payment of premium;

   b. Failure to report payroll;

   c. Failure to permit us to audit payroll as required by the terms of this policy or of a previous policy issued by us;

   d. Failure to pay any additional premium resulting from an audit of payroll required by the terms of this policy or any previous policy issued by us;

   e. Material misrepresentation made by you or your agent;

   f. Failure to cooperate with us in the investigation of a claim;

   g. Failure to comply with Federal or State safety orders;

   h. Failure to comply with written recommendations of our designated loss control representatives;

   i. The occurrence of a material change in the ownership of your business;

   j. The occurrence of any change in your business or operations that materially increases the hazard for frequency or severity of loss;

   k. The occurrence of any change in your business or operation that requires additional or different classification for premium calculation;

   l. The occurrence of any change in your business or operation which contemplates an activity excluded by our reinsurance treaties.

3.  If we cancel your policy for any of the reasons listed in (a) through (f), we will give you 10 days advance written notice, stating when the cancelation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice. If we cancel your policy for any of the reasons listed in Items (g) through (l), we will give you 30 days advance written notice; however, we agree that in the event of cancelation and reissuance of a policy effective upon a material change in ownership or operations, notice will not be provided.

4.  The policy period will end on the day and hour stated in the cancelation notice.

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis

Issued To

1                              Countersigned by ...........................................................................
                                                          Authorized Representative

            Issued              Sales Office and No.          End. Serial No.      7

WC 04 06 01 A                                                    Page 2 of 2

WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## MANDATORY RATE CHANGE ENDORSEMENT - CALIFORNIA

The premium and rates with respect to the insurance provided by this policy by reason of the designation of California in Item 3 of the Information Page are subject to change if ordered by the Insurance Commissioner of the State of California pursuant to Section 11737 of the California Insurance Code.

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                          Expiration Date

For attachment to Policy No.    WA2-16D-038818-019

Audit Basis

Issued To

1                                        Countersigned by ...............................................................
                                                              Authorized Representative

           Issued              Sales Office and No.          End. Serial No.      B

**WC 04 04 02**
(Ed. 1-95)

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## DEDUCTIBLE ENDORSEMENT

This deductible endorsement applies only to the insurance provided by the policy because the following states are listed in item 3.A. of the Information Page:  CA AND OTHER STATES INSURANCE AS PER SECTION 3.C. OF THE INFORMATION PAGE.

This deductible endorsement applies between you and us. It does not affect or alter the rights of others under the policy.

| Coverage | Deductible Amount; Basis | |
|---|---|---|
| Bodily Injury By Accident | $ 100,000 | each occurrence |
| Bodily Injury By Disease | $ 100,000 | each claim |
| All Covered Bodily Injury | $ 2,700,000 | aggregate |

### A.   How This Deductible Applies

1.   Each Occurrence; Each Claim

You are responsible, up to the deductible amount shown above, for the total of:

a.   all benefits required of you by the workers compensation law (including benefits payable under PART THREE – OTHER STATES INSURANCE or under any endorsement); plus

b.   all sums you legally must pay as damages; plus

c.   all "allocated loss adjustment expense" as part of any claim or suit we defend;

because of (1) bodily injury by accident to your employees arising out of any one "occurrence"; (2) bodily injury by disease to your employee arising out of any one "claim."

We are responsible for those amounts of benefits, damages and "allocated loss adjustment expense" that exceed the applicable deductible amount shown above.

We will advance part or all of the deductible amount to settle any claim, proceeding or suit. You will reimburse us promptly for any amount(s) we have so advanced.

2.   Policy Period Aggregate

The amount shown above as "policy aggregate", is the most you must pay for the sum of all benefits, damages and "allocated loss adjustment expense" because of bodily injury by accident and bodily injury by disease for each policy period.

WC 99 06 27 R2                                                                            Page 1 of 3

Copyright 1990, Liberty Mutual Insurance Company

The "aggregate" will not be reduced if:

(a) this endorsement is issued for a term of less than (1) year, or

(b) the policy or this endorsement is cancelled by you or by us before the end of the policy period.

B. Effect of Deductible on Limits of Liability

1. With respect to the Employers Liability Insurance provided by this policy, the applicable "each employee", "each accident", "policy" or other similar limits of liability are reduced by the sum of all damages (but not "allocated loss adjustment expense") within the applicable deductible amount shown above. Those limits are not in addition to the deductible amount. This provision applies whether the Employers Liability Insurance is provided by PART TWO or by an endorsement to this policy.

2. For purposes of this paragraph B., all damages because of bodily injury by accident or bodily injury by disease are deemed to have been paid or to be payable before "allocated loss adjustment expense" has been paid or is payable.

C. Definitions

1. "Allocated loss adjustment expense" means claim adjustment expense directly allocated by us to a particular claim. Such expense shall include, but shall not be limited to, attorneys' fees for claims in suit, court and other specific items of expense such as medical examination, expert medical or other testimony, laboratory and X-ray, autopsy, stenographic, witnesses and summonses, and copies of documents.

2. "Claim" means a written demand you receive for:

a. benefits required of you by the workers compensation law; or

b. damages covered by this policy;

including a filing by your employee for such benefits with an agency authorized by law, and a suit or other proceeding brought by your employee for such benefits or damages. "By your employee" includes such action taken by others legally entitled to do so on his or her behalf.

All claims for benefits or damages because of bodily injury by the same or related diseases to any one person will be considered as one claim when determining how the deductible amounts apply.

3. "Occurrence" means a single accident which results in bodily injury to one or more of your employees.

D. Conditions

1. Recovery From Others

We have your rights and the rights of persons entitled to the benefits of this insurance to recover all advances and payments, including those within the deductible amount from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

WC 99 06 27 R2                                                                 Page 2 of 3

Copyright 1990, Liberty Mutual Insurance Company

if we recover any advance or payment made under this policy from anyone liable for the injury, the amount we recover will first be applied to any payments made by us in excess of the deductible amount; only then will the remainder of that recovery, if any, be applied to reduce the deductible amount paid or reimbursed or reimbursable by you.

2. Cancellation

You must (a) promptly pay all amounts for which you are responsible under this endorsement, and (b) reimburse us for any such amounts that we advance upon receipt of a billing from us.

If you fail to do so, we may, at our option, cancel either this endorsement or this policy by mailing or delivering to you not less than ten days written notice stating the day and hour the cancellation is to take effect. Mailing that notice to you at your mailing address shown in item 1 of the Information Page will be sufficient to prove notice.

3. Your Duties

a. The first Named Insured shown in the Declarations agrees and is authorized on behalf of all Named Insureds to reimburse us for all deductible amounts that we advance.

b. Each Named Insured is jointly and severally liable for all deductible amounts under this policy.

4. Other Rights and Duties (Ours and Yours)

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or suit against you, and (b) your duties if injury occurs, apply irrespective of application of this deductible endorsement.

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis

Issued To

.1

Countersigned by .................................................................
                              Authorized Representative

        Issued            Sales Office and No.        End. Serial No.    9

**WC 99 06 27 R2**                                                    **Page 3 of 3**

Copyright 1990, Liberty Mutual Insurance Company

## AMENDATORY ENDORSEMENT

The Federal Identification Numbers for this policy are as follows:


Kimco Staffing Services, Inc.                    FEIN 330183676

Kimstaff Employer Outsourcing Services, Inc.     FEIN 330748641


THIS ENDORSEMENT IS EXECUTED BY THE LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date            Expiration Date

For attachment to Policy or Bond No.  WA2-16D-038818-019


Audit Basis

Issued to
                            Countersigned by.......................................................
                                                    Authorized Representative

  102          Issued            Sales Office and No.        End . Serial .No.   10
(ED. 4-84)

COPYRIGHT 1983 NATIONAL COUNCIL ON COMPENSATION INSURANCE

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

### WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT — CALIFORNIA

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. (This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.)

You must maintain payroll records accurately segregating the remuneration of your employees while engaged in the work described in the Schedule.

The additional premium for this endorsement shall be <u>0</u> % of the California workers' compensation premium otherwise due on such remuneration.

**Schedule**

| Person or Organization | Job Description |
|---|---|

SEE SCHEDULE ATTACHED

NO CHARGE

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $

Effective Date                    Expiration Date

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis

Issued To

1

Countersigned by ...................................................................

Authorized Representative

Issued          Sales Office and No.          End. Serial No.     12

PAGE 1 OF 2

WC 04 03 06

## WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS END. - CA

### SCHEDULE

CALSONIC MUIRA GRAPHICS

FLEETWOOD ALUMINUM

INSIGNIA/ESG, INC.

INTERIM ON-PREMISE

KNOTT'S BERRY FARM FOODS

MANPOWER, INC./MANPOWER INTERNATIONAL, INC.

QUIKSILVER

RANK VIDEO SERVICES AMERICA

REMEDY TEMP AND CSR AMERICA

SEAGATE TECHNOLOGIES

TEMECULA CORPORATE PLAZA CENTER, LLC

THE IRVINE COMPANY

TREND OFFSET PRINTING

VOLT SERVICES GROUP

WESTINGHOUSE HANFORD GROUP

ZENITH INSURANCE COMPANY

## MISCELLANEOUS CHANGE ENDORSEMENT
### (Short Form)

It is agreed that, as of the effective date of this endorsement, the declarations of the policy are amended as indicated
by the entries herein:

```
ITEM 1
NAME OF INSURED -    KIMCO STAFFING SERVICES, INC.; KIMSTAFF
                     EMPLOYEE OUTSOURCING SERVICES, INC.
                     NEFF TEMPORARY STAFFING
```

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Effective Date 06/28/1999  Expiration Date  01/01/2000

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis **9**

Issued To  KIMCO STAFFING SERVICES, INC.; KIMSTAFF
           EMPLOYEE OUTSOURCING SERVICES, INC.
           16832 RED HILL AVENUE
           IRVINE, CA 92714

Countersigned by ..............................................................

*Robert J Cook*

Authorized Representative

38W(ABLE) R1          Issued 01/24/2000  Sales Office and No. 605      End. Serial No.    14
Printed in U.S.A.          MAT                    LONG BEACH

KIMCO STAFFING SERVICES, INC.; KIMSTAFF
EMPLOYEE OUTSOURCING SERVICES, INC.
NEFF TEMPORARY STAFFING
16832 RED HILL AVENUE
IRVINE, CA 92714

WA2-16D-038818-019

 **LIBERTY MUTUAL.**

**Liberty Mutual Group**

Circle Business Center II
4510 East Pacific Coast Hwy.
Suite 650
Long Beach, CA 90805
Telephone: (562) 985-0633
Fax: (562) 498-8256

March 3, 2000

Ms. Lisa Gregorius
Kimco Staffing Services Inc.
16832 Red Hill Avenue
Irvine, CA  92714

RE:    WORKERS COMPENSATION - WA2-16D-038818-019
       KIMCO STAFFING SERVICES

Dear Lisa:

Enclosed please find endorsement numbers  14 through 22 for the above mentioned
policy.

Please review this endorsement carefully.  If you should have any questions, feel free
to call the sales representative, Brian Cook.

Cordially,

*Jacki Fletch*

Jackie Fletcher
Insurance Assistant

GCD/jf

## MISCELLANEOUS CHANGE ENDORSEMENT
### (Short Form)

It is agreed that, as of the effective date of this endorsement, the declarations of the policy are amended as indicated by the entries herein:

```
ITEM 1
NAME OF INSURED  -    KIMCO STAFFING SERVICES, INC.; KIMSTAFF
                      EMPLOYEE OUTSOURCING SERVICES, INC.
                      NEFF TEMPORARY STAFFING
```

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY

Effective Date 06/28/1999   Expiration Date  01/01/2000

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis 9

Issued To.  KIMCO STAFFING SERVICES, INC.; KIMSTAFF
            EMPLOYEE OUTSOURCING SERVICES, INC.
            16832 RED HILL AVENUE
            IRVINE, CA 92714

Countersigned by ...................................................................
                                                        Authorized Representative

38W(ABLE) R1        Issued 01/24/2000  Sales Office and No. 605      End. Serial No.    14
Printed in U.S.A.        MAT                    LONG BEACH

# MISCELLANEOUS CHANGE ENDORSEMENT

It is agreed that with respect to any box marked by (x) the information page of the policy is changed to read:

Item 3. Coverage

ADD

[X] A. WORKERS COMPENSATION INSURANCE: PART ONE

CO

[ ] B. LIMITS OF LIABILITY: PART TWO

| Bodily Injury | Bodily Injury | Bodily Injury |
| by Accident | by Disease | by Disease |
| Each Accident $ | Each Employee $ | Policy Limit $ |

[ ] C. OTHER STATES INSURANCE PART THREE

ALL STATES EXCEPT THOSE EXCLUDED IN ITEM 3.C OF THE INFORMATION PAGE AND EXCLUDING THE STATES OF:

[X] Item 4. The Schedule in Item 4 of the Information Page is amended as follows:

| Classification of Operations | Code No. | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| ADD: CO | 8810 | PRO-RATA 9,018 | .39 | TO-BE ADJUSTED AT-AUDIT |
| .30% | 9837 | | | |
| USL&HW 257.0% | | | | |

| Experience Modification: | Premium |
|---|---|

[ ] Minimum Premium

[ ] Adjustment of premium shall be made:        [ ] Periodic Payment

[ ] This is a Three Year Fixed Rate Policy

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY          16586

Premium TO BE ADJUSTED AT AUDIT

Endorsement Effective Date 11/01/1999       Expiration Date   01/01/2000

Policy Effective Date 01/01/1999            Expiration Date   01/01/2000

For attachment to Policy No. WA2-16D-038818-019      92/0

Audit Basis 9        03 88 18 /

Issued To   KIMCO STAFFING SERVICES, INC.; KIMSTAFF
            EMPLOYEE OUTSOURCING SERVICES, INC.
            NEFF TEMPORARY STAFFING
            16832 RED HILL AVENUE
            IRVINE, CA 92714

            Issued   KP
                     02/24/2000     Countersigned by..........................................................
                                                Authorized Representative

| 1 | SALES OFFICE | CODE | SALES REPRESENTATIVE | | CODE | N/R | 1ST YEAR | END. SERIAL NO. |
|---|---|---|---|---|---|---|---|---|
| WC 99 06 04 (ABLE) | LONG BEACH | 605 | COOK | J | 7689 | 1 | 1999 | 15 |

Printed In U.S.A.

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds.  The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes.  Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change.  Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $ To be adjusted at audit

Effective Date   11-1-99          Expiration Date   1-1-00

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis      9

Issued To    Kimco Staffing Services, Inc., Etal

1                          Countersigned by ...................................................................
                                                        **Authorized Representative**

              Issued    2-25-00  bp   Sales Office and No.   605       End. Serial No.      16

WC 00 04 14                                                   Long Beach

Copyright 1990 National Council on Compensation Insurance.

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement adds Voluntary Compensation Insurance to the policy.

### A.  How This Insurance Applies

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must be sustained by an employee included in the group of employees described in item 1 of the Schedule.

2.  The bodily injury must arise out of and in the course of employment necessary or incidental to work in a state listed in Item 1 of the Schedule.

3.  The bodily injury must occur in the United States of America, its territories or possessions or Canada, and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.

4.  Bodily injury by accident must occur during the policy period.

5.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B.  We Will Pay

We will pay an amount equal to the benefits that would be required of you if you and your employees described in item 1 of the Schedule were subject to the workers compensation law shown in item 1 of the Schedule. We will pay those amounts to the persons who would be entitled to them under the law.

### C.  Exclusions

This insurance does not cover:

1.  any obligation imposed by a workers compensation or occupational disease law, or any similar law.

2.  bodily injury intentionally caused or aggravated by you.

### D.  Before We Pay

Before we pay benefits to the persons entitled to them, they must:

1.  Release you and us, in writing, of all responsibility for the injury or death.

2.  Transfer to us their right to recover from others who may be responsible for the injury or death.

3.  Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

If the persons entitled to the benefits of this insurance fail to do those things, our duty to pay ends at once. If they claim damages from you or from us for the injury or death, our duty to pay ends at once.

### E.  Recovery From Others

If we make a recovery from others, we will keep an amount equal to our expenses of recovery and the benefits we paid. We will pay the balance to the persons entitled to it. If the persons entitled to the benefits of this insurance make a recovery from others, they must reimburse us for the benefits we paid them.

**WC 00 03 11 A**
Page 1 of 2

Copyright 1991 National Council on Compensation Insurance.

**VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT**
**(Continued)**

F.  **Employers Liability Insurance**

Part Two (Employers Liability Insurance) applies to bodily injury covered by this endorsement as though the State of employment shown in the Schedule were shown in item 3.A. of the Information Page.

Schedule

| Employees | State of Employment | Designated Workers Compensation Law |
|---|---|---|
| ALL EMPLOYEES EXCLUDING DOMESTIC WORKERS | ALL STATES EXCEPT NJ & WI | STATE OF HIRE |
| | NOT APPLICABLE IN CA | |

This endorsement is executed by the  **LIBERTY  MUTUAL  FIRE  INSURANCE  COMPANY**

Premium $  **To be adjusted at audit**

Effective Date  **11-1-99**    Expiration Date  **1-1-00**

For attachment to Policy No.  **WA2-16D-038818-019**

Audit Basis   **9**

Issued To   **Kimco Staffing Services, Inc.,**

1

Countersigned by .................................................................
Authorized Representative

Issued    **2-25-00 bp**   Sales Office and No.    **605**    End. Serial No.    **17**
Long Beach

WC 00 03 11 A
Page 2 of 2

Copyright 1991 National Council on Compensation Insurance.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY**

**LONGSHORE AND HARBOR WORKERS'
COMPENSATION ACT COVERAGE ENDORSEMENT**

This endorsement applies only to work subject to the Longshore and Harbor Workers' Compensation Act in a state shown in the Schedule. The policy applies to that work as though that state were listed in Item 3.A of the Information Page.

General Section C. **Workers' Compensation Law** is replaced by the following:

C.    **Workers' Compensation Law**

Workers' Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page and the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950). It includes any amendments to those laws that are in effect during the policy period. It does not include any other federal workers or workmen's compensation law, other federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

Part Two (Employers Liability Insurance), C. Exclusions., exclusion 8, does not apply to work subject to the Longshore and Harbor Workers' Compensation Act.

This endorsement does not apply to work subject to the Defense Base Act, the Outer Continental Shelf Lands Act, or the Nonappropriated Fund Instrumentalities Act.

|  | Schedule | Longshore and Harbor Workers'<br>Compensation Act Coverage Percentage |
|---|---|---|

**State**

REFER TO SCHEDULE GPO 2926 FOR STATES AND PERCENTAGES

The rates for classifications with code numbers not followed by the letter "F" are rates for work not ordinarily subject to the Longshore and Harbor Workers' Compensation Act. If this policy covers work under such classifications and if the work is subject to the Longshore and Harbor Workers Compensation Act, those non-F classification rates will be increased by the Longshore and Harbor Workers' Compensation Act Coverage Percentage shown in the Schedule.

This endorsement is executed by the    **LIBERTY MUTUAL FIRE INSURANCE COMPANY**

Premium $  To be adjusted at audit

Effective Date  11-1-99          Expiration Date   1-1-00

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis      9

Issued To     Kimco Staffing Services, Inc., Etal

1                                             Countersigned by ...............................................................
                                                                    Authorized Representative

                    Issued 2-25-00   bp    Sales Office and No.    605    End. Serial No.    18
**WC 00 01 06 A**                                          Long Beach
**(Ed. 4-92)**

Copyright 1983, 1991 National Council on Compensation Insurance.

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**COLORADO CANCELLATION NOTICE**

This notice applies only to the insurance provided by the policy because Colorado is shown in Item 3.A. of the Information Page.

Colorado Revised Statute 8-44-110 requires all insurance carriers to give a thirty (30) day notice of cancellation, except in the case of: Fraud; Material Misrepresentation; Nonpayment of Premium; Other reasons approved by the Commissioner of Insurance.

This endorsement is executed by the  **LIBERTY MUTUAL FIRE INSURANCE COMPANY**

Premium $  To be adjusted at audit

Effective Date 11-1-99          Expiration Date 1-1-00

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis    9

Issued To    Kimco Staffing Services, Inc., Etal

1                          Countersigned by ..............................................................

                                          Authorized Representative

              Issued    2-25-00 bp    Sales Office and No.    605    End. Serial No.    19

WC 99 06 57                          Long Beach

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### COLORADO CLASSIFICATION ENDORSEMENT

This endorsement applies only to the insurance provided by Part One (Workers Compensation Insurance) because Colorado is shown in Item 3.A. of the Information Page.

Section B. Classifications of Part Five (Premium) is amended by adding the following:

The assignment of a proper classification resulting in higher premium is allowed only if the misclassification was caused by your failure to provide accurate or complete data. If your operation changes during the policy term, you must notify us within ninety days of the change. Failure to notify us will be considered a failure to provide accurate or complete data.

Section E. Final Premium of Part Five is amended by adding this sentence at the end of the first paragraph:

Payments to us or to you based on improper classification may be collected or refunded during the term of the policy and for twelve months after the term.

This endorsement is executed by the   **LIBERTY MUTUAL FIRE INSURANCE COMPANY**

Premium $ To be adjusted at audit
Effective Date  11-1-99      Expiration Date  1-1-00
For attachment to Policy No.  WA2-16D-038818-019

Audit Basis   9

Issued To    Kimco Staffing Services, Inc., Etal

1

Countersigned by .............................................................................
Authorized Representative

Issued  2-25-00 bp    Sales Office and No.    605    End. Serial No.    20
Long Beach

**WC 05 04 02**

Copyright 1990 National Council on Compensation Insurance.

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## COLORADO DEDUCTIBLE ENDORSEMENT

This deductible endorsement applies only to the insurance provided by the policy because the following states are listed in Item 3.A. of the Information Page:  CO

This deductible endorsement applies between you and us. It does not affect or alter the rights of others under the policy.  You will reimburse us for any deductible amounts that we advance or are required by law to pay.

| Coverage | Deductible Amount; Basis | | |
|---|---|---|---|
| Bodily Injury By Accident | $ | 100,000 | each occurrence |
| Bodily Injury By Disease | $ | 100,000 | each claim |
| All Covered Bodily Injury | $ | 2,700,000 | policy aggregate |

### A.  How This Deductible Applies

1.  Each Occurrence; Each Claim

You are responsible, up to the deductible amount shown above, the total of:

a.  all benefits required of you by the workers compensation law (including benefits payable under PART THREE - OTHER STATES INSURANCE or under any endorsement); plus

b.  all sums you legally must pay as damages; plus

c.  all "allocated loss adjustment expense" as part of any claim or suit we defend;

because of (1) bodily injury by accident to your employees arising out of any one "occurrence"; (2) bodily injury by disease to your employee arising out of any one "claim."

We are responsible for those amounts of benefits, damages and "allocated loss adjustment expense" that exceed the applicable deductible amount shown above.

We may advance part or all of the deductible amount to settle any claim, proceeding or suit.  You will reimburse us promptly for any amount(s) we have so advanced.

2.  Policy Period Aggregate

The amount shown above as "policy aggregate", is the most you must pay for the sum of all benefits, damages and "allocated loss adjustment expense" because of bodily injury by accident and bodily injury by disease for each policy period.

The "policy aggregate" will not be reduced if:

(a)  this endorsement is issued for a term of less than (1) year, or

**WC 99 06 86**                                                                      **Page 1 of 3**

Copyright 1994, Liberty Mutual Insurance Company

(b) the policy or this endorsement is cancelled for any reason by you or by us before the end of the policy period.

B.  Effect of Deductible on Limits of Liability

1.  With respect to the Employers Liability Insurance provided by this policy, the applicable "each employee", "each accident", "policy" or other similar limits of liability are reduced by the sum of all damages (but not "allocated loss adjustment expense") within the applicable deductible amount shown above. Those limits are not in addition to the deductible amount. This provision applies whether the Employers Liability Insurance is provided by PART TWO or by an endorsement to this policy.

2.  For purposes of this paragraph B., all damages because of bodily injury by accident or bodily injury by disease are deemed to have been paid or to be payable before "allocated loss adjustment expense" has been paid or is payable.

C.  Definitions

1.  "Allocated loss adjustment expense" means claim adjustment expense directly allocated by us to a particular claim. Such expense shall include, but shall not be limited to, attorneys' fees for claims in suit, court and other specific items of expense such as medical examination, expert medical or other testimony, laboratory and X-ray, autopsy, stenographic, witnesses and summonses, and copies of documents.

2.  "Claim" means a written demand you receive for:

a.  benefits required of you by the workers compensation law; or

b.  damages covered by this policy;

including a filing by your employee for such benefits with an agency authorized by law, and a suit or other proceeding brought by your employee for such benefits or damages. "By your employee" includes such action taken by others legally entitled to do so on his or her behalf.

All claims for benefits or damages because of bodily injury by the same or related diseases to any one person will be considered as one claim when determining how the deductible amounts apply.

3.  "Occurrence" means a single accident which results in bodily injury to one or more of your employees.

D.  Conditions

1.  Recovery From Others

We have your rights and the rights of persons entitled to the benefits of this insurance to recover all advances and payments, including those within the deductible amount from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any advance or payment made under this policy from anyone liable for the injury, the amount we recover will first be applied to any payments made by us in excess of the deductible amount; only then will the remainder of that recovery, if any, be applied to reduce the deductible amount paid or reimbursed or reimbursable by you.

2. <u>Cancellation</u>

You must (a) promptly pay all amounts for which you are responsible under this endorsement, and (b) reimburse us for any such amounts that we pay or advance upon receipt of a billing from us.

If you fail to do so, we may, at our option, cancel either this endorsement or this policy by mailing or delivering to you not less than ten days written notice stating the day and hour the cancellation is to take effect provided that the nonpayment of the deductible amount occurred during the same policy period in which the loss occurred. In situations where we are not able to cancel the endorsement or the policy within the policy period in which the loss occurred and the deductible amount was not paid, we may cancel this endorsement but not the policy. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. <u>Your Duties</u>

a. The first Named Insured shown in the Information Page agrees and is authorized to pay all deductible amounts on behalf of all Named Insureds and to reimburse us for any such amounts that we advance.

b. Each Named Insured is jointly and severally liable for all deductible amounts under this policy.

4. <u>Other Rights and Duties (Ours and Yours)</u>

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or suit against you, and (b) your duties if injury occurs, apply irrespective of application of this deductible endorsement.

This endorsement is executed by the  LIBERTY  MUTUAL  FIRE  INSURANCE  COMPANY

Premium $  To be adjusted at audit

Effective Date  11-1-99      Expiration Date  1-1-00

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis  9

Issued To  Kimco Staffing Services, Inc., Etal

1                              Countersigned by ....................................................................
                                                  **Authorized Representative**

        Issued  2-25-00 bp   Sales Office and No.   605   End. Serial No.   21
                                             Long Beach

WC 99 06 86                                                              **Page 3 of 3**

Copyright 1994, Liberty Mutual Insurance Company

## AMENDATORY ENDORSEMENT

IT IS AGREED THAT THE INFORMATION PAGE IS AMENDED TO READ

CO FEIN 95-3998916
CO UI 330464126

This endorsement is executed by the    LIBERTY MUTUAL FIRE INSURANCE COMPANY         16586

Premium $

Endorsement Effective Date 11/01/1999       Expiration Date    01/01/2000
Policy Effective Date 01/01/1999            Expiration Date    01/01/2000
For attachment to Policy No. WA2-16D-038818-019    92/0
Audit Basis   9         03 88 18 /
Issued To KIMCO STAFFING SERVICES, INC.; KIMSTAFF
        EMPLOYEE OUTSOURCING SERVICES, INC.;
        KIMMCO STAFFING SERVICES
        16832 RED HILL AVENUE
        IRVINE, CA 92714

Countersigned by ............................................................................
                                                        Authorized Representative

        1          KP
FORM 102 (ABLE)    Issued 02/23/2000 Sales Office and No. 605      End. Serial No. 22
R1                          LONG BEACH

KIMCO STAFFING SERVICES, INC.; KIMSTAFF
EMPLOYEE OUTSOURCING SERVICES, INC.
NEFF TEMPORARY STAFFING
16832 RED HILL AVENUE
IRVINE, CA 92714

WA2-16D-038818-019

## AMENDATORY ENDORSEMENT

IT IS AGREED THAT THE INFORMATION PAGE IS AMENDED TO READ

CO FEIN 95-3998916
CO UI 330464126

This endorsement is executed by the  LIBERTY MUTUAL FIRE INSURANCE COMPANY          16586

Premium $

Endorsement Effective Date 11/01/1999          Expiration Date    01/01/2000
Policy Effective Date 01/01/1999          Expiration Date    01/01/2000
For attachment to Policy No. WA2-16D-038818-019   92/0
Audit Basis  9          03 88 18 /
Issued To KIMCO STAFFING SERVICES, INC.; KIMSTAFF
          EMPLOYEE OUTSOURCING SERVICES, INC.;
          KIMMCO STAFFING SERVICES
          16832 RED HILL AVENUE
          IRVINE, CA 92714

Countersigned by ........................................................................
                                                          Authorized Representative

          1          KP
FORM 102 (ABLE)     Issued 02/23/2000  Sales Office and No. 605      End. Serial No. 22
R1                                LONG BEACH

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## COLORADO DEDUCTIBLE ENDORSEMENT

This deductible endorsement applies only to the insurance provided by the policy because the following states are listed in item 3.A. of the Information Page:  CO

This deductible endorsement applies between you and us.  It does not affect or alter the rights of others under the policy.  You will reimburse us for any deductible amounts that we advance or are required by law to pay.

| Coverage | Deductible Amount; Basis | |
|---|---|---|
| Bodily Injury By Accident | $ 100,000 | each occurrence |
| Bodily Injury By Disease | $ 100,000 | each claim |
| All Covered Bodily Injury | $ 2,700,000 | policy aggregate |

**A.  How This Deductible Applies**

1.  Each Occurrence; Each Claim

    You are responsible, up to the deductible amount shown above, the total of:

    a.  all benefits required of you by the workers compensation law (including benefits payable under PART THREE - OTHER STATES INSURANCE or under any endorsement); plus

    b.  all sums you legally must pay as damages; plus

    c.  all "allocated loss adjustment expense" as part of any claim or suit we defend;

    because of (1) bodily injury by accident to your employees arising out of any one "occurrence"; (2) bodily injury by disease to your employee arising out of any one "claim."

    We are responsible for those amounts of benefits, damages and "allocated loss adjustment expense" that exceed the applicable deductible amount shown above.

    We may advance part or all of the deductible amount to settle any claim, proceeding or suit.  You will reimburse us promptly for any amount(s) we have so advanced.

2.  Policy Period Aggregate

    The amount shown above as "policy aggregate", is the most you must pay for the sum of all benefits, damages and "allocated loss adjustment expense" because of bodily injury by accident and bodily injury by disease for each policy period.

    The "policy aggregate" will not be reduced if:

    (a)  this endorsement is issued for a term of less than (1) year, or

**WC 99 06 86**                                                                              Page 1 of 3

Copyright 1994, Liberty Mutual Insurance Company

(b) the policy or this endorsement is cancelled for any reason by you or by us before the end of the policy period.

B.  **Effect of Deductible on Limits of Liability**

1.  With respect to the Employers Liability Insurance provided by this policy, the applicable "each employee", "each accident", "policy" or other similar limits of liability are reduced by the sum of all damages (but not "allocated loss adjustment expense") within the applicable deductible amount shown above. Those limits are not in addition to the deductible amount. This provision applies whether the Employers Liability Insurance is provided by PART TWO or by an endorsement to this policy.

2.  For purposes of this paragraph B., all damages because of bodily injury by accident or bodily injury by disease are deemed to have been paid or to be payable before "allocated loss adjustment expense" has been paid or is payable.

C.  **Definitions**

1.  "Allocated loss adjustment expense" means claim adjustment expense directly allocated by us to a particular claim. Such expense shall include, but shall not be limited to, attorneys' fees for claims in suit, court and other specific items of expense such as medical examination, expert medical or other testimony, laboratory and X-ray, autopsy, stenographic, witnesses and summonses, and copies of documents.

2.  "Claim" means a written demand you receive for:

    a.  benefits required of you by the workers compensation law; or

    b.  damages covered by this policy;

    including a filing by your employee for such benefits with an agency authorized by law, and a suit or other proceeding brought by your employee for such benefits or damages. "By your employee" includes such action taken by others legally entitled to do so on his or her behalf.

    All claims for benefits or damages because of bodily injury by the same or related diseases to any one person will be considered as one claim when determining how the deductible amounts apply.

3.  "Occurrence" means a single accident which results in bodily injury to one or more of your employees.

D.  **Conditions**

1.  **Recovery From Others**

    We have your rights and the rights of persons entitled to the benefits of this insurance to recover all advances and payments, including those within the deductible amount from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**WC 99 06 86**                                                              **Page 2 of 3**

Copyright 1994, Liberty Mutual Insurance Company

If we recover any advance payment made under this policy from anyone liable for the injury, the amount we recover will first be applied to any payments made by us in excess of the deductible amount; only then will the remainder of that recovery, if any, be applied to reduce the deductible amount paid or reimbursed or reimbursable by you.

2. Cancellation

You must (a) promptly pay all amounts for which you are responsible under this endorsement, and (b) reimburse us for any such amounts that we pay or advance upon receipt of a billing from us.

If you fail to do so, we may, at our option, cancel either this endorsement or this policy by mailing or delivering to you not less than ten days written notice stating the day and hour the cancellation is to take effect provided that the nonpayment of the deductible amount occurred during the same policy period in which the loss occurred. In situations where we are not able to cancel the endorsement or the policy within the policy period in which the loss occurred and the deductible amount was not paid, we may cancel this endorsement but not the policy. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. Your Duties

a. The first Named Insured shown in the Information Page agrees and is authorized to pay all deductible amounts on behalf of all Named Insureds and to reimburse us for any such amounts that we advance.

b. Each Named Insured is jointly and severally liable for all deductible amounts under this policy.

4. Other Rights and Duties (Ours and Yours)

All other terms of this policy, including those which govern (a) our right and duty to defend any claim, proceeding or suit against you, and (b) your duties if injury occurs, apply irrespective of application of this deductible endorsement.

This endorsement is executed by the  **LIBERTY MUTUAL FIRE INSURANCE COMPANY**

Premium $ To be adjusted at audit

Effective Date  11-1-99      Expiration Date  1-1-00

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis   9

Issued To    Kimco Staffing Services, Inc., Etal

1                                    Countersigned by ..................*[signature: Robert J Cook]*..............................
                                                                          Authorized Representative

        Issued  2-25-00 bp   Sales Office and No.    605    End. Serial No.    21
                                           Long Beach

**WC 99 06 86**                                                          **Page 3 of 3**

Copyright 1994, Liberty Mutual Insurance Company

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### COLORADO CANCELLATION NOTICE

This notice applies only to the insurance provided by the policy because Colorado is shown in Item 3.A. of the Information Page.

Colorado Revised Statute 8-44-110 requires all insurance carriers to give a thirty (30) day notice of cancellation, except in the case of: Fraud; Material Misrepresentation; Nonpayment of Premium; Other reasons approved by the Commissioner of Insurance.

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $  To be adjusted at audit
Effective Date 11-1-99          Expiration Date 1-1-00
For attachment to Policy No.  WA2-16D-038818-019

Audit Basis      9
Issued To     Kimco Staffing Services, Inc., Etal

1                              Countersigned by ............ *[signature]*
                                                            Authorized Representative

Issued    2-25-00 bp     Sales Office and No.   605     End. Serial No.   19

WC 99 06 57                              Long Beach

**WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY**

**LONGSHORE AND HARBOR WORKERS'
COMPENSATION ACT COVERAGE ENDORSEMENT**

This endorsement applies only to work subject to the Longshore and Harbor Workers' Compensation Act in a state shown in the Schedule. The policy applies to that work as though that state were listed in Item 3.A of the Information Page.

General Section C. **Workers' Compensation Law** is replaced by the following:

**C.    Workers' Compensation Law**

Workers' Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page and the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950). It includes any amendments to those laws that are in effect during the policy period. It does not include any other federal workers or workmen's compensation law, other federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

Part Two (Employers Liability Insurance), C. Exclusions., exclusion 8, does not apply to work subject to the Longshore and Harbor Workers' Compensation Act.

This endorsement does not apply to work subject to the Defense Base Act, the Outer Continental Shelf Lands Act, or the Nonappropriated Fund Instrumentalities Act.

|  | Schedule | Longshore and Harbor Workers' Compensation Act Coverage Percentage |
|---|---|---|

State

REFER TO SCHEDULE GPO 2926 FOR STATES AND PERCENTAGES

The rates for classifications with code numbers not followed by the letter "F" are rates for work not ordinarily subject to the Longshore and Harbor Workers' Compensation Act. If this policy covers work under such classifications and if the work is subject to the Longshore and Harbor Workers Compensation Act, those non-F classification rates will be increased by the Longshore and Harbor Workers' Compensation Act Coverage Percentage shown in the Schedule.

This endorsement is executed by the   **LIBERTY MUTUAL FIRE INSURANCE COMPANY**

Premium $ To be adjusted at audit

Effective Date  11-1-99 ;    Expiration Date  1-1-00

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis        9

Issued To     Kimco Staffing Services, Inc., Etal

1                                Countersigned by ...........

Issued 2-25-00   bp   Sales Office and No.   605   End. Serial No.   18

**WC 00 01 06 A**                                Long Beach
(Ed. 4-92)

Copyright 1983, 1991 National Council on Compensation Insurance.

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT

This endorsement adds Voluntary Compensation Insurance to the policy.

**A.  How This Insurance Applies**

This insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must be sustained by an employee included in the group of employees described in item 1 of the Schedule.

2.  The bodily injury must arise out of and in the course of employment necessary or incidental to work in a state listed in item 1 of the Schedule.

3.  The bodily injury must occur in the United States of America, its territories or possessions or Canada, and may occur elsewhere if the employee is a United States or Canadian citizen temporarily away from those places.

4.  Bodily injury by accident must occur during the policy period.

5.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B.  We Will Pay**

We will pay an amount equal to the benefits that would be required of you if you and your employees described in item 1 of the Schedule were subject to the workers compensation law shown in item 1 of the Schedule. We will pay those amounts to the persons who would be entitled to them under the law.

**C.  Exclusions**

This insurance does not cover:

1.  any obligation imposed by a workers compensation or occupational disease law, or any similar law.

2.  bodily injury intentionally caused or aggravated by you.

**D.  Before We Pay**

Before we pay benefits to the persons entitled to them, they must:

1.  Release you and us, in writing, of all responsibility for the injury or death.

2.  Transfer to us their right to recover from others who may be responsible for the injury or death.

3.  Cooperate with us and do everything necessary to enable us to enforce the right to recover from others.

If the persons entitled to the benefits of this insurance fail to do those things, our duty to pay ends at once. If they claim damages from you or from us for the injury or death, our duty to pay ends at once.

**E.  Recovery From Others**

If we make a recovery from others, we will keep an amount equal to our expenses of recovery and the benefits we paid. We will pay the balance to the persons entitled to it. If the persons entitled to the benefits of this insurance make a recovery from others, they must reimburse us for the benefits we paid them.

**WC 00 03 11 A**
Page 1 of 2

Copyright 1991 National Council on Compensation Insurance.

**VOLUNTARY COMPENSATION AND EMPLOYERS LIABILITY COVERAGE ENDORSEMENT**
**(Continued)**

F.   **Employers Liability Insurance**

Part Two (Employers Liability Insurance) applies to bodily injury covered by this endorsement as though the State of employment shown in the Schedule were shown in item 3.A. of the Information Page.

**Schedule**

| Employees | State of Employment | Designated Workers Compensation Law |
|---|---|---|
| ALL EMPLOYEES EXCLUDING DOMESTIC WORKERS | ALL STATES EXCEPT NJ & WI | STATE OF HIRE |
| | NOT APPLICABLE IN CA | |

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $  To be adjusted at audit

Effective Date   11-1-99     Expiration Date   1-1-00

For attachment to Policy No.   WA2-16D-038818-019

Audit Basis   9

Issued To   Kimco Staffing Services, Inc.,

1                                          Countersigned by ...............................................................
                                                                        Authorized Representative

Issued    2-25-00 bp   Sales Office and No.    605    End. Serial No.    17
                                            Long Beach

WC 00 03 11 A
Page 2 of 2

Copyright 1991 National Council on Compensation Insurance.

## WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## NOTIFICATION OF CHANGE IN OWNERSHIP ENDORSEMENT

Experience rating is mandatory for all eligible insureds. The experience rating modification factor, if any, applicable to this policy, may change if there is a change in your ownership or in that of one or more of the entities eligible to be combined with you for experience rating purposes. Change in ownership includes sales, purchases, other transfers, mergers, consolidations, dissolutions, formations of a new entity and other changes provided for in the applicable experience rating plan manual.

You must report any change in ownership to us in writing within 90 days of such change. Failure to report such changes within this period may result in revision of the experience rating modification factor used to determine your premium.

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $ To be adjusted at audit

Effective Date  11-1-99       Expiration Date  1-1-00

For attachment to Policy No.  WA2-16D-038818-019

Audit Basis     9

Issued To    Kimco Staffing Services, Inc., Etal

1                              Countersigned by ...............................................................................
                                                          Authorized Representative

              Issued   2-25-00 bp  Sales Office and No.  605     End. Serial No.    16

WC 00 04 14                                    Long Beach

Copyright 1990 National Council on Compensation Insurance.

## MISCELLANEOUS CHANGE ENDORSEMENT

It is agreed that with respect to any box marked by (x) the information page of the policy is changed to read:

Item 3. Coverage

      **ADD**

[X]  A. WORKERS COMPENSATION INSURANCE: PART ONE

    CO

[ ]  B. LIMITS OF LIABILITY: PART TWO

    Bodily Injury           Bodily Injury           Bodily Injury
    by Accident            by Disease             by Disease
    Each Accident $        Each Employee $      Policy Limit $

[ ]  C. OTHER STATES INSURANCE PART THREE

    ALL STATES EXCEPT THOSE EXCLUDED IN ITEM 3.C OF THE INFORMATION PAGE
    AND EXCLUDING THE STATES OF:

[X]  Item 4. The Schedule in Item 4 of the Information Page is amended as follows:

| Classification of Operations | Code No. | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Remuneration | Estimated Annual Premium |
|---|---|---|---|---|
| ADD: CO | 8810 | PRO-RATA 9,018 | .39 | |
| .30% | 9837 | | | TO-BE ADJUSTED AT-AUDIT |
| USL&HW 257.0% | | | | |

Experience Modification:                Premium

[ ]  Minimum Premium

[ ]  Adjustment of premium shall be made:     [ ]  Periodic Payment

[ ]  This is a Three Year Fixed Rate Policy

This endorsement is executed by the   LIBERTY MUTUAL FIRE INSURANCE COMPANY     16586

Premium TO BE ADJUSTED AT AUDIT

Endorsement Effective Date 11/01/1999     Expiration Date   01/01/2000

Policy Effective Date 01/01/1999     Expiration Date   01/01/2000

For attachment to Policy No. WA2-16D-038818-019    92/0

Audit Basis 9      03 88 18 /

Issued To  KIMCO STAFFING SERVICES, INC.; KIMSTAFF
    EMPLOYEE OUTSOURCING SERVICES, INC.
    NEFF TEMPORARY STAFFING
    16832 RED HILL AVENUE
    IRVINE, CA 92714

Issued  KP
    02/24/2000   Countersigned by ........................................
                                    Authorized Representative

1

**WC 99 06 04**

(ABLE)

| SALES OFFICE | CODE | SALES REPRESENTATIVE | | CODE | N/R | 1ST YEAR | END. SERIAL NO. |
|---|---|---|---|---|---|---|---|
| LONG BEACH | 605 | COOK | J | 7689 | 1 | 1999 | 15 |

Printed In U.S.A.

1 **PROOF OF SERVICE**

2 STATE OF CALIFORNIA )
 ) ss.
3 COUNTY OF LOS ANGELES )

4    I am employed in the county of Los Angeles, State of California. I am over the age of 18
and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite
5 1200, Los Angeles, California 90024.

6    On October 5, 2001, I served the foregoing document described as **FIRST AMENDED
COMPLAINT** on the interested parties in this action by placing the original/a true copy thereof
7 enclosed in (a) sealed envelope(s) addressed as follows:

8 Justin T. Noblin
Kern & Wooley
9 10900 Wilshire Boulevard, 11th Floor
Los Angeles, California 90024

10

11 [ ]   **(BY U.S. MAIL)** As follows: I am "readily familiar" with the firm's practice of
collection and processing correspondence for mailing. Under that practice it would be
12    deposited with the U.S. Postal Service on that same day with postage thereon fully
prepaid at Los Angeles, California in the ordinary course of business. I am aware that on
13    motion of the party served, service is presumed invalid if postal cancellation date or
postage meter date is more than one day after date of deposit for mailing in affidavit.

14

15 [ ]   **(BY FEDERAL EXPRESS)** I caused a courtesy copy of such documents to be delivered
by air courier, with next business day service to the counsel for the interested parties.

16 [ ]   **(BY FACSIMILE)**  I personally sent to the addressee's telecopier number a true copy of
the above described document(s).

17

18 [ X ]  **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the addressee.

19 [ x ]  **(STATE)**  I declare under penalty of perjury under the laws of the State of California that
the above is true and correct.

20 [ ]   **(FEDERAL)**  I declare that I am employed in the office of a member of the bar of this
court at whose direction the service was made.

21

22    I declare under penalty of perjury and under the laws of the State of California that the
foregoing is true and correct.

23    Executed on October 5, 2001, at Los Angeles, California.

24

25 **JASON SUH**

26

27

28





FILED

1  Nicholas P. Roxborough, Esq. (SBN. 113540)
   Michael B. Adreani, Esq. (SBN. 194991)
2  **ROXBOROUGH, POMERANCE & NYE** LLP
   10866 Wilshire Boulevard, Suite 1200
3  Los Angeles, California 90024-4303
   Telephone:   (310) 470-1869
4  Facsimile:   (310) 470-9648

2004 APR -1  PM 2: 55

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY_____

5  Attorneys for Plaintiff REMEDYTEMP, INC.,
   a California Corporation.

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10  REMEDYTEMP, INC., a California          )   Case No. **SACV04-00385 GLT (MLGx)**
    Corporation,                           )
11                                         )   Assigned to:
                        Plaintiffs,        )
12                                         )   COMPLAINT FOR:
    vs.                                    )
13                                         )   1.  TORTIOUS BREACH OF THE
    LIBERTY MUTUAL FIRE                    )       IMPLIED COVENANT OF
14  INSURANCE COMPANY, a                   )       GOOD FAITH AND FAIR
    Massachusetts Corporation, and DOES 1  )       DEALING;
15  through 100, inclusive,                )   2.  UNFAIR BUSINESS
                                           )       PRACTICES IN VIOLATION OF
16                      Defendants.        )       *BUSINESS & PROFESSIONS*
                                           )       *CODE*, § 17200 *ET. SEQ*; AND
17  _____       )   3.  BREACH OF CONTRACT.

18       Plaintiff REMEDYTEMP, INC. alleges against defendant, LIBERTY

19  MUTUAL FIRE INSURANCE COMPANY and DOES 1 through 100, Inclusive,

20  as follows:

21                            **JURISDICTION**

22       1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1332(c),

23  diversity of citizenship.

24       2.    The contract which is the subject of this action were entered into in

25  the County of Orange, State of California, and venue is therefore proper within the

26  Central District of California.  The amount in controversy in this matter, exclusive

27  of interest and costs, exceeds the sum of $75,000.00, as more fully set forth below.

28

                                    1

## GENERAL ALLEGATIONS COMMON TO
## ALL CAUSES OF ACTION

3    Plaintiff, REMEDYTEMP, INC. (hereinafter "REMEDY"), a California corporation, is and at all times relevant to this action was licensed to do business in the State of California and maintains its principal place of business in the County of Orange. REMEDY is in the business of providing temporary employment, staffing, and recruitment services.

4.    REMEDY is informed and believes and thereon alleges that defendant, LIBERTY MUTUAL FIRE INSURANCE COMPANY (hereinafter "LIBERTY"), a Massachusetts corporation is, and at all times herein mentioned was a business enterprise engaged in the business of writing workers' compensation insurance and is doing business in the County of Orange, State of California.

5.    REMEDY procured workers' compensation insurance policies from LIBERTY for the policy period of April 1, 2001 to April 1, 2002 (the "2001 Policy"), more specifically known as Policy No. WA2-66D-004227-011. The 2001 Policy included a policy covering California workers' compensation claims. The 2001 Policy called for REMEDY to pay a deductible on claims made under the 2001 Policy up to the first $250,000 per claim. This is what is known in the industry as a "Large Deductible" policy. Under a Large Deductible policy like the 2001 Policy, amounts paid on claims under the deductible amount are paid by the insurer, but reimbursed by the insured by way of a deposit account required by and maintained by LIBERTY. Any amounts paid on claims up to the deductible amount on the 2001 Policy, therefore, is REMEDY's money. In consideration for LIBERTY providing the insurance, REMEDY paid all premiums due for the 2001 Policy, which amounted to approximately $1,739,000. In addition, in order to enter into the 2001 Policy, LIBERTY required that REMEDY post $17,250,000 in

1    collateral in the form of an evergreen letter of credit ("LOC"). Attached hereto

2    and incorporated herein by reference as Exhibit "A" is a true and correct copy of

3    the 2001 Policy.

4        6.    REMEDY alleges that reserves that a workers' compensation

5    insurance carrier such as LIBERTY places on each individual claim, the amount

6    paid out under a claim, and the manner in which LIBERTY handles and

7    administers the claim, inexorably control the amount REMEDY is required to pay

8    on that claim under the Large Deductible 2001 Policy.

9        7.    REMEDY further alleges that the reserves that a workers'

10   compensation insurance carrier such as LIBERTY places on each individual claim,

11   the amount paid out under a claim, and the manner in which LIBERTY handles

12   and administers the claim are directly related to the premiums charged by

13   LIBERTY and future insurance carriers.

14       8.    REMEDY further alleges that the reserves that a workers'

15   compensation insurance carrier such as LIBERTY places on each individual claim,

16   the amount paid out under a claim, and the manner in which LIBERTY handles

17   and administers the claim are directly related to the collateral required by

18   LIBERTY and future insurance carriers. The mishandling of claims leads directly

19   to higher collateral requirements.

20       9.    REMEDY alleges that mishandling, over payments, and over

21   reserving of claims extends to not only the adjusters, examiners, claims personnel

22   and supervisors of LIBERTY, but also to those in-house workers' compensation

23   defense attorneys ("House Counsel") assigned by LIBERTY to handle the litigated

24   workers' compensation claims on behalf of REMEDY, and who work directly for

25   LIBERTY.

26       10.   REMEDY is informed and believes and thereon alleges that by virtue

27   of the 2001 Policy, LIBERTY stands in REMEDY's shoes as its agent with regard

28

3

1  to each claim made under the 2001 Policy. REMEDY further alleges that a special
2  relationship exists between an insured and insurer akin to a fiduciary duty, and
3  that implied in this relationship is a covenant that neither party may act to deprive
4  the other of the benefits of the contract.

5      11.    REMEDY is informed and believes and thereon alleges that
6  LIBERTY mishandled, overpaid, and over-reserved claims made under the 2001
7  Policy in such a way as to artificially increase amounts REMEDY was required to
8  pay on those claims.

9      12.    REMEDY is informed and believes and thereon alleges that
10  LIBERTY mishandled, overpaid, and over-reserved claims made under the 2001
11  Policy in such a way as to artificially increase the amount of collateral LIBERTY
12  continues to require on the 2001 Policy, as well as amounts of collateral required
13  by subsequent workers' compensation carriers for REMEDY.

14      13.    At the culmination of the 2001 Policy, REMEDY decided not to
15  renew its policy with LIBERTY and obtained workers' compensation insurance
16  for California claims elsewhere.

17      14.    When REMEDY decided to leave LIBERTY and insure elsewhere,
18  LIBERTY placed REMEDY's 2001 Policy into "Runoff Mode." On the one hand,
19  Runoff Mode consisted of consolidation of all of REMEDY's claims with one,
20  new adjuster - utilizing a different reserving philosophy. On the other hand,
21  Runoff Mode also consisted of moving REMEDY's account management to a
22  "former customer service center," resulting in LIBERTY's failure to reasonably
23  adjust collateral and utilizing different methods of calculating collateral required
24  under the 2001 Policy. Runoff Mode resulted in an adverse affect on REMEDY's
25  payments on claims, premium, and collateralization of the 2001 Policy and other,
26  subsequent policies of workers' compensation insurance.

27  ///

28

4

1    15.    REMEDY alleges that being placed in Runoff Mode has exacerbated
2  LIBERTY's claims mishandling, over reserving and over payments on the 2001
3  Policy.  In addition, REMEDY alleges that the claims mishandling, over reserving
4  and over payments resulting from being in Runoff Mode has contributed to
5  LIBERTY's artificially inflated collateral requirements.

6    16.    REMEDY is informed and believes and based thereon alleges that
7  LIBERTY utilized undisclosed projects whereby REMEDY's claims personnel, or
8  outside claims personnel normally not associated with REMEDY's account, would
9  periodically "review" categories of claims, and more specifically the reserves set
10  on those claims ("Reserve Projects").  REMEDY alleges that, as a result of these
11  Reserve Projects, reserves on claims under the 2001 Policy were inevitably
12  increased without regard to the facts of the claim itself.  This, in turn, led to higher
13  amounts being paid on the claims, as well as artificially increased collateral
14  requirements by LIBERTY and other carriers.

15    17.    REMEDY alleges that it was never informed by LIBERTY that either
16  Runoff Mode or the Reserve Projects would ultimately lead to increased reserves,
17  increased payments and collateral requirements.

18                          **FIRST CAUSE OF ACTION**
19    **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**
20                   **Against LIBERTY and DOES 1 through 100)**

21    18.    REMEDY incorporates herein by this reference as though fully set
22  forth in this Cause of Action each and every allegation contained in Paragraphs 1
23  through 17, inclusive, of this Complaint.

24    19.    REMEDY is informed and believes and thereon alleges that
25  LIBERTY and DOES 1 through 100 have tortiously breached the implied
26  covenant of good faith and fair dealing by the following acts or omissions which
27  are implied obligations under the 2001 Policy:

28

                                        5

a.  LIBERTY has failed to reasonably investigate the compensability of claims and failed to timely deny questionable claims;

b.  LIBERTY has set reserves in amounts unreasonably disproportionate to the expected losses on claims;

c.  LIBERTY has failed to monitor and/or adjust claims reserves on a periodic basis with the result that claims were not kept current and did not reflect the appropriate case value;

d.  LIBERTY unreasonably delayed in processing legitimate claims and/or failed to respond to the requests and inquiries of REMEDY's injured employees such that claims became litigated and in turn allowed LIBERTY to further increase claim reserves;

e.  LIBERTY failed to assign the administration of claims to experienced and competent claims adjusters;

f.  LIBERTY ignored REMEDY's requests and/or itself failed to undertake prompt or reasonable investigation of claims to determine whether they were compensable claims and/or ignored the results of such investigations;

g.  LIBERTY failed to appoint competent legal counsel or delayed the appointment of competent legal counsel to defend and/or represent REMEDY's interests before the appropriate tribunals; in such cases where LIBERTY did assign counsel, said attorneys were employees of LIBERTY who disregarded REMEDY's interests in favor of LIBERTY's interests, thus costing REMEDY additional money in the form of overpayments on claims;

h.  LIBERTY failed to provide a good faith defense on behalf of REMEDY on those claims where defenses existed and should have been asserted and/or litigated;

i.      LIBERTY  failed to communicate in good faith with REMEDY and in doing so, also failed to keep REMEDY updated on significant events in claims files;

J.      LIBERTY ignored vital information provided by REMEDY to LIBERTY for purposes of valuing and administering claims;

k.      LIBERTY utilized its medical review process to the detriment of REMEDY and to the benefit of LIBERTY;

l.      LIBERTY utilized the Runoff Unit as a means for artificially increasing reserves on claims, payments on claims, and collateral required of REMEDY; and

m.      LIBERTY utilized Reserve Projects as a means of artificially increasing reserves on claims, payments on claims, and collateral required of REMEDY.

20.     REMEDY is informed and believes and thereon alleges that LIBERTY and Does 1-100, and each of them, have committed further acts or omissions in violation of their duty of good faith and fair dealing.  These acts are presently unknown to REMEDY and at such time as they may be discovered, REMEDY will seek leave of court to amend this Complaint.

21.     As a proximate result of LIBERTY's conduct, as described hereinabove, REMEDY has suffered general and special damages which include having to pay and being forced to pay artificially inflated amounts under the Large Deductible 2001 Policy, having to pay unnecessarily increased premiums to LIBERTY (and other workers' compensation carriers in the future); having artificially inflated collateral requirements; and having had to incur expenses and costs to hire outside consultants, experts and attorneys to assist REMEDY in obtaining these benefits under the 2001 Policy.  Additionally, LIBERTY's conduct, as subscribed hereinabove, has caused REMEDY to have their credit

1  rating affected, has adversely affected its client relations and has been highly

2  prejudicial to its operations including but not limited to causing REMEDY to

3  suffer the loss of business opportunities and the loss of income, all in a sum to be

4  established at the time of trial.

5      22.    REMEDY further alleges that the conduct of LIBERTY and DOES 1

6  through 100, as set forth in paragraph 19, was carried out in bad faith, was

7  malicious, fraudulent, oppressive and evidences a complete disregard for

8  REMEDY's  interests and an intent to injure, harass, vex and annoy REMEDY.

9  Under the circumstances described, REMEDY alleges LIBERTY's conduct

10  constitutes "despicable conduct" as defined in California *Code of Civil Procedure*

11  section 3294 and established common law, thus entitling REMEDY to recover

12  punitive damages in an amount appropriate to punish or to set an example of

13  Defendants, and each of them.  REMEDY further alleges that LIBERTY at all

14  times acted through its officers, directors and employees and that it had advance

15  knowledge of the damage being caused to REMEDY and that LIBERTY

16  approved, ordered, instructed, supervised and controlled the conduct of its

17  officers, directors and employees such as to constitute a ratification of the conduct

18  of said officers, directors and employees.  Accordingly, pursuant to the doctrine of

19  Respondeat Superior, both LIBERTY and DOES 1 through 100 are liable for

20  punitive damages as prayed for herein.

21                    **SECOND CAUSE OF ACTION**

22          **(Violation of *Business & Professions Code*, § 17200 et seq.**

23              **Against LIBERTY and DOES 1 through 100)**

24      23.    REMEDY incorporates by this reference as though fully set forth in

25  this Cause of Action each and every allegation contained in Paragraphs 1 through

26  22, inclusive, of this Complaint.

27  ///

28

8

1    24.    LIBERTY's improper setting of reserves, failure to provide a good

2  faith defense of claims, failure to close and/or resolve claims, overpayments on

3  claims, utilization of its Runoff Unit and use of Reserve Projects were for the

4  purpose of artificially increasing payments by REMEDY on workers'

5  compensation claims, artificially raising reserves on workers' compensation claim

6  files, artificially inflating premiums for REMEDY's workers compensation

7  insurance, and artificially increasing collateral requirements for REMEDY.

8    25.    As a proximate result of LIBERTY's behavior as alleged in

9  Paragraphs 19 and 24 of this Complaint, LIBERTY was able to garner illicit

10  profits from REMEDY and other similarly situated insureds.  These illicit profits

11  rightfully belong to REMEDY and other  policyholders and should be returned to

12  them.

13    26.    In light of LIBERTY's unfair business practices in violation of the

14  law, described more fully in Paragraphs 19 and 24 of this Complaint, REMEDY,

15  ***on behalf of the general public pursuant to Business & Professions Code section***

16  ***17204***, seeks from this Court a permanent injunction, enjoining LIBERTY from

17  the behavior described in Paragraphs 19 and 24 of this Complaint.  REMEDY, ***on***

18  ***behalf of the general public pursuant to Business & Professions Code section***

19  ***17204***, also requests that pursuant to *Business & Professions* Code §17203, this

20  Court order restitution through disgorgement of the illicit profits which rightfully

21  belong to their policyholders throughout the state of California.

22    27.    Additionally, and as part of the injunctive relief prayed for in

23  paragraph 26, above, this Court should also require LIBERTY to disclose to every

24  current policyholder their practice of utilizing its Runoff Unit and Reserves

25  Projects, and the effect said acts have had and continue to have in increasing the

26  policyholder's obligations under their policies with LIBERTY and other carriers.

27  ///

28

9

## THIRD CAUSE OF ACTION

### (Breach of Contract Against LIBERTY and DOES 1 through 100)

28.    REMEDY incorporates by this reference as though fully set forth in this Cause of Action each and every allegation contained in Paragraphs 1 through 27, inclusive, of this Complaint.

29.    REMEDY is informed and believes and thereon alleges that REMEDY and LIBERTY entered into the 2001 Policy (see Exhibit "A") whereby REMEDY agreed to purchase insurance from LIBERTY covering workers compensation.  LIBERTY breached the 2001 Policy by the behavior alleged in Paragraphs 19 and 24 of this Complaint.

30.    REMEDY has performed all terms of the 2001 Policy agreement except for which any of whose performance has been excused by LIBERTY's conduct.

31.    In or about July of 2002, REMEDY discovered that LIBERTY had breached the 2001 Policy.

32.    As a proximate result of LIBERTY's breaches of the 2001 Policy, REMEDY has suffered losses in an amount within the jurisdictional limits of this Court.  When REMEDY ascertains the total amount of its damages, REMEDY will ask leave of Court to allow amendment to this Complaint setting forth such total amount and loss.

**WHEREFORE**, REMEDY prays for judgment against Defendants, and each of them, as follows:

### ON THE FIRST CAUSE OF ACTION

1.    For general damages in an amount which exceeds the minimum jurisdictional limits of this court;

2.    For special damages in a sum to be proven at trial;

3.    For recovery of all attorneys' and consultants' fees, costs and expenses

1    incurred to pursue and obtain the benefits of the 2001 Policy;

2        4.    For punitive and exemplary damages in an amount appropriate to

3    punish or set an example of Defendants;

4    ### ON THE SECOND CAUSE OF ACTION

5        5.    For equitable relief as determined by this Court, including but not

6    limited to, a permanent injunction restraining Defendants from engaging in the

7    unlawful and unfair business practices as pled in this complaint; restitution to

8    Defendants' policyholders, in the form of an order requiring Defendants to

9    disgorge the profits it obtained by engaging in the conduct which violates

10   *Business & Professions* Code §17200 et seq.;

11       6.    For recovery of all attorneys' fees in connection with the equitable

12   portion of this Complaint;

13   ### ON THE THIRD CAUSE OF ACTION

14       7.    For general and special damages in a sum to be proven at trial;

15   ### ON ALL CAUSES OF ACTION

16       8.    For all costs incurred by REMEDY to date and to be incurred by

17   REMEDY hereafter in connection with this action; and

18       9.    For such other and further relief as the court deems just and proper.

19

20   DATED: March 31, 2004          ROXBOROUGH, POMERANCE & NYE LLP

21

22

23       By: _____

24       NICHOLAS P. ROXBOROUGH
     MICHAEL B. ADREANI

25       Attorneys for Plaintiff REMEDYTEMP,
     INC., a California Corporation.

26

27

28

Ex "A"



# COMMERCIAL

# POLICY

## WORKERS´ COMPENSATION AND

## EMPLOYERS´ LIABILITY POLICY FOR

WA2-66D-004227-011

RemedyTemp, Inc.
and as per Endorsment 1

101 Enterprise
Aliso Viejo, CA 92656-2604



**ISSUING OFFICE 031**
**INFORMATION PAGE**

**LIBERTY MUTUAL.**

Workers Compensation and
Employers Liability Policy

| ACCOUNT NO. | SUB ACCT NO. |
|---|---|
| 6-004227 | 0000 |

Liberty Mutual Insurance Group/Boston    **SUBJECT TO DEDUCTIBLE**
Liberty Mutual Fire Insurance Company    16586

| POLICY NO. | TD/CD | SALES OFFICE | CODE | SALES REPRESENTATIVE | CODE | N/R | 1ST YEAR |
|---|---|---|---|---|---|---|---|
| WA2-66D-004227-011 | 04/8 | LOS ANGELES, CA | 603 | SHORTER-HARRIS | B718 | 1 | 2001 |

Item 1. Name of RemedyTemp, Inc.
Insured  and as per Endorsment 1

FEIN 952890471

Address  101 Enterprise
Aliso Viejo, CA 92656-2604

RISK ID 917495572

Status  Corporation

Other workplaces not shown above:  See Item 4

Item 2. Policy Period: From  **04  01  2001**  to  **04  01  2002**
Mo. Day Year        Mo. Day Year
**12:01 am**  standard time at the address of the insured as stated herein.

Item 3. Coverage

A. Workers Compensation Insurance: Part One of the policy applies to the Workers Compensation Law of the states listed here:

AL AZ CA CO CT DE FL GA IL IN IA KS KY LA MD MA MI
MN MS MO NE NV NJ NM NY NC OK PA SC TN TX UT VA

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3.A. The limits of our liability under Part Two are:

Bodily Injury by Accident  $  1,000,000  each accident
Bodily Injury by Disease  $  1,000,000  policy limit
Bodily Injury by Disease  $  1,000,000  each employee

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here:

All States except those listed in Item 3.A and the States of:
ND OH WA WV WY

D. This policy includes these endorsements and schedules:  **SEE EXTENSION OF INFORMATION PAGE**
**AND DEDUCTIBLE ENDORSEMENTS ATTACHED**

Item 4. Premium — The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

| Classifications | Code No. | Premium Basis Estimated Total Annual Remuneration | Rates Per $100 of Re-muneration | LINE  140 Estimated Annual Premiums |
|---|---|---|---|---|
| SEE EXTENSION OF INFORMATION PAGE | | | | |

Minimum Premium $ 2500  (CA)    Total Estimated Annual Premium $  1,530,376

Interim adjustment of premium shall be made: Annual    Deposit Premium  $  1,530,376

This policy, including all endorsements issued therewith, is hereby countersigned by

Authorized Representative    Date 05/03/2001

**THIS POLICY IS**

**SUBJECT TO AUDIT**

| Loc. Code | Term. Oper.  KAL | Audit Basis | Periodic Payment | Rating Basis | Pol. H.G. | Home State | Dividend | New |
|---|---|---|---|---|---|---|---|---|
| 6 | 05/03/2001 | 1 | | DED | | CA | | |

GPO 4403 R1

Copyright 1987 National Council on Compensation Insurance

WC 00 00 01 A

13

# WORKERS COMPENSATION AND EMPLOYERS LIABILITY POLICY

## THIS POLICY IS NONASSESSABLE



**Liberty Mutual Insurance Group/Boston**

FOR PROMPT INSURANCE SERVICE - CALL YOUR SERVICE OFFICE

Liberty Mutual Fire Insurance Company (A mutual insurance company, herein called the company)

In return for the payment of the premium and subject to all terms of this policy, we agree with you as follows.

**THIS POLICY IS CLASSIFIED IN DIVIDEND CLASS XIII WORKERS COMPENSATION AND EMPLOYERS LIABILITY**

The named insured is hereby notified that by virtue of this policy he is a member of the Liberty Mutual Fire Insurance Company and is entitled to vote either in person or by proxy at any and all meetings of said company.

The annual meetings are held at its home office, Boston, Massachusetts on the second Wednesday of April in each year, at eleven o'clock in the morning.

## GENERAL SECTION

**A. The Policy**

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

**B. Who Is Insured**

You are insured if you are an employer named in item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

**C. Workers Compensation Law**

Workers Compensation Law means the workers or workmen compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the the policy period It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

**D. State**

State means any state of the United States of America, and the District of Columbia.

**E. Locations**

This policy covers all of your workplaces listed in items 1 or 4 of the Information Page; and it covers all other workplaces in item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE - WORKERS COMPENSATION INSURANCE

**A. How This Insurance Applies**

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

**B. We Will Pay**

GPO 4032 R1
16586
(4-1-92)   WC2    Printed in U.S.A

Copyright 1991 National Council on Compensation Insurance.

Page 1

WC 00 00 00A

14



We will pay promptly when due the benefits required of you by the workers compensation law.

**C. We Will Defend**

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance.  We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

**D. We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1.   reasonable expenses incurred at our request, but not loss of earnings;

2.   premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3.   litigation costs taxed against you;

4.   interest on a judgement as required by law until we offer the amount due under this insurance; and

5.   expenses we incur.

**E. Other Insurance**

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

**F. Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1.   of your serious and willful misconduct;

2.   you knowingly employ an employee in violation of law;

3.   you fail to comply with a health or safety law or regulation; or

4.   you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

**G. Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**H. Statutory Provisions**

These statements apply where they are required by law.

1.   As between an injured worker and us, we have notice of the injury when you have notice.

2.   Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3.   We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

GPO 4032 R1
16586
(4-1-92)   WC2   Printed in U.S.A           Copyright 1991 National Council on Compensation Insurance.       WC 00 00 00A

Page 2

4.  Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5.  This insurance conforms to the parts of the workers compensation law that apply to:

    a.  benefits payable by this insurance;

    b.  special taxes, payments into security or other special funds, and assessments payable by us under that law.

6.  Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO - EMPLOYERS LIABILITY INSURANCE

### A.  How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.  The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.  The employment must be necessary or incidental to your work in a state or territory listed in item 3.A. of the Information Page.

3.  Bodily injury by accident must occur during the policy period.

4.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.  If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B.  We Will Pay

We will pay all sums you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1.  for which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.  for care and loss of services; and

3.  for consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee;

provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.  because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

### C.  Exclusions

This insurance does not cover:

1.  liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2.  punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3.  bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4.  any obligation imposed by a workers compensation. occupational disease. unemployment compensation. or disability benefits law, or any similar law;

5.  bodily injury intentionally caused or aggravated by you;

6.  bodily injury occuring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7.  damages arising out of coercion, criticsm, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, acts or omissions.

8.  bodily injury to any person in work subject to the Longshore and Harbor Workers, Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Health and Safety Act of 1969 (30 USC Sections 901-942), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws.

9.  bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws.

10.  bodily injury to a master or member of the crew of any vessel.

11.  fines or penalties imposed for violation of federal or state law.

12.  damages payable under the Migrant and Seasonal Agricultural Workers Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

D.  **We Will Defend**

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim. proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

E.  **We Will Also Pay**

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1.  reasonable expenses incurred at our request, but not loss of earnings;

2.  premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liabillty under this insurance;

3.  litigation costs taxed against you;

4.  interest on a judgment as required by law until we offer the amount due under this insurance; and

5.  expenses we incur.

F.  **Other Insurance**

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

G.  **Limits of Liability**

Our liability to pay for damages is limited. Our limits of liability are shown in item 3.B. of the Information Page. They apply as explained below.

1.  Bodily Injury by Accident. the limit shown for "bodily injury by accident–each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more

**Page 4**

17



employees in any one accident. A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease-policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease-each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**H.  Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

**I.  Actions Against Us**

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgement.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability. The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE - OTHER STATES INSURANCE

**A.  How This Insurance Applies**

1. This other states insurance applies only if one or more states are shown in item 3.C. of the Information Page.

2. If you begin work in one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B.  Notice**

Tell us at once if you begin work in any state listed in item 3.C. of the Information Page.

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

18

## PART FIVE - PREMIUM

A. **Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

B. **Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period . If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

C. **Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1.  all your officers and employees engaged in work covered by this policy; and

2.  all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

D. **Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

E. **Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise.

1.  If we cancel, final premium will be caculated pro-rata based on the time this policy was in force. Final premium will not be less than the pro-rata share of the minimum premium.

2.  If you cancel, final premium will be more than pro-rata; it will be based on the time this policy was in force, and increased by our short rate cancelation table and procedure. Final premium will not be less than the minimum premium.

F. **Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

G. **Audit**

19

## PART SIX - CONDITIONS

**A.  Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public.  We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

**B.  Long Term Policy**

If the policy is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

**C.  Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

**D.  Cancelation**

1.  You may cancel this policy. You must mail or deliver advance written notice to us stating when the cancelation is to take effect.

2.  We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancelation is to take effect.  Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3.  The policy period will end on the day and hour stated in the cancelation notice.

4.  Any of these provisions that conflicts with a law that controls the cancelation of the insurance in this policy is changed by this statement to comply with that law.

**E.  Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancelation.

In witness whereof, the company has caused this policy to be signed by its President and its Secretary at Boston, Massachusetts, and countersigned on the Information Page by a duly authorized representative of the company.

20

Item 3. Coverage D - Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

| Policy Notices and Applications | |
|---|---|
| **Form Number** | **Form Name** |
| WCTCCPAP | Connecticut Contracting Classification Premium Adjustment Program Premium Credit Application |
| WFCCR9 | Florida Contracting Classification Premium Adjustment Program |
| WILCC | Illinois Contracting Classification Premium Adjustment Program |
| MACCR7 | Massachusetts Construction Classification Premium Adjustment Program |
| WNMCC | New Mexico Workers Compensation Premium Adjustment Program for Qualifying Classifications |
| WNYCCR2 | New York Construction Classification Premium Adjustment Program |
| GPO 4724 | Application for Drug and Alcohol Free Workplace Premium Credit Program |
| WVACPAP | Virginia Contracting Classification Premium Adjustment Program Application |
| GPO 4662 R3 | Loss Prevention Services |
| GPO 4187 R11 | California Workers Compensation Administrative Surcharge |
| GPO 4521 R10 | California Notice to Policyholder |
| GPO 4569 R1 | California Notice of Availability of Occupational Safety and Health Loss Control Consultation Services |
| GPO 4614 R2 | California Notice to Policyholder |
| GPO 4722 | Policyholder Notice |
| GPO 4113 | Colorado Important Notice to Policyholders |
| GPO 4740 | Colorado Notice to Policyholders |
| GPO 4197 | Policyholder Notice |
| GPO 4102 | Florida Important Information to Policyholders |
| GPO 4594 | Florida Important Information to Policyholders |
| GPO 4663 R1 | Florida Policyholder Notice |
| GPO 4166 R2 | Indiana Notice Regarding Claims Settlement |
| GPO 4691 | Notice of Insured's Rights |
| GPO 4507 | Minnesota Important Information to Policyholders |
| GPO 4509 | Missouri Important Notice to Policyholders |
| GPO 4098 | Notice |
| GPO 4733 | Notice to Employers |
| GPO 4169 | Ohio Insurance Fraud |
| GPO 4660 | Oklahoma Loss Control Regulations |
| GPO 4546 R1 | Pennsylvania Notification of Availability of Accident Prevention Services |
| GPO 4103 | Texas Important Information to Policyholders |
| GPO 4107 | Utah Important Information to Policyholders |
| KWC 27 | Policyholder Notice for Injured Employees |

Item 3. Coverage D - Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

Continued:

| Policy Notices and Applications | |
| --- | --- |
| **Form Number** | **Form Name** |
| GPO 4094 R1 | Virginia Important Information to Policyholders |
| GPO 4570 R3 | CA Workers Compensation Insurance Rating Laws |

| Policy Schedules | |
| --- | --- |
| **Form Number** | **Form Name** |
| WC 00 00 01 A | Information Page (1 YR) |
| GPO 4741 | Miscellaneous Form and Endorsement Schedule |
| GPO 2923 | Item 4. Premium - Extension of Information Page |
| GPO 2923 | Item 4. Premium - Extension of Information Page (NJ State Specific) |
| GPO 4162 | Name Link Schedule |

| Policy Endorsements | | | |
| --- | --- | --- | --- |
| **Form Number** | **Form Name** | **End Serial No.** | **Comments** |
| 102 | Name of Insured Endorsement | End. 1 | |
| WC 00 03 03 B | Employers Liability Coverage | End. 2 | |
| WC 00 03 11 A | Voluntary Compensation and Employers Liability Coverage | End. 3 | |
| WC 00 03 13 | Waiver of Our Right to Recover From Others | End. 4 | |
| WC 00 04 02 | Anniversary Rating Date | End. 5 | |
| WC 00 04 04 | Pending Rate Change | End. 6 | |
| WC 00 04 12 | Contingent Experience Rating Modification Factor | End. 7 | |
| WC 00 04 14 | Notification of Change in Ownership | End. 8 | |
| WC 01 04 02 | Alabama Anniversary Rating Date | End. 9 | |
| WC 02 06 01 | Arizona Cancellation | End. 10 | |
| WC 04 03 01 A | Policy Amendatory - California | End. 11 | |
| WC 04 03 05 | Voluntary Compensation and Employers Liability Coverage - California | End. 12 | |
| WC 04 03 36 | Endorsement Agreement Limiting and Restricting This Insurance | End. 13 | |

22

Item 3. Coverage D · Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

Continued:

| Policy Endorsements |
| --- |

| Form Number | Form Name | End Serial No. | Comments |
|---|---|---|---|
| WC 04 03 60 A | Employers Liability Coverage Amendatory - California | End. 14 | |
| WC 04 04 02 | Mandatory Rate Change - California | End. 15 | |
| WC 04 06 01 A | California Cancelation Endorsement | End. 16 | |
| WC 05 04 02 | Colorado Classification | End. 17 | |
| WC 06 03 01 | Connecticut Application of Workers Compensation Insurance | End. 18 | |
| WC 06 03 03 B | Connecticut Workers Compensation Funds Coverage | End. 19 | |
| WC 06 04 01 | Connecticut Contracting Classification Premium Adjustment | End. 20 | |
| WC 07 06 01 | Delaware Nonrenewal | End. 21 | |
| WC 09 04 01 | Florida Contracting Classification Premium Adjustment | End. 22 | |
| WC 09 06 06 | Florida Employment and Wage Information Release | End. 23 | |
| WC 10 06 01 A | Georgia Cancelation, Nonrenewal and Change Endorsement | End. 24 | |
| WC 12 04 02 | Illinois Contracting Classification Premium Adjustment | End. 25 | |
| WC 12 06 01 B | Illinois Amendatory | End. 26 | |
| WC 15 04 01 | Kansas Final Premium | End. 27 | |
| WC 15 06 01 A | Kansas Cancelation and Nonrenewal Endorsement | End. 28 | |
| WC 16 06 01 | Kentucky Cancellation and Nonrenewal Endorsement | End. 29 | |
| WC 16 06 02 | Kentucky Notice of Appeal Rights | End. 30 | |
| WC 17 06 02 A | Louisiana Cost Containment Act | End. 31 | |
| WC 20 03 01 | Massachusetts Limits of Liability | End. 32 | |
| WC 20 03 02 | Massachusetts - Assessment Charge | End. 33 | |

Item 3. Coverage D - Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

Continued:

| Policy Endorsements | | | |
|---|---|---|---|

| Form Number | Form Name | End Serial No. | Comments |
|---|---|---|---|
| WC 20 03 03 B | Massachusetts Notice to Policyholder | End. 34 | |
| WC 20 04 01 | Massachusetts Pending Premium Change | End. 35 | |
| WC 20 04 03 | Massachusetts Construction Classification Premium Adjustment | End. 36 | |
| WC 20 06 01 | Massachusetts Cancelation Endorsement | End. 37 | |
| WC 21 03 03 | Michigan Notice to Policyholder | End. 38 | |
| WC 21 03 04 | Michigan Law | End. 39 | |
| WC 22 00 00 | Minnesota Amendatory Endorsement | End. 40 | |
| WC 22 04 02 | Minnesota Anniversary Rating Date | End. 41 | |
| WC 22 06 01 B | Minnesota Cancellation and Nonrenewal Endorsement | End. 42 | |
| WC 24 04 06 B | Missouri Employer Paid Medical | End. 43 | |
| WC 24 06 01 B | Missouri Cancelation and Nonrenewal Endorsement | End. 44 | |
| WC 24 06 04 | Missouri Amendatory | End. 45 | |
| WC 26 04 01 | Nebraska Experience Rating Modification | End. 46 | |
| WC 26 06 01 C | Nebraska Cancelation and Nonrenewal | End. 47 | |
| WC 27 06 01 | Nevada Cancellation and Nonrenewal Endorsement | End. 48 | |
| WC 29 03 06 A | New Jersey Part Two Employers' Liability Endorsement | End. 49 | |
| WC 29 04 10 | New Jersey Construction Classification Premium Adjustment | End. 50 | |
| WC 29 06 01 A | New Jersey Large Risk - Large Deductible | End. 51 | |
| WC 29 06 03 | New Jersey Participating Provision | End. 52 | |
| WC 30 03 01 | New Mexico Safety Device Coverage | End. 53 | |

Item 3. Coverage D - Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

Continued:

| Policy Endorsements | | | |
|---|---|---|---|
| **Form Number** | **Form Name** | **End Serial No.** | **Comments** |
| WC 30 04 01 A | New Mexico Workers Compensation Premium Adjustment Program for Qualifying Classifications | End. 54 | |
| WC 30 06 01 | New Mexico Cancelation and Nonrenewal Endorsement | End. 55 | |
| WC 31 03 08 | New York Limit of Liability | End. 56 | |
| WC 31 03 19 A | New York Construction Classification Premium Adjustment Program Endorsement | End. 57 | |
| WC 31 04 04 | New York Pending Payroll Limitation and Premium Differential | End. 58 | |
| WC 32 03 01 A | North Carolina Amended Coverage | End. 59 | |
| WC 35 04 04 | Oklahoma Contracting Classification Premium Adjustment | End. 60 | |
| WC 35 06 01 B | Oklahoma Cancelation, Nonrenewal and Change Endorsement | End. 61 | |
| WC 35 06 03 | Oklahoma Fraud Warning | End. 62 | |
| WC 35 06 04 | Oklahoma Election of Coverage Notification | End. 63 | |
| WC 37 04 02 | Pennsylvania Construction Classification Premium Adjustment | End. 64 | |
| WC 37 06 02 | Pennsylvania Notice | End. 65 | |
| WC 37 06 03 A | Pennsylvania Act 86-1986 Endorsement - Nonrenewal, Notice of Increase of Premium, and Return of Unearned Premium | End. 66 | |
| WC 37 06 04 | Pennsylvania Employer Assessment Endorsement | End. 67 | |
| WC 42 03 01 F | Texas Amendatory | End. 68 | |
| WC 42 04 02 A | Texas Anniversary Rating Date | End. 69 | |
| WC 42 04 03 A | Texas Experience Rating Modifier | End. 70 | |
| WC 43 06 01 | Utah Workplace Safety Program | End. 71 | |
| WC 45 06 02 | Virginia Amendatory | End. 72 | |

25

Item 3. Coverage D - Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

Continued:

| Policy Endorsements | | | |
|---|---|---|---|
| **Form Number** | **Form Name** | **End Serial No.** | **Comments** |
| WC 45 06 04 | Virginia Contracting Classification Premium Adjustment | End. 73 | |
| WC 99 03 04 | Notice of Cancellation | End. 74 | |
| WC 99 03 07 | Louisiana Punitive Damages Endorsement | End. 75 | |
| WC 99 03 12 | Repatriation Expense Endorsement | End. 76 | |
| WC 99 04 06 | Notice of Dividend Classification | End. 77 | |
| WC 99 04 07 | Notice of Dividend Classification | End. 78 | |
| WC 99 04 34 | California Amendatory Endorsement | End. 79 | |
| WC 99 06 10 | Foreign Coverage Endorsement | End. 80 | |
| WC 99 06 19 | Tax and Assessment Charges - Kentucky | End. 81 | |
| WC 99 06 25 R2 | Deductible Endorsement | End. 82 | |
| WC 99 06 27 R2 | Deductible Endorsement | End. 83 | |
| WC 99 06 29 R1 | Pennsylvania Deductible Endorsement | End. 84 | |
| WC 99 06 31 R2 | Massachusetts Deductible Endorsement | End. 85 | |
| WC 99 06 33 | Participating Provision Endorsement - Missouri | End. 86 | |
| WC 99 06 34 | North Carolina Notice of Cancellation | End. 87 | |
| WC 99 06 37 | Illinois Amendment to Deductible Endorsement | End. 88 | |
| WC 99 06 38 R1 | Illinois Deductible Endorsement | End. 89 | |
| WC 99 06 43 R1 | Michigan Deductible Endorsement | End. 90 | |
| WC 99 06 47 R1 | Delaware Loss Reimbursement Endorsement | End. 91 | |
| WC 99 06 51 | Louisiana Deductible Endorsement | End. 92 | |
| WC 99 06 56 | Kansas Deductible Endorsement | End. 93 | |
| WC 99 06 57 | Colorado Cancellation Notice | End. 94 | |

Item 3. Coverage D - Extension of Information Page

## Miscellaneous Form and Endorsement Schedule

Continued:

| Policy Endorsements | | |
|---|---|---|
| Form Number | Form Name | End Serial No. | Comments |
| WC 99 06 56 | Nebraska Deductible Endorsement | End. 95 | |
| WC 99 06 66 | Missouri Deductible Endorsement | End. 96 | |
| WC 99 06 71 R1 | Oklahoma Loss Reimbursement Endorsement | End. 97 | |
| WC 99 06 74 | Texas Deductible Endorsement | End. 98 | |
| WC 99 06 76 | Arizona Deductible Endorsement | End. 99 | |
| WC 99 06 79 | Utah Deductible Endorsement | End. 100 | |
| WC 99 06 85 | Ohio Employers Liability Coverage | End. 101 | |
| WC 99 06 86 R1 | Colorado Deductible Endorsement | End. 102 | |
| WC 99 06 88 | Deductible Endorsement - Amendatory - California | End. 103 | |
| WC 99 06 95 | Maryland Deductible Cancellation Endorsement | End. 104 | |
| WC 19 06 01 A | Maryland Cancellation Endorsement | End. 105 | |
| WC 17 06 01 B | Louisiana Amendatory Endorsement | End. 106 | |
| WC 17 03 03 | Louisiana Duty to Defend Endorsement | End. 107 | |
| WC 99 04 03 GPO 4032 | Combined for Experience Rating NC Company 2 Jacket (GPO 4032) | End. 108 | |

27



Liberty Mutual Group

801 South Figueroa Street
Suite 870
P.O. Box 17902
Los Angeles, CA 90017-4902
(213) 624-4171
(800) 464-7009
(213) 624-4102

August 24, 2001


Ms. Diana Rich
Director of Risk Management
RemedyTemp
101 Enterprise
Aliso Viejo, CA 92656


RE: Workers Compensation large Risk Rating Plan Option Endorsement
     Effective 4/1/01 - 4/1/02

Dear Diana:

Enclosed please find the 1st page of the Large Risk Rating plan option form you had Alan sign and returned to Edith.  In reviewing the document we realized you had the wrong revision of this form.  The only difference were the policy numbers which should be as follows:
1.  WA2-66D-004227-011 for all states except ID, WA and OR
2.  WC2-661-004227-021 for ID, WA and OR
Please replace the first page with the one enclosed for your records.  We have replaced ours and have sent a copy to Craig Cornell at Barney and Barney.
If you have any questions, Please feel free to call.

Sincerely,

Linda Reno
Supervising Customer Service Coordinator
Los Angeles National Sales

28

ORIGINAL

LARGE RISK ALTERNATIVE RATING OPTION PLAN
RETROSPECTIVE RATING OPTION FOR DEDUCTIBLE PREMIUM
RETROSPECTIVE DEDUCTIBLE PREMIUM ENDORSEMENT

Insured: REMEDYTEMP, INC.

It is hereby agreed that the insured and insurer have mutually
agreed to a Large Risk Alternative Rating Option for a
Retrospective Deductible Premium Rating Plan. The insured and
insurer further agree that this endorsement, and no other
endorsement, determines the retrospective deductible premium
for the insurance provided during the rating plan period by
these policies. The terms and conditions of the applicable
Deductible Endorsement(s) included with these policies are
utilized in conjunction with this Large Risk Alternative
Rating Option for a Retrospective Deductible Premium Rating
Plan.

Throughout this endorsement the words "you" and "your" refer
to the Insured accepting this agreement.  The words "we", "us"
and "our" refer to the Insurer providing this rating plan.


I.  Coverage Included

   This retrospective deductible rating agreement applies to
   the following lines of insurance:

      All Workers' Compensation, Employers Liability

   provided under the policies listed below and renewal and
   rewrites thereof:

             Policies                  States/Coverages

         WA2-661-004227-011        ALL STATES AND COVERAGES
         WC2-66D-004227-021        TO WHICH THE POLICIES APPLY


II. Period of the Rating Plan Agreement

   This rating agreement will apply to the coverage as
   specified in Section I - Coverage Included for the period
   beginning 4/1/01 and ending 4/1/02, referred to herein as
   the Rating Plan Period.

(Ed.5/96 rev.1.10/96.mev.    Copyright 1999 Liberty Mutual Insurance Company.3A

LARGE RISK ALTERNATIVE RATING OPTION PLAN
RETROSPECTIVE RATING OPTION FOR DEDUCTIBLE PREMIUM
RETROSPECTIVE DEDUCTIBLE PREMIUM ENDORSEMENT

Insured: REMEDYTEMP, INC.

It is hereby agreed that the insured and insurer have mutually
agreed to a Large Risk Alternative Rating Option for a
Retrospective Deductible Premium Rating Plan. The insured and
insurer further agree that this endorsement, and no other
endorsement, determines the retrospective deductible premium
for the insurance provided during the rating plan period by
these policies. The terms and conditions of the applicable
Deductible Endorsement(s) included with these policies are
utilized in conjunction with this Large Risk Alternative
Rating Option for a Retrospective Deductible Premium Rating
Plan.

Throughout this endorsement the words "you" and "your" refer
to the Insured accepting this agreement. The words "we", "us"
and "our" refer to the Insurer providing this rating plan.


I. Coverage Included

   This retrospective deductible rating agreement applies to
   the following lines of insurance:

      All Workers' Compensation, Employers Liability

   provided under the policies listed below and renewal and
   rewrites thereof:

            Policies              States/Coverages

         WC2-661-004227-021    ALL STATES AND COVERAGES
         WA2-66D-004227-011    TO WHICH THE POLICIES APPLY


II. Period of the Rating Plan Agreement

   This rating agreement will apply to the coverage as
   specified in Section I - Coverage Included for the period
   beginning 4/1/01 and ending 4/1/02, referred to herein as
   the Rating Plan Period.

(Ed.5/96 rev.1.10/96.mev)    Copyright 1993 Liberty Mutual Insurance Company.3.

30

I. Explanation of the Retrospective Deductible Premium
Standard Rating Elements Used in the Computation of the
Retrospective Deductible Premium

### Standard Premium

"Standard Premium" is the premium we would charge during
the Rating Plan Period for the insurance subject to the
Retrospective Deductible Premium Rating Plan if you had
not chosen the Retrospective Deductible Premium Rating
Plan, but with exceptions. Standard premium does not
include the expense constant charge, the premium discount
credit, or any other expense modification.

If this endorsement applies to more than one policy or
state, the Standard Premium will be the sum of the
Standard Premiums for each policy and state

### Deductible Premium

"Deductible Premium" is the premium, after the application
of a deductible credit, that we would charge during the
rating plan period if you had not chosen the Retrospective
Deductible Premium  Rating Plan, but with one exception.
Deductible premium does not include the expense constant
charge.

If this endorsement applies to more than one policy or
state, the deductible premium will be the sum of the
deductible premiums for each policy and state.

### Deductible Basic Expense Premium

"Deductible Administrative Expense Premium" is the premium
developed by multiplying the Deductible Administrative
Expense Premium Factor by the designated exposure base.
The Deductible Administrative Expense Premium Factor and
designated exposure base is shown in Section IV.

### Deductible Excess Premium

"Deductible Excess Premium" is the premium developed by multiplying the Deductible Excess Premium Factor by the designated exposure base. The Deductible Excess Premium Factor and designated exposure base is shown in Section IV.

## Actual Reimbursable Losses

"Actual Reimbursable Losses" are all amounts paid or estimated to be paid for deductible losses and allocated loss adjustment expenses as defined by the applicable Deductible Endorsement(s) attached to these policies. In the absence of an applicable deductible endorsement or where the terms of such endorsements differ from those of the plan, the terms of this plan shall apply.

Actual Reimbursable Losses under this plan are defined as:

The first $250,000 per accident/occurrence of loss benefits and damages and allocated loss adjustment expense payments for bodily injury by accident, and the first $250,000 per claim of loss benefits and damages and allocated loss adjustment expense payments for bodily injury by disease.

## Surcharges and Assessments

Surcharges and Assessments are collected as a separate charge (not premium) as defined by the state jurisdiction; surcharges are not part of this agreement because they are not treated as premium.

## IV.  Retrospective Deductible Premium Rating Formula

Insurance policies listed in the Schedule will be combined to calculate the Retrospective Deductible Premium. If the policies provide insurance for more than one insured, the Retrospective Deductible Premium will be determined for all insureds combined, not separately for each insured.

Retrospective Deductible Premium means the sum of the following elements, subject to minimum and maximum provisions when applicable:



A.   Deductible Administrative Expense Premium

The Deductible Administrative Expense Premium is developed
by the application of a Deductible Administrative Expense
Premium Factor multiplied by each $1 of audited workers'
compensation manual premium. The Deductible Basic Expense
Premium Factor is $.0631 per $1 of audited WC manual
premium.

B.   Deductible Excess Premium

The Deductible Excess Premium is developed by the
application of a Deductible Excess Premium Factor
multiplied by each $1 of audited workers' compensation
manual premium.  The Deductible Excess Premium Factor is
$.0374 per $1 of audited manual WC premium.

C.   Deductible Claims Handling Expense

The Deductible Claims Handling Expense is developed by the
application of Per Claim Charges to each claim by claim
type.

The Per Claim Charges are:
Workers' Compensation Medical Only - $121 per claim
Workers' Compensation Indemnity - $983 per claim
Workers' Compensation Report Only - $41 per claim

D.   Minimum  and  Maximum  Retrospective  Deductible  Premium
Provisions

The Actual Reimbursable Losses under this plan are subject
to a maximum. The maximum reimbursable losses in this plan
are the greater of the following amounts:

There are no minimum or maximum rateable losses under this
program.

E.   Loss Prevention Service Hours

(PG. 1 '96 rev.1.10 96.mev)   Copyright 1999 Liberty Mutual Insurance Company.3A

This quote includes 800 annual Hours of Loss Prevention Services. Rates for Services in Excess of included Hours are: Loss Prevention Services $108 per Hour, Industrial Hygiene Services (Time and Expense) $130 per Hour, Analytical Lab Services (per sample) $ Varies, and Loss Prevention Institutes and Seminars $ Varies.

F. California Benefits Bill Increase

In the event the state of California passes a Workers Compensation benefits increase, Liberty Mutual reserves the right to increase excess pricing in a manner commensurate with the benefit increase, on the effective date of the benefit bill increase.

V.  Surcharges   and   Assessments   &   First   Renewal   Expense Commitment

Loss Based Assessment Charges are collected as part of the deductible premium (Special Fund Assessments) or as a separate surcharge (not premium) as defined by the state jurisdiction; surcharges are not part of this Retrospective Deductible Premium plan agreement because they are not premium. The Special Fund Assessments are part of this Retrospective Deductible Premium plan agreement, and are determined as a percentage of losses, and audited standard premiums. The Surcharges and Assessments will be adjusted based upon actual incurred losses and actual audited premium, at each adjustment (see schedule attached for factors).

First Renewal expense commitment shall consist of obtaining an inflationary increase on claims charges and a maximum increase of 15% on the administrative expense factors. There is no commitment on any other aspect of the program, and all other terms, factors, collateral and payment plan are negotiable.

VI. Dates of Computation of Retrospective Deductible Rating Premium

A. We will calculate the Retrospective Deductible Premium using the rates/factors agreed to in Section IV Retrospective Deductible Premium Rating, based on the number of claims as of eighteen months, or as otherwise

(Ed. 5.96 rev.10/96.mem)   Copyright 1993 Liberty Mutual Insurance Company.9A

mutually agreed to, after the beginning of the Rating Plan
Period, the audited payrolls as indicated on the policy
premium audits and the Loss Prevention Service hours
provided. We will recalculate the Retrospective Deductible
Premium annually thereafter.

E.  We may make a special calculation of the Retrospective
    Deductible Premium as of any date that any Insured covered
    by these policies is declared bankrupt or insolvent, or
    makes an assignment for the benefit of creditors, or is
    involved in reorganization, receivership or liquidation,
    or disposes of all its interest in work covered by these
    policies.

C.  If after any calculation, the  Retrospective Deductible
    Premium that you have paid us prior to such calculation is
    less  than  the  Retrospective  Deductible  Premium  due  as
    result  of  such  calculation,  then  you  shall  pay  us  the
    difference  when billed  as per the applicable Memorandum
    of Agreement relating to this Plan.   Conversely, if after
    any such calculation, the Retrospective Deductible Premium
    that  you  have  paid  us  prior  to  such  calculation,  is
    greater  than  the  premium  due  as  result  of  such
    calculation,  then  we  shall  refund  you  the  difference  as
    soon  as  practicable,  or,  at  our  option,  credit  such
    amounts to any unpaid balances that you owe us.

    Each Named Insured covered under the policies listed in
    Section I is jointly and severally liable for all premiums
    due  under  this  rating  agreement,  and  for  any  other
    financial obligations of any Named Insured to us arising
    out of any agreements contained in the policies listed in
    Section I.

D.  We may mutually agree with you that any calculation of the
    Retrospective Deductible Premium is the final calculation.
    If we make such an agreement, no other calculation will be
    made  unless  there  is  clerical  error  in  the  final
    calculation.


VII. Work In Other States

A.  If any of the Policies provide insurance in a state that
    was not originally contemplated at the inception of this
    rating plan agreement and if you begin work in that state
    during the rating plan period, this agreement will apply

to that insurance. However, if you acquire or start an
operation in any state not originally contemplated at the
inception of this rating plan agreement, and if, in our
sole    judgement,    the    additional    operation    or    state
represents a significantly different exposure from that
contemplated at the inception of this agreement, then we
have the right hereunder to review and re-negotiate the
pricing of this rating plan agreement.

B.    This Section VII applies only to any such state in which
we are licensed to write the line of insurance to which
this endorsement applies and in which the Large Risk
Alternative Rating Option for a Retrospective Deductible
Rating Plan is available for use.

VIII. <u>Cancellation</u>

The cancellation or non-renewal prior to the end of the
period of this rating agreement of all policies designated
in Section I or renewals or rewrites thereof will be
considered cancellation of this rating agreement and the
Retrospective    Deductible    Premium    will    be    computed    as
follows:

1.If    any    insurance    subject    to    this    endorsement    is
cancelled, the effective date of cancellation will become
the end of the rating plan period for all insurance
subject to this endorsement unless we agree with you, by
endorsement, to continue the rating plan period.

2.If    we    cancel    for    nonpayment    of    premium,    the    final
deductible premium will be based on audited payroll up to
the date of cancellation extended pro rata to the end of
the rating plan period, subject to any plan minimums.

3.If you cancel, the final deductible premium will be
based on audited payroll up to the date of cancellation
extended pro rata to the end of the rating plan period,
subject to any plan minimums.

4.Section VIII.3. will not apply if you cancel because:
     a. all work covered by the insurance is completed;
     b. all    interest    in    the    business    covered    by    the
     insurance is sold; or,
     c. you    retire    from    all    business    covered    by    the
     insurance.

(Ed. 9/96 rev.1.10/96.mev    Copyright 1993 Liberty Mutual Insurance Company.3A

Accepted
by: _____

(Date) Aug 13, 2001 (Insured)

_____ S. VP, CFO _____
(Title)

(Proprietor, Partner or Authorized Officer of Corporation)

Issued

Sales Office and No.

End. Serial No.

This endorsement is executed by the company below designated by an entry in the box opposite its name

LIBERTY MUTUAL INSURANCE COMPANY

LIBERTY MUTUAL FIRE INSURANCE COMPANY

Premium $                    LIBERTY INSURANCE CORPORATION

Effective Date              LM INSURANCE CORPORATION

For attachment to Policy No.    THE FIRST LIBERTY INSURANCE CORPORATION

Issued to

Countersigned by _____

                                    Authorized Representative

(EG. 6/96 rev. 10/96 new)   Copyright 1996 Liberty Mutual Insurance Company, In

37

*superceded*

**LARGE RISK ALTERNATIVE RATING OPTION PLAN**
**RETROSPECTIVE RATING OPTION FOR DEDUCTIBLE PREMIUM**
**RETROSPECTIVE DEDUCTIBLE PREMIUM ENDORSEMENT**

**Insured: REMEDYTEMP, INC.**

It is hereby agreed that the insured and insurer have mutually agreed to a Large Risk Alternative Rating Option for a Retrospective Deductible Premium Rating Plan. The insured and insurer further agree that this endorsement, and no other endorsement, determines the retrospective deductible premium for the insurance provided during the rating plan period by these policies. The terms and conditions of the applicable Deductible Endorsement(s) included with these policies are utilized in conjunction with this Large Risk Alternative Rating Option for a Retrospective Deductible Premium Rating Plan.

Throughout this endorsement the words "you" and "your" refer to the Insured accepting this agreement. The words "we", "us" and "our" refer to the Insurer providing this rating plan.

I.  Coverage Included

   This retrospective deductible rating agreement applies to the following lines of insurance:

   All Workers' Compensation, Employers Liability

   provided under the policies listed below and renewal and rewrites thereof:

| Policies | States/Coverages |
|---|---|
| WC2-661-004227-021 | ALL STATES AND COVERAGES |
| WA2-66D-004227-011 | TO WHICH THE POLICIES APPLY |

II. Period of the Rating Plan Agreement

   This rating agreement will apply to the coverage as specified in Section I - Coverage Included for the period beginning 4/1/01 and ending 4/1/02, referred to herein as the Rating Plan Period.

III. Explanation of the Retrospective Deductible Premium
Standard Rating Elements Used in the Computation of the
Retrospective Deductible Premium

### Standard Premium

"Standard Premium" is the premium we would charge during
the Rating Plan Period for the insurance subject to the
Retrospective Deductible Premium Rating Plan if you had
not chosen the Retrospective Deductible Premium Rating
Plan, but with exceptions. Standard premium does not
include the expense constant charge, the premium discount
credit, or any other expense modification.

If this endorsement applies to more than one policy or
state, the Standard Premium will be the sum of the
Standard Premiums for each policy and state

### Deductible Premium

"Deductible Premium" is the premium, after the application
of a deductible credit, that we would charge during the
rating plan period if you had not chosen the Retrospective
Deductible Premium  Rating Plan, but with one exception.
Deductible premium does not include the expense constant
charge.

If this endorsement applies to more than one policy or
state, the deductible premium will be the sum of the
deductible premiums for each policy and state.

### Deductible Basic Expense Premium

"Deductible Administrative Expense Premium" is the premium
developed by multiplying the Deductible Administrative
Expense Premium Factor by the designated exposure base.
The Deductible Administrative Expense Premium Factor and
designated exposure base is shown in Section IV.

### Deductible Excess Premium

"Deductible Excess Premium" is the premium developed by
multiplying the Deductible Excess Premium Factor by the
designated exposure base. The Deductible Excess Premium
Factor and designated exposure base is shown in Section
IV.



Actual Reimbursable Losses
_____

"Actual Reimbursable Losses" are all amounts paid or
estimated to be paid for deductible losses and allocated
loss adjustment expenses as defined by the applicable
Deductible Endorsement(s) attached to these policies. In
the absence of an applicable deductible endorsement or
where the terms of such endorsements differ from those of
the plan, the terms of this plan shall apply.

Actual Reimbursable Losses under this plan are defined as:

The first $250,000 per accident/occurrence of loss
benefits and damages and allocated loss adjustment
expense payments for bodily injury by accident, and the
first $250,000 per claim of loss benefits and damages and
allocated loss adjustment expense payments for bodily
injury by disease.


Surcharges and Assessments
_____

Surcharges and Assessments are collected as a separate
charge (not premium) as defined by the state jurisdiction;
surcharges are not part of this agreement because they are
not treated as premium.


IV.  Retrospective Deductible Premium Rating Formula

Insurance policies listed in the Schedule will be combined
to calculate the Retrospective Deductible Premium. If the
policies provide insurance for more than one insured, the
Retrospective Deductible Premium will be determined for all
insureds combined, not separately for each insured.

Retrospective Deductible Premium means the sum of the
following elements, subject to minimum and maximum
provisions when applicable:


A.  Deductible Administrative Expense Premium

The Deductible Administrative Expense Premium is developed
by the application of a Deductible Administrative Expense
Premium Factor multiplied by each $1 of audited workers'
compensation manual premium. The Deductible Basic Expense
Premium Factor is $.0631 per $1 of audited WC manual
premium.

B.   Deductible Excess Premium

The Deductible Excess Premium is developed by the application of a Deductible Excess Premium Factor multiplied by each $1 of audited workers' compensation manual premium. The Deductible Excess Premium Factor is $.0374 per $1 of audited manual WC premium.

C.   Deductible Claims Handling Expense

The Deductible Claims Handling Expense is developed by the application of Per Claim Charges to each claim by claim type.

The Per Claim Charges are:
Workers' Compensation Medical Only - $121 per claim
Workers' Compensation Indemnity - $983 per claim
Workers' Compensation Report Only - $41 per claim

D.   Minimum and Maximum Retrospective Deductible Premium Provisions

The Actual Reimbursable Losses under this plan are subject to a maximum. The maximum reimbursable losses in this plan are the greater of the following amounts:

There are no minimum or maximum rateable losses under this program.

E.   Loss Prevention Service Hours

This quote includes 500 annual Hours of Loss Prevention Services. Rates for Services in Excess of included Hours are: Loss Prevention Services $108 per Hour, Industrial Hygiene Services (Time and Expense) $130 per Hour, Analytical Lab Services (per sample) $ Varies, and Loss Prevention Institutes and Seminars $ Varies.

F.  California Benefits Bill Increase

In the event the state of California passes a Workers Compensation benefits increase, Liberty Mutual reserves the right to increase excess pricing in a manner commensurate with the benefit increase, on the effective date of the benefit bill increase.

## V. Surcharges and Assessments & First Renewal Expense Commitment

Loss Based Assessment Charges are collected as part of the deductible premium (Special Fund Assessments) or as a separate surcharge (not premium) as defined by the state jurisdiction; surcharges are not part of this Retrospective Deductible Premium plan agreement because they are not premium. The Special Fund Assessments are part of this Retrospective Deductible Premium plan agreement, and are determined as a percentage of losses, and audited standard premiums. The Surcharges and Assessments will be adjusted based upon actual incurred losses and actual audited premium, at each adjustment (see schedule attached for factors).

First Renewal expense commitment shall consist of obtaining an inflationary increase on claims charges and a maximum increase of 15% on the administrative expense factors. There is no commitment on any other aspect of the program, and all other terms, factors, collateral and payment plan are negotiable.

## VI. Dates of Computation of Retrospective Deductible Rating Premium

A. We will calculate the Retrospective Deductible Premium using the rates/factors agreed to in Section IV Retrospective Deductible Premium Rating, based on the number of claims as of eighteen months, or as otherwise mutually agreed to, after the beginning of the Rating Plan Period, the audited payrolls as indicated on the policy premium audits and the Loss Prevention Service hours provided. We will recalculate the Retrospective Deductible Premium annually thereafter.

B. We may make a special calculation of the Retrospective Deductible Premium as of any date that any Insured covered by these policies is declared bankrupt or insolvent, or makes an assignment for the benefit of creditors, or is involved in reorganization, receivership or liquidation, or disposes of all its interest in work covered by these policies.

C. If after any calculation, the Retrospective Deductible Premium that you have paid us prior to such calculation is less than the Retrospective Deductible Premium due as result of such calculation, then you shall pay us the difference when billed as per the applicable Memorandum of Agreement relating to this Plan. Conversely, if after any such calculation, the Retrospective Deductible Premium that you have paid us prior to such calculation, is greater than the premium due as result of such calculation, then we shall refund you the difference as soon as practicable, or, at our option, credit such amounts to any unpaid balances that you owe us.

Each Named Insured covered under the policies listed in Section I is jointly and severally liable for all premiums due under this rating agreement, and for any other financial obligations of any Named Insured to us arising out of any agreements contained in the policies listed in Section I.

D. We may mutually agree with you that any calculation of the Retrospective Deductible Premium is the final calculation. If we make such an agreement, no other calculation will be made unless there is clerical error in the final calculation.

VII. <u>Work In Other States</u>

A. If any of the Policies provide insurance in a state that was not originally contemplated at the inception of this rating plan agreement and if you begin work in that state during the rating plan period, this agreement will apply to that insurance. However, if you acquire or start an operation in any state not originally contemplated at the inception of this rating plan agreement, and if, in our sole judgement, the additional operation or state represents a significantly different exposure from that contemplated at the inception of this agreement, then we have the right hereunder to review and re-negotiate the pricing of this rating plan agreement.

B. This Section VII applies only to any such state in which we are licensed to write the line of insurance to which this endorsement applies and in which the Large Risk Alternative Rating Option for a Retrospective Deductible Rating Plan is available for use.

## VIII. Cancellation

The cancellation or non-renewal prior to the end of the period of this rating agreement of all policies designated in Section I or renewals or rewrites thereof will be considered cancellation of this rating agreement and the Retrospective Deductible Premium will be computed as follows:

1. If any insurance subject to this endorsement is cancelled, the effective date of cancellation will become the end of the rating plan period for all insurance subject to this endorsement unless we agree with you, by endorsement, to continue the rating plan period.

2. If we cancel for nonpayment of premium, the final deductible premium will be based on audited payroll up to the date of cancellation extended pro rata to the end of the rating plan period, subject to any plan minimums.

3. If you cancel, the final deductible premium will be based on audited payroll up to the date of cancellation extended pro rata to the end of the rating plan period, subject to any plan minimums.

4. Section VIII.3. will not apply if you cancel because:
   a. all work covered by the insurance is completed;
   b. all interest in the business covered by the insurance is sold; or,
   c. you retire from all business covered by the insurance.

## IX. Regulatory Service Requirements

We may become regulatorily required, after this policy becomes effective, to provide certain services (e.g. managed care) under the policy or to re-classify/re-code certain services under the policy in accordance with filed rating and statistical plans. If this happens, the charges made for the required services and/or re-classification of services will be consistent with filed rating and statistical plans (e.g. medical loss, indemnity loss, allocated loss adjustment expense, or unallocated loss adjustment expense)

Accepted
by: _____            _S. VP, CFO_
                  (Insured)                (Title)
(Date)  Aug 13, 2001
      (Proprietor, Partner or Authorized Officer of Corporation

This endorsement is executed by the company below designated by an entry in the box opposite its name.

| | |
|---|---|
| Premium $ | ☐ LIBERTY MUTUAL INSURANCE COMPANY |
| Effective Date  04/01/2001   Expiration Date  04/01/2002 | ☒ LIBERTY MUTUAL FIRE INSURANCE COMPANY |
| For attachment to Policy No.  WA2-66D-004227-011 | ☐ LIBERTY INSURANCE CORPORATION |
| Audit Basis  1 | ☐ LM INSURANCE CORPORATION |
| | ☐ THE FIRST LIBERTY INSURANCE CORPORATION |
| Issued To  RemedyTemp, Inc., Etal. | |

Countersigned

by.................................................................................

Authorized Representative

Issued              Sales Office and No.          End. Serial No.  3A
ltd 5/30/02          Los Angeles - 603

102

45







## ROXBOROUGH
## POMERANCE
## & NYE, LLP

NICHOLAS P. ROXBOROUGH
DREW E. POMERANCE
GARY A. NYE
MICHAEL B. ADREANI

DAMON M. RIBAKOFF
CRAIG S. PYNES
DAVID R. GINSBURG
MICHAEL G. KLINE
MARINA N. VITEK
ERIN M. LABRACHE
MICHAEL H. RAICHELSON
JULIE A. TRACY
MICHAEL L. PHILLIPS

5820 CANOGA AVENUE, SUITE 250
WOODLAND HILLS, CA 91367
PHONE: (818)992-9999
FAX: (818)992-9991
WWW.RPNLAW.COM

November 29, 2007

LOS ANGELES OFFICE
10866 WILSHIRE BLVD., SUITE 1550
LOS ANGELES, CA 90024-4336
PHONE (310)470-1869
FAX (310)470-9648

*Via Facsimile and E-Mail*

Carol A. Rutter
Husch & Eppenberger, LLC
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105

      Re:   *Remedy Temp v. Liberty*

Dear Carol:

      I have been forwarded a copy of your letter to Mr. Phillips dated November 27, 2007 pertaining to the Protective Order in the RemedyTemp litigation.

      Paragraph 16 of our Protective Order in this case does call for all confidential documents to be returned upon final resolution of the case. We have not ignored or disregarded this provision in any way, as you seem to suggest. In fact, this case is clearly not fully and finally resolved, as evidenced by the fact that we are currently scheduled for Binding Arbitration before Justice Panelli on January 16, 2008. The issues involved in that proceeding include those which we litigated in the District Court portion of this dispute. You have acknowledged this on several occasions in the last few months – even stating to both Nick and I that we "already have" certain testimony and evidence that we all know is germane to the ongoing proceedings.

      Moreover, to the extent that you and Liberty believed adherence to Paragraph 16 was already mandated, why have you not returned any documents that were designated "confidential" by RemedyTemp? We have obviously both been operating under the premise that this case is "not over" and that there has been no "final resolution."

Carol A. Rutter, Esq.
November 29, 2007
Page 2

     Once the matter is resolved, I will certainly meet and confer with you on an agreeable time, place and means for mutually returning all confidential materials in our case. In the meantime, please contact me if you have any further comments on this topic.


                Very truly yours,

                ROXBOROUGH, POMERANCE & NYE LLP


                MICHAEL B. ADREANI


File No. 02045.02
cc:    James F. Henshall, Esq.
        Nicholas P. Roxborough, Esq.
        Michael B. Adreani, Esq.
E:\Clients\Remedy Temps\Liberty\Correspondence\071129.Ltr to Carol and Jim PO.mba.doc

## COVER

# FAX

## SHEET

| | |
|---|---|
| **To:** | Carol A. Rutter |
| | Husch & Eppenberger, LLC |
| **Fax #:** | (314) 480-1505 |
| **From:** | Michael B. Adreani, Esq. |
| **Subject:** | *Remedy Temp v. Liberty Mutual* |
| **Date:** | November 29, 2007 |
| **Pages:** | 3, including this cover sheet |

COMMENTS:


If there are any problems with this transmission, please contact our office at (818) 992-9999

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

### THANK YOU.

From the desk of Elia Ramirez

Roxborough, Pomerance & Nye, LLP
5820 Canoga Ave
Suite 250
Woodland Hills, Ca. 91367

(818)992-9999
Fax: (818) 992-9991

```
        ***********************
        ***   TX REPORT   ***
        ***********************

TRANSMISSION OK

TX/RX NO             1893
CONNECTION TEL              13144801505
SUBADDRESS
CONNECTION ID
ST. TIME             11/29 13:48
USAGE T              00'28
PGS. SENT            3
RESULT               OK
```

# COVER

# FAX

## SHEET

**To:**      Carol A. Rutter
            Husch & Eppenberger, LLC

**Fax #:**   (314) 480-1505

**From:**    Michael B. Adreani, Esq.

**Subject:** *Remedy Temp v. Liberty Mutual*

**Date:**    November 29, 2007

**Pages:**   3, including this cover sheet

COMMENTS:

If there are any problems with this transmission, please contact our office at (818) 992-9999

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

THANK YOU.

# COVER

# SHEET

# FAX

| | |
|---|---|
| **To:** | James F. Henshall, Jr., Esq. |
| | Berger  Kahn |
| **Fax #:** | (949) 474-7265 |
| **From:** | Michael B. Adreani, Esq. |
| **Subject:** | *Remedy Temp v. Liberty Mutual* |
| **Date:** | November 29, 2007 |
| **Pages:** | 3, including this cover sheet |

COMMENTS:


If there are any problems with this transmission, please contact our office at (818) 992-9999

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

## THANK YOU.

From the desk of Elia Ramirez

Roxborough, Pomerance & Nye, LLP
5820 Canoga Ave
Suite 250
Woodland Hills, Ca. 91367

(818)992-9999
Fax: (818) 992-9991

```
********************
***   TX REPORT   ***
********************


TRANSMISSION OK

TX/RX NO              1894
CONNECTION TEL              19494747265
SUBADDRESS
CONNECTION ID
ST. TIME              11/29 13:49
USAGE T               00'26
PGS. SENT                3
RESULT                OK
```

# COVER

# SHEET

# FAX

| | |
|---|---|
| **To:** | James F. Henshall, Jr., Esq. |
| | Berger Kahn |
| **Fax #:** | (949) 474-7265 |
| **From:** | Michael B. Adreani, Esq. |
| **Subject:** | *Remedy Temp v. Liberty Mutual* |
| **Date:** | November 29, 2007 |
| **Pages:** | 3, including this cover sheet |

COMMENTS:

If there are any problems with this transmission, please contact our office at (818) 992-9999

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE.

THANK YOU.



# *CERTIFIED COPY*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LEXINGTON

| | |
|---|---|
| REPUBLIC SERVICES, INC. | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) CIVIL ACTION |
| V. | ) CASE NO. : 03-494 KSF |
| | ) |
| LIBERTY MUTUAL INSURANCE COMPANY, ET AL. | ) |
| | ) |
| DEFENDANTS. | ) |
| | ) |

## *DEPOSITION OF: LISA KRALIK HANSEN*
### *TAKEN: AUGUST 15, 2006*

*Dalene Court Reporters*

16161 Ventura Boulevard, #734
Encino, California 91436
Telephone: 661.726.0584

Reported By:
Judy K. Boswell
CSR 7500

1    WAS INVOLVED IN REVIEWING CLAIM MANUALS.

2        A.    ABSOLUTELY HE WAS.

3        Q.    OKAY.  BUT THESE WERE NOT WORKERS' COMPENSATION

4    CLAIMS MANUAL THAT HE WAS ACTUALLY INVOLVED IN REVIEWING,

5    WERE THEY?  AND --

6        A.    IT COULD HAVE BEEN, DEPENDING ON THE TIMING OF

7    THE VERSION OF THE CLAIM MANUAL INVOLVED IN THE PARTICULAR

8    CASE.

9        Q.    WELL, LET'S REFRESH YOUR RECOLLECTION WITH YOUR

10   TESTIMONY THAT MR. PYNES WORKED THERE IN 2003, 2004.  DOES

11   THAT REFRESH YOUR RECOLLECTION AS TO WHETHER OR NOT THERE

12   WERE SEPARATE CLAIMS MANUALS FOR WORKERS' COMPENSATION AND

13   OTHER LINES OF INSURANCE?

14        MR. SKOCYPEC:  OBJECTION.  UNINTELLIGIBLE.

15        THE DEPONENT:  IT DOESN'T REFRESH MY

16   RECOLLECTION.  IT WOULD DEPEND ON THE SPECIFIC TIMING OF

17   EACH CASE.  WE HAD A LOT OF CONSTRUCTION DEFECT MATTERS IN

18   OUR OFFICE AND THOSE CAN GO BACK -- THOSE GO BACK INTO THE

19   '90S AS OF 2003.

20   BY MR. ADREANI:

21        Q.    YOU'RE NOT AWARE OF MR. PYNES EVER LOOKING AT A

22   WORKERS' COMPENSATION CLAIMS MANUAL, ARE YOU?

23        A.    I HAVE NO PERSONAL KNOWLEDGE THAT MR. PYNES WOULD

24   HAVE INDEED REVIEWED A CLAIMS MANUAL SPECIFIC TO WORKERS'

25   COMPENSATION, BUT HE DID REVIEW CLAIMS MANUALS.

39

DEPOSITION OF LISA KRALIK HANSEN

1      Q.   OKAY.   WITH REGARD TO THE NEXT COMMENT YOU MAKE,

2    WRITTEN DISCOVERY, MR. PYNES NEVER PROPOUNDED OR RESPONDED

3    TO THE WRITTEN DISCOVERY WITH REGARD TO WORKERS'

4    COMPENSATION BAD FAITH, DID HE?

5      A.   I DON'T KNOW THAT HE NEVER DID THAT.   TO THE BEST

6    OF MY RECOLLECTION, HE DID NOT.

7      Q.   MEDIATION, MR. PYNES WAS NOT INVOLVED IN ANY

8    MEDIATION WITH REGARD TO WORKERS' COMPENSATION BAD FAITH,

9    WAS HE?

10     A.   I DO NOT BELIEVE HE WAS.

11     Q.   OKAY.   STRATEGY DISCUSSIONS, MR. PYNES WAS NEVER

12   INVOLVED IN STRATEGY DISCUSSIONS WITH REGARDS TO WORKERS'

13   COMPENSATION BAD FAITH, WAS HE?

14     A.   I CANNOT TESTIFY THAT HE WAS NEVER INVOLVED IN

15   STRATEGY DISCUSSIONS RELATING TO WORKERS' COMPENSATION.

16   WE HAD A NUMBER OF THOSE CASES IN OUR OFFICE AT THAT POINT

17   IN TIME AND WE HAD MEETINGS, INTERNAL FIRM MEETINGS,

18   PRACTICE GROUP MEETINGS IN WHICH CASES WOULD HAVE BEEN

19   DISCUSSED, THERE COULD HAVE BEEN DISCUSSIONS IN THE

20   HALLWAY, HE COULD HAVE WALKED IN ON A DISCUSSION AMONG

21   LAWYERS, THERE COULD HAVE BEEN DISCUSSIONS ABOUT THOSE

22   CASES AT LUNCH, VERY COMMON FOR US TO DISCUSS AND --

23   DISCUSS CASES AMONG LAWYERS IN OUR FIRM AND HE WAS A

24   MEMBER OF OUR PRACTICE GROUP.   I BELIEVE HE WAS PROBABLY

25   ACTUALLY -- ACTUALLY WAS PRIVY TO SOME STRATEGY

40

DEPOSITION OF LISA KRALIK HANSEN

1      A.   I DON'T KNOW IF HE DID OR HE DID NOT.

2      Q.   OKAY.  THE NEXT SENTENCE, "MR. PYNES ALSO HAD

3    SOME CLIENT CONTACT WITH CLAIMS PERSONNEL WITH LIBERTY,"

4    NOW, THAT CLIENT CONTACT WITH CLAIMS PERSONNEL WAS NEVER

5    WITH WORKERS' COMPENSATION CLAIMS PERSONNEL, WAS IT?

6      A.   TO MY PERSONAL KNOWLEDGE, MR. PYNES WOULD NOT

7    HAVE HAD CLIENT CONTACT WITH CLAIMS PERSONNEL WHO AT THAT

8    TIME WERE HANDLING WORKERS' COMPENSATION BAD FAITH

9    MATTERS.

10     Q.   OKAY.  WELL, WHAT DO YOU MEAN BY "AT THAT TIME"?

11     A.   DURING THE TIME HE WAS EMPLOYED.

12     Q.   OKAY.  SO HE NEVER HAD -- TO YOUR KNOWLEDGE --

13   YOUR TESTIMONY IS THAT TO YOUR KNOWLEDGE, MR. PYNES NEVER

14   HAD CONTACT WITH CLAIMS PERSONNEL REGARDING WORKERS'

15   COMPENSATION?

16     A.   WELL, NO.  I THINK YOU'RE SPINNING MY TESTIMONY.

17   MY ANSWER WAS THAT TO MY PERSONAL KNOWLEDGE, HE NEVER HAD

18   CONVERSATIONS WITH LIBERTY MUTUAL PERSONNEL WHO WERE

19   INVOLVED WITH THE HANDLING OF WORKERS' COMPENSATION BAD

20   FAITH CLAIMS OR ABOUT WORKERS' COMPENSATION BAD FAITH

21   CLAIMS.

22        HE MAY HAVE HAD DISCUSSIONS WITH LIBERTY MUTUAL

23   WORKERS' COMPENSATION CLAIMS PERSONNEL IN PART BECAUSE I

24   HAVE SPECIFIC RECOLLECTION THAT HE WORKED ON AT LEAST ONE

25   UNINSURED MOTORIST OR UNDERINSURED MOTORIST CASE BAD FAITH

44

DEPOSITION OF LISA KRALIK HANSEN

1          MR. SKOCYPEC:  WASN'T THAT YOUR QUESTION?

2          MR. ADREANI:  IT IS.  THE FIRST QUESTION WAS SHE

3    WORKED ON, SHE IDENTIFIED THE ONE, AND NOW IT'S KERN &

4    WOOLEY GENERALLY.

5          MR. SKOCYPEC:  THAT WERE IN LITIGATION AT KERN &

6    WOOLEY?

7          MR. ADREANI:  AND SHE IDENTIFIED ONE MORE, YES.

8          THE WITNESS:  THIS IS GOING TO TAKE ME A WHILE

9    BECAUSE THIS IS A MEMORY TEST.

10          MR. ADREANI:  WE CAN TAKE A BREAK IF YOU WANT.

11          THE DEPONENT:  SURE.

12          (RECESS TAKEN, FROM 12:27 TO 12:34.)

13    BY MR. ADREANI:

14      Q.  WE'RE BACK ON THE RECORD AND YOU WERE TRYING TO

15    REMEMBER SOME CASES.

16      A.  TO THE BEST OF MY RECOLLECTION, AS I SIT HERE

17    TODAY, THE NAMES OF THE OTHER CASES WOULD BE TONY'S FINE

18    FOODS, WESTWARD, W-E-S-T-W-A-R-D, HO, H-O, OR PETERSON,

19    THIRD CASE WOULD BE VERGIS, V-E-R-G-I-S, AND THE FOURTH

20    CASE IS KIMCO, K-I-M-C-O.

21      Q.  SO YOU RECALL WORKING YOURSELF ON THE REMEDY TEMP

22    CASE AS A WORK COMP BAD FAITH CASE AND YOU RECALL, AS YOU

23    SIT HERE TODAY, LITIGATED CASES INVOLVING ALLEGATIONS OF

24    BAD FAITH IN THE WORK COMP CONTEXT, WESTWARD HO, TONY'S

25    FINE FOODS, KIMCO, AND VERGIS?

74

DEPOSITION OF LISA KRALIK HANSEN

1      A.   YES, WITH A CLARIFICATION.   YOU USED THE PHRASE

2  "WORKED ON."

3      Q.   I APOLOGIZE.

4      A.   I HANDLED -- I WAS ONE OF THE HANDLING ATTORNEYS

5  OF THE REMEDY TEMP LITIGATION.   I MAY HAVE DONE SOME WORK

6  ON THESE OTHER FILES OR FILES BEYOND THIS LIST OF THESE

7  ADDITIONAL FOUR THAT WE HAD IN OUR OFFICE, BUT I WAS NOT

8  THE HANDLING ATTORNEY.   I MAY HAVE PICKED UP OR --

9      Q.   YOU MAY HAVE DID A DOCUMENT REVIEW FOR SOMEBODY

10 OR SOMETHING LIKE CRAIG DID?

11     A.   AS I SIT HERE TODAY -- I MEAN, WAS THAT A

12 QUESTION?

13     Q.   YES.

14     A.   I MAY HAVE.   I DON'T RECALL ANY SPECIFIC WORK I

15 DID ON THESE OTHER FILES.

16     Q.   WESTWARD HO, WAS THAT THE GROCERY STORE?

17     A.   I HAVE NO IDEA.

18     Q.   YOU SAID WESTWARD HO OR PETERSON?

19     A.   I THINK IT RELATED TO A HOTEL/MOTEL OR SERIES OF

20 MOTELS.   I'M GUESSING.   I...

21          MR. SKOCYPEC:   COULD WE GO OFF THE RECORD A

22 SECOND?

23          MR. ADREANI:   YEAH.

24          (WHEREUPON A BRIEF DISCUSSION WAS HELD

25          OFF THE RECORD.)