Nicholas P. Roxborough, Esq. (Bar No. 113540)
Michael L. Phillips, Esq. (Bar No. 232978)
ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Ave., Suite 250
Woodland Hills, California 91367
Telephone: (818) 992-9999
Facsimile: (818) 992-9991
E-Mail: npr@rpnlaw.com
mlp@rpnlaw.com

Attorneys for Plaintiffs/Counter-Defendants
LARGO CONCRETE, INC. and N.M.N. CONSTRUCTION, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation.<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive.<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. C07-04651 CRB (ADR)<br>*The Hon. Charles R. Breyer*<br><br>**OBJECTIONS TO EVIDENCE SUBMITTED IN SUPPORT OF LIBERTY MUTUAL'S MOTION TO DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING PLAINTIFFS**<br><br>Date: December 21, 2007<br>Time: 10:00 a.m.<br>Ctrm: 8<br><br>[Memorandum of Points and Authorities; and Supporting Declarations Filed and Served Concurrently Herewith]<br><br>Complaint filed: September 10, 2007 |

Plaintiffs/Counter-Defendants, LARGO CONCRETE, INC. and N.M.N. CONSTRUCTION, INC. (hereinafter "Largo") hereby submit the following Objections to Evidence Submitted by LIBERTY MUTUAL FIRE INSURANCE COMPANY (hereinafter "LMF") In Support of Liberty's Motion to Disqualify Roxborough, Pomerance, & Nye (hereinafter "RPN") from representing Largo.

**A. <u>Declaration of Lisa Kralik Hansen</u>**

Largo objects to each and every paragraph of the declaration if Lisa Kralik Hansen ("Hansen") based on Evidence Code Sections 402, 403, 602, 802, and 805 in that it is irrelevant, based on speculation, is vague and misleading, lacks personal knowledge and/or is based on hearsay, is inherently weak, and is not the best evidence available.

For example, paragraphs four and five state that Craig Pynes ("Craig") worked almost exclusively on matters for the Liberty Mutual companies, performing various tasks, during his brief tenure at KW. However, she conveniently neglects to inform the court that the work performed by Craig involved matters that are <u>completely unrelated</u> to the present action. Hansen has already conceded that 1.) she has no personal knowledge that Craig ever looked at a Liberty workers' compensation claims manual; 2.) did not participate in any mediation on any workers' compensation bad faith claims mishandling matters; and 3.) did not speak to any adjusters at Liberty regarding any workers' compensation matters. Her deposition testimony in this regard was clear:

Q. You're not aware of Mr. Pynes ever looking at a workers' compensation claims manual, are you?
A. I have no personal knowledge that Mr. Pynes would have indeed reviewed a claims manual specific to workers' compensation, but he did review claims manuals.

(Hansen Depo. taken 8/15/06 ("Hansen Depo I") at 39:21-25).

.....

Q. Okay. With regard to the next comment you make, written discovery, Mr. Pynes never propounded or responded to the written discovery with regard to workers' compensation bad faith, did he?
A. I don't know that he ever did that. To the best of my recollection, he did not.
Q. Mediation, Mr. Pynes was not involved in any mediation with regard to workers' compensation bad faith, was he?

A. I do not believe he was.

(Hansen Depo. I at 40:1-10)

.....

Q. Okay. The next sentence, "Mr. Pynes also had some client contact with claims personnel with Liberty", Now, that client contact with claims personnel was never with workers' compensation claims personnel, was it?
A. To my personal knowledge, Mr. Pynes would not have had client contact with claims personnel who at that time were handing workers' compensation bad faith matters.
Q. Okay. Well, what do you mean by "at that time"?
A. During the time he was employed.

(Hansen Depo. I at 44:2-11.)

Also, Hansen's statement that she and Craig *represented* the Liberty Mutual Companies in the *TFF* matter is inaccurate and misleading. While Hansen claims to have "represented" a Liberty entity in this matter, LMF has produced no evidence that she performed <u>any</u> work on the matter. Her name does not appear on any of the limited pleadings filed in the matter and Craig's testimony is that he was not even aware Hansen was involved in the matter and that he never discussed the matter with her. Roxborough Decl. at ¶34; Pynes Decl. at ¶6. Hansen even conceded during her deposition that her alleged "representation" in the *TFF* matter was based on the fact that she was a member of the Liberty practice group at KW, not that she actually performed any specific work on the matter. Hansen Depo. taken on November 27, 2007 ("Hansen Depo II") at 34:5-15.

Paragraphs six and seven of Hansen's declaration should be stricken in their entirety because they are <u>completely based on inadmissible hearsay</u> and were cleverly drafted by LMF's counsel to mislead the court regarding the scope of work actually performed by Craig on the *TFF* matter. It is undisputed that Hansen was not a handling attorney on the *TFF* matter and was not in the room when the assignment was given to Craig. At the time Hansen executed her declaration in the *Republic* matter, she had <u>no recollection</u> of the *TFF* matter. At some point between the time she executed her declaration in that matter, August 1, 2006, and the time her deposition was taken on August 15, 2006, her memory was "refreshed" regarding the *TFF* matter. She further conceded that her description of the assignment Craig performed is <u>based solely on what she was told by Craig and Yee</u>. Hansen Depo.

II at 77:14-78:3; 102:25-103:3. To the extent her testimony is based on what she was told by Yee, it is inadmissible hearsay. Nonetheless, her declaration in this matter contains two paragraphs regarding *TFF* including the specifics of the assignment given to Craig. Hansen Decl. ¶6,7.

Hansen further conceded, contrary to her misleading declaration, that the only "training" or "supervision" she provided Craig on the *TFF* matter was during the course of an alleged 15 minute conversation which Craig denied even took place. Hansen Depo. II at 24:4-8; 35:6-36:10; Pynes Decl. ¶7. Hansen claims that Craig, an attorney who has an equivalent amount of legal experience, came to her, even though she was not a handling attorney on the matter, to ask about an assignment he had been given. Hansen's only recollection regarding what was discussed is the general and misleading statement contained in paragraph 7 of her declaration that states she spoke with Craig about the document review, privilege review, or preparation of the privilege log. When questioned about this discussion at her deposition, she had no specific recollection of what was discussed. Hansen Depo. II at 24:4-8; 35:6-36:10. Nonetheless, she testified that she somehow "trained" him during the course of this brief conversation, despite the fact that she had never reviewed a workers' compensation claim file herself, had never prepared a privilege log of that sort, and had absolutely no experience in this unique area of law.

Hansen is willing to do whatever it takes to regain her position in the ranks of the Liberty companies' attorneys. Until recently Hansen's 17 year career has been based primarily on representing the Liberty companies. She has not, however, been retained by the Liberty companies in the last 11 months, but she has remained in contact with key Liberty executives and if given the chance, would strike at the opportunity to regain their business. Hansen Depo. II at 72:2-9. Hansen has demonstrated extreme bias in favor of Liberty and the testimony contained within her manufactured declaration should be stricken.

///

///

///

**B. <u>Declaration of Melodee Yee</u>**

Largo objects to each and every paragraph of the declaration if Melodee Yee ("Yee") based on Evidence Code Sections 402, 403, 602, 802, and 805 in that it is tantamount to perjury, is irrelevant, is based on speculation, is vague, lacks personal knowledge and/or is based on hearsay, is inherently weak, and is not the best evidence available.

At her deposition, Yee conceded that her declaration was drafted by counsel representing LMF in this matter and that she made <u>no efforts to look at the scope of work she actually performed on *TFF*</u>. In fact, Yee was first provided a draft copy of her declaration by Sheppard, Mullin Richter & Hampton, (Scott Sveslosky), she then discussed the contents of the declaration with Hansen, viewed Hansen's declaration that was also to be filed in support of LMF's motion, made a few minor, handwritten revisions to her declaration, then returned an executed copy to Mr. Sveslosky. Yee Depo. at 25:17-26:5; 31:16-22; 32:10-15.

Yee's declaration states that she *represented* the Liberty companies in the *TFF* matter; however, when asked about TFF at her deposition, she did not recall when she first worked on the case or even the name of Plaintiffs' counsel. She did not recall an application for stay being granted in that case, <u>before</u> Craig even worked at KW. She did not recall filing <u>anything</u> with the superior court, and did not recall why another attorney at KW, Penelope Park, was listed on a majority of the pleadings and she and Hansen were not. Yee Depo. at 70:1-74:21. Nonetheless, according to her declaration, she recalls the minor assignment given to Craig!

Yee has no recollection of the privilege log allegedly created by Craig at her direction; nonetheless, she did not feel it was necessary for her to ask counsel for LMF, upon being asked to prepare a declaration, for a copy of the *TFF* file.

> Q. Did you ask him to get the Kern and Wooley file concerning Tony's Fine Foods when you talked to him the number of times you've testified to?
> A. No, I did not.
> Q. Why is that?
> A. Because my—I--
> Q. I'm sorry?

A. I prepared the declaration or worked on it and it was to the best of my recollection so I did not ask Mr. Sveslosky to get any other documents.
Q. Where is the privilege log you referred to in your declaration?
A. I don't know.
Q. When was the last time you saw it?
A. When I was at Kern and Wooley.
Q. How many privilege logs have you prepared at Kern and Wooley for the seven or eight years you worked there?
A. A number.
Q. More than 50?
A. I don't think so.
Q. More than 20?
A. Maybe.
Q. What did you do with the privilege log? Did you throw it away?
A. No.
Q. Did you send it to Mr. Carlson?
A. No.
Q. How big was the privilege log?
A. I don't recall.
Q. What was on it? You don't remember, do you?
A. No. It was—it had— I'm sure it was in our privilege log format.

(Yee Depo. at 75:15-76:23)

Equally shockingly, at her deposition she admitted the first time she saw the *TFF* complaint, which she referred in ¶4 of declaration and which was attached as Exhibit "A" to her declaration, was at her November 16, 2007 deposition. Yee Depo. at 33:21-23; 34:2-21; 35:10-13. Yee has been a litigation attorney for 14 years; as such she has undoubtedly explained the importance of executing a document under penalty of perjury to many of her clients. Nonetheless, it is uncontested that she executed her declaration in this matter, under penalty of perjury, describing and verifying the authenticity of an attachment <u>that she did not even see before or when she signed her declaration and it was not attached at the time of execution</u>.

Q. Okay. So that was added after you signed the declaration, as far as you know?
A. Correct.
Q. So you didn't even look at Exhibit A when you signed the declaration, correct?
A. Correct.

(Yee Depo. at 34:16-21)

///

The testimony contained within Yee's declaration is tantamount to perjury and should be stricken.

**C. Conclusion**

The declarations of Yee and Hansen are vague, misleading and contain a description, manufactured by counsel for LMF, of the assignment given to Craig on the *TFF* matter. LMF cleverly failed to provide a declaration from the partner and lead attorney on the *TFF* matter, Susan Olson; but Largo deposed her. Olson testified that the scope of the assignment to Craig on *TFF* was limited to a secondary review of four or five claim files, following the initial review by Yee, and to prepare the privilege log.

Q. You didn't prepare a privileged log in the Tony's Fine Foods case; right?
A. I personally did not.
Q. Now, who did you ask to prepare one, because Ms. Yee testified that she was given a project. Ms. Kralik seems to indicate in her declaration that Ms. Yee had the project of looking at the claim files and Ms. Yee says that she asked Craig or that Craig was given a project on that. Your name doesn't appear anywhere. Just to be done with the depo, hopefully in 30 seconds can you explain your answer?
A. My understanding is that Ms. Yee did the first run through. The claim files showed me what documents she had questions on and then handed over to Mr. Pynes to do privilege logs and to make sure that she did not miss anything.
Q. Handed over to Mr. Pynes to do a privilege log or she gave you privilege Logs?
A. No Mr. Pynes prepared the privilege logs is my understanding. Ms. Yee might have tagged the documents.
Q. So she made the decision it was privileged?
A. She made the first decision, but I am certain asked Mr. Pynes to check all of the documents to make sure she did not miss anything. Then when Ms. Yee was out on maternity leave, I believe as documents came in, Mr. Pynes reviewed them, did the privilege log and I would review what he did.

(Olson Depo. at 69:10-70:13.)

Who are we to believe? Rather than present the best evidence, LMF attempts to mislead the court through the declarations of Hansen and Yee. LMF has access to both the alleged "draft" privilege log and KW's billing records that would indicate the amount of time Craig spent working on the matter. Craig's practice has always been to prepare detailed billing entries. Pynes Decl. ¶6. The privilege log would undoubtedly be the best evidence to show whether Craig did any "confidential"

work and the billing records would serve to show how little and what amount of time he spent on this single assignment. Not only did LMF intentionally fail to produce this evidence, they failed to even produce a declaration from the supervising attorney at KW, Susan Olson, or an individual in the billing department in order to best inform the court specifically about the *TFF* matter and the nature and scope of work performed by Craig.

All "evidence" contained within the declarations of Hansen and Yee should be stricken in its entirety under Evidence Code Sections 402, 403, 602, 802, and 805 in that it is based on speculation, is vague and misleading, lacks personal knowledge and/or is based on hearsay, is inherently weak, and is not the best evidence available.

DATED: November 30, 2007

ROXBOROUGH, POMERANCE & NYE LLP

By: ______________________

NICHOLAS P. ROXBOROUGH, ESQ.
MICHAEL L. PHILLIPS, ESQ.
Attorneys for Plaintiffs/Counter-Defendants, LARGO CONCRETE, INC. and N.M.N. CONSTRUCTION, Inc.