FRANK FALZETTA, Cal. Bar No. 125146
SCOTT SVESLOSKY, Cal. Bar No. 217660
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Telephone: 213-620-1780
Facsimile: 213-620-1398
ffalzetta@sheppardmullin.com
ssveslosky@sheppardmullin.com

TED C. LINDQUIST, III, Cal. Bar No. 178523
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415-434-9100
Facsimile: 415-434-3947
tlindquist@sheppardmullin.com

Attorneys for Defendant and Counterclaimant
LIBERTY MUTUAL FIRE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation,

Plaintiffs,

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive,

Defendants.

AND RELATED COUNTERCLAIM

Case No. C07-04651 CRB (ADR)

Hon. Charles R. Breyer
[Complaint Filed: September 10, 2007]

**LIBERTY MUTUAL FIRE INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISQUALIFY ROXBOROUGH, POMERANCE & NYE FROM REPRESENTING PLAINTIFFS**

[Filed Concurrently with:
1. Declarations of Hector Barba, Greg Brisbee, William Cupelo, Greg Farkas, Frank Falzetta, Lisa Kralik Hansen, Susan Olson, John Silberstein, Ronald Skocypec and Scott Sveslosky;
2. Responses to Plaintiffs' Objections to Evidence Supporting Liberty Mutual's Motion;
3. Liberty Mutual's Objections to Evidence Submitted by Plaintiffs;
4. Request to File Certain Exhibits Under Seal for *In Camera* Review; and
5. Request for Judicial Notice]

Date: December 21, 2007
Time: 10:00 a.m.
Place: Courtroom 8

# TABLE OF AUTHORITIES

Cases


Adams v. Aerojet-General Corp., 86 Cal. App. 4th 1324 (2001) .......... 3, 4

Asyst Techs., Inc. v. Empak, Inc., 962 F. Supp. 1241 (ND Cal. 1997) .......... 14

Carma Developers (Cal.) Inc. v. Marathon Development California, Inc., 2 Cal. 4th 342 (1992) .......... 10

Chambers v. Superior Court, 121 Cal. App. 3d 893 (1981) .......... 11

City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal. 4th 839 (2006) .......... 1, 11

In re County of Los Angeles, 223 F.3d 990 (9th Cir. 2000) .......... 11

Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809 (1979) .......... 10

Elan Transdermal v. Cygnus Therapeutic Systems, 809 F. Supp. 1383 (ND Cal. 1992) .......... 14

Farris v. Fireman's Fund Insurance Company, 119 Cal. App. 4th 671 (2004) .......... 6, 8, 10

Flatt v. Superior Court, 9 Cal. 4th 275 (1994) .......... 1

Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566 (1973) .......... 10

Henrickson v. Great American Savings & Loan, 11 Cal. App. 4th 109 (1992) .......... 2, 11, 13, 14

Hitachi, Ltd. v. Tatung Company, 419 F. Supp. 2d 1158 (N.D. Cal. 2006) .......... 11

I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC, 2005 U.S. Dist. LEXIS 45190, 2005 WL. 757389 (N.D. Cal. 2005) .......... 1, 11

Jessen v. Hartford Casualty Ins. Co., 111 Cal. App. 4th 698 (2003) .......... 5, 6, 10

Lucent Techs., Inc. v. Gateway, Inc., 2007 U.S. Dist. LEXIS 35502 * 26 (S.D. Cal. 2007) .......... 11

Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., 36 Cal. App. 4th 1832 (1995) .......... 15

Morrison Knudsen Corp v. Hancock, Rothert & Bunshoft,
69 Cal. App. 4th 223 (1999)........................................................................................5

Ochoa v. Fordel,
146 Cal. App. 4th 898 (2007)......................................................................................4

River West, Inc. v. Nickel,
188 Cal. App. 3d 1297 (1987)....................................................................................15

Security Officers Service, Inc. v. State Compensation Ins. Fund,
17 Cal. App. 4th 887 (1993)......................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Facing certain disqualification under the correct legal standard, plaintiffs urge this Court to apply the ***wrong*** standard - - the "modified substantial relationship" test - - to LMFIC's motion. That test, which applies ***only*** when the firm-switching lawyer did no work at his prior firm for the client now seeking his disqualification, does not apply here, where Mr. Pynes was immersed, at his prior firm, in insurance coverage and bad faith work for Liberty Mutual Fire Insurance Company ("LMFIC") and Liberty Mutual Insurance Company ("LMIC"). Because Mr. Pynes spent ***more than 440 hours defending LMFIC in "bad faith" lawsuits***, and more than 1,200 total hours representing LMFIC and its affiliates, plaintiffs have no legitimate basis for asserting that the "modified substantial relationship" test applies.

Contrary to plaintiffs' contention, the correct legal standard is the "substantial relationship" test. Under that test, Mr. Pynes' prior representation of LMFIC and LMIC in bad faith cases, including the Tony's Fine Foods case, is "substantially related" to this bad faith case. As a result, Mr. Pynes' access to confidential client communication is ***presumed as a matter of law***, and disqualification of Mr. Pynes and the Roxborough firm is mandatory. I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC, 2005 U.S. Dist. LEXIS 45190, 2005 WL 757389 *4 (N.D. Cal. 2005); City and County of San Francisco v. Cobra Solutions, Inc., 38 Cal.4th 839, 847 (2006); Flatt v. Superior Court, 9 Cal.4th 275, 283 (1994).

Plaintiffs' counsel knows that it is advocating the wrong legal test, because it briefed the correct test just two months ago, in another pending action, entitled *In re* Lien Claims of The Dental Trauma Center *et al*, WCAB Case No. VNA 00485284. There, in a motion asking the Workers' Compensation Appeals Board to disqualify an insurer's lawyers in a medical lien avoidance proceeding, the Roxborough firm argued that the "substantial relationship test" applied,

and that the required substantial relationship existed "when an attorney had direct involvement providing legal services to the former client on a matter that is *linked in some rational manner* to the current representation." [WCAB Brief, p. 5:14-16 (Falzetta Decl., ¶ 4 and Exh M)]. Here, in contrast, even though Mr. Pynes unquestionably had "direct involvement in providing legal services" to LMFIC and LMIC in bad faith cases that are related in a "rational manner" to this case, plaintiffs' counsel disingenuously urges this Court *not* to apply the substantial interest test.

There is nothing new here. As LMFIC explained in its motion, the United States District Court in Kentucky disqualified plaintiffs' counsel in Republic Services on the *same* facts present here. In so doing, it applied Kentucky law, which imposes *more stringent* requirements than California law on parties moving for disqualification. First, in addition to finding that prior and current representations are substantially related, Kentucky law requires a finding that the attorney had access to confidential client information, whereas such access is presumed in California when representations are substantially related. Second, Kentucky law requires a finding that ethical screening procedures were ineffective, while under California law, an ethical screen will *not* prevent mandatory vicarious disqualification in successive representation cases in a private law firm setting. Henrickson v. Great American Savings & Loan, 11 Cal.App.4th 109, 115-116 (1992). This Court should similarly disqualify plaintiffs' counsel under the less demanding California law that applies here.

Finally, plaintiffs' claim that LMFIC filed this Motion out of concern about litigating against the Roxborough firm is arrogant nonsense. Although the Opposition lists several cases that the Roxborough firm has litigated against Sheppard, Mullin over the last 20 years (mostly appeals from pleading motions), it omits numerous cases that the Roxborough firm either ***lost*** or settled. [Falzetta Decl., ¶¶ 5-6]. As but one example, the Opposition fails to mention that the Roxborough firm lost to Sheppard Mullin in the largest workers' compensation claims reserving case it ever prosecuted – a $2 billion class action entitled A&J Liquor v. State Compensation Insurance Fund, San Francisco County Superior Court Case No. 975982, in which

Sheppard Mullin won a defense judgment after 7 months of trial (affirmed on appeal at 2006 WL 806767). [Id., ¶ 5]. That judgment garnered "California Lawyer of the Year" awards for two Sheppard Mullin partners. [Falzetta Decl., ¶ 5]. The lead Sheppard Mullin partner in this case has likewise successfully litigated a number of cases against the Roxborough firm. [Id. at ¶ 6].

The *only* concern that prompted the filing of LMFIC's Motion is the Roxborough firm's blatant conflict of interest, which *mandates* disqualification here.

## II.

## THE "MODIFIED SUBSTANTIAL RELATIONSHIP" TEST DOES NOT APPLY HERE

Plaintiffs' contention that the "modified substantial relationship" test applies to LMFIC's Motion to Disqualify is incorrect. The "modified" test applies only where "there is a substantial relationship between the current case and the matters handled by the firm-switching attorney's former firm *but the attorney did not personally represent the former client who now seeks to remove him from the case*." Adams v. Aerojet-General Corp., 86 Cal.App.4th 1324 (2001)(emphasis added). Here, where Mr. Pynes spent most of his time at K&W "personally representing" LMFIC and LMIC on insurance coverage and bad faith matters, plaintiffs have no legitimate basis for urging application of the "modified substantial relationship" test.

Adams illustrates the correct application of the "modified substantial relationship" test, and why it does not apply here. In Adams, the firm-switching lawyer's former firm had represented Aerojet in toxic waste disposal matters, but the lawyer himself, Mr. Hackard, never represented Aerojet, never talked to anyone at his former firm about Aerojet, and was not privy to any information, confidential or otherwise, about Aerojet. Id., at 1329. Nine years after he left his old firm, Mr. Hackard's new firm represented plaintiffs in a toxic waste disposal case against Aerojet. The new case was indisputably substantially related to cases handled by Mr. Hackard's old firm, but because Mr. Hackard himself had *never* represented Aerojet, the court expressed

concern over disqualifying him or his new firm based solely on information "unknown to both the attorney and his new firm." Id., at 1337. Hence, the court crafted "a standard applicable to a situation such as that posed here" - - i.e., where matters are substantially related but the attorney had no exposure to the client - - and held that under those narrow circumstances, disqualification depends on whether the lawyer was actually exposed, during the prior representation, to confidential information relevant to the current representation. Id., at p. 1340.

Ochoa v. Fordel, 146 Cal.App.4th 898 (2007), cited by plaintiffs, also involved an attorney who never worked, at his prior firm, for the defendant seeking his disqualification. For that reason, the parties *stipulated* that the "modified substantial relationship" test applied, and under that test, the Ochoa court affirmed the trial court's finding that the attorney met his burden of proving that he had no exposure at his prior firm to confidential information relevant to the current lawsuit. Unlike the lawyers in Adams and Ochoa, who never worked for the client seeking disqualification, Mr. Pynes spent a whopping ***1,291 hours*** providing legal services to LFMIC and its affiliates in less than 9 months at K&W, including ***442 hours*** of services to LMFIC on bad faith cases. [Farkas Decl., ¶¶ 2, 3 and Exhs B, C and D; Supp. Sveslosky Decl., ¶¶ 9, 10; Silberstein Decl., ¶ 3]. Accordingly, Adams and Ochoa not only offer no help to plaintiffs, they establish that plaintiffs have asked this Court to apply the wrong legal test to LMFIC's disqualification motion.

## III.

## UNDER THE "SUBSTANTIAL RELATIONSHIP TEST," DISQUALIFICATION OF THE ROXBOROUGH FIRM IS MANDATORY

### A. Matters Are Substantially Related When, Under a Broad View of the Subject Matters Involved, Information Relevant to the Former Case is Relevant to the Current Case

As plaintiffs' counsel recently argued in its WCAB Brief, a substantial relationship exists "when an attorney had direct involvement providing legal services to the former client on a matter that is *linked in some rational manner* to the current representation." [WCAB Brief, p. 5:14-16 (emphasis added)(Falzetta Decl., ¶ 4 and Exh I), *citing* Jessen v. Hartford Casualty Ins. Co., 111 Cal.App.4th 698, 709-711 (2003)]. In determining whether former and current matters are linked in a rational manner, their subject matters are "viewed broadly," while the "discrete legal and factual issues involved . . . are not of import." [WCAB Brief, p. 5:16-19]. This broad view of comparative subject matters is required because when a lawyer was personally involved in providing legal advice and services to the former client, it "must be presumed that confidential information passed to the attorney" (Jessen, *supra*, at 709), and hence, "limiting the comparison of the two representations to their precise legal and factual issues might operate unrealistically to the detriment of the first client." Id., at 712. During the course of a representation, an attorney may acquire confidential information about the client or its affairs that "may not be directly related to the transaction or lawsuit at hand," such as the client's internal operations or policies regarding settlements, perceptions about certain venues, judges or jury pools, etc. Id., at 712; Morrison Knudsen Corp v. Hancock, Rothert & Bunshoft, 69 Cal.App.4th 223, 236-237 (1999)(confidential information normally passed to an attorney includes the identity the client's key decision makers, its litigation philosophy and organizational structure and the potential financial impact of pending claims). Thus, successive representations are "substantially related" when information material to the evaluation, prosecution, settlement or accomplishment of the former representation is also

relevant to the evaluation, prosecution, settlement or accomplishment of the current representation. Jessen, *supra*, at 712-713.[1]

**B. It Is Undisputed that Mr. Pynes Worked on *Tony's Fine Foods*, a Substantially Related Workers' Compensation Bad Faith Case.**

Abandoning its WCAB Brief argument that a "broad view" test governs the relatedness of successive representations, plaintiffs' counsel now contends that Mr. Pynes' bad faith defense work at K&W was "completely unrelated" to the current case because (a) the current case involves bad faith in the workers' compensation insurance setting rather than general or property insurance, (b) Mr. Pynes only worked for 3-4 hours on the Tony's Fine Foods workers' compensation bad faith case, and (c) the defendant in Tony's Fine Foods was LMIC, while the defendant here was LFMIC. These contentions are contrary to indisputable facts, applicable law and common sense.

First, plaintiffs' claim that Mr. Pynes worked only "3-4 hours" on Tony's Fine Foods is false. K&W's March 8, 2004 invoice to LMIC shows that K&W billed LMIC 9.8 hours for Mr. Pynes' time on Tony's Fine Foods in December 2003. [Farkas Decl., ¶ 4 and Exh E; Supp. Sveslosky Decl., ¶ 3].[2] Tony's Fine Foods, like the current representation, was a workers' compensation bad faith claims mishandling case, and therefore is plainly "substantially related" to

---

1 For example, "coverage disputes are substantially related to bad faith actions for the purposes of attorney disqualification because they both turn on the same issue - - whether or not there is coverage under the terms of the policy." Farris v. Fireman's Fund Insurance Company, 119 Cal.App.4th 671, 684 (2004).

2 In his declaration, Mr. Pynes claimed that "3 to 4 hours is all the work I did on Tony's Fine Foods [Pynes Decl., ¶ 8, line 16], but in deposition [Falzetta Decl., ¶ 2 and Exh H], he said "I don't even remember the [Tony's Fine Foods] case" [Pynes Depo. p. 64:6-10 (Falzetta Decl., ¶ 2 and Exh H)], "I barely remember working on the case, much less working more than four hours on the case" [Id., p. 65:10-12], "It could have been more. I honestly don't remember." [Id., p. 66: 3-6], and it "could have been" double the 3-4 hours stated in his declaration. [Id., p. 66:7-10].

the current case, even if the subject matter of the two representations is as narrowly construed as plaintiffs suggest (which the applicable case law does not support).

Second, plaintiff's improperly limit their focus to the time Mr. Pynes spent on Tony's Fine Foods. Mr. Pynes spent the vast majority of his time at K&W – 1,291 hours in 9 months – on legal services for LMFIC and its affiliates, including 743.2 hours representing LFMIC in litigation or coverage matters, of which 442.3 hours were devoted to bad faith cases. [Farkas Decl., ¶¶ 2, 3, Exhs B, C and D; Supp. Sveslosky Decl., ¶ 9; Silberstein Decl., ¶ 3, Olson Decl., ¶¶ 2-5].

Finally, the distinction plaintiffs attempt to draw between Mr. Pynes' representation of LMIC and LMFIC is irrelevant. Both companies underwrite workers' compensation insurance policies, and the same Liberty Mutual employees service those policies and adjust claims made under them, whether underwritten by LMIC or LFMIC. [Brisee Decl., ¶ 2]. LMIC and LFMIC use the same claims and legal data systems to handle and defend claims, and use the same claims handling guidelines, maintained on Liberty Mutual's intranet and accessible to the adjusters who handle claims submitted to both LMIC and LFMIC. [Id.]. When LMIC or LMFIC are sued for bad faith, under any line of insurance, the same attorneys and paralegals in Liberty Mutual's Home Office manage the litigation and communicate with outside counsel retained to defend the cases. [Cupelo Decl., ¶ 3]. Outside counsel's invoices for both LMIC and LFMIC are handled by the same invoice management system. [Farkas Decl., ¶ 2]. Tellingly, in his deposition, Mr. Pynes admitted that he and K&W drew *no distinction* between LMIC and LFMIC, testifying that "[we] treated them all basically like the same entity," because "[i]t was Liberty. Everything would say Liberty, it wouldn't say Liberty Mutual Fire it would say Liberty or Liberty Mutual." [Pynes Depo., p. 99:5-13 (Falzetta Decl., ¶ 2 and Exh H)].

## C. Mr. Pynes Had Access to Confidential and Privileged Information

Although Mr. Pynes' access to confidential client information is *presumed* as a matter of law,[3] the evidence establishes that Mr. Pynes did, in fact, have access to confidential and privileged client information while representing LMFIC and LMIC on Tony's Fine Foods and other cases. For example, Mr. Pynes prepared privilege logs for LMIC and LMFIC [Pynes Depo., p. 38:13-15], and in doing so, reviewed documents sufficiently "to know whether [they were] attorney-client or work product." [Id., p. 39:6-40:24]. In Tony's Fine Foods, Mr. Pynes prepared a privilege log [Pynes Depo., p. 50:7-9], and the log on which he worked shows that he reviewed and withheld attorney-client privileged, attorney work product, confidential and proprietary documents, including (i) letters to LMIC Senior Claims Consultant Hector Barba from LMIC defense counsel Kenneth Martinson, (ii) a "case report" and a "work-up in anticipation of litigation" from LMIC attorney Melissa Matovich, (iii) "file handling information" authored by Ms. Matovich, (iv) "attorney privilege information pertaining to Liberty Mutual," and (vi) documents containing proprietary and confidential "reserve information" claimed as proprietary and confidential. [Skocypec Decl., ¶¶ 3-5, Exh A; Barba Decl., ¶ 2.][4] The information on the privilege log is consistent with K&W's invoice to LMIC, which includes time entries showing that Mr. Pynes: (i) reviewed underlying file information (ii) analyzed claim and other underlying file materials for production, redaction and segregation of privileged information and documents, and (iii) prepared a privilege log for documents withheld from discovery or redacted. [Id.].[5] [Supp. Sveslosky Decl., ¶ 3; Farkas Decl., ¶ 4, Exh. E]

---

3 "[W]hether [the attorney] actually possesses confidential information that would work to his advantage in his current representation is not the test. Rather, the test is whether a substantial relationship exists between the subjects of the two compared representations." Farris v. Fireman's Fund Ins. Co., 119 Cal.App.4th 671, 683 (2004).

4 When shown the privilege log at his deposition, Mr. Pynes stated that he "didn't recall" whether he prepared it, although it was "possible" that he did. [Pynes Depo., p. 91:6-24].

5 Mr. Pynes did not recognize the K&W invoice [Pynes Depo, p. 77:15-78:5], but admitted the time entries on the invoice were generally consistent with his own. [Id., p. 82:18-83:1]

Mr. Pynes also prepared a privilege log in Ashou v. LMFIC, a bad faith case on which he billed LMIC 85.8 hours. His work included (i) preparation of pleadings, discovery requests and discovery responses, (ii) review of claim files and claim file activity notes, (iii) legal research on the genuine dispute doctrine and defenses to "bad faith" claims, (iv) participation in strategy meetings and discussions with K&W attorney Susan Olson, (v) fact investigations, (vi) preparation of a case summary for meetings with Home Office, (vii) preparation of an initial case evaluation letter to send to the "client," and (viii) analysis of issues for a status report to the "client." [Supp. Sveslosky Decl., ¶ 7 ; Farkas Decl., ¶ ¶ 2, 3, 5, Exhs D and F].

At his deposition, Mr. Pynes claimed not to remember [6] whether he communicated with Liberty Mutual [Pynes Depo., p. 113:19-114:8; 115:8-17], but his time records, reflected on K&W's invoices, demonstrate that he communicated directly with his client. For example, K&W's invoices show that on November 21, 2003, Mr. Pynes sent a letter to LMIC claims manager Michael Gonzales, copied to LMIC in-house attorney William Cupelo and Special Corporate Litigation Examiner Nancy McCormick in the Home Office Legal Department. On February 4, 2004, Mr. Pynes billed time for a discussion with Liz Flanders, a paralegal in the Home Office Legal Department [Cupelo Decl., ¶ 4], on McLoughlin v. LMFIC. On January 23, 2004, he billed time for a "meet[ing] with client re: mediation" in Kelly & Picerne, Inc. ("Kelly"). In February 2004, he prepared a case status letter to auto liability claims manager Randy Schubert, addressing settlement and mediation strategy in Kelly, and in March 2004, he had two telephone calls with senior portfolio underwriter Bruce Edwards to discuss mediation in Kelly. From December 2003 to February 2004, Mr. Pynes had at least eight telephone conversations and exchanged about seven e-mails with Senior Technical Claims Specialist Lorrie Isaac, addressing mediation, settlement negotiations and related issues in Designer Marble Products, Inc. [Supp. Sveslosky Decl., ¶ 10; Farkas Decl., ¶ 2 and Exh B (under seal for review *in camera*)].

---

[6] A brief review of the transcript shows that Mr. Pynes gave answers of "I don't remember" and "I don't recall" ***at least 175 times*** in a four-hour deposition.

In summary, the nature and quantity of Mr. Pynes' work for LMFIC and LMIC completely undercuts plaintiffs' position that Mr. Pynes saw no confidential documents and had no direct client contact with LMFIC and LMIC.

**D. The Legal Matters on Which Mr. Pynes Worked at Kern & Wooley are "Substantially Related" to this Matter**

Plaintiffs argue that Mr. Pynes' prior work for Liberty Mutual is not substantially related to the current case because it did not involve "workers' compensation bad faith claims mishandling" cases litigated on behalf of LMFIC. First of all, in making this argument, plaintiffs improperly treat as irrelevant the *743.2 hours* of legal services that Mr. Pynes provided to LMFIC, *including 442.3 hours working on bad faith litigation*. Second, the subject matter of the prior representation, evaluated under the "substantial relationship" test, is "broader than the discrete legal and factual issues involved in the compared representations." Jessen, *supra*, 111 Cal.App.4th at 712-713; Farris, *supra*, 119 Cal.App.4th at 684.

Third, plaintiffs' contention that workers' compensation insurance bad faith law is so "distinct" that all other bad faith cases cannot be substantially related, is preposterous, supported only by Mr. Roxborough's pontifications. Mr. Roxborough brags that his prior cases "established the law under which these types of cases are prosecuted," but those cases do nothing more than apply well-established "bad faith" principles to the handling of claims for benefits under workers' compensation insurance policies. In fact, the first appellate case to address "bad faith" claims mishandling allegations against a workers' compensation insurer, Security Officers Service, Inc. v. State Compensation Ins. Fund, 17 Cal. App. 4th 887, 894-95 (1993), relied on *the same leading "bad faith" cases applicable to all other lines of insurance*, including Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566 (1973), Egan v. Mutual of Omaha Ins. Co., 24 Cal.3d 809 (1979) and Carma Developers (Cal.) Inc. v. Marathon Development California, Inc. 2 Cal.4th 342 (1992),

among others. Thus, the notion that the application of bad faith law turns on the line of insurance involved is simply incorrect.

**E. Roxborough's Purported Ethical Wall Is Not A Safe Harbor From Disqualification**

Relying on In re County of Los Angeles, 223 F.3d 990 (9th Cir. 2000), plaintiffs argue that a purported ethical screen erected around Mr. Pynes in December 2006 (*after* he and his firm were disqualified in the Republic Services case) somehow shields the Roxborough firm vicarious disqualification. Plaintiffs' reliance on County of Los Angeles is misplaced. That case merely followed Chambers v. Superior Court, 121 Cal.App.3d 893 (1981), under which law firms that employ former ***government*** lawyers may use ethical walls to prevent vicarious disqualification. Id., at p. 995. California courts have never extended Chambers to firm-switching lawyers in private practice, and this Court has so found: "use of an ethical wall does not preclude disqualification, other than in circumstances in which a government attorney returns to private practice." I-Enterprise Co. LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC, 2005 U.S. Dist. LEXIS 45190 at * 23.

As this Court observed in Hitachi, Ltd. v. Tatung Company, 419 F.Supp.2d 1158 (N.D. Cal. 2006), while County of Los Angeles "indicates the possibility of a future shift in California law," the established rule of automatic disqualification, "remains intact." Hitachi, at p. 1163. Similarly, the Southern District of California recently observed that the California Supreme Court addressed the issue of vicarious disqualification in 2006 and has "again chosen not to allow an ethical wall to rebut the presumption." Lucent Techs., Inc. v. Gateway, Inc., 2007 U.S. Dist. LEXIS 35502 * 26 (S.D. Cal. 2007) Id. *26, citing, City and County of San Francisco v. Cobra Solutions, 38 Cal.4th 839 (2006). The law remains as stated in Henrickson: "where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire law firm is compelled as a matter of law." Henrickson, *supra*, 11 Cal.App.4th at 117.

F. <u>Plaintiffs' Criticism of LMFIC's Declarants Is Unwarranted and Irrelevant</u>

Plaintiffs also direct unjustified and irrelevant criticisms at LMFIC's declarants. For example, they criticize Ms. Yee's declaration because Liberty Mutual's counsel prepared the initial draft [Opp., p. 10:15], yet fail to explain why this is sinister or how it differs from their own associate's, Michael Phillips', preparation of Mr. Pynes' declaration. [Pynes Depo., p. 61:13-23 (Falzetta Decl., ¶ 2 and Exh. H)]. Plaintiffs then complain that Ms. Yee and Ms. Kralik-Hansen could not recall some details of the <u>Tony's Fine Foods</u> case during their depositions, but that is irrelevant: the gist of their declarations is that Mr. Pynes reviewed claim files and prepared a privilege log in <u>Tony's Fine Foods</u>, facts ***admitted*** by Mr. Pynes. [Pynes Depo., p. 50:7-9].

Equally irrelevant, if not bizarre, is plaintiffs' claim that Ms. Hansen "demonstrated extreme bias" because Liberty Mutual has not retained her in any new cases during the last 11 months. [Opposition, p. 12:24]. Do they mean to suggest she is biased against Liberty Mutual for not hiring her, or in its favor because she wants future business? Following plaintiffs' dubious logic that a declaration should be stricken due to witness bias, the Court should strike the declarations of Messrs. Pynes, Roxborough, Adreani and Phillips, whose biases, as opposing counsel, are overwhelming.

**IV.**

**<u>THE *REPUBLIC SERVICES* COURT DISQUALIFIED PLAINTIFFS' COUNSEL UNDER A LEGAL STANDARD THAT IS MORE STRINGENT THAN CALIFORNIA'S "SUBSTANTIAL RELATIONSHIP TEST</u>**

Although plaintiffs claim that the <u>Republic Services</u> case is distinguishable or irrelevant, their Opposition is a virtual cut and paste of the opposition brief filed in that case, raising the *same* arguments that the District Court rejected in that case. There, as here, Roxborough argued that: (1) Mr. Pynes' work on <u>Tony's Fine Food</u> was limited to reviewing claim

files and redacting claimants' personal information [Opp., p. 6; Exh M at Pynes Decl., ¶ 3]; (2) Mr. Pynes' prior representation of Liberty Mutual was not "substantially related" to the Republic matter [Opp., p. 17-18; Exh M., p. 12]; (3) Mr. Pynes knew nothing at K&W about workers' compensation bad faith litigation [Opp., p. 7; Exh M pp. 7-8, 19]; and (4) Mr. Pynes had no access to Liberty Mutual's confidential information at K& W [Opp., pp. 2, 4, 6, 19; Exh M., p. 18]. As here, Roxborough boasted of developing workers' compensation bad faith law in California [Opp., p. 6; Exh M at Roxborough Decl., ¶ 2], and argued that the disqualification motion was only a tactical ploy.

In disqualifying Mr. Pynes and the Roxborough firm, the Republic Services court applied Kentucky law, which is far more stringent than California law. In Kentucky, in addition to demonstrating that the current and former representations are substantially related, the party seeking disqualification must establish that (1) the attorney actually acquired confidential information, and (2) the attorney's current law firm's ethical screening procedures were ineffective. [Order, pp. 8-9]. In California, in contrast, (a) acquisition of confidential communications is presumed as a matter of law when successive representations are substantially related, and therefore need not be proven, and (b) ethical screens do not shield a private law firm from vicarious disqualification in successive representation cases, and hence, the moving party need not challenge the effectiveness of the law firm's ethical screen. See Henrickson v. Great American Savings & Loan, 11 Cal.App.4th 109, 115-116 (1992).

Plaintiffs argue that Republic Services is distinguishable because it involved two firm-switching attorneys, Mr. Pynes and Ms. Gichtin, instead of Mr. Pynes alone. First, the order in Republic Services clearly shows that the District Court considered Mr. Pynes' representation of LMIC in Tony's Fine Foods sufficient, *standing alone*, to require disqualification of the entire Roxborough firm. Second, by implying that no disabling conflict exists because Ms. Gichtin no longer works at the Roxborough firm, plaintiffs have opened the door, furnishing *yet another* basis for disqualifying the Roxborough firm.

Like Mr. Pynes, Karen Gichtin was a K&W associate who left to join the Roxborough firm. [Supp. Hansen Decl., ¶ 3]. While at K&W, Ms. Gichtin worked extensively on Remedy Temp, Inc. v. LMFIC [Id., ¶ 4], which Mr. Roxborough admits was a workers' compensation bad faith claims mishandling case that his office filed against LMFIC. [Roxborough Decl., ¶¶ 9, 13 and 21]. Ms. Gichtin's work on Remedy Temps was extensive and included, among other things, review and discussion of litigation strategy, document review and production, protection of LMFIC's privileged documents, evaluation of expert consultant reports, review and analysis of LMFIC's internal Best Practices Guideline, preparing client witnesses for deposition, and discussing claim files with client adjusters. [Supp. Hansen Decl., ¶ 5].

Because Remedy Temps and this case are both bad faith workers' compensation insurance claims mishandling cases, plaintiffs and their counsel must concede that they are "substantially related," creating yet another conflict when Ms. Gichtin joined the Roxborough firm. The Roxborough firm's purported attempt to erect an "oral" ethical screen around Ms. Gitchin has *no* legal effect under California law. Henrickson, 11 Cal. App. 4th at 115-116. Ms. Gichtin's glaring ethical conflict tainted the entire Roxborough firm, and her departure from the Roxborough firm before the filing of this case does not "cleanse" the taint. Elan Transdermal v. Cygnus Therapeutic Systems, 809 F.Supp. 1383, 1389-91 (ND Cal. 1992)(confidences are conclusively presumed to have been shared by the departed lawyer with members of the former law firm); Asyst Techs., Inc. v. Empak, Inc., 962 F.Supp. 1241, 1242 n.3 (ND Cal. 1997)("I fail to see how a tainted firm is cleansed by the departure of one of the attorneys who created the taint.").

V.

**LMFIC HAS NOT WAIVED ITS RIGHT TO SEEK DISQUALIFICATION**

Without citing any authority, plaintiffs argue that LMFIC waived its right to seek disqualification of the Roxborough firm because it did not seek disqualification in Remedy Temps and a non-litigated matter, Kinecta. At least one California court has summarily rejected a

similar waiver argument as "completely unpersuasive." Metro-Goldwyn-Mayer, Inc. v. Tracinda Corp., 36 Cal.App.4th 1832, 1846 n.13 (1995)(rejecting defendants' argument that plaintiff's failure to seek disqualification of defense counsel in a related federal action operated as a waiver in the present action). Under California law, a party opposing a disqualification motion on grounds of waiver must establish ***both*** that the former client unreasonably delayed in bringing the motion and that the unreasonable delay prejudiced the current client. River West, Inc. v. Nickel, 188 Cal.App.3d 1297, 1309-1310 (1987). Here, where LMFIC filed its disqualification motion immediately after plaintiffs served their complaint, plaintiffs cannot show unreasonable delay. Moreover, plaintiffs have offered no evidence that they would suffer prejudice if required to retain new counsel at this very early stage of the litigation. Accordingly, the Court should summarily reject plaintiffs' waiver argument.

## VI.

## CONCLUSION

For all of the foregoing reasons, Liberty Mutual respectfully requests that the Court grant its Motion and enter an order disqualifying the Roxborough firm from representing plaintiffs in this matter.

Dated: December 14, 2007

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By [signature]
FRANK FALZETTA
Attorneys for Defendant and Counterclaimant
LIBERTY MUTUAL FIRE INSURANCE COMPANY