EXHIBIT I

Drew E. Pomerance, Esq. (SBN 101239)
David R. Ginsburg, Esq. (SBN 210900)
ROXBOROUGH, POMERANCE & NYE LLP
5820 Canoga Avenue, Suite 250
Woodland Hills, California 91367
Telephone:   (818) 992-9999
Facsimile:   (818) 992-9991

Irwin Chasalow, Esq. (SBN 34937)
LAW OFFICE OF IRWIN CHASALOW
1900 Avenue of the Stars, Suite 2300
Los Angeles, California 90067
Telephone:   (310) 201-0777
Facsimile:   (310) 556-1346

Attorneys for Respondents
THE DENTAL TRAUMA CENTER
aka MAYER SCHAMES, D.D.S., INC.
and JOSEPH SCHAMES, D.M.D., INC.

**BRUCE M. ROTH**

**OCT 2 4 2007**

**SPECIAL LITIGATION UNIT**

## STATE OF CALIFORNIA, DEPARTMENT OF INDUSTRIAL RELATIONS

## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| In Re: | Case No.: VNO 00485284, et al. |
| LIEN CLAIMS OF THE DENTAL TRAUMA CENTER aka MAYER SCHAMES, D.D.S., INC. and JOSEPH SCHAMES, D.M.D., INC., a California Professional Corporation, | DENTAL TRAUMA CENTER'S PETITION |
| Respondents, | (1) TO DISQUALIFY STATE FUND ATTORNEY BRUCE ROTH AND STATE FUND'S IN-HOUSE ATTORNEYS; |
| HALIM ABDALA, et al. | |
| Applicant, | (2) TO DISMISS THIS ACTION OR, IN THE ALTERNATIVE, EXCLUDE EVIDENCE; AND |
| vs. | |
| SONORA CONSTRUCTION and VARIOUS EMPLOYERS; STATE COMPENSATION INSURANCE FUND, | (3) FOR AN AWARD OF SANCTIONS IN THE AMOUNT OF $14,625 |
| Defendants. | |

i

DENTAL TRAUMA CENTER'S PETITION SEEKING DISQUALIFICATION

TO THE WORKERS' COMPENSATION APPEALS BOARD AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

Respondents THE DENTAL TRAUMA CENTER aka MAYER SCHAMES, D.D.S., INC. and JOSEPH SCHAMES, D.M.D., INC. ("DTC" or "Respondents") petition this Board for an Order disqualifying State Fund attorney Bruce Roth ("Roth") and State Fund's In-House attorneys, and for an Order dismissing this case or, at a minimum, excluding all evidence obtained by Roth and State Fund. DTC also petitions for an award of sanctions in the amount of $14,625 in favor of DTC and against Roth and State Fund.

This Petition is based on Roth's violation of California Rule of Professional Conduct 3-310, in that he engaged in conduct directly adverse to Respondents at the same time he was representing Respondents.

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 1

II. WRONGDOINGS ................................................................................................. 1

III. FACTS UNDERLYING THIS LITIGATION ..................................................... 2

    A. Roth Represents DTC in the Barraza Claim ............................................. 2

    B. Barraza's Attorney Understood that Roth Took Barraza's Deposition as Part of Her Claim ............................................................. 3

    C. Barraza's Attorney Received Attorneys' Fees Under Labor Code Section 5710 in Connection with Barraza's Deposition ...................................................................................................... 3

    D. Roth Attacks DTC by Using the Deposition He Took on Behalf of DTC ............................................................................................ 3

    E. DTC Discovers Roth's Violations ............................................................. 4

IV. ROTH MUST BE DISQUALIFIED ..................................................................... 4

    A. The Substantial Relationship Test ............................................................. 5

    B. A Substantial Relationship Exists Between Roth's Representation of DTC and His Successive Representation of State Fund ............................................................................................... 6

    C. Roth's Concurrent Representation of DTC and State Fund ..................... 7

V. ALL OF STATE FUND'S IN-HOUSE ATTORNEYS MUST BE DISQUALIFIED ............................................................................................. 8

VI. THIS MATTER SHOULD BE DISMISSED ...................................................... 9

VII. AT A MINIMUM, ALL IMPROPERLY OBTAINED EVIDENCE SHOULD BE EXCLUDED ................................................................................ 10

VIII. ROTH AND STATE FUND SHOULD PAY SANCTIONS ............................. 12

IX. CONCLUSION .................................................................................................... 12

DENTAL TRAUMA CENTER'S PETITION SEEKING DISQUALIFICATION

# TABLE OF AUTHORITIES

*Cases*

*City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839 (2006) ........... 4, 5, 8

*Cottle v. Superior Court*, 3 Cal. App. 4th 1367 (1992) ................................................. 10

*Flatt v. Superior Court*, 9 Cal. 4th 275 (1994) ................................................................ 7

*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.*, 229 Cal. App. 3d 1445 (1991) ................ 6

*Henriksen v. Great American Savings & Loan*, 11 Cal. App. 4th 109 (1992) ..................... 8

*In re Mary C.*, 41 Cal. App. 4th 71 (1995) ................................................................. 10

*Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698 (2003) ...................................... 5, 6

*Peat, Marwick, Mitchell & Co. v. Superior Court*, 200 Cal.App.3d 272 (1988) .................. 11

*People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc.*
    20 Cal. 4th 1135 (1999) ............................................................................................ 6, 8

*Scheffield Medical Group, Inc. v. Roth*, 74 Cal.Rptr.2d 752 (1998) ................................. 10

*Stephen Slesinger, Inc. v. Walt Disney Co.*, 66 Cal. Rptr. 3d 268 (September 25, 2007) ....... 9, 10

*Wutchumna Water Co. v. Bailey*, 216 Cal. 564 (1932) ................................................. 11

*Statutes*

Business and Professions Code section 6068 ................................................................ 5, 12

Business and Professions Code section 6077 ................................................................... 5

Labor Code section 5813 ................................................................................................ 12

*Regulations*

8 California Code of Regulations 10561 ........................................................................ 12

*Rules*

California Rule of Professional Conduct 1-100 .............................................................. 8

California Rule of Professional Conduct 3-310 ............................................................. 5, 12

## I. INTRODUCTION

On January 20, 2006, Roth took the deposition of a former DTC employee ("Barraza Deposition") who had made a claim under DTC's workers' compensation policy with State Fund. Although Roth represented DTC in that deposition he spent the entire time asking about DTC's business rather than the employee's alleged injury. He then used selective portions of that Deposition as evidence in State Fund's underlying Petition for Consolidation and Stay of Lien Proceedings, Statutory Violations, Fraud, Lien Disallowance and Restitution ("State Fund Petition").

That conduct, and the attendant conflict of interest, underlies all aspects of this Petition and necessitates Roth's disqualification from the instant proceedings. DTC has requested that Roth voluntarily withdraw from this action and that he agree not to use evidence obtained through his representation of DTC. He has refused to do so.

## II. WRONGDOINGS

The actionable wrongdoings justifying the remedies requested herein consist of three (3) separate and distinct ethical violations.

First, Roth took the Barraza Deposition, ostensibly on behalf of DTC but in reality to elicit testimony for use against DTC in the instant proceedings, which is an obvious conflict of interest.

The second wrongful act was to use the fruits of the first wrongdoing as exhibit "C" to the State Fund Petition, which is designed to avoid or delay substantial payments from State Fund and thereby drive DTC out of business.

The third wrongful act is the deliberate omission of the first five (5) pages of Exhibit "C", which include the word "deposition"[1] and instead characterizing the included excerpts as a voluntary "Statement Under Oath." By this conduct Roth flagrantly violated his ethical duties in a manner that was necessarily willful and designed to conceal the truth . . . and thereby deceive this Court.

---

[1] Page 2: "Deponent." Page 3: "Deposition Exhibits." Page 4, Lines 14 & 15: "Sworn Statement or Deposition."

1    Roth's conduct has stained the profession and his expulsion from this case and vicarious
2    disqualification of all of State Fund's in-house lawyers should be immediate. Moreover,
3    California law requires the exclusion of all evidence obtained by such wrongful acts and that
4    exclusion will necessarily lead to the dismissal of State Fund's Petition herein.

### III.  FACTS UNDERLYING THIS LITIGATION

#### A.  Roth Represents DTC in the Barraza Claim

Claimant Dominique Barraza ("Barraza") worked for DTC, and filed a workers' compensation claim against DTC in July, 2003. On November 15, 2005, Roth served a written notice, seeking to take Barraza's deposition in connection with the defense of her claim. He served an amended deposition notice shortly thereafter, setting the deposition for January 20, 2006. *Declaration of David R. Ginsburg* ("*Ginsburg Decl.*"), ¶¶ 1-3, and Exhibits ("Exh.") A-C. Roth took Barraza's deposition on that date. *Ginsburg Decl.*, ¶ 4, and Exh. D.

In a 63 page deposition, <u>Roth failed to ask Barraza a single question about her actual workers' compensation claim.</u> Instead, his deposition questions focused entirely on DTC's business practices. *Ginsburg Decl.*, ¶ 4, and Exh. D. He made a conscious decision to take advantage of an open workers' compensation claim made against DTC under a State Fund policy. He inserted himself into that claim, noticed and took the claimant's deposition on behalf of DTC, and is now using that testimony against DTC.

Roth attempted to disguise his actions. First, he claimed to only represent State Fund at the deposition even though State Fund and DTC are <u>both</u> clearly the defendants. *Ginsburg Decl.*, ¶¶ 2-4, and Exh. B-D. He then proceeded under the pretense that the deposition had transformed into a "statement under oath." He never once offered any support or explanation for this alleged transformation. Regardless, any such claim is belied by the deposition notices he drafted. The original and amended deposition notices were clearly served in connection with the defense of Barraza's claim, and the deposition proceeded pursuant to the amended notice. *Ginsburg Decl.*, ¶¶ 2-4, and Exh. B-D. Nothing about Barraza's testimony was "voluntary." She was commanded to attend pursuant to a duly noticed deposition as part of her workers' compensation claim.

Roth never contacted DTC to explain that it may need an attorney present to represent its

interests at the deposition. *Declaration of Mayer Schames* ("*Mayer Decl.*"), ¶ 1; *Declaration of Joseph Schames* ("*Joseph Decl.*"), ¶ 1. Instead, Roth proceeded to take the deposition as the attorney defending both State Fund <u>and</u> DTC, all the while steering testimony to fit State Fund's ulterior motive of prosecuting its instant claim against DTC. *Ginsburg Decl.*, ¶ 4, and Exh. D.

    **B.**    <u>Barraza's Attorney Understood that Roth Took Barraza's Deposition as Part of Her Claim</u>

E. Earl Dove, Esq. represents Barraza in her workers' compensation claim. He defended Barraza at her January 20, 2006 deposition. It was his understanding that Roth was taking the deposition in connection with Barraza's worker's compensation claim. He never received any indication that Roth was taking the deposition for any purpose other than in connection with Barraza's workers' compensation claim. He was very surprised by the line of questioning that occurred at the deposition. It appeared to him that Roth had no interest in Barraza's workers' compensation claim. Instead, all of Roth's questions pertained to gathering information about how the Dental Trauma Center functioned and did business. *Declaration of E. Earl Dove* ("*Dove Decl.*"), ¶ 2-7.

    **C.**    <u>Barraza's Attorney Received Attorneys' Fees Under Labor Code Section 5710 in Connection with Barraza's Deposition</u>

After the deposition, Mr. Dove's law firm, Adams, Ferone & Ferone, petitioned the Board in the Barraza claim to order State Fund to pay attorneys' fees in the amount of $440.00 in connection with its defense of her deposition. The petition was based on Labor Code section 5710, entitled "Depositions". Adams, Ferone & Ferone served Roth with the petition, and received no objection. The Board ordered payment of the requested attorneys' fees. *Dove Decl.*, ¶ 8; *Ginsburg Decl.*, ¶ 5-6, and Exhs. E-F. Obviously, this could not have occurred if Barraza had truly given a voluntary statement under oath outside the workers' compensation proceeding.

    **D.**    <u>Roth Attacks DTC by Using the Deposition He Took on Behalf of DTC</u>

In early January, 2007, State Fund filed the instant petition for consolidation and a stay of individual lien proceedings, lien disallowance, and credit and/or restitution. State Fund also requested findings of statutory violations and common law fraud. Roth signed and verified the

petition, is listed as an attorney of record on the petition, and for all intents and purposes is the lead attorney in this action. *Ginsburg Decl.*, ¶ 7, and Exh. G. State Fund relies on Barraza's deposition throughout the petition. Portions are attached to the petition as Exhibit C. State Fund's expert similarly relies on the deposition in his report, which is also attached to the petition. *Id.*

### E.   DTC Discovers Roth's Violations

DTC recently established enough evidence to conclude that Roth committed statutory and ethical violations through his dual representations. State Fund provides its insureds a limited amount of information concerning claims, which effectively kept DTC out of the loop with respect to Roth's involvement in the Barraza claim. DTC was forced to secure a complete transcript of Barraza's deposition since Roth only included portions in State Fund's petition. On August 29, 2007, counsel for DTC, Drew E. Pomerance, sent Roth a letter setting forth the facts as DTC understood them and requesting that Roth withdraw from this matter. *Declaration of Drew E. Pomerance ("Pomerance Decl.")*, ¶ 1, and Exh. H. By letter dated August 31, 2007, Roth refused to do so, which prompted DTC's counsel to send one more letter (September 6, 2007) requesting further explanation and information. Roth's response to that letter, dated October 4, 2007, was woefully deficient in its explanation, leaving DTC with no choice but to seek redress through the instant Petition. *Pomerance Decl.*, ¶¶ 2-4, and Exhs. I-L.

### IV.   ROTH MUST BE DISQUALIFIED

The authority of a court "to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers.'" *City and County of San Francisco v. Cobra Solutions, Inc.*, 38 Cal. 4th 839, 846 (2006). Disqualification motions involve a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. However, "'[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar.'" *Id.*

Two fundamental ethical duties lie at the heart of the attorney-client relationship. First is the attorney's duty of confidentiality, which fosters full and open communication between client

and counsel, based on the client's understanding that the attorney is statutorily obligated to maintain the client's confidences per Business & Professions Code section 6068(e), which requires the attorney to maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client. The second and equally fundamental duty is the attorney's duty of undivided loyalty to the client. California Rules of Professional Conduct 3-310(C) and (E) also mandate these ethical duties. *Id.*[2]

The enduring duty to preserve client confidences precludes Roth from representing State Fund in an adversary proceeding against Roth's former client – the Dental Trauma Center – unless the former client provides an informed written consent waiving the conflict. If the attorney fails to obtain such consent and undertakes to represent the adversary, the former client may disqualify the attorney by showing a <u>substantial relationship</u> between the subjects of the prior and the current representations. *Id.* at 847.

### A. The Substantial Relationship Test

A substantial relationship exists when an attorney had direct involvement providing legal services to the former client on a matter that is linked in some rational manner to the current representation. *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 709-711 (2003). The discrete legal and factual issues involved in the successive representations are not of import. Rather, the subjects of the representations are viewed broadly and include information material to the evaluation, prosecution, settlement or accomplishment of the litigation or transaction. Accordingly, successive representations are substantially related when the information material to the evaluation, prosecution, settlement or accomplishment of the former representation is also material to the evaluation, prosecution, settlement or accomplishment of the current representation. *Id.* at 712-713.

The substantial relationship test does not require that the former client prove that the attorney actually possesses confidences which could be used to the former client's disadvantage, since proving what is in the mind of the attorney would be an impossible task. Instead, the

---

[2] Ethical violations can also lead to disciplinary action against the attorney. *See* Business and Professions Code section 6077.

1  attorney is **presumed** to possess confidential information if the successive representations meet
2  the broad substantial relationship test. *Id.* at 706. The attorney's actual intention and motives are
3  immaterial. *People ex rel. Dept. of Corporations v. Speedee Oil Change Systems, Inc.*, 20 Cal. 4th
4  1135, 1147 (1999).

5        Where such a conflict of interest exists, and the former client has not consented to the
6  current representation, **disqualification follows as a matter of course.** The court does not
7  engage in a "balancing of equities" between the former and current clients. **The rights and**
8  **interests of the former client will prevail.** *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.*,
9  229 Cal. App. 3d 1445, 1451 (1991), emphasis added. In other words, the inquiry ends and
10 disqualification should be ordered. *Jessen, supra*, 111 Cal. App .4th at 706.

11     **B.**    <u>A Substantial Relationship Exists Between Roth's Representation of DTC and</u>
12            <u>His Successive Representation of State Fund</u>

13       Roth's involvement in the Barraza claim is not only substantially related to his
14 involvement in the instant action, it is directly related. Roth is currently using testimony against
15 DTC which he elicited from Barraza during a deposition he took in defense of DTC. His duty of
16 loyalty and confidentiality lie with DTC. He was obligated to address Barraza's claim during her
17 deposition and use her testimony to develop case strategy and assess her claim; in other words he
18 was obligated to do what any ethical workers' compensation defense attorney would do for his or
19 her insured client. Instead, **Roth subverted his duties in a duplicitous attempt to develop**
20 **evidence adverse to his own client.**

21       DTC need not prove that Roth was exposed to DTC's confidential information. All that is
22 required is that the subjects of the two representations be related to each other in some
23 rational manner. Here, they are clearly related. Roth represented DTC in the Barraza claim and
24 now seeks to use the very information he gained from that representation against DTC in this
25 case. A more direct link could not be possible. Roth readily submits Barraza's testimony in
26 support of State Fund's current action against DTC. Since Roth's successive representations are
27 substantially related, Roth is presumed to possess confidential information related to DTC and
28

must be disqualified from this action.[3]

### C. Roth's Concurrent Representation of DTC and State Fund

Roth engaged in a **concurrent dual representation of State Fund and DTC**. Although State Fund did not file the instant petition until January 2007, Roth was undoubtedly working on behalf of State Fund's interests in this matter well before he filed the petition. As of the time he noticed Barraza's deposition, Roth had planned to use that deposition for the purpose of gathering evidence on behalf of State Fund against DTC. Roth subverted his duties owed to DTC in the Barraza claim in order to champion his other client, State Fund. That he intended to use Barraza's testimony in the instant action is clearly evidenced by the questions he asked Ms. Barraza at the deposition. Accordingly, although Roth represented DTC at Barraza's deposition, he was also simultaneously representing DTC's undisclosed adversary, State Fund, during the deposition as well.

Courts have imposed a test more stringent than the substantial relationship test in such dual representation cases. Even when the simultaneous representations have nothing in common, and there is no risk that confidences to which counsel is a party in the one case have any relation to the other matter, disqualification may nevertheless be required. In all but a few instances, the rule of disqualification in simultaneous representation cases is a per se or "automatic" one. *Flatt v. Superior Court*, 9 Cal. 4th 275, 284 (1994).[4] As noted above, Roth's simultaneous representation of State Fund and DTC are directly related, as State Fund's lien petition relies on testimony Roth took on behalf of DTC in the Barraza claim.

---

[3] Roth could not have prepared to take Barraza's deposition without reviewing State Fund's internal claim and legal files concerning the Barraza claim. Those files undoubtedly contain confidential analysis and information concerning DTC. Roth had access to all this information and now has the ability to use it against DTC.

[4] As the *Flatt* court noted, "[s]o patently improper is the spectacle of this sort of conflict that George Sharswood, a justice of the Supreme Court of Pennsylvania and a 19th century writer on legal ethics, wrote in 1854 that it 'ought, like parricide in the Athenian law, to be passed over in silence in a code of professional ethics.'" *Flatt, supra*, 9 Cal. 4th at 285, fn 3 (1994).

## V. ALL OF STATE FUND'S IN-HOUSE ATTORNEYS MUST BE DISQUALIFIED

Where an attorney is disqualified from representing a client in a particular matter, vicarious disqualification of the attorney's entire law firm is compelled as a matter of law. *Henriksen v. Great American Savings & Loan*, 11 Cal. App. 4th 109, 117 (1992). This is because "attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information." *People ex rel. Dept. of Corporations, supra*, 20 Cal. 4th at pp. 1153-1154. Rather than inquire as to whether confidential information was actually shared, **the law imputes knowledge of confidential client information to all lawyers in the firm, thus compelling the disqualification of all the lawyers.** *Id.* at pp. 1153-1155, emphasis added.

A "law firm" is not limited to traditional private law firms, but may extend to lawyers whose association is such that they have mutual access to information concerning the clients they serve. *See City and County of San Francisco, supra*, 38 Cal. 4th at 843-851. To that end, California Rule of Professional Conduct 1-100 (b)(1) defines a law firm as including "a division, department, office, or group within a business entity, which includes more than one lawyer who performs legal services for the business entity."

As the California Supreme Court noted, there are both societal and personal interests at stake when an attorney and the attorney's law firm are disqualified. The societal interests at stake include preserving high ethical standards for every attorney, each of whom is obliged to preserve client confidences and whose failure to do so undermines public confidence in the judicial system. *City and County of San Francisco, supra*, 38 Cal. 4th at 851.

In the instant case, all of State Fund's in-house legal department must be vicariously disqualified based on Roth's conflict of interest. His disqualification extends to his entire "firm," which in this case is the association of lawyers known as State Fund's in-house legal department. The relationship between these attorneys is clearly presented in their pleadings. The Barraza pleadings and the instant lien pleadings both identify the same State Fund attorneys – Robert W. Daneri, Bill Van Horn, and the aforementioned Bruce Roth. All are employed in State Fund's in-

house legal department.[5] California law requires that disqualification be extended from Roth to the entire department.

## VI. THIS MATTER SHOULD BE DISMISSED

Courts have the inherent power to dismiss an action when a party has engaged in misconduct during the course of the litigation that is deliberate, egregious, and renders any remedy short of dismissal inadequate to preserve the fairness of the trial. Such an exercise of inherent authority is essential for every California court to remain "a place where justice is judicially administered." *Stephen Slesinger, Inc. v. Walt Disney Co.*, 66 Cal. Rptr. 3d 268, 291 (September 25, 2007).

Justice demands that State Fund's action be dismissed. Acting with impunity, Roth and State Fund deliberately engaged in clear statutory and ethical violations by feigning representation of DTC with one hand and attacking it with the other. State Fund's petition is premised on tainted evidence gathered through the unscrupulous actions of State Fund and its attorney.

State Fund's entire lien petition is built on a foundation of evidence obtained by Roth, much of it gathered while he was ostensibly representing DTC. To wit, State Fund could not pursue this action until its expert prepared his report – a report that relies heavily on the tainted deposition of Ms. Barraza. The lien petition is based on this expert report, and the only deposition attached to the lien petition is Barraza's deposition.

In *Stephen Slesinger, Inc. ("SSI")*, *supra*, 66 Cal.Rptr.3d at 294-296, the court found dismissal to be proper since no power the court possessed short of termination could fully guard against the conscious or subconscious application of SSI's knowledge in shaping the future course of the litigation and its outcome. <u>The Court determined that it was reasonable to conclude that employment of new counsel would be inadequate to protect against the information being used by SSI.</u> The court further noted that prior to dismissal, SSI had been dishonest in its actions and

---

[5] An email, attached as Exhibit "M", reveals that Roth shared his plan with other members of State Fund's legal staff. This is further evidence that the entire in-house legal department must be disqualified.

shown no remorse. The court determined that there was simply no guarantee that SSI would obey any prophylactic court order, and that a court was not required to gamble its ability to provide a fair trial on SSI turning over a new leaf.

In the instant case, the tainted evidence has already been relied upon in State Fund's petition. There is simply no possibility that State Fund and its attorneys can purge themselves of their conscious and subconscious knowledge of Barraza's testimony. Any State Fund promises to the contrary are untrustworthy. State Fund engaged in willful deception in order to depose Barraza to use her testimony in this action. When confronted with State Fund's ethical, moral and legal violations, State Fund and its counsel remained obstinate, showing no remorse, and placing a revisionist spin on the deposition, thereby eliminating any remaining credibility they might have had.

**This is not the first documented violation of ethical duties by Roth.** He employed the same tactics several years ago. *See Scheffield Medical Group, Inc. v. Roth*, 74 Cal.Rptr.2d 752 (1998), depublished by the California Supreme Court. In that case, Roth was sued because of conduct similar to that employed in this case, but the appeals court determined that as a government employee, Roth was immune from civil suit pursuant to Government Code section 821.6, which protected him from civil liability even if he acts ". . . maliciously and without probable cause." There was no discussion as to whether Roth's conduct would support disqualification under the Rules of Professional Conduct. Originally a published decision, the California Supreme Court ordered *Scheffield Medical* depublished. Obviously emboldened by that case, Roth felt no hesitation in repeating this egregious behavior. No other remedy, including an order disqualifying counsel and excluding evidence, will be effective in preventing State Fund from attempting to use the evidence to its advantage.

## VII. AT A MINIMUM, ALL IMPROPERLY OBTAINED EVIDENCE SHOULD BE EXCLUDED

Short of dismissal, the Board, at a minimum, should not permit the introduction of any information, documents, or other facts obtained by Roth and State Fund. To that end, courts have the inherent power to exclude evidence (*Cottle v. Superior Court*, 3 Cal. App. 4th 1367, 1376

(1992), and when a conflict of interest exists, the lawyer is prohibited from using confidential information acquired from one client against the other. *In re Mary C.*, 41 Cal. App. 4th 71, 76-77 (1995); *Wutchumna Water Co. v. Bailey*, 216 Cal. 564, 571-574 (1932).

Courts are authorized to preclude evidence to cure abuses or overreaching involving confidential information, and do not need specific statutory authorization to do so. *Peat, Marwick, Mitchell & Co. v. Superior Court*, 200 Cal. App. 3d 272, 285-287 (1988). These inherent powers have been recognized, endorsed and affirmed in a considerable body of authority, and the powers have been flexibly applied in response to the many vagaries of the litigation process. *Id.*

In *Peat Marwick*, the plaintiff argued that an order precluding evidence was an improper discovery sanction, all discovery sanctions must be specifically authorized by statute, the preclusion order was not so authorized, and the court lacked authority to make the order. The appeals court disagreed, concluding that Peat Marwick's premise was flawed since the order precluding evidence was not a sanction for the abuse of discovery procedures, but was a **remedy for abuse of the litigation process.** *Id.* The appeals court held that a court's inherent power to curb abuses and promote fair process extends to the preclusion of evidence, and that even without such abuses courts enjoy the "broad authority of the judge over the admission and exclusion of evidence," and regularly exercise their "basic power to insure that all parties receive a fair trial" by precluding evidence. *Id.* at 288.

The conduct of Roth and State Fund constitutes a serious abuse of the litigation process. The Board has the requisite authority to prevent State Fund from taking unfair advantage of these abuses and to preserve the integrity of the judicial system. The Board should therefore preclude State Fund's tainted evidence, which includes information, documents, and other facts obtained by Roth while ostensibly representing DTC in the Barraza matter. This exclusion would also apply to evidence that relies on the tainted evidence. For example, State Fund's expert, Dr. Merrill, relies on the Barraza deposition in his report. That report should be excluded since it is based on the tainted evidence. Any further work done by Merrill could not be based nor rely on any tainted information developed by Roth.

DENTAL TRAUMA CENTER'S PETITION SEEKING DISQUALIFICATION

## VIII. ROTH AND STATE FUND SHOULD PAY SANCTIONS

The WCAB is authorized to order payment of reasonable expenses, including attorney's fees and costs and, in addition, sanctions as provided in Labor Code section 5813. 8 California Code of Regulations 10561.

Labor Code section 5813(a) states that:

> "[t]he workers' compensation referee or appeals board may order a party, the party's attorney, or both, to pay any reasonable expenses, including attorney's fees and costs, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay. In addition, a workers' compensation referee or the appeals board, in its sole discretion, may order additional sanctions not to exceed two thousand five hundred dollars ($2,500) to be transmitted to the General Fund."

A bad faith action or tactic is one that results from a willful failure to comply with a statutory or regulatory obligation or from a willful intent to disrupt or delay the proceedings of the Workers' Compensation Appeals Board. A frivolous bad faith action or tactic is one that is done for an improper motive or is indisputably without merit. 8 California Code of Regulations 10561.

Roth willfully failed to comply with Business & Professions Code section 6068(e), which requires the attorney to maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client. Roth willfully failed to comply with California Rules of Professional Conduct 3-310(C) and (E), which requires confidentiality and undivided loyalty to the client. Roth committed these acts for the wholly improper purpose of gathering evidence to use against his own client. Roth and State Fund should be sanctioned for this behavior, which forced DTC to prepare the instant petition at considerable expense. *Ginsburg Decl.*, ¶ 8; *Pomerance Decl.*, ¶ 6. DTC respectfully requests sanctions against Roth and State Fund in the amount of $14,625.

## IX. CONCLUSION

For all the foregoing reasons, Respondent DTC respectfully requests that the Board (1) disqualify Roth and State Fund's in-house legal department from this action, (2) dismiss this action in its entirety with prejudice or, in the alternative, exclude information, documents, and

other facts obtained by Roth and State Fund, and (3) issue sanctions against Roth and State Fund in the amount of $14,625.

DATED: October 18, 2007         ROXBOROUGH, POMERANCE & NYE, LLP

By: _____
DREW E. POMERANCE
Attorneys for Respondents THE
DENTAL TRAUMA CENTER aka
MAYER SCHAMES, D.D.S., INC. and
JOSEPH SCHAMES, D.M.D., INC.

DENTAL TRAUMA CENTER'S PETITION SEEKING DISQUALIFICATION