DEPOSITION OF LISA KRALIK HANSEN

```
 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF KENTUCKY

 3                    AT LEXINGTON

 4

 5    REPUBLIC SERVICES, INC.,        )
                                      )
 6                    PLAINTIFF,      )
                                      )        CIVIL ACTION
 7         VS.                        )        NO. 03-494 KSF
                                      )
 8    LIBERTY MUTUAL INSURANCE COMPANY, )
      LIBERTY INSURANCE ACQUISITION   )
 9    CORPORATION F/K/A LIBERTY MUTUAL )
      FIRE INSURANCE COMPANY, LIBERTY  )
10    INSURANCE CORPORATION, LM       )
      INSURANCE CORPORATION, THE FIRST )
11    LIBERTY INSURANCE CORPORATION AND )
      HELMSMAN MANAGEMENT SERVICES,   )
12    INC.,                           )
                                      )
13                    DEFENDANTS.     )
                                      )
14    _____

15

16         DEPOSITION OF LISA KRALIK HANSEN, TAKEN

17    ON BEHALF OF PLAINTIFF, AT 5280 CANOGA

18    AVENUE, SUITE 250, WOODLAND HILLS,

19    CALIFORNIA, COMMENCING AT 10:01 A.M.,

20    TUESDAY, AUGUST 15, 2006, BEFORE

21    JUDY K. BOSWELL, CSR 7500.

22

23

24

25
```

2

DALENE COURT REPORTERS

DEPOSITION OF LISA KRALIK HANSEN

```
 1     APPEARANCES OF COUNSEL:

 2

 3     FOR THE PLAINTIFF:

 4             ROXBOROUGH, POMERANCE & NYE
               BY:  MICHAEL B. ADREANI, ESQ.
 5             5820 CANOGA AVENUE
               SUITE 250
 6             WOODLAND HILLS, CALIFORNIA  91367
               818.992.9999
 7
                      -- AND --
 8
               MCBRAYER, MCGINNIS, LESLIE & KIRKLAND PLLC
 9             BY:  BRENT L. CALDWELL, ESQ.
               201 EAST MAIN STREET
10             SUITE 1000
               LEXINGTON, KENTUCKY  40507
11             859.231.8780

12

13     FOR THE DEFENDANTS:

14             STITES & HARBISON PLLC
               BY:  STEPHANIE RENNER GILFORD, ESQ.
15             250 WEST MAIN STREET
               SUITE 2300
16             LEXINGTON, KENTUCKY  40507
               859.226.2250
17

18     FOR THE DEPONENT:

19             PETERSON & BRADFORD, LLP
               BY:  RONALD J. SKOCYPEC, ESQ.
20             100 NORTH FIRST STREET
               SUITE 300
21             BURBANK, CALIFORNIA  91502
               818.562.5800

22

23

24

25
                                                        3
```

DALENE COURT REPORTERS

DEPOSITION OF LISA KRALIK HANSEN

```
 1                    I N D E X

 2   DEPONENT:            EXAMINED BY:              PAGE:

 3   LISA KRALIK HANSEN   MR. ADREANI                5

 4

 5

 6   EXHIBITS FOR IDENTIFICATION:

 7   PLAINTIFF'S:

 8   A - AFFIDAVIT OF LISA KRALIK HANSEN            9

 9

10          QUESTIONS UNANSWERED BY DEPONENT:
11               PAGE          LINE
                  7             21
12                8              5
                 11             15
13               13             24
                 15             19
14               24             25
                 26              4
15               26             11
                 26             19
16               27             14
                 27             21
17               45             15
                 53             23
18               54             10
                 54             22
19               56             12
                 64             16
20               65             15
                 67             19
21

22

23          INFORMATION REQUESTED:

24               (NONE)

25
                                                    4
```

DALENE COURT REPORTERS

DEPOSITION OF LISA KRALIK HANSEN

1     WOODLAND HILLS, CALIFORNIA

2     TUESDAY, AUGUST 15, 2006

3      10:01 A.M.

4

5     LISA KRALIK HANSEN,

6   CALLED AS A DEPONENT AND SWORN IN BY

7  THE DEPOSITION OFFICER, WAS EXAMINED

8    AND TESTIFIED AS FOLLOWS:

9

10  DEPOSITION OFFICER:  YOU DO SOLEMNLY AFFIRM THE

11  TESTIMONY YOU MAY GIVE IN THIS MATTER SHALL BE THE TRUTH,

12  THE WHOLE TRUTH, AND NOTHING BUT THE TRUTH UNDER PENALTY

13  OF PERJURY?

14   THE DEPONENT:  YES.

15

16     EXAMINATION

17  BY MR. ADREANI:

18  Q.  GOOD MORNING, LISA.

19  A.  GOOD MORNING.

20  Q.  CAN YOU JUST GIVE YOUR FULL NAME FOR THE RECORD.

21  A.  LISA KRALIK HANSEN.

22  Q.  IF YOU CAN SPELL IT, TOO.

23  A.  KRALIK, K-R-A-L-I-K, HANSEN, H-A-N-S-E-N.

24  Q.  LISA, WE KNOW EACH OTHER, OBVIOUSLY.  WE WORKED

25  TOGETHER IN THE PAST SO I'M GOING TO SKIP ALL THE

                   5

DEPOSITION OF LISA KRALIK HANSEN

1    ADMONITIONS.  I THINK THAT'S APPROPRIATE.  DO YOU AGREE?

2        A.  WELL, I THINK IT WOULD JUST BE HELPFUL TO MAKE

3    SURE WE'RE ALL ON THE SAME PAGE FOR EVERYBODY IN THE ROOM.

4        Q.  OKAY.  YOU UNDERSTAND THAT THE OATH YOU WERE JUST

5    ADMINISTERED IS THE SAME OATH THAT YOU WOULD BE

6    ADMINISTERED IN A COURT OF LAW?

7        A.  YES.

8        Q.  IT CARRIES WITH IT THE PENALTY OF PERJURY.

9            DO YOU UNDERSTAND THAT?

10       A.  YES.

11       Q.  YOU UNDERSTAND THAT THERE'S A COURT REPORTER

12   TAKING DOWN EVERYTHING WE SAY?

13       A.  YES.

14       Q.  IT'S IMPORTANT TO HAVE A CLEAR TRANSCRIPT.  DON'T

15   TALK OVER ME.  I WON'T TALK OVER YOU.

16           YOU UNDERSTAND THAT?

17       A.  YES.

18       Q.  I'M ENTITLED TO YOUR BEST ESTIMATE AS TO EVENTS

19   AND THINGS THAT I ASK YOU ABOUT.

20           DO YOU KNOW THE DIFFERENCE BETWEEN AN ESTIMATE

21   AND A GUESS?

22       A.  YES.

23       Q.  I DON'T WANT YOU TO GUESS ABOUT ANYTHING OR

24   SPECULATE.

25           DO YOU UNDERSTAND THAT?

6

DEPOSITION OF LISA KRALIK HANSEN

1       A.  YES.

2       Q.  IF MY QUESTIONS ARE UNCLEAR, JUST ASK ME TO

3   CLARIFY THEM.  I WILL.  IF YOU ANSWER THE QUESTION, I WILL

4   ASSUME THAT YOU UNDERSTOOD THE QUESTION.

5           DO YOU UNDERSTAND THAT?

6       A.  YES.

7       Q.  HAVE YOU EVER GIVEN A DEPOSITION BEFORE?

8       A.  NO.

9       Q.  YOU'VE TAKEN ANY NUMBER OF DEPOSITIONS?

10      A.  I'VE TAKEN DEPOSITIONS, YES.

11      Q.  ARE YOU REPRESENTED BY COUNSEL?

12      A.  YES, I AM.

13      Q.  AND WHO IS YOUR ATTORNEY?

14      A.  MY ATTORNEY IS THE LAW FIRM OF PETERSON &

15  BRADFORD.

16      Q.  AND SPECIFICALLY MISTER?

17      A.  MR. SKOCYPEC IS HERE TODAY.

18      Q.  OTHER THAN -- WELL, YOUR CURRENT EMPLOYER IS

19  PETERSON & BRADFORD?

20      A.  YES.

21      Q.  OTHER THAN THE COMPENSATION YOU RECEIVE FROM THEM

22  AS PART OF YOUR NORMAL DUTIES, ARE YOU BEING PAID FOR YOUR

23  DUTIES TODAY?

24          MR. SKOCYPEC:  OBJECTION.  ATTORNEY/CLIENT

25  PRIVILEGE.  INSTRUCT HER NOT TO ANSWER.

7

DEPOSITION OF LISA KRALIK HANSEN

1    BY MR. ADREANI:

2         Q.  ARE YOU ACCEPTING THE INSTRUCTION OF YOUR

3    COUNSEL?

4         A.  YES, I AM.

5         Q.  DO YOU HAVE ANY KIND OF DEAL WITH LIBERTY MUTUAL

6    IN TERMS OF COMPENSATION REGARDING SHOWING UP TODAY?

7              MR. SKOCYPEC:  SAME OBJECTION.  SAME INSTRUCTION.

8              MR. ADREANI:  I'M NOT ASKING HOW MUCH SHE'S BEING

9    PAID.  I'M ASKING IF.

10         Q.  ARE YOU GOING TO ANSWER THE QUESTION?

11              MR. SKOCYPEC:  IT'S THE SAME INSTRUCTION.  SAME

12    OBJECTION.

13              MR. ADREANI:  I DON'T GET TO KNOW IF THE WITNESS

14    IS BEING PAID BY A PARTY TO THIS CASE?

15              MR. SKOCYPEC:  YOU DON'T GET TO KNOW IF THERE IS

16    AN ATTORNEY/CLIENT COMMUNICATION THAT IS BETWEEN

17    MS. HANSEN AND LIBERTY MUTUAL AND THE CONTENT OF THAT

18    COMMUNICATION.

19    BY MR. ADREANI:

20         Q.  ARE YOU NOT GOING TO ANSWER THE QUESTION WHETHER

21    OR NOT YOU'RE BEING COMPENSATED BY LIBERTY TO BE HERE

22    TODAY?

23         A.  NO.  LIBERTY MUTUAL IS MY CURRENT CLIENT.

24         Q.  OKAY.

25         A.  ON OTHER MATTERS.

8

DEPOSITION OF LISA KRALIK HANSEN

1      Q.  ARE YOU REPRESENTING LIBERTY MUTUAL IN THE

2    REPUBLIC VERSUS LIBERTY MATTER?

3      A.  NO.

4      Q.  DID YOU REVIEW ANY DOCUMENTS IN PREPARATION FOR

5    THIS DEPOSITION?

6      A.  YES.

7      Q.  WHAT DID YOU REVIEW?

8      A.  THE SUBPOENA AND MY DECLARATION.

9      Q.  ANYTHING ELSE?

10     A.  NO.

11     Q.  DID YOU REVIEW THE MOTION TO WHICH YOUR AFFIDAVIT

12   WAS ATTACHED?

13     A.  NO.

14     Q.  LET'S JUST GO AHEAD AND HAVE THIS MARKED AS THE

15   FIRST EXHIBIT.  THIS IS THE DECLARATION OR AFFIDAVIT OF

16   LISA KRALIK HANSEN.  I'LL HAVE THIS MARKED AS EXHIBIT 1

17   BECAUSE WE'VE BEEN USING NUMBERS IN THIS CASE, ALTHOUGH

18   THE DOCUMENT I SHOWED YOU DOES HAVE IN THE LOWER

19   RIGHT-HAND CORNER AN EXHIBIT A, WHICH IS BECAUSE THAT WAS

20   EXHIBIT A TO A MOTION FILED BY LIBERTY.  BUT WE WILL CALL

21   IT EXHIBIT 1 FOR THESE PURPOSES.  OKAY?

22     A.  (WITNESS NODS HEAD UP AND DOWN.)

23         (WHEREUPON PLAINTIFF'S EXHIBIT 1 WAS

24         MARKED FOR IDENTIFICATION AND IS

25         ATTACHED HERETO.)

9

DEPOSITION OF LISA KRALIK HANSEN

1   BY MR. ADREANI:

2       Q.  IS THIS THE DOCUMENT YOU REVIEWED IN PREPARATION

3   FOR YOUR DEPOSITION?

4           MR. SKOCYPEC:  ARE YOU TALKING ABOUT ABSENT THE

5   EXHIBIT A MARKING, I ASSUME, AND THE STUFF ON THE TOP?

6           MR. ADREANI:  YEAH.

7       Q.  OTHER THAN THE ELECTRONIC FILING INFORMATION ON

8   THE TOP AND THE EXHIBIT A NOTATION, IS THIS THE

9   DECLARATION?

10      A.  IT APPEARS TO BE A COPY OF MY DECLARATION.

11      Q.  IS THAT YOUR SIGNATURE ON PAGE 4?

12      A.  YES, IT IS.

13      Q.  OKAY.  AND YOU HAD THIS DECLARATION OR AFFIDAVIT,

14  AS THEY CALL IT, YOU SIGNED THIS ON THE 1ST OF AUGUST OF

15  THIS YEAR?

16      A.  YES, I DID.

17      Q.  YOU HAD IT NOTARIZED THAT SAME DAY?

18      A.  YES.

19      Q.  IS THAT NOTARY SOMEONE IN YOUR OFFICE?

20      A.  NO.

21      Q.  WHO NOTARIZED IT?  WHERE DID YOU GO TO GET THIS

22  NOTARIZED?

23      A.  A NOTARY IN BURBANK.

24      Q.  NOT SOMEONE AT PETERSON & BRADFORD?

25      A.  NO.

                                                    10

DALENE COURT REPORTERS

DEPOSITION OF LISA KRALIK HANSEN

1      Q.   OKAY.   OTHER THAN THIS DOCUMENT AND THE SUBPOENA,

2  I BELIEVE YOU SAID YOU DIDN'T REVIEW ANY OTHER DOCUMENTS

3  FOR YOUR DEPOSITION TODAY.

4      A.   I NEED TO CLARIFY.   WELL, IF DOCUMENTS INCLUDES

5  E-MAILS, I REVIEWED AN E-MAIL SENT TO ME BY SOMEONE ELSE

6  IN MY OFFICE IN PREPARATION FOR THIS DEPOSITION TODAY.

7      Q.   OKAY.   AND WHO WAS THAT E-MAIL FROM?

8      A.   FROM DIANA DISKIN.

9      Q.   DIANA, WHAT'S THE LAST NAME?

10      A.   DISKIN, D-I-S-K-I-N.

11      Q.   IS SHE AN ATTORNEY?

12      A.   NO.

13      Q.   WHO IS DIANA DISKIN?

14      A.   SHE IS A LAW CLERK.

15      Q.   AND WHAT WAS THE SUBSTANCE OF THAT E-MAIL?

16          MR. SKOCYPEC:   I'M GOING TO OBJECT ON

17  ATTORNEY/CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT

18  GROUNDS.   INSTRUCT THE WITNESS NOT TO ANSWER.

19          MR. ADREANI:   ARE YOU KIDDING?

20          MR. SKOCYPEC:   DOES IT SOUND LIKE I WAS KIDDING?

21          MR. ADREANI:   ALL RIGHT.

22      Q.   ARE YOU GOING TO ACCEPT THAT INSTRUCTION?

23      A.   YES.

24      Q.   WHEN WAS THAT E-MAIL SENT TO YOU?

25      A.   YESTERDAY.

11

DEPOSITION OF LISA KRALIK HANSEN

1      Q.  OKAY.  OTHER THAN THE SUBPOENA, THE DECLARATION,

2  AND THE E-MAIL, HAVE YOU REVIEWED ANY OTHER DOCUMENTS FOR

3  TODAY'S PROCEEDING?

4      A.  I DON'T RECALL REVIEWING ANY OTHER DOCUMENTS

5  OTHER THAN THOSE TO PREPARE FOR THIS DEPOSITION.

6      Q.  OKAY.  WELL, THEN, OTHER THAN TO PREPARE FOR THIS

7  DEPOSITION, HAVE YOU REVIEWED ANY OTHER DOCUMENTS IN

8  RELATION TO YOUR AFFIDAVIT?

9      A.  YES.

10      Q.  OKAY.  AND WHAT DOCUMENTS DID YOU REVIEW RELATED

11  TO THE DRAFTING OF YOUR AFFIDAVIT?

12          MR. SKOCYPEC:  COUNSEL, I'M GOING TO HAVE TO HAVE

13  A SHORT CONFERENCE WITH HER TO MAKE SURE SHE'S NOT

14  REVEALING DOCUMENTS THAT ARE WITHIN THE ATTORNEY/CLIENT

15  PRIVILEGE OR THE ATTORNEY WORK PRODUCT.

16          MR. ADREANI:  OKAY.  I TYPICALLY DON'T LIKE THESE

17  KIND OF BREAKS WHEN QUESTIONS ARE PENDING, BUT IN THIS

18  KIND OF CIRCUMSTANCE --

19          MR. SKOCYPEC:  IT'S BETTER THAN INSTRUCTING HER

20  NOT TO ANSWER.

21          MR. ADREANI:  IT IS AND I APPRECIATE THAT AND

22  WE'LL TAKE A BREAK.

23          OFF THE RECORD.

24          (RECESS TAKEN, FROM 10:09 TO 10:17.)

25          (WHEREUPON THE PREVIOUS QUESTION WAS

                                                            12

DEPOSITION OF LISA KRALIK HANSEN

1    READ BACK BY THE DEPOSITION OFFICER AS

2    FOLLOWS:

3    "Q  AND WHAT DOCUMENTS DID YOU

4    REVIEW RELATED TO THE DRAFTING OF YOUR

5    AFFIDAVIT?")

6    MR. SKOCYPEC:  I THINK YOU CAN ANSWER THAT ONE

7    WITH MY OBJECTION.

8    THE DEPONENT:  I REVIEWED INTERNAL E-MAILS FROM

9    OTHER PEOPLE AT THE PETERSON & BRADFORD LAW FIRM.

10   BY MR. ADREANI:

11   Q.  OKAY.  WHO WERE THEY FROM?

12   A.  SUSAN OLSON, RON SKOCYPEC, MELODEE YEE, DIANA

13   DISKIN, AND MY SECRETARY, LIV KIRCHOFF, K-I-R-C-H-O-F-F.

14   Q.  DID YOU YOURSELF DRAFT ANY E-MAILS RELATED TO THE

15   PREPARATION OF YOUR AFFIDAVIT?

16   A.  YES.

17   Q.  TO WHOM DID YOU DRAFT E-MAILS?  ALL THE SAME

18   PEOPLE?

19   A.  ONE OR MORE OF THOSE SAME PEOPLE.

20   Q.  WERE ANY OF THESE E-MAILS FROM SUSAN, RON,

21   MELODEE, OR DIANA FORWARDS OF E-MAILS FROM ANYONE AT

22   MS. GILFORD'S FIRM?

23   A.  THEY MIGHT HAVE BEEN.

24   Q.  OKAY.  AND WHAT DID THOSE E-MAILS SAY?

25   MR. SKOCYPEC:  OBJECTION.  ATTORNEY/CLIENT

13

DALENE COURT REPORTERS

DEPOSITION OF LISA KRALIK HANSEN

1  PRIVILEGE.  ATTORNEY WORK PRODUCT.  INSTRUCT THE WITNESS

2  NOT TO ANSWER.

3          MR. ADREANI:  MS. GILFORD AND HER FIRM, THE

4  STITES FIRM ARE NOT MS. HANSEN'S ATTORNEY.

5          MR. SKOCYPEC:  NO.  BUT THEY'RE LIBERTY'S

6  ATTORNEYS AND WE'RE ALL LIBERTY'S ATTORNEYS IN VARIOUS

7  MATTERS, INCLUDING MATTERS THAT YOU'RE MAKING INQUIRY OF.

8  BY MR. ADREANI:

9      Q.  DID YOU PREPARE THIS AFFIDAVIT AS AN ATTORNEY FOR

10  LIBERTY MUTUAL?

11          MR. SKOCYPEC:  OBJECTION.  VAGUE AND AMBIGUOUS.

12          THE DEPONENT:  I MEAN, I AM CURRENTLY AN ATTORNEY

13  FOR LIBERTY MUTUAL.  THAT'S THE QUESTION.

14  BY MR. ADREANI:

15      Q.  DID YOU PREPARE THIS DECLARATION IN YOUR CAPACITY

16  AS AN ATTORNEY REPRESENTING LIBERTY MUTUAL?

17      A.  I WORK AS AN ATTORNEY WHO REPRESENTS LIBERTY

18  MUTUAL.

19      Q.  THAT'S NOT MY QUESTION, LISA.

20      A.  THEN I GUESS I DON'T UNDERSTAND YOUR QUESTION.

21      Q.  WHEN DID YOU FIRST FIND OUT THAT YOU WERE TO DO

22  AN AFFIDAVIT?

23      A.  I DON'T KNOW THAT I EVER FOUND OUT I WAS TO DO AN

24  AFFIDAVIT.

25      Q.  WHEN DID YOU FIRST BECOME AWARE OF THE REPUBLIC

14

DEPOSITION OF LISA KRALIK HANSEN

1    CASE AGAINST LIBERTY MUTUAL?

2        A.  IN JULY.

3        Q.  WHEN IN JULY?

4        A.  I DON'T RECALL THE SPECIFIC DATE.  I THINK IT WAS

5    MID JULY.

6        Q.  AND HOW DID YOU COME -- HOW DID YOU BECOME AWARE

7    OF THE CASE REPUBLIC VERSUS LIBERTY?

8        A.  THROUGH SUSAN OLSON AT MY OFFICE.

9        Q.  AND WAS THAT A CONVERSATION OR AN E-MAIL?

10       A.  I BELIEVE IT WAS BOTH.

11       Q.  ALL RIGHT.  ARE YOU AWARE OF HOW MS. OLSON BECAME

12   AWARE OF THE CASE?

13       A.  I'M NOT SURE WITHOUT GUESSING.

14       Q.  WAS IT FROM THE STITES FIRM?

15       A.  I'M NOT SURE WITHOUT GUESSING.

16       Q.  DO YOU KNOW WHETHER IT WAS SOMEONE FROM LIBERTY

17   MUTUAL?

18       A.  I'M NOT SURE WITHOUT GUESSING.

19       Q.  OKAY.  SO YOU BECAME AWARE THROUGH SUSAN --

20   SOMEHOW THROUGH SUSAN OLSON IN THE MIDDLE OF JULY 2006

21   THAT THIS CASE EXISTED.  WHAT DID YOU LEARN ABOUT THE CASE

22   AT THAT TIME?

23          MR. SKOCYPEC:  OBJECTION.  ATTORNEY WORK PRODUCT.

24   ATTORNEY/CLIENT PRIVILEGE.  INSTRUCT THE WITNESS NOT TO

25   ANSWER.

15

DEPOSITION OF LISA KRALIK HANSEN

1    BY MR. ADREANI:

2        Q.   ARE YOU GOING TO ACCEPT THAT INSTRUCTION?

3        A.   YES.

4        Q.   WHO ASKED YOU TO DO AN AFFIDAVIT?

5        A.   I DON'T RECALL THAT I WAS ASKED TO DO AN

6    AFFIDAVIT.

7        Q.   DID YOU VOLUNTEER TO DO AN AFFIDAVIT?

8        A.   I MAY HAVE.

9        Q.   YOU DON'T RECALL?

10       A.   I DON'T SPECIFICALLY RECALL AS I SIT HERE TODAY.

11       Q.   WELL, HOW DID IT COME ABOUT THAT YOU PREPARED

12   THIS AFFIDAVIT?

13           MR. SKOCYPEC:   OBJECTION.   VAGUE AND AMBIGUOUS.

14           DO YOU UNDERSTAND THAT QUESTION?

15           THE DEPONENT:   I BECAME AWARE OF THE REPUBLIC

16   SERVICES LAWSUIT.   I LEARNED IN JULY THAT ATTORNEY CRAIG

17   PYNES WAS AN ATTORNEY FOR REPUBLIC SERVICES IN THIS CASE

18   IN KENTUCKY AND I KNEW THAT CRAIG PYNES USED TO BE AN

19   ATTORNEY WITH MY PRIOR LAW FIRM, KERN & WOOLEY, WHO WORKED

20   SIGNIFICANTLY, IF NOT EXCLUSIVELY, ON LIBERTY MUTUAL

21   MATTERS WHILE HE WAS EMPLOYED BY KERN & WOOLEY.

22   BY MR. ADREANI:

23       Q.   AND AT SOME POINT YOU DRAFTED THIS DECLARATION?

24   OR I ASSUME YOU DRAFTED IT.   DID YOU?

25       A.   I PARTICIPATED IN THE DRAFTING OF THIS DOCUMENT.

16

DEPOSITION OF LISA KRALIK HANSEN

1      Q.  OKAY.  WHEN IS -- I THINK WE'VE ALREADY

2  ESTABLISHED YOU SIGNED IT ON AUGUST 1ST, BUT WHEN DID

3  YOU BEGIN IN THE PARTICIPATION OF DRAFTING THIS DOCUMENT?

4      A.  IT WOULD HAVE BEEN MID TO LATE JULY.  I DON'T

5  RECALL THE SPECIFIC DATE.

6      Q.  IN RELATION TO THE DRAFTING OF THIS DOCUMENT, DID

7  YOU REVIEW ANY DOCUMENTS, OTHER THAN WHAT YOU'VE ALREADY

8  TOLD ME ABOUT, IN RELATION TO PREPARING THE DOCUMENT?

9      A.  I HAVE SEEN, BECAUSE IT WAS SITTING ON MY DESK, A

10  COPY OF THE COMPLAINT IN THE REMEDY TEMP LAWSUIT.  I DID

11  NOT REVIEW OR REREAD THAT COMPLAINT IN PREPARATION FOR THE

12  DECLARATION.

13      Q.  ANYTHING ELSE?

14      A.  NO.

15      Q.  YOU HAVEN'T LOOKED AT ANY DOCUMENTS RELATED TO

16  THE REPUBLIC MATTER?

17      A.  NO, I HAVE NOT.

18      Q.  DID YOU EVER SEE THE MOTION FILED BY LIBERTY

19  RELATED TO YOUR AFFIDAVIT?

20      A.  I THINK I ALREADY ANSWERED THAT QUESTION, BUT NO.

21      Q.  THE QUESTION BEFORE WAS WHETHER OR NOT YOU READ

22  THAT OPPOSITION FOR THAT MOTION PREPARING FOR YOUR

23  DEPOSITION.  I'M WONDERING IF YOU'VE EVER SEEN IT.  AND

24  THE ANSWER IS NO?

25      A.  NO.

17

DEPOSITION OF LISA KRALIK HANSEN

1      Q.  HAVE YOU EVER BEEN PROVIDED ANY DOCUMENTATION

2    FROM ANYBODY RELATED TO THE REPUBLIC CASE?

3      A.  NO.

4      Q.  YOU'VE NOT READ ANY DEPOSITIONS, FOR INSTANCE?

5      A.  NO.

6      Q.  OTHER THAN DOCUMENTS AND -- THE DOCUMENTS YOU'VE

7    IDENTIFIED RELATED TO THE DRAFTING OF THIS AFFIDAVIT, DID

8    YOU HAVE ANY CONVERSATIONS WITH ANYBODY RELATING TO THE

9    DRAFTING OF THIS AFFIDAVIT?

10     A.  YES.

11     Q.  WITH WHOM?

12     A.  THE SAME PEOPLE WITHIN MY LAW FIRM.

13     Q.  SO THE ONLY PEOPLE YOU TALKED TO REGARDING THIS

14   ISSUE, THIS AFFIDAVIT, WERE PETERSON & BRADFORD PEOPLE?

15     A.  I HAVE ALSO SPOKEN WITH MARSHALL HIXSON.

16     Q.  WHEN?

17     A.  SOMETIME IN JULY SHORTLY BEFORE THE DECLARATION

18   WAS FILED.

19     Q.  AND WHAT WAS THE SUBJECT OF THAT DEPOSITION?

20         MR. SKOCYPEC:  OBJECTION.

21         MR. ADREANI:  MR. HIXSON IS NOT MS. HANSEN'S

22   ATTORNEY.

23         MR. SKOCYPEC:  WELL, I THINK WE WENT OVER THIS,

24   COUNSEL.  HE'S LIBERTY MUTUAL'S ATTORNEY, AS ARE WE, IN

25   NUMEROUS CASES.

18

DEPOSITION OF LISA KRALIK HANSEN

1          MR. ADREANI:  MR. HIXSON IS NOT MS. HANSEN'S

2  ATTORNEY.

3          MR. SKOCYPEC:  COUNSEL, IT DOESN'T MATTER.

4          MR. ADREANI:  OKAY.  YOU'RE GOING TO SUBMIT A

5  DECLARATION AND NOT TESTIFY ABOUT HOW THIS DECLARATION

6  CAME TO BE BECAUSE IT'S SHIELDED BY ATTORNEY/CLIENT?  YOU

7  CAN'T HAVE IT BOTH WAYS, COUNSEL.

8          MR. SKOCYPEC:  WELL, COUNSEL, YOU HAVEN'T ASKED

9  ABOUT ANY OF THE SUBSTANCE OF THIS DECLARATION WHATSOEVER

10  YET.  YOU'RE ASKING PERIPHERAL QUESTIONS REGARDING --

11  THEY'RE MEANINGLESS QUESTIONS.  IF YOU ASK SOMETHING ABOUT

12  THE DECLARATION AND THE CONTENT OF THE DECLARATION, THE

13  WITNESS IS HERE TO TESTIFY ABOUT IT.

14          MR. ADREANI:  I HAVE EVERY RIGHT TO ASK THIS

15  WITNESS ABOUT HOW THIS DECLARATION CAME TO BE, ABOUT THE

16  WITNESS'S BIASES, ABOUT THE WITNESS'S CONVERSATIONS

17  RELATED TO THE DRAFTING OF THIS DOCUMENT.

18      Q.  MS. HANSEN, HOW MANY DRAFTS OF THIS DOCUMENT WERE

19  THERE?

20      A.  TWO OR THREE, TO THE BEST OF MY RECOLLECTION.

21      Q.  AND WITH WHOM DID YOU EXCHANGE THESE DRAFTS?

22          MR. SKOCYPEC:  OBJECTION.  LACK OF FOUNDATION.

23  BY MR. ADREANI:

24      Q.  MS. HANSEN, YOU SAID EARLIER THAT YOU

25  PARTICIPATED IN DRAFTING THIS DECLARATION; RIGHT?

19

DEPOSITION OF LISA KRALIK HANSEN

1    A.  CORRECT.

2    Q.  WHO ELSE PARTICIPATED IN DRAFTING THIS

3  DECLARATION?

4    A.  MY SECRETARY.

5    Q.  LIV?

6    A.  YES.

7    Q.  ANYONE ELSE?

8    A.  SUSAN OLSON, MR. SKOCYPEC.

9    Q.  MR. HIXSON?

10    A.  I DON'T KNOW.

11    Q.  YOU DON'T KNOW IF -- WELL, OKAY.  YOU YOURSELF,

12  LIV, SUSAN OLSON, AND RON PARTICIPATED IN DRAFTING THIS

13  DECLARATION.  ANYONE ELSE?

14    A.  OUR LAW CLERK, DIANA DISKIN, MAY HAVE ALSO.  SHE

15  WOULDN'T HAVE DRAFTED THE DECLARATION, BUT SHE HELPED IN

16  THE PROCESS.

17    Q.  CAN YOU BE MORE SPECIFIC?

18    A.  ABOUT WHAT?

19    Q.  OTHER THAN THE PEOPLE YOU MENTIONED, DID ANYONE

20  ELSE PARTICIPATE IN THE DRAFTING OF THIS DECLARATION?

21    A.  I RECEIVED A CAPTION, I BELIEVE, FROM MR. HIXSON

22  FOR THIS KENTUCKY LAWSUIT, AND MAY HAVE BEEN A SKELETON

23  DECLARATION WITH SOME OF THE BEGINNING LANGUAGE AND THE

24  NOTARY LANGUAGE.

25    Q.  OTHER THAN MR. HIXSON AND THE PEOPLE YOU

20

DEPOSITION OF LISA KRALIK HANSEN

```
 1   MENTIONED FROM YOUR FIRM, DID ANYONE ELSE PARTICIPATE IN

 2   THE DRAFTING OF THIS DECLARATION?

 3         MR. SKOCYPEC:  COUNSEL, YOU KEEP REFERRING TO

 4   THIS AS A DECLARATION.  I HAVE NOT BEEN OBJECTING.

 5   OBVIOUSLY IT'S NOT A DECLARATION.  IT'S AN AFFIDAVIT.  BUT

 6   IF YOU WANT US TO REFER TO IT AS THE DECLARATION, THAT'S

 7   FINE.

 8         MR. ADREANI:  WHY DON'T WE AGREE THAT WHEN I TALK

 9   ABOUT THE DECLARATION OR THE AFFIDAVIT, WE'RE REFERRING TO

10   EXHIBIT 1.

11         MR. SKOCYPEC:  THAT'S FINE.

12         THE DEPONENT:  ANYONE ELSE?  NO.

13   BY MR. ADREANI:

14       Q.  DID YOU EVER RUN THIS BY ANYONE AT LIBERTY?

15       A.  DID I?  NO.

16       Q.  DID ANYONE?

17       A.  I DON'T KNOW.

18       Q.  SO IT'S POSSIBLE THAT SUSAN OR RON DID; RIGHT?

19       A.  ANYTHING'S POSSIBLE.

20       Q.  OKAY.  AND DID YOU EVER -- WELL, SOME OF THIS

21   LANGUAGE IN THE DECLARATION DIDN'T COME FROM YOU, DID IT?

22   I MEAN, SOMEONE AT THE STITES FIRM HAD SOMETHING TO DO

23   WITH THE LANGUAGE IN THIS DECLARATION; RIGHT?

24       A.  SOME OF IT.  SOME OF THE INTRODUCTORY, "COMES THE

25   AFFIANT," MY NAME.
```

21

DEPOSITION OF LISA KRALIK HANSEN

1   Q.   DID ANYONE AT THE STITES FIRM REVISE THIS, REVISE

2   THE LANGUAGE IN THIS?

3   A.   NO.

4   Q.   FOR INSTANCE, IF YOU LOOK AT PAGE 2 OF THE

5   AFFIDAVIT AT PARAGRAPH 6, AT THE VERY BOTTOM THERE YOU SAY

6   MS. GICHTIN WORKED EXTENSIVELY ON LITIGATION STYLED REMEDY

7   TEMP VERSUS LIBERTY.  DO YOU SEE THAT?

8   A.   YES.

9   Q.   "STYLE," THAT'S NOT A WORD WE USE HERE.  SOMEONE

10  FROM KENTUCKY WROTE THAT; RIGHT?

11      MR. SKOCYPEC:  OBJECTION.  ARGUMENTATIVE.

12  BY MR. ADREANI:

13  Q.   WELL, ISN'T IT TRUE?

14      MR. SKOCYPEC:  COUNSEL, I GUESS YOU HAVEN'T BEEN

15  PRACTICING LAW LONG ENOUGH IN CALIFORNIA.  IT HAPPENS ALL

16  THE TIME.  BUT IT'S ARGUMENTATIVE.  THAT WORD IS NOT

17  UNIQUE.  IT'S AN ARGUMENTATIVE QUESTION.  AND IF YOU'VE

18  BEEN AROUND LONG ENOUGH, YOU'D KNOW THAT PEOPLE USE

19  "STYLED."

20      MR. ADREANI:  WELL, RON, I'VE BEEN PRACTICING

21  LONG ENOUGH TO KNOW THAT IN A FEDERAL COURT CASE, YOU CAN

22  OBJECT TO THE FORM OF THE QUESTION AND KEEP THE COMMENTARY

23  TO YOURSELF.

24      THE DEPONENT:  IS THE WORD "STYLED" -- THAT IS

25  NOT MY WORD.  I DON'T KNOW WHOSE WORD IT IS.

22

DEPOSITION OF LISA KRALIK HANSEN

1  BY MR. ADREANI:

2      Q.  OKAY.  SO WHO IN KENTUCKY AT THE STITES FIRM

3  HELPED YOU DRAFT THIS DECLARATION?

4          MR. SKOCYPEC:  OBJECTION.  LACK OF FOUNDATION.

5  BY MR. ADREANI:

6      Q.  WAS IT MR. HIXSON?

7          MR. SKOCYPEC:  OBJECTION.  LACK OF FOUNDATION.

8          MR. ADREANI:  THOSE ARE ALL FORM OBJECTIONS, BY

9  THE WAY, RON.  ALL YOU NEED TO SAY IS "OBJECT TO FORM."

10          THE DEPONENT:  NO ONE HELPED ME DRAFT THE

11  DECLARATION.  I PREVIOUSLY TESTIFIED THAT THERE WAS SOME

12  BARE BONES LANGUAGE IN THE DECLARATION AND THAT WOULD HAVE

13  INCLUDED "COMES THE AFFIANT" LANGUAGE AT THE VERY

14  BEGINNING, PART OF PARAGRAPH THREE, I RECALL PART OF

15  PARAGRAPH FIVE, MAYBE PART OF PARAGRAPH SIX, TO THE BEST

16  OF MY RECOLLECTION, THE ENDING SENTENCE, "FURTHER AFFIANT

17  SAYETH NOT," I MEAN, THE FORM OF THE AFFIDAVIT.

18  BY MR. ADREANI:

19      Q.  UH-HUH.  I UNDERSTAND.

20          AND ALL OF THOSE THINGS THAT YOU'RE IDENTIFYING,

21  THE PORTIONS THAT YOU JUST IDENTIFIED WERE -- IT WAS THE

22  STITES FIRM OR MR. HIXSON IN PARTICULAR WHO WAS

23  PARTICIPATING IN THE DRAFTING ON THAT LEVEL?

24      A.  I RECEIVED A BARE BONES -- WHAT I RECALL, A BARE

25  BONES AFFIDAVIT AND I DRAFTED THE CONTENTS OF THE

23

DEPOSITION OF LISA KRALIK HANSEN

1    DECLARATION AND REVISED THE DOCUMENT IN MY OFFICE.

2        Q.  OKAY.

3        A.  AND CREATED THE DOCUMENT IN MY OFFICE.

4        Q.  OKAY.  AND TO THE EXTENT YOU DRAFTED PORTIONS OF

5    THIS, WAS THAT REVISED AT ALL BY ANYBODY?

6        A.  REVISIONS WERE MADE BY MYSELF TO MY OWN DRAFT.

7    MY SECRETARY DID REVISIONS.  I DON'T BELIEVE -- OTHER

8    PEOPLE IN MY OFFICE LOOKED AT THE DOCUMENT, BUT I DON'T

9    BELIEVE ANYBODY ELSE IN MY OFFICE, WITH THE EXCEPTION OF,

10   PERHAPS, MR. SKOCYPEC, MADE REVISIONS.

11       Q.  AND JUST SO I UNDERSTAND THE TIMEFRAME, YOU FOUND

12   OUT ABOUT THIS SOMETIME IN THE MIDDLE OF JULY AND YOU

13   SIGNED YOUR AFFIDAVIT ON AUGUST 1ST; RIGHT?

14       A.  CORRECT.

15       Q.  SO IN THE MEANTIME, THE DRAFTING TOOK PLACE AT

16   THAT LAST PART OF JULY?

17       A.  I DON'T RECALL WHEN MY DRAFTING AND MY ACTUAL

18   WORK ON THE DECLARATION STARTED AS OPPOSED TO WHEN I FOUND

19   OUT ABOUT THE KENTUCKY LAWSUIT.  IT DID NOT START

20   IMMEDIATELY ONCE I FOUND OUT ABOUT THE LAWSUIT.

21       Q.  HAVE YOU EVER TALKED TO MR. HIXSON?

22       A.  YES.

23       Q.  AND WHEN WAS THAT?

24       A.  ONCE OR TWICE IN JULY.  I BELIEVE TWICE IN JULY.

25       Q.  WHAT DID YOU DISCUSS?

24

DEPOSITION OF LISA KRALIK HANSEN

1          MR. SKOCYPEC:  OBJECTION.  ATTORNEY/CLIENT

2    PRIVILEGE.  ATTORNEY WORK PRODUCT.  INSTRUCT THE WITNESS

3    NOT TO ANSWER.

4    BY MR. ADREANI:

5          Q.  ARE YOU ACCEPTING THE INSTRUCTION?

6          A.  YES.

7          Q.  DID YOU DISCUSS THIS MATTER, AND I MEAN THAT

8    GENERALLY, THE AFFIDAVIT, YOUR DEPOSITION WITH ANYBODY AT

9    LIBERTY MUTUAL, INCLUDING HOUSE COUNSEL?

10         A.  YES.

11         Q.  WHO?

12         A.  BILL CUPELO.

13         Q.  AND WHEN DID YOU SPEAK TO MR. CUPELO?

14         A.  I DON'T RECALL THE DATE, DATES.

15         Q.  WELL, CAN WE NARROW IT DOWN TO SOMETIME BETWEEN

16   THE MIDDLE OF JULY AND AUGUST 1ST?

17         A.  I WOULD HAVE HAD DISCUSSIONS WITH MR. CUPELO

18   ABOUT THE KENTUCKY LAWSUIT IN THAT TIMEFRAME, YES.

19         Q.  OKAY.  IS IT LIMITED TO THAT TIMEFRAME?

20         A.  NO.

21         Q.  ABOUT THE KENTUCKY LAWSUIT HAVE YOU TALKED TO HIM

22   MORE RECENTLY THAN THAT?

23         A.  YES.

24         Q.  OKAY.  WHEN DID YOU LAST SPEAK WITH MR. CUPELO

25   ABOUT THE KENTUCKY LAWSUIT, THIS DECLARATION, OR YOUR

25

DEPOSITION OF LISA KRALIK HANSEN

1    DEPOSITION?

2        A.  I BELIEVE IT WAS AUGUST 3RD UPON MY RECEIPT OF

3    THE DEPOSITION SUBPOENA.

4        Q.  WHAT DID YOU DISCUSS WITH MR. CUPELO?

5            MR. SKOCYPEC:  OBJECTION.  ATTORNEY/CLIENT

6    PRIVILEGE.  ATTORNEY WORK PRODUCT.  INSTRUCT THE WITNESS

7    NOT TO ANSWER.

8    BY MR. ADREANI:

9        Q.  ARE YOU ACCEPTING THE INSTRUCTION?

10       A.  YES.

11       Q.  OKAY.  PRIOR TO AUGUST 3RD, WHAT WERE YOUR

12   DISCUSSIONS -- WHAT WAS THE CONTEXT OF YOUR -- OR I'M

13   SORRY.  WHAT WAS THE CONTEXT OF YOUR DISCUSSIONS WITH

14   MR. CUPELO?

15           MR. SKOCYPEC:  OBJECTION.  ATTORNEY CLIENT

16   PRIVILEGE.  ATTORNEY WORK PRODUCT.  INSTRUCT THE WITNESS

17   NOT TO ANSWER.

18   BY MR. ADREANI:

19       Q.  AGAIN, I'M SPEAKING RELATED ONLY TO THIS

20   DECLARATION THAT YOU GAVE TO THE KENTUCKY LAWSUIT,

21   REPUBLIC VERSUS LIBERTY, AND YOUR DEPOSITION TODAY.

22           SAME OBJECTION?  SAME INSTRUCTION?

23           MR. SKOCYPEC:  YES, COUNSEL.

24   BY MR. ADREANI:

25       Q.  YOU ACCEPT?

26

DEPOSITION OF LISA KRALIK HANSEN

1      A.   YES.

2      Q.   OKAY.   OTHER THAN MR. HIXSON AND MR. CUPELO, HAVE

3  YOU SPOKEN TO ANYONE ELSE FROM THE STITES & HARBISON FIRM

4  ABOUT YOUR DECLARATION, THE KENTUCKY LAWSUIT, OR YOUR

5  DEPOSITION TODAY?

6      A.   UPON MY RECEIPT OF THE DEPOSITION SUBPOENA, I

7  SPOKE WITH MR. HIXSON, AND I BELIEVE THERE WAS ANOTHER

8  GENTLEMAN ALSO ON THE PHONE FROM HIS OFFICE THERE, I DON'T

9  KNOW THE NAME OF THAT PERSON, WHEN WE WERE SPEAKING.

10     Q.   WAS IT MR. KELLER?

11     A.   I DON'T KNOW.

12     Q.   OKAY.   MR. PARSONS?

13     A.   I DON'T KNOW.

14     Q.   OKAY.   AND WHAT DID YOU DISCUSS ON THAT CALL?

15          MR. SKOCYPEC:   OBJECTION.   ATTORNEY/CLIENT

16  PRIVILEGE.   ATTORNEY WORK PRODUCT.   INSTRUCT THE WITNESS

17  NOT TO ANSWER.

18  BY MR. ADREANI:

19     Q.   DO YOU ACCEPT?

20     A.   YES.

21     Q.   WHY DID YOU DO THIS AFFIDAVIT?

22          MR. SKOCYPEC:   OBJECTION.   WORK PRODUCT.

23  INSTRUCT THE WITNESS NOT TO ANSWER.

24  BY MR. ADREANI:

25     Q.   DO YOU ACCEPT THAT INSTRUCTION?

27

DEPOSITION OF LISA KRALIK HANSEN

1      A.   YEAH.

2           MR. ADREANI:  I DON'T GET TO KNOW WHY SHE DID

3    THIS AFFIDAVIT?  THAT'S FINE IF THAT'S THE INSTRUCTION.

4           MR. SKOCYPEC:  YEAH.

5           MR. ADREANI:  OKAY.

6           MR. SKOCYPEC:  I DON'T SEE HOW THAT'S NOT WORK

7    PRODUCT.

8           MR. ADREANI:  WELL --

9           MR. SKOCYPEC:  IT'S CERTAINLY HER THOUGHT

10   PROCESS.

11          MR. ADREANI:  I'M PRETTY SURE OUR JUDGE IN

12   KENTUCKY WILL BE INTERESTED IN THAT ANSWER.

13      Q.   LET'S LOOK AT THE AFFIDAVIT.

14          BY THE WAY, DO YOU HAVE A CONFIDENTIALITY

15   AGREEMENT WITH KERN & WOOLEY?

16          MR. SKOCYPEC:  OBJECTION.  VAGUE AND AMBIGUOUS.

17          THE DEPONENT:  I DON'T KNOW WHAT YOU MEAN BY

18   "CONFIDENTIALITY AGREEMENT" WITH MY FORMER LAW FIRM.  I

19   MEAN, THERE'S ETHICS RULES AND -- THAT APPLY, I BELIEVE,

20   IRRESPECTIVE OF CONFIDENTIALITY AGREEMENT.

21   BY MR. ADREANI:

22      Q.   DID YOU EVER SIGN OFF ON A CONFIDENTIALITY

23   AGREEMENT IN CONJUNCTION WITH YOUR EMPLOYMENT AT KERN &

24   WOOLEY?

25          MR. SKOCYPEC:  SAME OBJECTION.  VAGUE AND

28

DEPOSITION OF LISA KRALIK HANSEN

```
1    AMBIGUOUS.
2           THE DEPONENT:  I DON'T RECALL DOING SO.
3    BY MR. ADREANI:
4        Q.  SO I ASSUME THAT YOU HAVEN'T OBTAINED ANY WAIVERS
5    FROM KERN & WOOLEY WITH REGARD TO YOUR AFFIDAVIT OR YOUR
6    TESTIMONY TODAY.
7        A.  TO MY KNOWLEDGE THERE IS NO WAIVER OF ANY
8    ATTORNEY/CLIENT PRIVILEGE OR ANY WORK PRODUCT PROTECTION.
9        Q.  THAT'S NOT WHAT I'M ASKING ABOUT.  I'M ASKING
10   ABOUT WAIVERS OF AGREEMENTS THAT YOU HAVE, IF ANY, WITH
11   KERN & WOOLEY.
12       A.  I DON'T KNOW THAT I HAVE ANY AGREEMENTS, ANY
13   WRITTEN AGREEMENTS WITH KERN & WOOLEY.
14       Q.  SO IN PREPARING THIS AFFIDAVIT AND GIVING
15   TESTIMONY TODAY, YOU DIDN'T SEEK ANY WAIVER FROM KERN &
16   WOOLEY AS TO ANY AGREEMENT THAT YOU MIGHT HAVE HAD WITH
17   THEM?
18           MR. SKOCYPEC:  OBJECTION TO THE FORM OF THE
19   QUESTION.
20   BY MR. ADREANI:
21       Q.  RIGHT?
22       A.  I CAN'T SEEK A WAIVER IF AN AGREEMENT DOESN'T
23   EXIST.  I'M NOT AWARE OF ANY CONFIDENTIALITY AGREEMENT
24   THAT EXISTS.
25       Q.  SO YOU DIDN'T SEEK A WAIVER OF ANYTHING; RIGHT?
```

29

DALENE COURT REPORTERS

DEPOSITION OF LISA KRALIK HANSEN

1          MR. SKOCYPEC:  COUNSEL, YOU'RE BADGERING THE

2   WITNESS NOW.  THAT'S JUST BADGERING.  HOW CAN YOU SEEK A

3   WAIVER FOR SOMETHING THAT DOESN'T EXIST?

4          MR. ADREANI:  SHE DIDN'T SAY IT DIDN'T EXIST,

5   RON.

6          MR. SKOCYPEC:  LET'S GO ON WITH REAL QUESTIONING,

7   COUNSEL.

8          MR. ADREANI:  SHE DIDN'T SAY IT DIDN'T EXIST.

9   SHE SAID SHE DIDN'T KNOW.

10      Q.  SO OBVIOUSLY YOU DIDN'T GET ANY WAIVERS AT ALL;

11   RIGHT?  SINCE THE MIDDLE OF JULY WHEN YOU FOUND OUT ABOUT

12   THIS, HAVE YOU GONE TO KERN & WOOLEY AND ASKED FOR ANY

13   WAIVERS FOR ANYTHING?

14      A.  NO.

15      Q.  WHEN DID MR. PYNES START AT KERN & WOOLEY?

16      A.  TO THE BEST OF MY RECOLLECTION, IT WAS IN AUGUST

17   OF 2003.

18      Q.  HE ONLY WORKED THERE ABOUT EIGHT MONTHS; RIGHT?

19      A.  APPROXIMATELY, YES.

20      Q.  AND YOU WERE ONE OF HIS SUPERVISORS?

21      A.  I WAS ONE OF THE SUPERVISING ATTORNEYS IN THE

22   PRACTICE GROUP IN WHICH HE WORKED.

23      Q.  AND WHO COMPRISED THAT PRACTICE GROUP AT THAT

24   TIME?

25          LET ME ASK A BETTER QUESTION, LISA.  SORRY.

30

DEPOSITION OF LISA KRALIK HANSEN

1           HOW MANY ATTORNEYS WERE IN THAT PRACTICE GROUP AT

2    THAT TIME WHEN MR. PYNES JOINED YOU?

3        A.   GIVE ME A MINUTE.

4           TO THE BEST OF MY RECOLLECTION, SIX TO EIGHT.

5        Q.   AND THAT INCLUDED MR. SKOCYPEC?

6           I'M SORRY IF I GOT YOUR NAME WRONG, RON.

7           THAT INCLUDED RON?

8        A.   YES.

9        Q.   AND SUSAN?

10       A.   YES.

11       Q.   AND MELODEE?

12       A.   YES.

13       Q.   IN YOUR DECLARATION IN PARAGRAPH 4, PAGE 2, THIS

14   IS THE ONLY PARAGRAPH IN HERE REGARDING MR. PYNES; RIGHT?

15       A.   OTHER THAN PARAGRAPH 3?

16       Q.   THANK YOU.  YES.

17       A.   YES, PARAGRAPH 4.

18       Q.   YOU SAY THAT MR. PYNES WORKED ALMOST EXCLUSIVELY

19   ON MATTERS FOR LIBERTY MUTUAL GROUP OF COMPANIES.  WHAT

20   OTHER CLIENTS DID HE WORK FOR?

21       A.   WHAT OTHER CLIENTS DID HE WORK FOR?

22          MR. SKOCYPEC:  OBJECTION.  ATTORNEY/CLIENT

23   PRIVILEGE.  ATTORNEY WORK PRODUCT, EXCEPT TO THE EXTENT HE

24   MAY HAVE PUBLICLY MADE AN APPEARANCE IN A CASE.  SO IF WE

25   CAN AT LEAST RESTRICT IT TO THAT, SHE CAN ANSWER, BUT

                                                          31

DEPOSITION OF LISA KRALIK HANSEN

1    OTHERWISE SHE'S INSTRUCTED NOT TO ANSWER.

2         MR. ADREANI:  ALL RIGHT.

3         THE DEPONENT:  TO THE BEST OF MY RECOLLECTION,

4    I'M NOT AWARE OF MR. PYNES WORKING ON MATTERS FOR CLIENTS

5    OTHER THAN A LIBERTY MUTUAL GROUP OF COMPANIES.

6         MR. SKOCYPEC:  SO MUCH FOR MY OBJECTION.

7         MR. ADREANI:  IT WAS WELL STATED, THOUGH, RON.

8         MR. CALDWELL:  VERY WELL STATED.

9    BY MR. ADREANI:

10        Q.  YOU HAVE HERE SOME AREAS WHERE MR. PYNES WORKED,

11   INCLUDING COVERAGE, DEFENSIVE BAD FAITH, BREACH OF

12   CONTRACT, IMPLIED COVENANT, AND FRAUD; RIGHT?

13        A.  THAT'S WHAT IT SAYS.

14        Q.  WELL, THAT'S ALSO YOUR RECOLLECTION; RIGHT?

15        A.  AS I SIT HERE TODAY OR AS OF THE TIME I SIGNED

16   THE DECLARATION?

17        Q.  MR. PYNES NEVER WORKED ON ANY OF THOSE CASES WITH

18   REGARD TO WORKERS' COMPENSATION BAD FAITH, DID HE?

19        A.  YES, HE DID.

20        Q.  WHAT CASE WAS THAT?

21        A.  TONY'S FINE FOODS VERSUS LIBERTY MUTUAL, I

22   BELIEVE, IS THE CAPTION OF THE CASE.

23        Q.  WHAT OTHER CASE DID HE WORK ON?  THAT WAS THE

24   ONLY ONE?

25        A.  WHAT DO YOU MEAN BY "OTHER CASE"?

32

DEPOSITION OF LISA KRALIK HANSEN

1    Q.  WELL, WE'LL GET TO THE TONY'S FINE FOOD VERSUS

2    LIBERTY.  BUT THE QUESTION WAS THAT MR. PYNES DIDN'T WORK

3    ON ANY CASE INVOLVING WORKERS' COMPENSATION BAD FAITH.

4    AND YOU SAID THAT'S NOT TRUE; RIGHT?

5    A.  CORRECT.

6    Q.  YOU'VE GIVEN ME ONE NAME OF ONE CASE.  WHAT ELSE?

7    A.  OTHER WORKERS' COMPENSATION RELATED CASE FOR

8    LIBERTY MUTUAL?

9    Q.  I SAID WORKERS' COMPENSATION BAD FAITH CASES.

10    A.  TO THE BEST OF MY RECOLLECTION, THAT TONY'S FINE

11    FOODS IS THE ONLY WORKERS' COMPENSATION BAD FAITH CASE

12    THAT MR. PYNES WORKED ON.

13    Q.  OTHER THAN THAT, MR. PYNES WORKED ON OTHER LINES

14    OF INSURANCE; RIGHT?

15    A.  YES.

16    Q.  OKAY.  ON TONY'S FINE FOODS, MR. PYNES -- HE

17    WORKED WHAT?  THREE HOURS ON THAT CASE?

18    A.  I DON'T KNOW THE HOURS SPENT.

19    Q.  WELL, HOW DO YOU KNOW HE WORKED ON IT?

20    A.  IN DISCUSSIONS WITH OTHER PEOPLE IN MY OFFICE TO

21    PREPARE FOR TODAY'S DEPOSITION, MY RECOLLECTION WAS

22    REFRESHED THAT ONE OF THE CASES THAT MR. PYNES WORKED ON

23    WHILE AT KERN & WOOLEY WAS TONY'S FINE FOODS.  AND I WAS

24    ALSO MADE AWARE THAT HE WAS ASSIGNED A DOCUMENT REVIEW, A

25    PRIVILEGE REVIEW, AND PREPARATION OF A PRIVILEGE LOG.

33

DEPOSITION OF LISA KRALIK HANSEN

1        AND UPON MY RECOLLECTION BEING SO REFRESHED, I

2  HAVE NOW A SPECIFIC RECALL THAT MR. PYNES HAD ASKED ME

3  PERSONALLY A FEW QUESTIONS, EITHER IN THE PROCESS OF THE

4  DOCUMENT REVIEW, THE PRIVILEGE REVIEW, OR PREPARATION OF

5  THE PRIVILEGE LOG.

6      Q.  DO YOU RECALL EXACTLY WHAT MR. PYNES DID ON THAT

7  CASE?

8      A.  I BELIEVE THAT HE REVIEWED LIBERTY MUTUAL

9  WORKERS' COMPENSATION CLAIMS FILES, CONDUCTED A PRIVILEGE

10  REVIEW, MADE A LEGAL DETERMINATION OF WHAT DOCUMENTS WERE

11  PRIVILEGED, PROTECTED OR OTHERWISE IMMUNE FROM DISCOVERY,

12  AND THAT HE DRAFTED A PRIVILEGE LOG.

13      Q.  HE JUST LOOKED AT CLAIM FILES; RIGHT?  FOR LESS

14  THAN HALF A DAY?

15      A.  I DON'T KNOW HOW LONG HE SPENT.  I DON'T HAVE

16  ACCESS TO TIME RECORDS.  I DON'T KNOW HOW LONG IT TOOK HIM

17  TO DO THE REVIEW I PREVIOUSLY TESTIFIED ABOUT IN

18  PREPARATION.

19      Q.  YOU DON'T HAVE ANY REASON TO THINK HE SPENT MORE

20  THAN THAT AMOUNT OF TIME, DO YOU?

21      A.  I DON'T KNOW HOW MUCH TIME HE SPENT.  I DON'T

22  KNOW HOW MANY CLAIM FILES THERE WERE OR THE VOLUME OF THE

23  CLAIM FILES HE WAS REVIEWING.

24      Q.  SO YOU DON'T HAVE ANY REASON TO THINK HE SPENT

25  ANY MORE THAN THAT AMOUNT OF TIME?

34

DEPOSITION OF LISA KRALIK HANSEN

```
1         A.  I DON'T KNOW WHAT AMOUNT OF TIME HE SPENT.

2         Q.  AND YOU DON'T HAVE ANY REASON TO BELIEVE THAT HIS

3    REVIEW OF DOCUMENTS WAS SIMPLY LIMITED TO LOOKING AT CLAIM

4    FILES; RIGHT?

5         A.  CAN YOU READ THAT BACK?

6             (WHEREUPON THE PREVIOUS QUESTION WAS

7             READ BACK BY THE DEPOSITION OFFICER.)

8             THE DEPONENT:  I'M KIND OF CONFUSED BY YOUR

9    QUESTION, MICHAEL, BUT I BELIEVE THAT HIS WORK ON TONY'S

10   FINE FOODS WAS AS I'VE TESTIFIED.

11   BY MR. ADREANI:

12        Q.  MR. PYNES NEVER MADE AN APPEARANCE IN THAT CASE,

13   DID HE?

14        A.  NOT TO MY KNOWLEDGE.

15        Q.  MR. PYNES NEVER MET THE CLIENT IN THAT CASE, DID

16   HE?

17        A.  I HAVE NO IDEA.

18        Q.  MR. PYNES NEVER SAW A CLAIMS MANUAL IN THAT CASE,

19   DID HE?

20        A.  I DON'T KNOW WHAT HE SAW OR DID NOT SEE IN

21   CONNECTION WITH THE WORK HE WAS ASSIGNED TO DO ON THAT

22   CASE.

23        Q.  MR. PYNES NEVER SAW A CLAIMS MANUAL WITH REGARD

24   TO WORKERS' COMPENSATION, DID HE?

25        A.  HE HAD ACCESS TO THEM.
```

35

DEPOSITION OF LISA KRALIK HANSEN

1      Q.  THAT'S NOT MY QUESTION.

2      A.  I DON'T KNOW.  I DON'T KNOW WHAT MR. PYNES SAW OR

3  DIDN'T SAW OR REVIEWED OR DIDN'T REVIEW WHILE HE WAS

4  EMPLOYED BY KERN & WOOLEY IN --

5      Q.  WELL, THAT'S NOT WHAT YOUR DECLARATION SAYS,

6  LISA.

7      A.  NO.  I NEED TO CLARIFY THAT ANSWER.  I KNOW WHAT

8  MR. PYNES WORKED ON, WHAT HE DID, GENERAL AWARENESS OF THE

9  WORK HE WAS ASSIGNED TO DO AND THE WORK THAT HE ACTUALLY

10  DID ON LIBERTY MUTUAL FILES WHILE EMPLOYED AT KERN &

11  WOOLEY.

12         WHAT HE LOOKED AT IN TERMS OF THE COMPUTER

13  SYSTEM, THE OVERALL FILE MATERIALS, AND GENERAL

14  INFORMATION WE HAVE PERTAINING TO THE LIBERTY MUTUAL GROUP

15  OF COMPANIES THAT WAS IN THE POSSESSION OF KERN & WOOLEY,

16  I DON'T KNOW WHAT HE DID OR DID NOT LOOK AT BEYOND HIS

17  SPECIFIC WORK ON SPECIFIC CASES.

18      Q.  SO YOU HAVE NO REASON TO THINK THAT HE EVER SAW A

19  WORKERS' COMPENSATION CLAIMS MANUAL; RIGHT?

20         MR. SKOCYPEC:  OBJECTION TO THE FORM OF THE

21  QUESTION.  ARGUMENTATIVE.

22         THE DEPONENT:  THEY WERE IN OUR OFFICE AT THAT

23  POINT IN TIME AND I -- ALL I CAN TESTIFY TO IS THAT THEY

24  WOULD HAVE BEEN IN OUR OFFICE AT THAT TIME BECAUSE WE HAD

25  WORKERS' COMPENSATION BAD FAITH CASES IN OUR OFFICE AT

36

DEPOSITION OF LISA KRALIK HANSEN

1   THAT POINT IN TIME AND MR. PYNES HAD ACCESS TO THEM.

2   BY MR. ADREANI:

3       Q.   HE DIDN'T WORK ON THOSE CASES; RIGHT?   OTHER THAN

4   THE CLAIM REVIEW THAT YOU MENTIONED?

5       A.   HE WORKED ON TONY'S FINE FOODS.

6       Q.   OTHER THAN THE CLAIM REVIEW THAT HE WORKED ON IN

7   THAT ONE CASE, HE DIDN'T WORK ON THOSE CASES, DID HE?

8           MR. SKOCYPEC:   OBJECTION TO THE FORM OF THE

9   QUESTION.

10          THE DEPONENT:   WELL, COUNSEL, JUST BECAUSE

11  SOMEONE THAT DOESN'T WORK ON A PARTICULAR CASE DOESN'T

12  MEAN THAT A LAWYER IS GOING TO DO A THOROUGH JOB AND LOOK

13  AT DOCUMENTS AND GET A GENERAL WORKING UNDERSTANDING OF

14  THE CLIENT THAT HE OR SHE IS WORKING FOR.   THOSE DOCUMENTS

15  WERE THERE.   THEY WERE IN OUR OFFICE.   THEY WERE

16  ACCESSIBLE TO MR. PYNES.

17  BY MR. ADREANI:

18      Q.   YOU'RE NOT AWARE OF MR. PYNES EVER LOOKING AT A

19  WORKERS' COMPENSATION CLAIMS MANUAL, ARE YOU, FOR LIBERTY

20  MUTUAL?

21      A.   I DON'T KNOW IF HE DID OR HE DIDN'T.

22      Q.   HERE IN THE MIDDLE SENTENCE OF YOUR DECLARATION,

23  I'M GOING TO READ THE SENTENCE FOR THE RECORD, YOU STATE

24  "WHILE REPRESENTING LIBERTY, CRAIG PYNES WAS INVOLVED IN

25  THE REVIEW OF LIBERTY'S CLAIM FILES AND/OR CLAIM MANUALS,

37

DEPOSITION OF LISA KRALIK HANSEN

```
 1   WRITTEN DISCOVERY, MEDIATION AND STRATEGY DISCUSSIONS,

 2   DOCUMENT PRODUCTIONS (INCLUDING ANALYSES OF PRIVILEGED

 3   MATERIALS) AND THE PREPARATION OF LEGAL MEMORANDA."

 4        DO YOU SEE THAT?

 5     A.  YES.

 6     Q.  OKAY.  NOW, THIS IS NOT -- STRIKE THAT.

 7        WHEN YOU SAY -- WHEN YOU DECLARE HERE THAT

 8   MR. PYNES WAS INVOLVED IN THE REVIEW OF CLAIM MANUALS,

 9   YOU'RE NOT TALKING ABOUT WORKERS' COMPENSATION CLAIM

10   MANUALS, ARE YOU?

11     A.  IT DEPENDS AT WHAT POINT IN TIME IS INVOLVED IN A

12   PARTICULAR CASE.

13        IF A CASE GOES BACK IN TIME, DEPENDING ON THE

14   TIMING OF THE CLAIM INVOLVED, IT'S MY RECOLLECTION THAT AT

15   SOME POINT IN TIME LIBERTY MUTUAL DID NOT HAVE A SEPARATE

16   WORKERS' COMPENSATION CLAIMS MANUAL AND THAT THAT WAS PART

17   OF A MULTIVOLUME SERIES OF CLAIM MANUALS WHICH WERE

18   ACCESSIBLE, PRODUCED PURSUANT TO PROTECTIVE ORDER IN A

19   NUMBER OF CASES.

20        MY RECOLLECTION IS THAT AT A LATER POINT IN TIME

21   THERE WOULD HAVE BEEN A SEPARATE OR A MORE SPECIFIC

22   WORKERS' COMPENSATION CLAIM MANUAL FOR LIBERTY MUTUAL.

23     Q.  WELL, YOU'RE SAYING HERE THAT HE DID.  THIS IS

24   NOT YOU SAYING IN THIS SENTENCE THAT HE HAD ACCESS TO OR

25   THAT HE MAY HAVE DONE THIS.  YOU'RE SAYING HE DID, THAT HE
```

38

DEPOSITION OF LISA KRALIK HANSEN

1    WAS INVOLVED IN REVIEWING CLAIM MANUALS.

2         A.    ABSOLUTELY HE WAS.

3         Q.    OKAY.  BUT THESE WERE NOT WORKERS' COMPENSATION

4    CLAIMS MANUAL THAT HE WAS ACTUALLY INVOLVED IN REVIEWING,

5    WERE THEY?  AND --

6         A.    IT COULD HAVE BEEN, DEPENDING ON THE TIMING OF

7    THE VERSION OF THE CLAIM MANUAL INVOLVED IN THE PARTICULAR

8    CASE.

9         Q.    WELL, LET'S REFRESH YOUR RECOLLECTION WITH YOUR

10   TESTIMONY THAT MR. PYNES WORKED THERE IN 2003, 2004.  DOES

11   THAT REFRESH YOUR RECOLLECTION AS TO WHETHER OR NOT THERE

12   WERE SEPARATE CLAIMS MANUALS FOR WORKERS' COMPENSATION AND

13   OTHER LINES OF INSURANCE?

14        MR. SKOCYPEC:  OBJECTION.  UNINTELLIGIBLE.

15        THE DEPONENT:  IT DOESN'T REFRESH MY

16   RECOLLECTION.  IT WOULD DEPEND ON THE SPECIFIC TIMING OF

17   EACH CASE.  WE HAD A LOT OF CONSTRUCTION DEFECT MATTERS IN

18   OUR OFFICE AND THOSE CAN GO BACK -- THOSE GO BACK INTO THE

19   '90S AS OF 2003.

20   BY MR. ADREANI:

21        Q.    YOU'RE NOT AWARE OF MR. PYNES EVER LOOKING AT A

22   WORKERS' COMPENSATION CLAIMS MANUAL, ARE YOU?

23        A.    I HAVE NO PERSONAL KNOWLEDGE THAT MR. PYNES WOULD

24   HAVE INDEED REVIEWED A CLAIMS MANUAL SPECIFIC TO WORKERS'

25   COMPENSATION, BUT HE DID REVIEW CLAIMS MANUALS.

39