FRANK FALZETTA, Cal. Bar No. 125146
SCOTT SVESLOSKY, Cal. Bar No. 217660
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
333 South Hope Street, 48th Floor
Los Angeles, California 90071-1448
Telephone:   213-620-1780
Facsimile:    213-620-1398
ffalzetta@sheppardmullin.com
ssveslosky@sheppardmullin.com

TED C. LINDQUIST, III, Cal. Bar No. 178523
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:   415-434-9100
Facsimile:    415-434-3947
tlindquist@sheppardmullin.com

Attorneys for Defendant and Counterclaimant
LIBERTY MUTUAL FIRE INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARGO CONCRETE, INC., a California Corporation; N.M.N. CONSTRUCTION, INC., a California Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Massachusetts Corporation, and DOES 1 through 100, inclusive.<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM | Case No. C07-04651 CRB (ADR)<br><br>Hon. Charles R. Breyer<br>[Complaint Filed: September 10, 2007]<br><br>**SUPPLEMENTAL DECLARATION OF SCOTT SVESLOSKY FILED IN SUPPORT OF LIBERTY MUTUAL FIRE INSURANCE COMPANY'S REPLY BRIEF**<br><br>Date:  December 21, 2007<br>Time:  10:00 a.m.<br>Place:  Courtroom 8 |

**SUPPLEMENTAL DECLARATION OF SCOTT SVESLOSKY**

I, Scott Sveslosky, declare as follows:

1. I am an attorney duly admitted to practice before this Court, and am an associate with Sheppard, Mullin, Richter & Hampton LLP, attorneys for defendant Liberty Mutual Fire Insurance Company ("LMFIC"). I have personal knowledge of the facts set forth below and, if called and sworn as a witness, could and would testify competently thereto.

2. In an attempt to locate a litigation file or other documents relating to the Tony's Fine Foods v. Liberty Mutual Insurance Company litigation, I contacted the office manager of Kern & Wooley ("K&W"), the law firm that defended Liberty Mutual Insurance Company ("LMIC")[1] in that case, and Richard Carlson, Tony's Fine Foods' attorney. Neither K&W nor Mr. Carlson had an original or copy of the Tony's Fine Foods litigation file. Similarly, Liberty Mutual does not have a copy of K&W's litigation file for the Tony's Fine Foods case. The only information currently maintained by Liberty Mutual relating to Tony's Fine Foods includes electronic invoices submitted by K&W and a limited number of e-mails and letters (sometimes with attachments) received from K&W attorneys and other employees. Liberty Mutual does not have copies of any privilege logs prepared by K&W in the Tony's Fine Foods matter.

3. I have reviewed the March 8, 2004 invoice that K&W submitted to LMIC for the Tony's Fine Food matter. That invoice is authenticated by, and attached as Exhibit E to, the concurrently-filed Greg Farkas' declaration. Exhibit E shows that Mr. Pynes billed 9.8 hours for work he performed on Tony's Fine Foods on December 10, 12, 14, 15, 17 and 18, 2003. According to the invoices, Mr. Pynes' work on Tony's Fine Foods included: (i) reviewing underlying file information, (ii) analyzing claim and other underlying file materials for production,

---

[1] At times in this declaration I refer collectively to LMIC and LMFIC as "Liberty Mutual."

redaction and segregation of privileged information and documents, and (iii) preparing a privilege log for documents withheld from discovery or redacted. In addition to the March 8, 2004 invoice, I have reviewed all other invoices that K&W submitted to LMIC on Tony's Fine Foods. I did not locate a billing entry for any other K&W attorney describing the preparation or revision of any privilege log after the last billing entry that Mr. Pynes recorded for his time on the matter.

4. In November 2006, Sheppard, Mullin, Richter & Hampton became counsel of record for LMFIC in Raymonda Ashou v. Liberty Mutual Fire Ins. Co., Los Angeles County Superior Court Case No. BC 300992 ("Ashou"). Frank Falzetta and I were the primary attorneys handling Ashou for LMFIC. Attached to this declaration as Exhibit G is a true and correct copy of the Ashou Complaint, in which Ms. Ashou alleged that LMFIC breached the implied covenant of good faith and fair dealing (*i.e.*, acted in "bad faith") by (i) unreasonably withholding homeowners insurance policy benefits allegedly due for property damage caused by the 1994 Northridge Earthquake, (ii) failing to properly investigate her claim, and (iii) unfairly adjusting her claim.

5. K&W initially represented LMFIC in Ashou. Craig Pynes was one of the K&W attorneys representing LMFIC in Ashou. Later, but before Sheppard Mullin came on board in November 2006, some of the K&W attorneys on the case moved to Peterson & Bradford.

6. After Sheppard Mullin obtained the Ashou litigation file from Peterson & Bradford, I reviewed it, and I am familiar with its contents. I have also reviewed K&W's May 20, 2004 invoice to Liberty Mutual in Ashou. A copy of that invoice is authenticated by, and attached as Exhibit F to, Greg Farkas' declaration, and has been concurrently submitted to the Court under seal for *in camera* review. Exhibit F sets forth the time entries by K&W attorneys and other employees in defending Ashou from September 2003 through May 2004.

7. According to the May 20, 2004 invoice (Exhibit F), Mr. Pynes billed 85.8 hours for his time spent defending LMFIC in the Ashou matter. The litigation file documents and

1  May 20, 2004 invoice show that Mr. Pynes' work included, but was not limited to, the following
2  tasks: (i) preparing pleadings, discovery and discovery responses, subpoenas, and memos, (ii)
3  reviewing and analyzing claim file materials and ACES notes (*i.e.*, internal computer notes), (iii)
4  researching various legal issues, including the genuine dispute doctrine and defenses to "bad faith"
5  claims, (iv) participating in internal strategy meetings and discussions with Kern & Wooley
6  attorney Susan Olson, (v) communicating with plaintiff's counsel, (vi) investigating facts of the
7  case, (vii) preparing a summary of the case for meetings with Home Office, (viii) preparing an
8  initial case evaluation letter to send to the "client," and (ix) analyzing different issues for a status
9  report to the "client." Mr. Pynes also reviewed "claim manual" documents and prepared a
10 privilege log for documents withheld or redacted during discovery.

12         8.      In Ashou, the litigation file shows that Mr. Pynes had direct
13 communications with Liberty Mutual in-house attorneys and employees. For example, a letter that
14 I found in the litigation file shows on November 21, 2003, Mr. Pynes sent a letter to Michael
15 Gonzales, a Liberty Mutual claims manager, with carbon copies to Liberty Mutual's in-house
16 attorney William Cupelo, Esquire and Special Corporate Litigation Examiner Nancy McCormick
17 in the Home Office Legal Department.

19         9.      Attached to this declaration as Exhibits J, K and L, respectively, are true
20 and correct copies of the complaints filed in the following matter: (1) Diane Cessna v. Liberty
21 Mutual Ins. Co., Orange County Municipal Court (Central Orange) Case No. 03CC01793
22 ("Cessna")[2]; (2) Ralph Mock et al. v. Liberty Mutual Insurance Co., Los Angeles County
23 Superior Court Case No. BC 297264 ("Mock")[3]; and (3) Danielle McLoughlin v. Liberty Mutual

---

[2]  Plaintiff erroneously sued LMIC in Cessna. The proper defendant in that matter was LMFIC. (See S. Olson Declaration).

[3]  Plaintiffs list LMIC on the caption page of the complaint. However, in the body of Mock complaint, plaintiffs identify LMFIC as the defendant. Also, as explained in Ms. Olson's concurrently filed declaration, the proper defendant was LMFIC. (See, S. Olson Declaration)

W02-WEST:1SCS1\400599463.1           -3-

Ins. Co., Los Angeles County Superior Court Case No. LC 063886 ("McLoughlin").[4] The Cessna, Mock and McLoughlin complaints all include "bad faith" allegations against LMFIC. The report identified as Exhibit B in Greg Farkas' declaration and submitted to the Court under seal for *in camera* review shows that Mr. Pynes worked on all of these matters. The hours summary that Mr. Farkas prepared, Exhibit D, shows that Mr. Pynes spent 442.3 hours on "bad faith" matters for LMFIC – Ashou, Cessna, Mock and McLoughlin. Mr. Pynes also spent an additional 300.9 hours on matters that involved an LMFIC insured (see Exhibit D and John Silberstein declaration). Thus, the total amount of time that Mr. Pynes spent on LMFIC matters total at least 743.2 hours.

10.  I have reviewed the report identified as Exhibit B in Greg Farkas' declaration and submitted to the Court under seal for *in camera* review. The report shows all of the time that Mr. Pynes billed to LMIC for work that he performed for Liberty Mutual while at K&W. Based on the report, from July 21, 2003 to March 17, 2004, Mr. Pynes billed 1,291.2 hours for his time. In general, and other than Ashou, the billing report (Exhibit B) shows that Mr. Pynes' work for Liberty Mutual and related affiliates included, but was not limited to, the following tasks:

   a.  Preparing pleadings, discovery and discovery responses, subpoenas, memos, case evaluations and summaries, and privilege logs;

   b.  Preparing status reports, initial case evaluations and correspondence to send to "the client;"

   c.  Preparing case summaries for meetings "with Home Office;"

   d.  Reviewing and analyzing claim file materials and ACES notes (*i.e.*, internal computer notes);

   e.  Reviewing documents received from Liberty Mutual and conducting privilege reviews in preparation for document productions;

---

[4] Plaintiff erroneously sued LMIC in McLoughlin. The proper defendant in that matter was LMFIC. (See S. Olson Declaration).

    f. Reviewing file materials, including "documents related to Remedy Temp," "information from Home Office," and "internal documents;"

    g. Researching various legal issues, including issues relating to "bad faith" and reserve information;

    h. Participating in internal strategy meetings and discussions;

    i. Communicating with opposing counsel;

    j. Investigating facts for any given matter;

    k. Reviewing and analyzing claim manuals, policies and underwriting files;

    l. Attending and participating in mediation, settlement discussions and negotiations;

    m. Preparing mediation briefs;

    n. Assisting in deposition preparation, preparing for deposition, and taking depositions;

    o. Investigating and making coverage determinations;

    p. Preparing coverage opinions; and

    q. Attending case management and status conferences, hearings on motions.

    The billing report also shows that Mr. Pynes had direct communications with Liberty Mutual regarding matters on which he worked. For example, according to the billing records, on February 4, 2004, Mr. Pynes spoke with Liz Flanders, a paralegal formerly at Liberty Mutual's Home Office Legal Department, while working on the <u>McLoughlin</u> matter. On January 23, 2004, he had a "meet[ing] with client re: mediation" in the Kelly & Picerne, Inc. matter. In February 2004, Mr. Pynes prepared a case status letter to Randy Schubert, auto liability claims manager, that addressed settlement strategy and mediation for the Kelly & Picerne, Inc. matter. In March 2004, Mr. Pynes had two telephone calls with Bruce Edwards, a senior portfolio underwriter, where he discussed mediation for the Kelly & Picerne, Inc. matter. From December

2003 to February 2004, Mr. Pynes had at least eight telephone conversations and exchanged approximately seven e-mail communications with Lorrie Isaac, Senior Technical Claims Specialist, where he discussed mediation, settlement negotiations and related issues in the Designer Marble Products, Inc. matter. In addition, the billing report (Exhibit B) shows that in the Cessna matter, Mr. Pynes specifically "review[ed] file materials and analyze[d] on-line information re: corporation information for Liberty Mutual Fire Insurance Company for responding to form interrogatories."

11. On November 16, 2007, I attended the depositions of Susan Olson and Melodee Yee. On November 27, 2007, I attended the deposition of Lisa Hansen. Attached to this declaration and Exhibits N, O and P respectively are true and correct copies of the cited excerpts from the deposition transcripts of Ms. Olson, Ms. Yee and Ms. Hansen.

I declare under penalty of perjury, pursuant to the laws of the United States of America, that the foregoing is true and correct.

Executed this 14th day of December 2007 at Los Angeles, California.

_____
SCOTT SVESLOSKY