EXHIBIT G

STEPHEN M. LOSH, ESQ. (S.B.N. 127508)
ANGELICA M. LEON, ESQ. (S.B.N. 224719)
BEVERLY HILLS LEGAL CENTER
9461 Charleville Blvd., No. 613
Beverly Hills, California 90212
Telephone: (310) 552-2490
Facsimile: (310) 552-7891

Attorney for Plaintiff Raymonda Ashou

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

AUG 19 2003

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
    SUE GABB

IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF LOS ANGELES- UNLIMITED JURISDICTION

CENTRAL DISTRICT

| | |
|---|---|
| RAYMONDA ASHOU,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY, AND<br>DOES 1 to 10, INCLUSIVE,<br><br>Defendants. | Case No.: BC 300992<br><br>COMPLAINT FOR DAMAGES:<br><br>1. BREACH OF CONTRACT<br>2. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING (PUNITIVE DAMAGES) |

2003 SEP -8 PM 2:29

## GENERAL ALLEGATIONS

Plaintiff Raymonda Ashou ("Plaintiff" or "Ashou") alleges as follows:

1. Plaintiff is, and at all times mentioned herein, an individual residing in the county of Los Angeles and was the owner of the real property located at 20451 Tiara Street, Woodland Hills, California 91367 ("Residence" or "Home").

1

COMPLAINT FOR DAMAGES

2. Plaintiff is informed and believes and thereon alleges that at all material times herein alleged, Defendant Liberty Mutual Fire Insurance Corporation, a Massachusetts corporation ("Liberty Mutual"), is qualified to do business in the State of California and does business in the above-named judicial district.

3. Plaintiff is unaware of the true names and capacities of the defendants, Does 1 through 10, inclusive, whether individual, corporate, associate or otherwise, at the time of the filing of this Complaint and therefore sues said defendants pursuant to Code of Civil Procedure Section 474 by such fictitious names and will ask leave of this Court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the DOE defendants is, in some manner, responsible for the events and happenings herein set forth and proximately caused injury and damages to the Plaintiff as herein alleged.

4. Plaintiff is informed and believes and thereon alleges that at all material times herein alleged that the Defendants and each of them, including Does 1 through 10, inclusive, were the agents, servants and employees of the other defendants and each of them, and in doing the things alleged in this complaint, were acting within the scope of that agency or employment.

5. On or about July 13, 1993, Plaintiff purchased homeowner's insurance policy number H32-268-072131-003 6 (the "Policy"). The Policy had effective dates of coverage from July 13, 1993 to July 13, 1994. The policy was subsequently renewed for a similar period, with similar terms and conditions. (A true and correct copy of the policy is attached hereto as Exhibit "A" and incorporated herein by reference as though fully set forth at length).

7. At all material times herein alleged Liberty Mutual was the insurer for Plaintiff's Residence.

///

2

COMPLAINT FOR DAMAGES

2003 SEP -8 PM 2

8. Plaintiff was also an employee of Liberty Mutual at all relevant times herein mentioned and had her Policy premiums deducted from her paycheck.

9. On or about January 17, 1994, the residence suffered earthquake damage, a loss that was covered under the terms and conditions of the Policy.

10. Because Plaintiff was a Liberty Mutual employee at the time she filed the claim, she was told by Liberty Mutual personnel to deal directly with Bob Dickerson, the office manager, ("Mr. Dickerson") without involving any outside parties, such as a public adjuster.

11. Plaintiff's estimated damages were in excess of $200,000. Such amount was based on an estimate provided by a contractor that was performing other earthquake related repairs in her neighborhood.

12. Plaintiff settled her claim for a substantially less amount than she was otherwise entitled to, namely approximately $52,000. This amount was based on a Liberty Mutual appraiser's recommendation, which was deliberately deflated and unadjusted. During the time of the claims negotiation and settlement process with Mr. Dickerson, Plaintiff, as a Liberty Mutual employee, did not feel free to exercise her full rights under the Policy due to the express coercion of Liberty Mutual. During this time, Plaintiff was approaching retirement and feared that she would suffer financially and professionally from contesting any settlement offer made for the claim by Mr. Dickerson. Plaintiff accepted the amount tendered, as she feared to do otherwise would jeopardize her position, and ultimately her pension. Such belief was reinforced and based on statements made by Mr. Dickerson.

13. Mr. Dickerson knew, or had reason to know, that plaintiff was vulnerable as her husband had passed away several years earlier and she was the sole support of herself and her minor son.

///

3

COMPLAINT FOR DAMAGES

14. After accepting the settlement amount, Plaintiff attempted to hire a contractor to repair her earthquake damage. No contractor would consider repairing her loss, as the sum of money she received was grossly insufficient to cover all the necessary repairs.

15. Plaintiff attempted on her own, using the money she received from Liberty Mutual and her life savings, to repair the home. She was unable to do so as the funds were still insufficient.

16. After exhausting her life savings, plaintiff was forced to abandon her home after finding a buyer to assume her mortgage balance.

17. Upon learning that the California legislature passed a law allowing earthquake claim to be reopened, Plaintiff hired Thomas Beamiller, a licensed California public adjuster, ("Mr. Beamiller") to handle her loss for the remainder of the damages. Mr. Beamiller then hired Michael Vaughan, a former contractor and now a licensed California public adjuster ("Vaughan"), to assess the loss.

18. On or about September 30, 2001, Mr. Vaughan sent an estimate of the revised damages for the residence to Brian Cahill, a Liberty Mutual adjuster.

19. On or about December 20, 2001, Liberty Mutual agreed to reopen and investigate Plaintiff's claim for damages that were not covered during the initial claims investigation in 1994.

20. On or about January 8, 2003, Mr. Vaughan sent a letter to Mr. Cahill, which included a letter from Plaintiff dated December 2, 2002, setting forth the reasons why she was unable to contest the amount Liberty Mutual first tendered to her, among other documents.

21. On or about April 1, 2003, Mr. Cahill sent Plaintiff a letter notifying her that because the settlement amount was based on her contractor's estimate, her claim was being closed and her request for additional damages was being denied. The contractor's estimate that Mr. Cahill refers to in his April 1st letter was in fact an estimate in excess of $200,000.

///

4

COMPLAINT FOR DAMAGES

22. Plaintiff has suffered substantial damages by the actions of this defendant, and continues to suffer and accrue damages on a daily basis.

### FIRST CAUSE OF ACTION

### (BREACH OF CONTRACT)

23. Plaintiff realleges and incorporates by reference, as though fully set forth, paragraphs 1 through 22 of this Complaint.

24. Plaintiff is informed and believes and upon such information and belief, alleges that on or about January 17, 1994, she entered into a written agreement with Liberty Mutual to purchase the policy for the residence. Said contract allowed her to submit claims for covered losses pursuant to the terms and conditions of the policy.

25. Plaintiff has fully performed all conditions, covenants, obligations and promises required of her to be performed under the agreement, except for all conditions, covenants, obligations and promises to which she has been excused from performing.

26. Beginning on or about 1997 and on a continuing basis thereafter, until most recently on April 1, 2003, Liberty Mutual has breached the terms and conditions of the Policy, by way of example, including, but not limited to, intentionally undervaluing the claim, unreasonably relying on its own estimates, failing to pay the proper amount of the claim under the policy, and failing to conduct a prompt, full and complete investigation of her losses both at the time of the original filing and most recently in December of 2001.

27. Demand for performance of the terms of the Policy have been made repeatedly upon Liberty Mutual through Brian Cahill, its representative. Mr. Vaughan, on behalf of Ms. Ashou, has sent written correspondence to Liberty Mutual and as of April 1, 2003, it has refused to tender performance under the Policy, and has denied her claim for damages. As a legal and proximate result

of Liberty Mutual's breach of the contract, Ms. Ashou suffered a loss in excess of $200,000.00 after applying all policy coverage and limitations, interest at the rate of 10% per annum beginning from January 1, 1997 to the date of judgment, and until paid in full, plus any other consequential contractual losses according to proof.

WHEREFORE, Plaintiff prays for judgment against Liberty Mutual, and each of them, as more fully set forth below.

## SECOND CAUSE OF ACTION

### (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

28. Plaintiff hereby incorporates by reference each and every allegation contained in paragraphs 1 through 27 as though fully set forth at length.

29. The Policy was purchased by Plaintiff from Liberty Mutual with the expectation that the promised benefits would provide Plaintiff with protection against loss of her real and personal property therein in the event of a loss due to a covered peril under the policy, in this case, earthquake damage. Ms. Ashou reasonably expected Liberty Mutual to honor its obligations in case of such an occurrence, especially due to her long and faithful service to said company, both as an insurance policy holder and an employee. Liberty Mutual intentionally fostered such expectations, by encouraging peace of mind and security from any loss due to causes beyond her control.

30. Liberty Mutual tortiously breached the covenant of good faith and fair dealing implied by law in every insurance contract by failing to, but not limited to, do the following:

(a) Consider Ms. Ashou's interests ahead of its own by threatening that she would lose her job and pension if she hired a public adjuster and contested any settlement offer made for the claim by Mr. Dickerson;

(b) Properly investigate in a timely, thorough and complete manner her claim

1 under the policy;

2     (c) Properly adjust her claim in that it intentionally deflated and unadjusted the value of her claim;

    (d) Misrepresent the facts concerning payment of the claim based on her contractor's report, which was approximately $200,000.00;

    (e) Pay the proper amount of the claim under the Policy, which would have allowed her to properly repair her home, rather than pay approximately 25% of what her claim was in fact worth;

31. Ms. Ashou is informed and believes, and on that basis alleges, that Liberty Mutual breached its duty of good faith and fair dealing owed to her by other acts and omissions of which she is presently unaware. Ms. Ashou will seek leave of the Court to amend her complaint after she discovers other acts or omissions of Liberty Mutual through the usual discovery channels.

32. Liberty Mutual has and continues to deliberately understate the amount of Ms. Ashou's contractor's bid, and thereby the actual claim itself.

33. As a legal or proximate result of Liberty Mutual's breach of its obligation of good faith and fair dealing owed to Ms. Ashou, Ms. Ashou has unfairly suffered and continues to suffer, substantial and consequential damages. By way of example, but not limitation, Ms. Ashou has suffered humiliation, mental and financial distress. She was forced to sell her home for the trust deed balance, which was substantially less than its worth because the residence was not properly repaired after the loss, thereby also losing all equity in her once pristine property. The resulting move and lowered quality of life has since plagued Ms. Ashou's mind. Ms. Ashou no longer has the peace of mind and pride of ownership that she enjoyed at her Woodland Hills home. Many of these effects could and would have been alleviated had Liberty Mutual honored its obligations under the Policy, and properly estimated the claim. Ms. Ashou was required to obtain the services of an attorney, experienced in these

matters, to assert rightful claims against Liberty Mutual. Ms. Ashou cannot ascertain at this time the full nature, extent or amount of the damages she has suffered as a result of the bad faith conduct of Liberty Mutual, as the damages are continuing in nature, but will prove the same at the time of trial of this matter.

34. Liberty Mutual's conduct was carried out with a conscious and malicious disregard of Ms. Ashou's rights and with the intent to vex, injure, or annoy her, and to subject her to cruel and unjust hardships on a daily basis, and to deprive her of her real and personal property and legal rights, such as to constitute oppression, malice or fraud under California *Civil Code* Section 3294; wherefore Ms. Ashou should be awarded punitive damages in an amount according to proof at the time of trial.

WHEREFORE, plaintiff prays for judgment against defendants, and each of them, as more fully set forth below.

PRAYER FOR RELIEF

First Cause of Action:

1. For damages for breach of contract in excess of $200,000 according to proof, plus consequential contractual damages;

2. Court fees and costs; and

3. Interest at the rate of 10% per annum from January 1, 1997 until the date of judgment, and thereafter until paid in full.

///
///
///
///
///

2003 SEP -8 PM 2:29

Second Cause of Action:

4. Special and general damages for breach of the covenant of good faith and fair dealing in an amount according to proof;

5. Punitive and exemplary damages in an amount according to proof;

6. Reasonable attorney fees in an amount to be determined by this Court for enforcing Ms. Ashou's contractual rights under the policy; interest at the rate of 10% per annum from January 1, 2003 and until the date of judgment and thereafter until paid in full; and

7. Court costs as the Court deems proper and just.

DATED: August 19, 2003                      BEVERLY HILLS LEGAL CENTER

By: *Angelica Leon*
Angelica M. Leon, Esq.
Attorney for the Plaintiff Raymonda Ashou

2003 SEP -8 PM 2: 29

9

COMPLAINT FOR DAMAGES