EXHIBIT K

```
1  JERRY A. RAMSEY, ESQ. [Bar No. 36982]
   BRIAN J. HEFFERNAN, ESQ. [Bar No. 132845]
2  ENGSTROM, LIPSCOMB & LACK
   10100 Santa Monica Boulevard, 16th Floor
3  Los Angeles, California 90067-4107
   PH:  (310) 552-3800
4  FX:  (310) 552-9434

5  Attorneys for Plaintiff
   RALPH MOCK and GLORIA MOCK
```

**FILED**
LOS ANGELES SUPERIOR COURT

JUN 1 1 2003

JOHN A. CLARKE, CLERK
BY C. L. COLEMAN, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| RALPH MOCK and GLORIA MOCK, <br><br> Plaintiffs, <br><br> v. <br><br> LIBERTY MUTUAL INSURANCE COMPANY; KINGSTON RECONSTRUCTION AND FLOORING, INC.; and DOES 1 through 100, Inclusive, <br><br> Defendants. | CASE NO. <br><br> **BC 297264** <br><br> **COMPLAINT FOR DAMAGES** <br><br> Case assigned to <br> Judge <br> Owen Lee Kwong |

COME NOW, plaintiffs GLORIA MOCK and RALPH MOCK, insureds of defendant LIBERTY MUTUAL INSURANCE COMPANY, COMPLAINING OF DEFENDANTS AS FOLLOWS:

### PRELIMINARY ALLEGATIONS

1. Plaintiffs are individuals and at all times relevant to this lawsuit, residents of the City and County of Los Angeles, California.

2. Plaintiffs do not know the true names and capacities of defendants sued herein as Does 1-100, inclusive, and therefore sues said defendants by such fictitious names pursuant to California *Code of Civil Procedure* Section 474. Plaintiffs will amend this

1

Complaint for Damages

1  Complaint to state the true names and capacities of the fictitiously named defendants when
2  the same are ascertained. Plaintiffs are informed and believe and based thereon allege that
3  each of the fictitiously named defendants is legally responsible in some manner for the
4  events and damages alleged in this Complaint under the causes of action stated herein.

5      3.    At all times relevant to this lawsuit, defendant LIBERTY MUTUAL FIRE
6  INSURANCE COMPANY and DOES 1-100 (hereinafter "defendant" or "LIBERTY
7  MUTUAL") was and is an insurance company which was and is authorized to transact and
8  conduct and was/is transacting and conducting the business of insurance in the State of
9  California, and specifically, within this judicial district.

10     4.    At all times relevant to this lawsuit, defendant KINGSTON
11 RECONSTRUCTION AND FLOORING, INC. and DOES 1-100 (hereinafter "defendant"
12 or "KINGSTON") was and is a construction/catastrophe repair company incorporated and
13 residing in the State of California and doing business within this judicial district.

14     5.    Plaintiffs are informed and believe and based thereon allege that at all times
15 mentioned herein, each of the defendants were agent, partner, joint venturer, associate
16 and/or employee of one or more of the other defendants and were acting in the course and
17 scope of such agency, partnership, joint venture, association and/or employment when the
18 acts giving rise to the causes of action occurred.

19                     **FIRST CAUSE OF ACTION:**
20                     **BREACH OF CONTRACT**
21            [Against Defendant LIBERTY MUTUAL FIRE INSURANCE
22                         COMPANY and Does 1-100]

23     6.    Paragraphs 1 through 5 are hereby incorporated by reference as if fully set
24 forth herein.

25     7.    On or about July 14, 2001, defendant LIBERTY MUTUAL issued
26 LIBERTYGUARD DELUXE HOMEOWNERS POLICY number H32-261-967405-001 2
27 to plaintiffs GLORIA AND RALPH MOCK, insureds, and covering plaintiffs and their
28 Dwelling/Residence Premises which is located at 23725 Sylvan Street, Woodland Hills,

1 California 91364

2   8.   The defendant's policy did contain and/or was intended to contain insuring agreements providing the following or substantially similar policy language:

"COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property."

9.   On or about August 8, 2000 and again on January 8, 2002, plaintiffs sustained covered losses to their home in the form of severe structural and cosmetic damage ("direct loss to property") resulting from a burst and leaking water pipe, the second and subject loss resulting in serious consequential property damage to plaintiffs' residence.

10.   Plaintiffs tendered their covered claim for benefits to defendant in a timely manner and have complied with all conditions precedent to coverage. Plaintiffs have cooperated fully in the investigation of the loss and defendant has not been prejudiced in any manner whatsoever. No valid defense nor excuse to full payment of this covered claim exists.

11.   On or around August 8, 2000, Plaintiffs discovered a possible leak in their shower wall which caused moderate consequential damage to their insured home. A claim was submitted to defendant LIBERTY MUTUAL, the claim was honored, contractors were hired to repair the damage, but no leak detection test was performed, as should have been. That claim was handled by adjuster Richard Bennett of LIBERTY MUTUAL.

12.   On or around January 8, 2002, Plaintiffs discovered a leak in their hot water line below the slab under the heating and air unit and which was causing consequential property damage to their insured dwelling ("direct loss to property"). A claim was submitted to defendant LIBERTY MUTUAL which in turn assigned the risk to adjuster Richard Bennett, the same adjuster who had handled loss #1.

13.   Adjuster Bennett, on behalf of defendant LIBERTY MUTUAL, appeared on

3

Complaint for Damages

1  the scene in a timely manner and immediately began adjusting and handling plaintiffs' claim
2  on behalf of defendant LIBERTY MUTUAL. Adjuster Bennett was at all times acting
3  within the course of scope of his authority as agent of defendant LIBERTY MUTUAL, on
4  behalf of and for the direct benefit of defendant LIBERTY MUTUAL.

5       14.    Adjuster Bennett recognized that the loss was serious and that the damage was
6  extensive. Bennett immediately offered a check in the amount of $200 for emergency
7  services an another subsequent check for two months of Additional Living Expense benefit
8  totaling $6,251 for the period of 4/22-6/21 which was appropriate under the circumstances
9  and which led plaintiffs to believe that their claim was going to be handled fairly by
10 LIBERTY MUTUAL. Bennett offered the services of personnel to pack plaintiffs' contents
11 as it was apparent that the premises would have to be vacated to accommodate the major
12 construction efforts which would be required to repair this damaged dwelling. Plaintiffs
13 declined that offer in an effort to be reasonable and to save LIBERTY MUTUAL money.

15       15.    Adjuster Bennett informed the plaintiffs that LIBERTY MUTUAL was going
16 to delegate and assign the task of assessing the extent of the loss and repairing plaintiffs
17 home to an outfit known as KINGSTON RECONSTRUCTION & FLOORING, INC.
18 ("KINGSTON") Bennett assured the plaintiffs that "LIBERTY MUTUAL uses KINGSTON
19 all the time, they're great". LIBERTY MUTUAL even went further in backing up their oral
20 assurances in providing a written guaranty of KINGSTON's work for a period of three
21 years. The plaintiffs felt assured that KINGSTON would perform as LIBERTY MUTUAL
22 had promised. LIBERTY MUTUAL in fact did retain KINGSTON to perform LIBERTY
23 MUTUAL's non-delegable duty to investigate and assess the nature and extent of the loss
24 and to implement corresponding repairs. KINGSTON in effect determined what contractual
25 benefits were owed for LIBERTY MUTUAL in fulfillment of LIBERTY MUTUAL's non-
26 delegable duty to investigate and search for coverage on behalf of its insureds.
27       16.    Shortly thereafter, KINGSTON appeared at the insureds' property, assessed
28 the loss and prepared an estimate for repair on behalf of defendant LIBERTY MUTUAL in

fulfillment of LIBERTY MUTUAL's non-delegable duty. KINGSTON's estimate and proposed repair were in the neighborhood of $156,000 thus confirming the extensive nature of this loss.

17. In and around March 2002, KINGSTON commenced construction in fulfillment of LIBERTY MUTUAL's duty to indemnify for this covered loss. KINGSTON and LIBERTY MUTUAL were in effect joint venturers on this claim and project, each intending to fulfill the same goal: repair of the Mock's residence. LIBERTY MUTUAL acting in fulfillment of its duty as insurer to its insured, the Mocks, and KINGSTON, acting on behalf of and in concert with LIBERTY MUTUAL in exchange for monetary remuneration from LIBERTY MUTUAL. LIBERTY MUTUAL and KINGSTON told the Mocks that the construction repairs would be completed in four months.

18. Plaintiffs are Union Set Painters and members of Local 729 who paint movie sets for a living, often on location. At the time when construction was originally set to commence (approximately February 2002) plaintiffs informed LIBERTY MUTUAL and KINGSTON that plaintiffs were scheduled to work on a prolonged production in Austin, Texas beginning that summer. LIBERTY MUTUAL and KINGSTON indicated that this would pose no problems whatsoever. Plaintiffs provided contact numbers, including cell numbers with 24/7 accessibility and voice mail and which provided continual access by LIBERTY MUTUAL and KINGSTON in the event that plaintiffs needed to be contacted. In addition, plaintiffs had a local relative in the neighborhood of the insured property who was available in the event that a live contact or inspection was required and communicated the same to LIBERTY MUTUAL and KINGSTON. Plaintiffs were also personally ready and willing to return to Los Angeles in the event that a personal meeting or inspection was required or requested. Neither LIBERTY MUTUAL nor KINGSTON expressed any concern with this arrangement, nor were any difficulties presented at any time due to plaintiffs' work schedule and location. The plaintiffs out of town work did not commence until several months later and in any event was not a factor in any manner in the chain of causation of the damages alleged in this lawsuit. The job and claim should have been

5

concluded before plaintiffs' summer departure for work.

19.  In early March 2002, the hardwood floors and carpeting were removed from the home. The job and claim then sat for an entire month with no progress and no monitoring of progress by LIBERTY MUTUAL. In April 2002, the house remained sitting. KINGSTON represented that the delay was in waiting for Tim Welch of EGS Engineering to inspect the slab before removing the same. Proposals were not submitted by KINGSTON for the completion of the job until mid-May of 2002. Again, KINGSTON was in effect performing LIBERTY MUTUAL's duty to assess the loss and indemnify for the same. In late May early June, the slab was finally removed.

20.  On May 21, 2002, LIBERTY MUTUAL cancelled plaintiffs' insurance coverage. The home was uninsurable at this juncture due to its mid-claim/mid-construction condition.

21.  LIBERTY MUTUAL Adjuster Richard Bennett soon developed an unusually keen interest in Mrs. Gloria Mock which went beyond what rational observers would classify as a genuine interest in providing attentive claim service. Ms. Mock was continually peppered with calls to her cell phone from adjuster Bennett, often with a spur of the moment proposals for personal lunch meetings, etc., ostensibly to "discuss her claim", but apparently with some other agenda in mind. The interest and attention clearly exceeded normal business standards and decorum.

22.  At the conclusion of the first two-month ALE period for which an approximate $6,000 advance payment had been made by LIBERTY MUTUAL/Bennett, adjuster Bennett proposed to plaintiff Gloria Mock that an additional $2,000 be added to her next ALE benefit check. In exchange, LIBERTY MUTUAL's Bennett proposed that Ms. Mock kick back funds to Mr. Bennett to fund his purchase of a Harley Davidson trailer which he desired to attain. Ms. Mock declined the proposal. Mr. Bennett also charged $7,325.25 for Bekins Moving & Storage to this claim when in fact Bekins was never even involved on the claim in any capacity. The plaintiffs personally moved all of their contents to a storage container situated in their driveway.

23. Thereafter, LIBERTY MUTUAL became delinquent in its payment of ALE for months five and six. Plaintiff Gloria Mock attempted to contact adjuster Bennett on or around June 21st and on Friday, June 28th re: a Tuesday appointment. Ms. Mock ultimately reached Michael Malley at the controlling Sacramento office who informed Ms. Mock that he had her file in his possession that Mr. Bennett had been terminated by LIBERTY MUTUAL, and that Mr. Malley was going to personally handle the Mock claim to its efficient and proper conclusion. During that very phone conversation with Mr. Malley, Ms. Mock's cell phone beeped on "call waiting" indicating that another call was coming through. Ms. Mock fielded the call which was from none other than adjuster Bennett who informed that "he needed to set up a meeting to discuss her claim". Ms. Mock then transferred back to Mr. Malley's line and indicated to Mr. Malley: "You may be interested to know that your insurance adjuster, Mr. Bennett, is on the other line right this second and is proposing that I meet him to discuss my claim".

24. At this juncture, the claim was six months old and LIBERTY MUTUAL's management was on direct notice that its insured had been subjected to obviously inappropriate conduct perpetrated by LIBERTY MUTUAL's adjuster and that the claim was obviously in potential jeopardy. The ALE benefits were in arrears. The claim adjustment and construction were grossly behind schedule due to complete non-supervision of the claim by LIBERTY MUTUAL. Further, in reviewing the file, Mr. Malley noted and communicated to Ms. Mock "I see that you are staying in a Century Twenty One relocation for your ALE". Ms. Mock responded by correcting Mr. Malley and informing him that she was in fact staying in the Hilton Hotel, per adjuster Bennett's instructions, and that the Mocks had been paying the hotel out of pocket to be reimbursed on an incurred basis. The claim entry reflected a direct pay situation, obviously to facilitate some form of misappropriation of funds by Bennett. LIBERTY MUTUAL management was acutely aware of impropriety on the Mock claim at this juncture.

25. In this same telephonic conversation, Ms. Mock demanded to Mr. Malley that LIBERTY MUTUAL send a live body down to Los Angeles to assess and supervise this

7

claim because nobody had been doing so and LIBERTY MUTUAL was merely issuing checks to its delegatee, KINGSTON, without ensuring that KINGSTON was in fact performing as required under the facts and circumstances of the claim. Mr. Malley indicated that he was going to retain a company in Simi Valley that LIBERTY MUTUAL does business with to oversee KINGSTON and the claim.

26. Following the July meeting, with the slab of the home removed, the home sat virtually untouched for several months. Mr. Mock left for his job in Austin, Ms. Mock remained local. In September of 2002, Ms. Mock left for Austin, Texas to work with her husband. Ms. Mock spoke with Mr. Malley on numerous occasions between September 2002 and February 200 via cell phone from her job in Texas in an attempt to get LIBERTY MUTUAL to perform and supervise KINGSTON. During this same time frame, KINGSTON's foreman, Tim McCarthy, on behalf of LIBERTY MUTUAL and KINGSTON, repeatedly informed Ms. Mock that everything was going great on the claim and construction job, that she was going to love the home when she saw it and that "the guys were working on it right now". None of this was true as KINGSTON was doing nothing on the job and LIBERTY MUTUAL was doing nothing on the claim.

27. In and around September of 2002, LIBERTY MUTUAL/Malley passed the file to LIBERTY MUTUAL Manager Brian Cahill of the Sacramento office. Ms. Mock was then required to start from scratch re-living and re-explaining all of the sordid and detailed events of her claim to date. This ordeal was extremely frustrating and demoralizing to the Mocks. LIBERTY MUTUAL/Cahill assured the Mocks that everything was going to be taken care of. KINGSTON concurrently assured the Mocks that the entire job would be done for the holidays. The Mocks returned from Austin in late December for Christmas and were devastated to encounter a completely unfinished home which appeared to be in worse shape than before the project started. The home was nowhere near completion. There was no drywall installed. The insulation was not in. The electrical was not complete. The Mocks were devastated and depressed at the status of their home, particularly in that they had looked forward to spending their vacation time away from their busy work schedule and

8

Complaint for Damages

::ODMA\GRPWISE\ELLDOM.ELLPO.Documents:198088.1

in the home that they had not enjoyed since the previous Christmas. Their homecoming celebration was abruptly cancelled.

28. At this point, LIBERTY MUTUAL/Brian Cahill assured that the job would be completed in January of 2003. LIBERTY MUTUAL/Cahill indicated that the Mocks' ALE benefit was to expire because at this juncture it was one year from the date of loss. Mr. Cahill informed that if further ALE benefits were incurred KINGSTON would have to pay for the same. This potential prospective burden was in effect passed from LIBERTY MUTUAL to KINGSTON in the same manner as the non-delegable claim investigation duties discussed above.

29. The Mock's returned to their job in Austin depressed and concerned at the complete lack of progress on their insurance claim. Before departing, the Mocks were assured by LIBERTY MUTUAL's joint venturer/delegatee, KINGSTON/Mr. McCarthy, that the job would be totally and completely finished by mid-February, up to Code, structurally sound, cosmetically perfect, etc., inside and out, aka "pre-loss condition". Simultaneously, Ms. Mock had been attempting to reach LIBERTY MUTUAL/Cahill and left numerous messages with no return call. The same occurred with respect to KINGSTON/Tim McCarthy - multiple calls, no return call. Ms. Mock was frankly attempting to check up on both LIBERTY MUTUAL and KINGSTON since neither seemed to have any real interest in performing and for the past year provided nothing but lip service and false promises. Eventually, Ms. Mock received a call from Ross Franklin, President and principal owner of KINGSTON who informed that Mr. McCarthy had been terminated by KINGSTON and that Mr. Franklin would be taking over the job. Mr. Franklin had zero knowledge of the job and had done absolutely nothing on the project which understandably and justifiably concerned the Mocks.

30. In mid-February, 2003, Ms. Mock again called LIBERTY MUTUAL/Brian Cahill to inform that she would be returning from Austin and in hopes that she might have some place to live upon her return. LIBERTY MUTUAL/Cahill assured Ms. Mock that the home would be ready at that time, that the home was in fact already done, yet LIBERTY

MUTUAL/Mr. Cahill had not even been to the home to inspect and insure if this was in fact true, which it was not. In the entire thirteen months of the project, LIBERTY MUTUAL only checked in on the job on three occasions providing superficial efforts at best. LIBERTY MUTUAL's joint venturer and delegatee, KINGSTON was therefore permitted to reap havoc and cause great damage to the home and to the insurance claim of the Mocks. Ms. Mock specifically inquired of LIBERTY MUTUAL: "How do you know that the home is ready if in fact no one from LIBERTY MUTUAL has been down to L.A. to ensure the same?". LIBERTY MUTUAL/Cahill responded by urging Ms. Mock not to worry. Ms. Mock, in direct reliance thereon, indicated that she would proceed home to Los Angeles and would effectuate reactivation of utilities, termination of temporary housing, etc. Both LIBERTY MUTUAL/Cahill and KINGSTON/Franklin assured that the reconstruction and repair of the home were complete.

31. On February 22nd, Ms. Mock returned home and was shocked and distraught at the sight of the disastrous condition of her home. The home looked better fourteen months prior before the job was started. Ms. Mock telephoned LIBERTY MUTUAL/Cahill and demanded that Mr. Cahill come down from Sacramento and inspect the property and see what LIBERTY MUTUAL and KINGSTON consider to be "a completed job". Mr. Cahill made an appointment with Ms. Mock and visited the home in Los Angeles on the week of February 25th. A walk-thru was conducted, Mr. Cahill took notes and didn't say much. Subsequently, Mr. Cahill provided what he referred to as a "punch list" and which included what LIBERTY MUTUAL/Cahill felt were the remaining construction tasks to be completed. While this "punch list" did include significant items thus confirming that this job clearly was not complete, the "punch list" was grossly deficient and overlooked substantial construction defects, incomplete work and, in sum, a horrendous and completely unacceptable performance by LIBERTY MUTUAL and KINGSTON. Significant repairs must be implemented on this home and which will render the home uninhabitable. Obviously, such repairs will involve the expenditure of significant sums of money, and which constitute consequential damages.

## SECOND CAUSE OF ACTION:
## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH & FAIR DEALING
[Against Defendant MUTUAL FIRE INSURANCE COMPANY and Does 1-100]

32. Paragraphs 1 through 31 are incorporated by reference as if fully set forth within this Cause of Action.

33. As an insurer, defendant LIBERTY MUTUAL owed to the plaintiffs a non-delegable duty to assess, adjust and indemnify its insureds, the plaintiffs, for the full extent of their loss. This duty included the duty to supervise any delegatees to whom responsibility for the fulfillment of the insurer's duties was delegated or assigned. LIBERTY MUTUAL owed the plaintiffs a duty to deal fairly and in good faith, to act reasonably and promptly in investigating, evaluating and processing plaintiffs' claim, and to not withhold nor unreasonably delay payment of benefits.

34. In its handling and adjustment of the subject claim, as described above and as will be proven at time of trial, defendant elevated its financial and other interests above those of the plaintiff and subordinated plaintiffs' interests to those of the defendant, engaging in unprofessional, wrongful and tortious conduct, all to the great financial, physical and emotional detriment and harm of plaintiffs as specified herein and as will be proven at trial, including, but not limited to, failure to investigate the claim, ignoring and disregarding evidence in support of the claim, failing to search for evidence in support of the claim, adjusting the claim in concert with a completely incompetent contractor, failing to supervise the claim and the contractor retained to fulfill LIBERTY MUTUAL's duties, completely ignoring the claim in conscious disregard for the rights of the plaintiffs, and other acts which will be revealed in discovery and proven at trial.

35. As a proximate result of the wrongful and tortious conduct of defendant, plaintiffs have endured extreme and enduring emotional distress, physical illness, mental and emotional ailments and traumas during the pendency of the claim and continuing at present.

1  Plaintiffs have invested enormous personal time in fighting with defendant and its
2  representatives, "proving up" their covered claim in the manner of an adversary or legal
3  advocate when they were under no obligation to do so, hiring professionals to assist them
4  in doing the same, and in general, enduring the continued non-adjustment and
5  indemnification of this loss by defendant.

6      36.    As a further proximate result of the wrongful and tortious conduct of
7  defendant, plaintiffs have endured the loss of use and enjoyment of their home and
8  associated loss of tranquility, the indignity, frustration and aggravation associated with
9  humans being deprived of the normal use of their home for an unreasonable and lengthy
10 period of time and without proper cause.

11     37.    As a further proximate result of the wrongful and tortious conduct of
12 defendants, plaintiffs' ability to function at work has been impeded and harmed, all resulting
13 in emotional distress and financial loss to plaintiffs.

14     38.    As a further proximate result of the unreasonable, wrongful and tortious
15 conduct of defendant, plaintiffs have been compelled to hire attorneys in order to compel and
16 secure benefits and performance owed under the subject insurance policy. As a result,
17 plaintiffs have incurred and will incur attorneys' fees and costs and hereby claim such fees
18 and costs as a separate and distinct item of damage, per *Brandt v Superior Court* (1985) 37
19 Cal.3d 813.

20     39.    In doing the acts described in this Complaint, defendant acted with conscious
21 disregard of the rights of plaintiffs and did so in an oppressive and despicable manner, all
22 of which warrants the imposition of punitive damages under the guidelines of Civil Code
23 §3294 in an amount sufficient to punish and deter defendant from engaging in similar such
24 conduct in the future. Defendant acted in furtherance of its self interest to avoid payment
25 of policy benefits owed, knowing such acts would harm the plaintiffs greatly. Plaintiffs
26 were viewed and treated as some undesirable customers who had the temerity to file a claim
27 as opposed to valued customers to whom a quasi-fiduciary duty was owed by the defendant
28 insurer who promised peace of mind and protection to its insureds.

## THIRD CAUSE OF ACTION:

## NEGLIGENCE

[Against Defendant KINGSTON Reconstruction & Flooring, Inc. and Does 1-100]

40. Paragraphs 1-39 are incorporated by reference as if fully set forth in this cause of action.

41. KINGSTON Reconstruction & Flooring, Inc. was recommended and retained by LIBERTY MUTUAL for the dual purpose of fulfilling LIBERTY MUTUAL's duty to assess, adjust and indemnify for the catastrophic and insured loss sustained by LIBERTY MUTUAL's insureds, plaintiffs herein, and to repair plaintiffs' home.

42. KINGSTON failed miserably in fulfillment of any and all of its duties. The job was never completed. The job was implemented in an untimely fashion. Misrepresentations about the status and progress of the job were continually made by KINGSTON. KINGSTON in fact caused damage to this property in implementing substandard and shoddy workmanship thus requiring a complete re-work of the entire project. The home reflects complete and total incompetence and unprofessionalism on the part of KINGSTON.

43. KINGSTON has also filed a lien or encumbrance against the plaintiffs' property, even through plaintiffs have authorized payment of sums allegedly owed via insurance proceeds held in trust at Washington Mutual bank. This lien constitutes an abuse of process, is unwarranted and has inhibited the plaintiffs' ability to refinance the subject property due to the cloud on the title caused by KINGSTON. The lien is baseless under the circumstances and was filed without probable cause.

44. As a proximate result of the foregoing, plaintiffs have sustained legally compensable damages to be proven at time of trial including, but not limited to, construction defects, diminution in value to their property, construction costs which will be incurred in re-repairing this home and the fixing the shoddy workmanship of KINGSTON, professional fees of engineers and contractors to determine the extent of damage caused by KINGSTON, and other damages to be proven at time of trial.

1  WHEREFORE, plaintiffs pray for judgment as follows:

2  **As to Defendant LIBERTY MUTUAL INSURANCE COMPANY**

3  1.  For contractual benefits and special damages as will be proven at trial;

4  2.  For general and compensatory damages according to proof;

5  3.  For pre-judgment interest;

6  4.  For punitive/exemplary damages according to proof;

7  5.  For reimbursement of attorneys fees; and

8  6.  For such other relief as this Court deems just and proper.

9  **As to Defendant KINGSTON RECONSTRUCTION & FLOORING, INC.**

10  7.  For consequential special damages as will be proven at trial;

11  8.  For general damages as will be proven at trial;

12  9.  For such other relief as this Court deems just and proper.

14  DATED: June 10, 2003              ENGSTROM, LIPSCOMB & LACK

16                                    By: *Brian J. Heffernan*
17                                        BRIAN J. HEFFERNAN
                                          Attorneys for Plaintiffs
18                                        RALPH MOCK and GLORIA MOCK

982.2(b)(1)

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, bar number, and address): | | FOR COURT USE ONLY |
|---|---|---|
| BRIAN J. HEFFERNAN, ESQ.  132845<br>ENGSTROM, LIPSCOMB & LACK<br>10100 Santa Monica Boulevard, 16th Floor<br>Los Angeles, CA 90067-4107<br>TELEPHONE NO.: 310-552-3800  FAX NO.: 310-552-9434<br>ATTORNEY FOR (Name): RALPH and GLORIA MOCK | | **FILED**<br>LOS ANGELES SUPERIOR COURT<br>JUN 1 1 2003<br>JOHN A. CLARKE, CLERK<br>BY C. L. COLEMAN, DEPUTY |

INSERT NAME OF COURT, JUDICIAL DISTRICT, AND BRANCH COURT, IF ANY:
LOS ANGELES COUNTY SUPERIOR COURT

CASE NAME:

| CIVIL CASE COVER SHEET<br>☐ Limited  ☒ Unlimited | Complex Case Designation<br>☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | CASE NUMBER:<br>ASSIGNED JUDGE:<br>BC 297264 |
|---|---|---|

*Please complete all five (5) items below.*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (e.g., discrimination, false arrest) (08)
☐ Defamation (e.g., slander, libel) (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (e.g., legal malpractice) (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Collections (e.g., money owed, open book accounts) (09)
☒ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (e.g., quiet title) (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 1800-1812)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Claims involving mass tort (40)
☐ Securities litigation (28)
☐ Toxic tort/Environmental (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (e.g., sister state, foreign, out-of-county abstracts) (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☒ is not  complex under rule 1800 of the California Rules of Court. If case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination and related actions pending in one or more courts in other counties, states or countries, or in a federal court
   f. ☐ Substantial post-disposition judicial disposition

3. Type of remedies sought (check all that apply):
   a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☒ punitive

4. Number of causes of action (specify): Three

5. This case ☐ is  ☒ is not  a class action suit.

Date: June 10, 2003

BRIAN J. HEFFERNAN
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate, Family, or Welfare and Institutions Code). (Cal. Rules of Court, rule 982.2.)
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a complex case, this cover sheet shall be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
982.2(b)(1) [Rev. January 1, 2000]

CIVIL CASE COVER SHEET    CEB    Cal. Rules of Court, rules 982.2, 1800-1812;
Standards of Judicial Administration, § 19

| SHORT TITLE: MOCK v. LIBERTY MUTUAL INSURANCE CO., et al. | CASE NUMBER BC297264 |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required in all new civil case filings in the Los Angeles Superior Court**

I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES    CLASS ACTION? [ ] YES    LIMITED CASE? [ ] YES    TIME ESTIMATED FOR TRIAL 10 [ ] HOURS/[X] DAYS.

II. Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to No. III, Pg. 4):

1. After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column 1, the Civil Case Cover Sheet case type you selected.
2. Check **one** Superior Court type of action in Column 2 below which best describes the nature of this case.
3. In Column 3, circle the reason for the court location choice that applies to the type of action you have checked.

**Applicable Reasons for Choosing Courthouse Location (See Column 3 below)**

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Inj/Prop.Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

4. Fill in the information requested on page 4 in item III; complete item IV. Sign the certificate.

| | -1-<br>Civil Case Cover<br>Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | [ ] A7100 Motor Vehicle - Personal Injury/Property Dam./Wrongful Death<br>Is this an uninsured motorist case? [ ] Yes [ ] No | 1., 2., 4. |
| Other PI/PD/WD Tort | Asbestos (04) | [ ] A6070 Asbestos Property Damage<br>[ ] A7221 Asbestosis - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | [ ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons<br>[ ] A7240 Other Professional Health Care Malpractice | 1., 2., 4.<br>1., 2., 4. |
| | Other PI/PD/WD (23) | [ ] A7250 Premises Liability (e.g., slip and fall)<br>[ ] A7230 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism, etc.)<br>[ ] A7270 Intentional Infliction of Emotional Distress<br>[ ] A7271 Negligent Infliction of Emotional Distress<br>[ ] A7220 Other Personal Injury/Property Dam./Wrongful Death | 1., 2., 4.<br>1., 2., 4.<br>1., 2., 3.<br>1., 2., 3.<br>1., 2., 4. |
| Non-PI/PD/WD Tort | Business Tort (07) | [ ] A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013 Fraud (no contract) | 1., 2., 3. |
| | Intellectual Property (19) | [ ] A6016 Intellectual Property | 2., 3. |

CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION    LASC Rule 2.0
CIV 109 04-02    Martin Dean's Essential Forms™    Page 1 of 4

| SHORT TITLE: MOCK v. LIBERTY MUTUAL INSURANCE CO., et al. | | CASE NUMBER | |
|---|---|---|---|

| | -1-<br>Civil Case Cover Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Non-PI/PD/WD Tort | Prof. Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| Employment | Wrongful Termination (35) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Contract | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not UD or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff(no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☒ A6015 Insurance Coverage (not complex) | 1., ②, 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractural Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Real Property | Emnt Dom/Inv. Cond. (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property(not em. domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer | Unlawful Detainer- Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer- Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration Award (11) | ☐ A6115 Petition to Compel/Confirm Arbitration | 2., 5. |

| SHORT TITLE: MOCK v. LIBERTY MUTUAL INSURANCE CO., et al. | | CASE NUMBER | |
|---|---|---|---|

| | -1-<br>Civil Case Cover Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Judicial Review (Cont'd.) | Writ of Mandate<br>(02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Oth. Jud. Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litig. | Antitrust/Trade Reg. (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litig. (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Tox. Tort/Envronm (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Ins Covrage Clms from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| Misc. Civ. Cmplts | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Misc. Civil Petitions | Partnership/Corp. Governance(21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9<br>2., 3., 9<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**   LASC Rule 2.0
CIV 109 04-02  *Martin Dean's Essential Forms™*                    Page 3 of 4

| SHORT TITLE: MOCK v. LIBERTY MUTUAL INSURANCE CO., et al. | CASE NUMBER |
|---|---|

-4-

III. Statement of Location: Enter the address of the accident, party residence or place of business, performance, or other circumstance indicated in No. II., item 3 on Page 1 as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER ITEM -3- WHICH APPLIES IN THIS CASE | ADDRESS: |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | 23725 SYLVAN STREET |
| CITY: WOODLAND HILLS | STATE: CA | ZIP CODE: 91367 | |

IV. Certificate/Declaration of Assignment: The undersigned hereby certifies and declares that the above entitled matter is properly filed for assignment to the ____civil____ courthouse in the ____Central____ District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 2(b), (c) and (d) of this court for the reason checked above. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on June 10, 2003 at Los Angeles California.
(date)   (city)

_Brian J. Heffernan_
(SIGNATURE OF ATTORNEY/FILING PARTY)
BRIAN J. HEFFERNAN

### New Civil Case Filing Instructions

This addendum form is required so that the court can assign your case to the correct courthouse location in the proper district for filing and hearing. It satisfies the requirement for a certificate as to reasons for authorizing filing in the courthouse location, as set forth in Los Angeles Superior Court Local Rule 2.0. It must be completed and submitted to the court along with the Civil Case Cover Sheet and the original Complaint or Petition in ALL civil cases filed in any district (including the Central District) of the Los Angeles County Superior Court. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk (Summons forms available at the Forms Counter.).

3. Civil Case Cover Sheet form required by California Rule of Court 982.2(b)(1), completely filled out (Cover Sheet forms available at the Forms Counter).

4. This "Addendum to Civil Case Cover Sheet" form [Superior Court Form Number 982.2(b)(1)A, revised 7/99], completely filled out (Item II. does not apply in limited civil cases) and submitted with the Civil Case Cover Sheet.*

5. Payment in full of the filing fee (unless filing on behalf of state or local government or no fee is due for the type of case being filed) or an Order of the Court waiving payment of filing fees in forma pauperis (fee waiver application forms available at the Filing Window)

6. In case of a plaintiff or petitioner who is a minor under 18 years of age, an Order of the Court appointing an adult as a guardian ad litem to act on behalf of the minor (Guardian ad Litem Application and Order forms available at the Forms Counter).

7. Additional copies of documents presented for endorsement by the Clerk and return to you.

* With the exception of unlimited civil cases concerning property damage, bodily injury or wrongful death occurring in this County, Labor Commissioner Appeals, and those types of actions required to be filed in the Central District by Local Court Rule 2(b), all unlimited jurisdiction civil actions may be optionally filed either in the Central District or in whichever other court location the rule would allow them to be filed. When a party elects to file an unlimited jurisdiction civil action in Central District that would also be eligible for filing in one or more of the other court locations, this form must still be submitted with location and assignment information completed.